UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

XL SPECIALTY INSURANCE COMPANY,    :

        Plaintiff,         :

        :

     v.       :      No. 08-CV-3821 (GEL)

        :

JOHN D. AGOGLIA, PHILLIP R. BENNETT,  :
LEO R. BREITMAN, EDWIN L. COX,
SUKHMEET DHILLON, THOMAS H.    :
DITTMER, NATHAN GANTCHER, STEPHEN :
GRADY, TONE GRANT, THOMAS HACKL,  :
DAVID V. HARKINS, SCOTT L. JAECKEL,  :
DENNIS A. KLEJNA, THOMAS H. LEE,  :
ERIC G. LIPOFF, SANTO C. MAGGIO,  :
PETER MCCARTHY, JOSEPH MURPHY,  :
FRANK MUTTERER, RONALD L. O'KELLEY, :
RICHARD N. OUTRIDGE, SCOTT A.  :
SCHOEN, WILLIAM M. SEXTON, GERALD  :
SHERER, PHILIP SILVERMAN, AND  :
ROBERT C. TROSTEN,  :

        :

      Defendants.    :
------------------------------------------------------------x

## Sworn Declaration of Henry Toolan

Henry Toolan, being duly sworn, deposes and says:

1.     I am an underwriter for XL Specialty Insurance Company ("XL"). I make this declaration, on personal knowledge, to bring before the Court certain documents and facts relevant to XL's motion for summary judgment in the above captioned case.

2.     I was the underwriter at XL primarily responsible for the underwriting of the directors and officers management liability insurance policy number ELU089673-05

issued to Refco Inc. ("Refco") for the period of August 11, 2005 to August 11, 2006 titled "Classic A-Side Policy" (the "XL Policy"). A true and correct copy of the Policy, as issued, is annexed hereto as Exhibit A.

3.     The XL Policy is an excess policy which is the top of a $70 million "tower" of Directors and Officers Insurance issued for the same policy period. An important part of the Policy is the Inverted Representation Endorsement ("IRE"), which is included in Exhibit A.

4.     In my role as underwriter, I was responsible for the decisions related to the issuance of the Policy and I had day-to-day responsibility for interaction with Marsh USA, Inc. ("Marsh") the agent for Refco. I corresponded with Marsh extensively in the period prior to the Policy inception date and through issuance of the Policy.

5.     I have been advised by counsel for XL that certain of the Insured Persons under the Policy were given, by Marsh, as part of the litigation, a copy of a binder related to the Policy that does not mention the IRE. Based on that, I am told that some of the insureds have suggested that the IRE is not properly part of the Policy. That simply is not true. I can say on personal knowledge that there was a clear, explicit and unequivocal agreement, prior to the Policy being bound, that the IRE was part of the Policy.

6.     The documentary record also illustrates that the IRE was part of the XL Policy and that Marsh had the IRE in its possession prior to binding on August 10, 2005. Indeed, it is clear that the IRE was issued at the express request of Refco.

7.    For example, attached hereto as Exhibit B is an August 9, 2005 email exchange between me and Kenny Li ("Li") of Marsh.  Li was the person at Marsh responsible for the Refco insurance program.  In that email exchange, titled "Re: Refco-warranty," Marsh requested, on behalf of Refco, that XL "please include an inverted warranty endorsement. . . ."  I responded to Li's email, on August 9, the day prior to the Policy being bound, indicating "[t]his confirms that we will use the inverted warranty."  Thus, it was agreed that the IRE was part of the Policy to be issued.

8.    Not only was it the intent of XL and Refco to include the IRE, there is also no question that Marsh was in possession of the actual IRE prior to binding.  Late in the afternoon of August 9, 2005 (the same day as the prior email – *i.e.* the day prior to the Policy being bound) in another email from Li to me titled "Re: Refco – requests" Li requests a copy of the IRE when he states, "I need a copy of your form and all endorsements."  Several minutes later, I responded by an email which attached an electronic copy of the IRE, with the notation below, "[o]ne more."  True and correct copies of those emails are annexed hereto as Exhibit C.

Pursuant to section 1746 of the United States Code, I declare under penalty of perjury that the foregoing is true and correct.  Executed on July 10, 2008.

Henry Toolan

3

Policy Number:     **ELU089673-05**
Renewal of Number

☐ **Greenwich Insurance Company**
☒ **XL Specialty Insurance Company**
Members of the XL America Companies

---

**CLASSIC A-SIDE MANAGEMENT LIABILITY
INSURANCE POLICY DECLARATIONS**

Executive Offices
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

---

THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

**Item 1. Name and Mailing Address of Insured Entity:**

Refco Inc.
550 W. Jackson Blvd., Suite 1300
Chicago, IL  60661

**Item 2. Policy Period:  From:**  August 11, 2005  **To:**  August 11, 2006
At 12:01AM Standard Time at your Mailing Address Shown Above

**Item 3. Limit of Liability:**

$20,000,000  Aggregate each Policy Period (including **Defense Expenses**)

**Item 4. Optional Extension Period and Premium:**
Length of Optional Extension Period:   One Year
Optional Extension Premium:        $740,600.00

**Item 5. Notices required to be given to the Insurer must be addressed to:**

Executive Liability Underwriters
One Constitution Plaza, 16th Floor
Hartford, CT  06103
Toll Free Telephone: 877-953-2636

**Item 6. Premium:**
Premium                          $370,300.00
Taxes, Surcharges or Fees:            $0.00
Total Policy Premium:              $370,300.00

**Item 7. Policy Forms and Endorsements Attached at Issuance:**
CL 71 00 03 00   CL 72 02 05 00   CL 83 08 09 02   XL 83 07 01 00   XL 80 24 03 03   XL 80 39 04 05
CL 83 06 07 02   CL 83 14 10 03   CL 80 34 12 02   CL 80 18 09 02   XL 80 34 10 04   XL 83 25 10 00
Manuscript 3027 12 05   XL 80 04 04 00

Countersigned: _____   By: _____
                          Date                                          Authorized Representative

---

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

CLAS( )A-SIDE MANAGEMENT LIABILITY F( )ICY

In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.


Nicholas M. Brown Jr.
President

Theresa M. Morgan
Secretary

**XL Specialty Insurance Company**


Nicholas M. Brown Jr.
President

Theresa M. Morgan
Secretary

**Greenwich Insurance Company**

# EXECUTIVE LIABILITY UNDERWRITERS
**A Member of the XL Capital Group of Companies**

# CLASSIC A-SIDE MANAGEMENT LIABILITY

Executive Liability Underwriters
One Constitution Plaza
16th Floor
Hartford, CT 06103
Phone: 860-246-1863
Fax: 860-246-1899
www.xlelu.com
email: elusubmissions@xlelu.com

# CLASSIC A-SIDE MANAGEMENT LIABILITY INSURANCE COVERAGE FORM

THIS IS A CLAIMS MADE POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

In consideration of the payment of the premium, and in reliance on all statements made and information furnished to Executive Liability Underwriters, the Underwriting Manager for the Insurer identified on the Declarations Page (hereinafter, the "Insurer") including the Application and subject to all of the terms, conditions and limitations of all the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:

## I.  INSURING AGREEMENT

The Insurer will pay on behalf of the **Insured Persons** **Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act**, except to the extent that such **Loss** is paid by any other **Insurance Program** or as indemnification from any source. If **Loss** is not paid by such other **Insurance Program** or as indemnification from any source, the Insurer will pay covered **Loss** on behalf of the **Insured Persons**, subject to all of the terms, conditions (including but not limited to Condition IV(B)) and limitations of the Policy.

## II.  DEFINITIONS

(A)  "**Application**" means:

    (1)  the **Application** attached to and forming part of this Policy; and

    (2)  any materials submitted therewith, which shall be retained on file by the Insurer and shall be deemed to be physically attached to this Policy.

(B)  "**Change In Control**" means:

    (1)  the merger or acquisition of the **Parent Company**, or of all or substantially all of its assets by another entity such that the **Parent Company** is not the surviving entity;

    (2)  the acquisition by any person, entity, or affiliated group or persons or entities of the right to vote for, select, or appoint more than fifty percent (50%) of the directors of the **Parent Company**; or

    (3)  the appointment of a Receiver, Conservator, Liquidator, Trustee, Rehabilitator, or any comparable authority, with respect to the **Parent Company**.

(C)  "**Claim**" means:

    (1)  a written demand for monetary or non-monetary relief;

    (2)  any civil or criminal judicial proceeding in a court of law or equity, or arbitration; or

    (3)  a formal civil, criminal, or administrative regulatory proceeding or formal investigation against an **Insured Person**.

(D)  "**Company**" means the **Parent Company** and any **Subsidiary** created or acquired on or before the Inception Date set forth in ITEM 2 of the Declarations or during the **Policy Period**, subject to CONDITIONS IV(C).

(E) "**Defense Expenses**" means reasonable legal fees and expenses incurred in the defense of any **Claim**. **Defense Expenses** will not include the **Company's** overhead expenses or any salaries, wages, fees, or benefits of its directors, officers, or employees.

(F) "**Employment Practices Claim**" means a **Claim** alleging an **Employment Practices Wrongful Act**.

(G) "**Employment Practices Wrongful Act**" means any actual or alleged:

    (1) wrongful termination of employment whether actual or constructive;

    (2) employment discrimination of any kind;

    (3) sexual or other harassment in the workplace; or

    (4) wrongful deprivation of career opportunity, employment related misrepresentations, retaliatory treatment against an employee of the **Company**, failure to promote, demotion, wrongful discipline or evaluation, or refusal to hire.

(H) "**Insurance Program**" means

    (1) any existing Management Liability insurance, Directors' and Officers' Liability insurance, or similar insurance, and

    (2) any other existing insurance under which coverage may be owed.

(I) "**Insured Person**" means:

    (1) any past, present, or future director or officer, or member of the Board of Managers, of the **Company** and those persons serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States;

    (2) any individual identified in (I)(1) above who, at the specific written request of the **Company**, is serving as a director, officer, trustee, regent, or governor of any **Outside Entity**; or

    (3) the lawful spouse of any person set forth in the above provisions of this definitions, but only to the extent the spouse is a party to any **Claim** solely in their capacity as a spouse of such persons and only for the purposes of any **Claim** seeking damages recoverable from marital community property, property jointly held by any such person and spouse, or property transferred from any such person to the spouse.

In the event of the death, incapacity or bankruptcy of an individual identified in (I)(1), (2), and (3) above, any **Claim** against the estate, heirs, legal representatives or assigns of such individual for a **Wrongful Act** of such individual will be deemed to be a **Claim** against such individual.

(J) "**Interrelated Wrongful Acts**" means any **Wrongful Act** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related, or series of related, facts circumstances, situations, transactions, or events.

(K) "**Loss**" means damages, judgments, settlements or other amounts (including punitive or exemplary damages, where insurable by law) and **Defense Expenses** that the **Insured Persons** are obligated to pay. **Loss** will not include:

    (1) the multiplied portion of any damage award;

    (2) fines, penalties or taxes imposed by law; or

    (3) matters which are uninsurable under the law pursuant to which this Policy is construed.

Note: With respect to judgments in which punitive damages are awarded, the coverage provided by this Policy shall apply to the broadest extent permitted by law. If, based on the written opinion of counsel for an **Insured Person**, punitive damages are insurable under applicable law, the Insurer will not dispute the written opinion of counsel for the **Insured Person**.

(L)    "**Parent Company**" means the entity named in Item 1 of the Declarations.

(M)    "**Policy Period**" means the period form the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations or to any earlier cancellation date.

(N)    "**Outside Entity**" means any corporation or organization other than the **Company** of which any **Insured Person** serves as a director, officer, trustee, regent, or governor, but only if such service is at the specific written direction of the **Company**.

(O)    "**Subsidiary**" means any entity during any time in which the **Parent Company** owns, directly or through one of more **Subsidiary(ies)**, more than fifty percent (50%) of the outstanding securities representing the right to vote for the election of such entity's directors.

(P)    "**Wrongful Act**" means:

    (1)    any actual or alleged act, error, or omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person** while acting in his or her capacity as an:

        (i)    **Insured Person** of the **Company** or a person serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary**;

        (ii)    **Insured Person** of the **Company** who at the specific written request of the **Company** is serving as a director, officer, trustee, regent or governor or an **Outside Entity**; and

    (2)    any Employment Practices Wrongful Act.

## III.    EXCLUSIONS

(A)    Except for **Defense Expenses**, the Insurer shall not pay **Loss** in connection with any **Claim**:

    (1)    by, on behalf of, or at the direction of the **Company** or **Outside Entity**, except and to the extent such **Claim**:

        (i)    is brought by a security holder of the **Company** or **Outside Entity** who, when such **Claim** is made and maintained, is acting independently of, and without the solicitation, assistance, participation or intervention of the **Company** or any **Outside Entity**.

        (ii)    is brought by the Bankruptcy Trustee or Examiner of the **Company** or **Outside Entity**, or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the **Company** or **Outside Entity**;

    (2)    brought about or contributed to in fact by any:

        (i)    intentionally dishonest, fraudulent, or criminal act or omission or any willful violation of any statute, rule, or law; or

        (ii)    profit or remuneration gained by any **Insured Person** to which such **Insured Person** is not legally entitled;

as determined by a final adjudication in the underlying action or in a separate action or proceeding;

(B)  The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured Person**:

    (1)  for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, defamation, slander, libel, disease or death of any person, or damage or destruction of any tangible property including **Loss** of use thereof.  EXCLUSION (B) shall not apply to any **Claim**:

        (i)  brought by a security holder of the **Company** or **Outside Entity** for any actual or alleged violation of the Securities Act of 1933, the Securities Act of 1934, or any state securities statute; or

        (ii)  a derivative action brought by or on behalf of, or in the name or right of, the **Company**, and brought and maintained independently of, and without solicitation, assistance, participation or invention of the **Company**, **Insured Person**, or **Outside Entity**.

    (2)  based upon, arising out of, directly or indirectly resulting from, in  consequence of, or in any way involving any fact, circumstance or situation, transaction, event or **Wrongful Act** which, before the Inception Date of this Policy, was the subject of any notice given under any other Management Liability insurance, Directors' and Officers' insurance, or any other similar insurance.

    Note:  EXCLUSION (B)(1) will not apply to any allegation of libel, slander, defamation, mental anguish or emotional distress if and only to the extent that such allegations are made as part of an **Employment Practices Claim** for an **Employment Practices Wrongful Act**.

No conduct of any **Insured Person** will be imputed to any other **Insured Person** to determine the application of any of the above EXCLUSIONS.

## IV.  CONDITIONS

### (A)  Limit of Liability

The amount set forth in ITEM 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under this Policy.  Payment of **Loss**, including **Defense Expenses**, by the Insurer shall reduce the Limit of Liability.

### (B)  Indemnification and Other Insurance

    (1)  The **Insured Persons** and the **Company** understand and agree that all coverage under this Policy shall be specifically excess over, and shall not contribute with:

        (i)  all indemnification to which an **Insured Person** may be entitled from any source, including but not limited to the **Company** or any **Outside Entity**; and

        (ii)  any **Insurance Program** maintained by the **Company** or any **Outside Entity**, whether such other insurance is stated to be primary, contributing, excess, or otherwise.

    (2)  This Policy shall not be subject to the terms or conditions of any other insurance.  The Insurer does not waive compromise or release any of its rights to recover **Loss** paid under this Policy from the issuers of any other insurance under which coverage may be owed, or from any person or entity from which an **Insured Person** is entitled to indemnification.

### (C)  Mergers and Acquisitions

    (1)  If during the **Policy Period**, the **Company** acquires any assets, acquires a **Subsidiary**, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage

shall be provided for any **Loss** involving a **Claim** for a **Wrongful Act** occurring after the consummation of the transaction.

(2)  With respect to the acquisition, assumption, merger, consolidation or other of any entity, asset, **Subsidiary** or liability as described in (C)(1) above, there will be no coverage available under this Policy for any **Claim** made against the acquired, assumed, merged, or consolidated entity, asset, **Subsidiary**, liability, or **Insured Person** for a **Wrongful Act** committed at any time during which such entity, asset, liability, or **Subsidiary** is not insured under this Policy.

(3)  If during the **Policy Period** any entity ceases to be a **Subsidiary**, the coverage provided under this Policy shall continue to apply to the **Insured Persons** who because of their service with such **Subsidiary** were covered under this Policy but only with respect to a **Claim** for a **Wrongful Act** that occurred or allegedly occurred prior to the time such **Subsidiary** ceased to be a **Subsidiary** of the **Company**.

(4)  If, during the **Policy Period**, there is a **Change In Control**, the coverage provided under this Policy shall continue to apply but only with respect to a **Claim** for a **Wrongful Act** committed or allegedly committed prior to the time of the **Change In Control**; and

    (i)  coverage will cease with respect to any **Claim** for a **Wrongful Act** committed subsequent to the **Change In Control**; and

    (ii)  the entire premium for the Policy will be deemed to be fully earned immediately upon the consummation of a **Change In Control**.

(D)  **Notice**

(1)  As a condition precedent to any right to payment under this policy with respect to any **Claim**, the **Insured Persons** or the **Company** shall give written notice to the Insurer of any **Claim** as soon as practicable after it is first made.

(2)  If, during the **Policy Period**, the **Insured Persons** or the **Company** first becomes aware of a specific **Wrongful Act** and if, during the **Policy Period**, the **Insured Persons** or the **Company**:

    (i)  provide the Insurer with written notice of the specific **Wrongful Act**, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, and the circumstances by which the **Insured Persons** first became aware of such **Wrongful Act**; and

    (ii)  request coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**;

then any **Claim** subsequently made arising out of such **Wrongful Act** will be treated as if it had been first made during the **Policy Period**.

All notices under CONDITIONS (D) (1) and (2) must be sent by certified mail or the equivalent to the address set forth in ITEM 5 of the Declarations;  Attention:  Claim Department.

(E)  **Defense and Settlement of Claims**

(1)  It shall be the duty of the **Insured Persons** and not the duty of the Insurer to defend **Claims**.  No **Insured Person** may incur any **Defense Expenses** or admit liability for, make any settlement offer with respect to, or settle any **Claim** without the Insurer's consent, such consent not to be unreasonably withheld.

(2)  Upon written request, the Insurer will pay on a current basis any **Defense Expenses** before the disposition of the **Claim** for which this Policy provides coverage.  As a condition of the advancement of

**Defense Expenses,** the Insurer may require a written undertaking, in a form satisfactory to the Insurer, which will guarantee the repayment of any **Loss** including **Defense Expenses** paid to or on behalf of the **Insured Persons** if it is finally determined that the **Loss** incurred is not covered under this Policy.

(3)    Except for such **Defense Expenses,** the Insurer shall pay **Loss** only upon the final disposition of any **Claim.**

(F)    **Assistance, Cooperation and Subrogation**

(1)    The **Insured Persons** and the **Company** agree to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agree that they will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.

(2)    In the event of any payment under this Policy, the Insurer shall be subrogated to all of the potential or actual rights of recovery of the **Insured Persons.** The **Insured Persons** and the **Company** shall execute all papers required and will do everything necessary to secure such rights including but not limited to the execution of such documents as are necessary to enable the Insurer to effectively bring suit in their name, and will provide all other assistance and cooperation which the Insurer may reasonably require.

(G)    **Interrelated Claims**

All **Claims** arising from the same **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have be made at the earliest time at which the earliest such **Claim** is made or deemed to have been made pursuant to CONDITION (D)(1) and (2) above, if applicable.

(H)    **Exhaustion**

If the Insurer's Limit of Liability as set forth in ITEM 3 of the Declarations is exhausted by the payment of **Loss,** the premium as set forth in ITEM 6 of the Declarations will be fully earned, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind whatsoever under this Policy.

(I)    **Cancellation and Renewal of Coverage**

(1)    Except for the nonpayment of premium, as set forth in (I)(2) below, the **Parent Company** has the exclusive right to cancel this Policy. Cancellation may be effected by mailing to the Insurer written notice when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations. In such event, the Insurer shall retain the customary short rate portion of the earned premium. Return or tender of the unearned premium is not a condition of cancellation.

(2)    The Insurer may only cancel this Policy for nonpayment of premium. The Insurer will provide not less than twenty (20) days written notice stating the reason for cancellation and when the Policy will be canceled. Notice of cancellation will be sent to the **Parent Company** and the agent of record for the **Insured Person,** if applicable.

(3)    The Insurer is under no obligation to renew this Policy upon its expiration. Once the Insurer chooses to non-renew this Policy, the Insurer will deliver or mail to the **Parent Company** written notice stating such at least sixty (60) days before the Expiration Date set forth in ITEM 2 of the Declarations.

(J)    **Optional Extension Period**

(1)    If either the **Parent Company** or the Insurer does not renew this Policy, the **Parent Company** shall have the right, upon payment of an additional premium set forth in ITEM 4 of the Declarations, to an

extension of the coverage provided by this Policy with respect only to any **Claim** first made during the period of time set forth in ITEM 4 of the Declarations after the Policy Expiration Date, but only with respect to a **Wrongful Act** occurring prior to the Policy Expiration Date.

(2)    As a condition precedent to the right to purchase the Optional Extension Period the total premium for this Policy must have been paid in full.  The right of the **Parent Company** to purchase the Optional Extension Period will be immediately terminated if the Insurer does not receive written notice by the **Parent Company** advising it wishes to purchase the Optional Extension Period together with full payment of the premium for the Optional Extension Period within thirty (30) days after the Policy Expiration Date.

(3)    If the **Parent Company** elects to purchase the Optional Extension Period as set forth in (J)(1) and (2) above, the entire premium for the Optional Extension Period will be deemed to be fully earned at the Inception Date for the Optional Extension Period.

(4)    The purchase of the Optional Extension Period will not in any way increase the Limit of Liability set forth in ITEM 3 of the Declarations, and the Limit of Liability with respect to **Claims** made during the Optional Extension Period shall be part of and not in addition to the Limit of Liability for all **Claims** made during the **Policy Period**.

(K)    **Representation Clause**

Each **Insured Person** represents that the statements and particulars contained in the **Application** are true, accurate and complete, and agree that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are the basis of this Policy.  No knowledge or information possessed by any **Insured Person** will be imputed to any other **Insured Person** for the purposes of determining the availability of coverage with respect to **Claims** made against any other **Insured Person**.

(L)    **Action Against the Insurer, Assignment, and Changes to Policy**

(1)    No action may be taken against the Insurer unless, as a condition precedent thereto:

(i)    there has been full compliance with all of the terms and conditions of this Policy; and

(ii)   the amount of the obligation of the **Insured Person** has been finally determined either by judgment against the **Insured Person** after actual trial, or by written agreement of the **Insured Person**, the claimant and the Insurer.

(2)    Nothing contained herein shall give any person or entity any right to join the Insurer as a party to any **Claim** against the **Insured Person** to determine their liability, nor may the **Insured Person** implead the Insurer in any **Claim**.

(3)    Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed hereon.

(4)    Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not cause a waiver or change in any part of this Policy or prevent the Insurer from asserting any right under the terms, conditions and limitations of this Policy.  The terms, conditions and limitations of this Policy may only be waived or changed by written endorsement signed by the Insurer.

(M)    **Authorization and Notices**

It is understood and agreed that the **Parent Company** will act on behalf of the **Company** and the **Insured Persons** with respect:

(1)     the payment of the premiums,

(2)     the receiving of any return premiums that may become due under this Policy,

(3)     the giving of all notices to the Insurer as provided herein, and

(2)     the receiving of all notices from the Insurer.

(N)     **Entire Agreement**

The **Insured Persons** agree that the Declarations, Policy, including the endorsements, attachments and the **Application** shall constitute the entire agreement between the Insurer or any of its agents and the **Insured Persons** relation to the insurance.

## POLICYHOLDER DISCLOSURE

### NOTICE OF TERRORISM
### INSURANCE COVERAGE

Coverage for acts of terrorism is already included in your current policy. You should know that, effective November 26, 2002, under your existing coverage, any losses caused by certified acts of terrorism would be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ waived.  Any premium waiver is only valid for the current Policy Period.

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT OF 2002, ANY LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE WILL BE PARTIALLY REIMBURSED BY THE UNITED STATES AND I HAVE BEEN NOTIFIED OF THE AMOUNT OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

Name of Insurer:   **XL Specialty Insurance Company**
Policy Number:     **ELU089673-05**

# IN WITNESS ENDORSEMENT

### XL SPECIALTY INSURANCE COMPANY

ADMINISTRATIVE OFFICE:   SEAVIEW HOUSE
70 SEAVIEW AVENUE
STAMFORD, CT 06902-6040

STATUTORY HOME OFFICE:   1201 NORTH MARKET STREET
SUITE 501
WILMINGTON, DE 19801

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

_____
Richard S. Banas
President

_____
Kenneth P. Meagher
Secretary

IL MP 9104 0704 XLS

XL Specialty Insurance Company - Illinois Policyholder Notice

## IMPORTANT NOTICE TO ALL ILLINOIS POLICYHOLDERS

In the event you need to contact someone about this Policy for any reason, please contact us at:

*XL Specialty Insurance Company*
*c/o XL Insurance Underwriters*
*100 Constitution Plaza, 17th Floor*
*Hartford, Connecticut 06103*

If you have been unable to contact or obtain satisfaction from the Insurer, you may contact the Illinois Department of Insurance to obtain information or make a complaint at:

*Illinois Department of Insurance*
*Consumer Division of Public*
*Services Section*
*Springfield, Illinois 62767*

CL 72 02 05 00

Endorsement No.: 1
Named Insured: Refco Inc.
Policy No: ELU089673-05

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# ILLINOIS AMENDATORY ENDORSEMENT

DIRECTORS & OFFICERS PROFESSIONAL LIABILITY COVERAGE FORM

I.  Section IV., CONDITIONS, paragraph (I), CANCELLATION AND RENEWAL OF COVERAGE, is deleted and replaced by: Cancellation -- "The Insured" may cancel this policy by returning the policy to "The Company," or by giving "The Company" written notice and stating at what future date coverage is to stop.

"The Company" may cancel this policy by mailing written notice of cancellation to "The Insured" and any mortgagee or lienholder at the last mailing address known to "The Company."

"The Company" will mail the notice to "The Insured" and any mortgagee or lienholder at least ten (10) days before the effective date of the cancellation when cancellation is for nonpayment of premium.  When cancellation is for any other reason, "The Company" will mail the notice of cancellation to "The Insured" and any mortgagee or lienholder at least 30 days prior to the effective date of the cancellation during the first 60 days of coverage or 60 days prior to the effective date of the cancellation if the coverage has been in effect for more than 60 days.

If this policy has been in effect 60 days or more, or if it is a renewal of a policy issued by "us" effective immediately, "we" may cancel this policy only if one or more of the following reasons apply:

    a.    nonpayment of premium;

    b.    the policy was obtained through a material misrepresentation;

    c.    any "insured" has violated any of the "terms" and conditions of the policy;

    d.    the risk originally accepted has measurably increased;

    e.    certification of the Director of the loss of reinsurance by the insurer which provided coverage to "us" for all or a substantial part of the underlying risk insured; or

    f.    a determination by the Director that the continuation of the policy could place "us" in violation of the insurance laws of this state.

"Our" notice will include the reason or reasons for cancellation. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record. Proof of mailing is sufficient proof of notice.

"Your" return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

Nonrenewal -- If "we" decide not to renew this policy, "we" will mail "our" notice of nonrenewal to "you" at least 60 days before the end of the policy period or anniversary date.

"Our" notice will include the reasons for nonrenewal. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record and any mortgagee or lienholder at the last mailing address known to "us". Proof of mailing is sufficient proof of notice.

CL 72 02 05 00

**Endorsement No.: 1**
**Named Insured: Refco Inc.**
**Policy No: ELU089673-05**

**Effective: August 11, 2005**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

Renewal -- If "we" decide to renew this policy with premium increases of 30% or higher, or impose changes in deductible or coverage that materially alter the policy, "we" will mail to "you" written notice of such increase or change in deductible or coverage at least 60 days prior to the renewal or anniversary date.

All other terms and conditions of the Policy remain the same.

CL 83 08 09 02

Endorsement No.: 2
Named Insured: Refco Inc.
Policy No: ELU089673-05

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# PRIOR ACTS EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for Claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any act, error, omission, misstatement, misleading statement, neglect, breach of duty, or Wrongful Act, committed or allegedly committed prior to August 5, 2004.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

XL 83 07 01 00

Endorsement No.: 3
Named Insured: Refco Inc.
Policy No: ELU089673-05

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# SPECIFIED CLAIMS EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for Loss, including Defense Expenses, in connection with any proceeding set forth below, or in connection with any Claim based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any such proceeding or any fact, circumstance or situation underlying or alleged therein:

Edward McElwreath Case

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

XL 80 24 03 03

Endorsement No.: 4                          Effective: August 11, 2005
Named Insured: Refco Inc.                   12:01 A.M. Standard Time
Policy No: ELU089673-05                      Insurer: XL Specialty Insurance Company

## TERRORISM PREMIUM ENDORSEMENT

Please note: The portion of your annual premium set forth in Item 6. of the Declarations that is attributable to coverage for acts of terrorism is: $ waived.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

XL 80 39 04 05

Endorsement No.: 5
Named Insured: Refco Inc.
Policy No: ELU089673-05

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# CHANGE OF ADDRESS OF INSURER ENDORSEMENT

In consideration of the premium charged, as of the effective date of this Endorsement:

**Notices required to be given to the Insurer must be addressed to:**

**Notice to Claim Dept:**

XL Professional
One Hundred Constitution Plaza, 18th Floor
Hartford, CT 06103
Attn: Claim Dept.

**All other Notices:**

XL Professional
One Hundred Constitution Plaza, 17th Floor
Hartford, CT 06103
Attn: Underwriting

All other terms, conditions and limitations of this Policy shall remain unchanged.

Signature

James Koval
Print Name

Sr. Vice President
Title

CL 83 06 07 02

Endorsement No.: 6
Named Insured: Refco Inc.
Policy No: ELU089673-05

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# AMEND INSURED V. INSURED EXCLUSION

In consideration of the premium charged, Section III Exclusions (A)(1) of the Policy is amended to read in its entirety as follows:

"(1)      by, on behalf of, or at the direction of the Company, Outside Entity or any Insured Person, except and to the extent such Claim:

(i)      is brought by a security holder of the Company or Outside Entity who, when such Claim is made and maintained is acting independently of, and without the solicitation, assistance, participation or intervention of the Company or any Outside Entity;

(ii)      is brought by the Bankruptcy Trustee or Examiner of the Company or Outside Entity, or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the Company or Outside Entity;

(iii)      is in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an Insured Person which is part of or results directly from a Claim which is not otherwise excluded by the terms of this Policy; or

(iv)      is an Employment Practices Claim;"

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

CL 83 14 10 03

Endorsement No.: 7
Named Insured: Refco Inc.
Policy No: ELU089673-05

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# PENDING AND/OR PRIOR LITIGATION EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for Claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Wrongful Act, underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to August 11, 2005.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

CL 80 34 12 02

Endorsement No.: 8
Named Insured: Refco Inc.
Policy No: ELU089673-05

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# AMEND MERGERS AND ACQUISITIONS ENDORSEMENT

In consideration of the premium charged, Section IV Conditions (C)(1) of the Policy is amended to read in its entirety as follows:

"(1)    If during the Policy Period, the Company acquires any assets, acquires a Subsidiary, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage shall be provided for any Loss involving a Claim for a Wrongful Act occurring after the consummation of the transaction; provided however, if by reason of the transaction (or series of transactions) the entity, assets, Subsidiary or liabilities so acquired or so assumed, exceed thirty five percent (35%) of the total assets or liabilities of the Company, as represented in the Company's most recent audited consolidated financial statements, coverage under this Policy shall be provided for a period of ninety (90) days for any Loss involving a Claim for a Wrongful Act that occurred after the transaction has been consummated.   Coverage beyond the ninety (90) day period will be provided only if:

(a)    the Insurer receives written notice containing full details of the transaction(s); and

(b)    the Insurer at its sole discretion, agrees to provide such additional coverage upon such terms, conditions, limitations, and additional premium that it deems appropriate."

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

CL 80 18 09 02

Endorsement No.: 9
Named Insured: Refco Inc.
Policy No: ELU089673-05

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# AMEND CONDITIONS (B)(1) ENDORSMENT

In consideration of the premium charged, Section IV Conditions (B)(1) of the Policy is amended to read in its entirety as follows:

"(1)    The Insured Persons and the Company understand and agree that all coverage under this Policy shall be specifically excess over, and shall not contribute with:

    (i)    all indemnification to which an Insured Person may be entitled from any source, including but not limited to the Company or any Outside Entity; and

    (ii)    any Insurance Program maintained by the Company or any Outside Entity, whether such other insurance is stated to be primary, contributing, excess or otherwise.

    However, if Loss is not paid by such other insurance or as indemnification, this Policy will respond on behalf of the Insured Persons as if it were primary, subject to all of its terms, conditions and limitations and without prejudice to the Insurer's excess position."

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

XL 80 34 10 04

Endorsement No.: 10                         Effective: August 11, 2005
Named Insured: Refco Inc.                   12:01 A.M. Standard Time
Policy No: ELU089673-05                     Insurer: XL Specialty Insurance Company

# RESCISSION ENDORSEMENT

In consideration of the premium charged, the Insurer shall not be entitled under any circumstances to rescind this Policy, other than for non-payment of premium.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

XL 80 34 10 04                                              Page 1 of 1

XL 83 25 10 00

**Endorsement No.: 11**
**Named Insured: Refco Inc.**
**Policy No: ELU089673-05**

**Effective: August 11, 2005**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# SPECIFIED ACTS EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for Loss, including Defense Expenses, in connection with any fact, circumstance, situation, transaction, event or Wrongful Act set forth below or in connection with any Claim, based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

　　　　　Wells Notice/ SEC Investigation


All other terms, conditions and limitations of this Policy shall remain unchanged.


_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

Manuscript 3027 12 05

Endorsement No.: 12
Named Insured: Refco Inc.
Policy No: ELU089673-05

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# CONTROLLING SHAREHOLDER ENDORSEMENT

In consideration of the premium charged:

(1)     The term "Insured Person," as defined in Section II. DEFINITIONS (I) of the Policy, is amended to include Philip Bennett in his capacity as a controlling shareholder of the Company, but only with respect to Securities Claims to the extent and during such time that such Securities Claims are also made and maintained against any other Insured Person or the Company.

(2)     With respect to Philip Bennett only, the definition of "Wrongful Act" in Section II. DEFINITIONS (P) of the Policy is amended to include the following:

       (a)     any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by Philip Bennett while acting in his capacity as controlling shareholder of the Company, or

       (b)     any matter claimed against Philip Bennett solely by reason of his status as controlling shareholder of the Company.

(3)     "Securities Claim" means a Claim which is brought by or on behalf of one or more of the securities holders of the Company in their capacities as such, or which arises from the purchase or sale of, or offer to purchase or sell, any securities issued by the Company, whether such purchase, sale or offer involves a transaction with the Company or occurs in the open market.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

XL 80 04 04 00

**Endorsement No.: 13**
**Named Insured: Refco Inc.**
**Policy No: ELU089673-05**

**Effective: August 11, 2005**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# INVERTED REPRESENTATION ENDORSEMENT

In consideration of the premium charged, no coverage will be available under this Policy for Loss, including Defense Expenses, from Claims arising from any fact, circumstance or situation of which, as of the effective date of this Policy, any Insured had knowledge and had reason to suppose might afford grounds for any Claim that would fall within the scope of the insurance afforded by this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

EXECUTIVE LIABILITY UNDERWRITERS   ☐ Indian Harbor Insurance Company
Member of the XL America Companies

## APPLICATION FOR CLASSIC A-SIDE MANAGEMENT LIABILITY INSURANCE POLICY

**NOTICE: THE POLICY FOR WHICH THIS APPLICATION IS MADE APPLIES, SUBJECT TO ITS TERMS, ONLY TO "CLAIMS" FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED BY "DEFENSE EXPENSES," AND "DEFENSE EXPENSES" WILL BE APPLIED AGAINST THE RETENTION.  THE INSURER WILL HAVE NO DUTY UNDER THE POLICY TO DEFEND ANY "CLAIM." THE ENTIRE APPLICATION SHOULD BE CAREFULLY READ BEFORE IT IS EXECUTED.**

1.   a) Name of Applicant: *Refco, Inc.*
(Whenever used in this Application, the term "Applicant" shall mean the Parent Company)

   b) Principal Address: *550 W. Jackson Blvd*
City: *Chicago*          State: *Il*   Zip Code: *60661*

   c) Name and title of the officer of the **Applicant** designated as the representative to receive all notices from the Insurer on behalf of all person(s) and entity(s) proposed for this Insurance:

2.   Has the **Applicant** or any **Subsidiary** in the past thirty-six (36) months completed or agreed to, or does it contemplate within the next (12) months, any of the following, whether or not such transaction was or will be completed?  If "Yes," please describe the significant provisions of the transaction(s) as an attachment to this Application.

   a) Any registration for a public placement of securities?                ☒ Yes  ☐ No

   b) Reorganization or arrangement with creditors under federal or state law? *See above*   ☐ Yes  ☐ No

3.   Prior Activities:

   a) Has any person(s) or entity(s) proposed for this insurance been a party to any of the following?

      1) Any civil, criminal or administrative proceeding alleging or investigating a violation of any securities or regulation?
                                                                          ☐ Yes  ☒ No

      2) Any representative actions, class actions or derivative suits?       ☐ Yes  ☐ No

      If "Yes" to 1) or 2) above, a statement to the Application providing full details must be attached.

   b) No claims have been made against any persons or entity(s) proposed for this insurance in their capacity as a director or officer of the Applicant, except as follows (provide detail as to defense costs, settlements, judgments, or other amounts). If answer is "none" so state:
   *McElwreath v. Refco Securities — Marsh will forward documents*

   c) No persons or entity(s) proposed for this insurance is cognizant of any fact, circumstance or situation which they have reason to suppose might afford grounds for any claim such as would fall within the scope of the proposed insurance, except as follows.  If answer is "none," so state:

Without prejudice to any other rights and remedies of the Insurer, any claim arising from any claims, facts, circumstances or situations disclosed or required to be disclosed in response to 3. b) and 3. c) is excluded from the proposed insurance.

4.   As part of this Application, please submit the following documents with respect to the Applicant:

   a) Latest 10-Q report filed and any 8-K or 13D reports filed with the SEC within the last 12 months.

   b) Each prospectus, offering circular or private placement memorandum within the last 12 months.

   c) Last proxy statement, 10-K and annual report, including audited financial statements with all notes and schedules.

   d) Copies of all provisions of the Applicant's charter and bylaws relating to the indemnification of its directors and officers.

**EXECUTIVE LIABILITY UNDERWRITERS** ☐ **Indian Harbor Insurance Company**
Member of the XL America Companies

FOR THE PURPOSE OF THIS APPLICATION, THE UNDERSIGNED AUTHORIZED AGENT OF THE PERSONS AND ENTITY(S) PROPOSED FOR THIS INSURANCE DECLARES THAT TO THE BEST OF THEIR KNOWLEDGE AND BELIEF, AFTER REASONABLE INQUIRY, THE STATEMENTS HEREIN ARE TRUE AND COMPLETE. THE INSURER IS AUTHORIZED TO MAKE ANY INQUIRY IN CONNECTION WITH THIS APPLICATION. SIGNING THIS APPLICATION DOES NOT BIND THE INSURER TO COMPLETE THE INSURANCE.

THE UNDERSIGNED DECLARES THAT THE PERSON(S) AND ENTITY(S) PROPOSED FOR THIS INSURANCE UNDERSTAND:

(A)     THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED, AND MAY BE COMPLETELY EXHAUSTED BY THE PAYMENT OF "DEFENSE EXPENSES," AND IN SUCH EVENT, THE INSURER WILL NOT BE RESPONSIBLE FOR ANY ONGOING DEFENSE EXPENSES OR FOR THE AMOUNT OF ANY JUDGEMENT OR SETTLEMENT TO THE EXTENT THAT ANY OF THE FOREGOING EXCEED ANY APPLICABLE LIMIT OF LIABILITY;

(B)     "DEFENSE EXPENSES" WILL BE APPLIED AGAINST THE RETENTION;

(C)     THIS POLICY APPLIES ONLY TO "CLAIMS" FIRST MADE OR DEEMED MADE DURING THE "POLICY PERIOD," OR, IF PURCHASED, ANY EXTENDED REPORTING PERIOD;

(D)     THE INSURER HAS NO DUTY UNDER THIS POLICY TO DEFEND ANY "CLAIM."

IF THE INFORMATION IN THIS APPLICATION MATERIALLY CHANGES BETWEEN THE DATE OF THIS APPLICATION AND THE POLICY EFFECTIVE DATE, THE APPLICANT WILL NOTIFY THE INSURER WHO MAY MODIFY OR WITHDRAW ANY QUOTATION.

THE INFORMATION CONTAINED AND SUBMITTED WITH THIS APPLICATION IS ON FILE WITH THE INSURER AND, ALONG WITH THE APPLICATION, IS CONSIDERED TO BE PHYSICALLY ATTACHED TO THE POLICY AND WILL BECOME PART OF THE POLICY IF ISSUED.

NOTICE TO COLORADO APPLICANTS:  IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY.  PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES.  ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

NOTICE TO FLORIDA APPLICANTS:  ANY PERSON WHO, KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY EMPLOYER OR EMPLOYEE, INSURANCE COMPANY, OR SELF-INSURED PROGRAM, FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE OR MISLEADING INFORMATION IS GUILTY OF A THIRD DEGREE FELONY.

NOTICE TO KENTUCKY APPLICANTS:  ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES ANY APPLICATION FOR INSURANCE CONTAINING ANY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

NOTICE TO MINNESOTA, OHIO AND ARKANSAS APPLICANTS:  ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE/SHE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD, WHICH IS A CRIME.

NOTICE TO NEW JERSEY APPLICANTS:  ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

**EXECUTIVE LIABILITY UNDERWRITERS**  ☐ **Indian Harbor Insurance Company**
Member of the XL America Companies

NOTICE TO NEW YORK APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT, THE EXTENDED REPORTING PERIOD APPLIES. UPON TERMINATION OF COVERAGE FOR ANY REASON, A 60-DAY AUTOMATIC EXTENDED REPORTING PERIOD WILL APPLY. FOR AN ADDITIONAL PREMIUM CALCULATED AS INDICATED IN ITEM 5 OF THE DECLARATION, AN EXTENDED REPORTING PERIOD CAN BE PURCHASED FOR A PERIOD OF AT LEAST ONE YEAR. NO COVERAGE WILL EXIST AFTER THE EXPIRATION OF THE EXTENDED REPORTING PERIOD WHICH MAY RESULT IN A POTENTIAL COVERAGE GAP IF PRIOR ACTS COVERAGE IS NOT SUBSEQUENTLY PROVIDED BY ANOTHER CARRIER. DURING THE FIRST SEVERAL YEARS OF CLAIMS MADE RELATIONSHIPS, CLAIMS MADE RATES ARE COMPARATIVELY LOWER THAN OCCURRENCE RATES, AND THE INSURED CAN EXPECT SUNSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF OVERALL RATE INCREASES UNTIL THE CLAIMS MADE RELATIONSHIP REACHES MATURITY.

NOTICE TO OKLAHOMA APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

NOTICE TO PENNSYLVANIA APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

APPLICANT: PRES. CHAIRMAN AND CEO.    8/15/05.

BY (Signature of Chairman and/or President)    TITLE    DATE

It is agreed and understood that the Application will only be executed by the Chairman and/or President of the **Applicant** acting in their capacity(s) as the authorized agent of the individual(s) and entity(s) proposed for this insurance.

PRODUCER (Insurance Agent or Broker):    INSURANCE AGENCY OR BROKERAGE:

INSURANCE AGENCY OR BROKERAGE TAXPAYER ID OR SOCIAL SECURITY NO.:    AGENT OR BROKER LICENSE NO.:

ADDRESS OF AGENT OR BROKER (include Street, City, and Zip Code):

E-MAIL ADDRESS OF AGENT OR BROKER:

SUBMITTED BY (Insurance Agency or Brokerage):

INSURANCE AGENCY OR BROKERAGE TAXPAYER ID OR SOCIAL SECURITY NO.:    AGENT OR BROKER LICENSE NO.:

ADDRESS OF AGENT OR BROKER (include Street, City, and Zip Code):

CL 95 00 03 00    Page 3 of 3

**Toolan Hank**

From:                    Toolan Hank
Sent:                    Tuesday, August 09, 2005 10:17 AM
To:                      'KENNY.LI@marsh.com'
Subject:                 RE: Refco - warranty


This confirms that we will use the inverted warranty.

-----Original Message-----
From: KENNY.LI@marsh.com [mailto:KENNY.LI@marsh.com]
Sent: Tuesday, August 09, 2005 10:15 AM
Subject: Refco - warranty


Refco prefers not to sign any warranties. Should you need one to bind, please include an
inverted warranty endorsement on your revised quote.

kl

Kenny Li
Marsh USA Inc.
Private Equity and Mergers & Acquisitions Svcs.
1166 Avenue of the Americas - 38th Floor
New York, NY 10036
Phone: 212-345-1989    Fax: 212-345-8491
Email: Kenny.Li@marsh.com

**Toolan Hank**

| | |
|---|---|
| **From:** | Toolan Hank |
| **Sent:** | Tuesday, August 09, 2005 4:47 PM |
| **To:** | 'KENNY.LI@marsh.com' |
| **Subject:** | RE: Refco - requests |



Inverted Warranty
8004.doc (28...    One more.

-----Original Message-----
From: KENNY.LI@marsh.com [mailto:KENNY.LI@marsh.com]
Sent: Tuesday, August 09, 2005 4:31 PM
Subject: Fw: Refco - requests


Please see below from AXIS. Kindly send your revised quote if you have not done so
already. In addition, I need a copy of your form and all endorsements.

Thanks!

kl

Kenny Li
Marsh USA Inc.
Private Equity and Mergers & Acquisitions Svcs
1166 Avenue of the Americas - 38th Floor
New York, NY 10036
Phone: 212-345-1989    Fax: 212-345-8491
Email: Kenny.Li@marsh.com

----- Forwarded by Kenny Li/NYC-NY/US/Marsh/MMC on 08/09/2005 04:29 PM
-----

|  |  |  |
|---|---|---|
| sean.lukac@axisca<br>pital.com@Interne<br>t | **To** | |
| | Kenny Li/NYC-NY/US/Marsh/MMC@MMC | |
| 08/09/2005 02:02<br>PM | **cc** | |
| | Pamela M<br>Sylwestrzak/CHI-IL/US/Marsh/MMC@MMC<br>, Brad<br>Kotlewski/NYC-NY/US/Marsh/MMC@MMC | |
| | **Subject** | |
| | RE: Refco - requests | |


Kenny,

1

Here you go.

Sean P. Lukac
Financial Institutions Group
Axis U.S. Insurance
430 Park Avenue, 3rd floor
New York, NY 10022
212.500.7737 (tel)
212.500.7573 (fax)


-----Original Message-----
From: KENNY.LI@marsh.com [mailto:KENNY.LI@marsh.com]
Sent: Tuesday, August 09, 2005 1:13 PM
To: Lukac, Sean
Cc: Pamela.Sylwestrzak@marsh.com; Brad.Kotlewski@marsh.com
Subject: Refco - requests

Sean,

Can you resend the Cargill questions that you requested the client to answer? Is it
possible to send a revised quote with the IL amendatories and policy form number? Please
clarify if you are charging for TRIA.

Thanks,
kl

Kenny Li
Marsh USA Inc
Private Equity and Mergers & Acquisitions Svcs.
1166 Avenue of the Americas - 38th Floor
New York, NY 10036
Phone: 212-345-1989    Fax: 212-345-8491
Email: Kenny.Li@marsh.com


*****************************************************************
This email and any files transmitted with it are confidential and intended solely for the
use of the individual or entity to whom they are addressed. If you have received this
email in error please notify the system manager.
*****************************************************************

(See attached file: Refco-xsD&O-QL.doc)


To:    Kenny Li/NYC-NY/US/Marsh/MMC@MMC
cc:    Pamela M Sylwestrzak/CHI-IL/US/Marsh/MMC@MMC, Brad
       Kotlewski/NYC-NY/US/Marsh/MMC@MMC
From:  sean.lukac@axiscapital.com@Internet

XL 80 04 04 00

| | |
|---|---|
| Endorsement No. | Effective: |
| Named Insured: | 12:01 A.M. Standard Time |
| Policy No: | Insurer: |

# INVERTED REPRESENTATION ENDORSEMENT

In consideration of the premium charged, no coverage will be available under this Policy for Loss, including Defense Expenses, from Claims arising from any fact, circumstance or situation of which, as of the effective date of this Policy, any Insured had knowledge and had reason to suppose might afford grounds for any Claim that would fall within the scope of the insurance afforded by this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

James Koval
Print Name

Sr. Vice President
Title