James A. Skarzynski (JS-1068)
James T. Sandnes (JS-8944)
Jill M. Levy (JL-6040)
Ari R. Magedoff (AM-1117)
BOUNDAS, SKARZYNSKI,
   WALSH & BLACK LLC
One Battery Park Plaza
New York, New York 10004
(212) 820-7700 (Telephone)
(212) 820-7740 (Facsimile)
jsandnes@bswb.com

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
XL SPECIALTY INSURANCE COMPANY,      :
                                     :
                Plaintiff,           :
                                     :
        v.                           :  No. 08-CV-3821(GEL)
                                     :
JOHN D. AGOGLIA, PHILLIP R. BENNETT, :
LEO R. BREITMAN, EDWIN L. COX,       :
SUKHMEET DHILLON, THOMAS H.          :  *Electronically Filed*
DITTMER, NATHAN GANTCHER, STEPHEN    :
GRADY, TONE GRANT, THOMAS HACKL,     :
DAVID V. HARKINS, SCOTT L. JAECKEL,  :
DENNIS A. KLEJNA, THOMAS H. LEE,     :
ERIC G. LIPOFF, SANTO C. MAGGIO,     :
PETER MCCARTHY, JOSEPH MURPHY,       :
FRANK MUTTERER, RONALD L. O'KELLEY,  :
RICHARD N. OUTRIDGE, SCOTT A.        :
SCHOEN, WILLIAM M. SEXTON, GERALD    :
SHERER, PHILIP SILVERMAN, AND        :
ROBERT C. TROSTEN,                   :
                                     :
                Defendants.          :
-----------------------------------------------------------x

## NOTICE OF MOTION OF PLAINTIFF, XL
## SPECIALTY INSURANCE CO., FOR SUMMARY JUDGMENT

PLEASE TAKE NOTICE, that upon the Affidavit of James Sandnes, sworn to

July 11, 2008, the Declaration of Henry Toolan, sworn to July 10, 2008, the statement of

undisputed facts, the accompanying Memorandum of Law of Plaintiff XL Specialty Insurance Company and all prior pleadings an proceedings in this matter, Plaintiff XL Specialty Insurance Company ("XL") will move this Court, before the Honorable Gerard E. Lynch, U.S.D.J., at a time calculated in accordance with the Rules and the July 2, 2008 scheduling order of this Court, for an order, pursuant to Fed. R. Civ. P. 56, granting summary judgment to XL on its complaint in the above-captioned action.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Court's July 2, 2008 Order, responses to XL's summary judgment motion (if any) shall be filed by August 8, 2008 and XL's reply shall be filed by August 15, 2008.

Dated: New York, New York
       July 11, 2008                                    Respectfully submitted,

                                                BOUNDAS, SKARZYNSKI, WALSH
                                                   & BLACK, LLC

                                                 By:     /s James Sandnes
                                                        James Sandnes (JS-8944)
                                                        A Member of the Firm
                                               One Battery Park Plaza – 32nd Floor
                                               New York, New York 10004
                                               Telephone: (212) 820-7700

James A. Skarzynski (JS-1068)
James T. Sandnes (JS-8944)
Jill M. Levy (JL-6040)
Ari R. Magedoff (AM-1117)
BOUNDAS, SKARZYNSKI,
  WALSH & BLACK LLC
One Battery Park Plaza
New York, New York 10004
(212) 820-7700 (Telephone)
(212) 820-7740 (Facsimile)
jsandnes@bswb.com

Attorneys for XL Specialty Insurance Company

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
XL SPECIALTY INSURANCE COMPANY,   :
                                  :
                Plaintiff,        :
                                  :
         v.                       :   No. 08-CV-3821 (GEL)
                                  :
JOHN D. AGOGLIA, et al.           :
                                  :
                Defendants.       :
-------------------------------------------------------------x

STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE
56.1 IN SUPPORT OF MOTION BY PLAINTIFF, XL SPECIALTY
INSURANCE COMPANY, FOR SUMMARY JUDGMENT

Pursuant to Rule 56.1 of the Local Rules for the Southern District of New York, Plaintiff XL Specialty Insurance Company ("XL") respectfully submits the following Statement of Undisputed Material Facts in Support of its motion for summary judgment. Evidentiary references are to the Affidavit of James Sandnes ("Sandnes Aff't"), the Declaration of Henry Toolan ("Toolan Dec.") and the Insurers' Joint Exhibit binders ("IJX").

1.      Prior to its Initial Public Offering ("IPO"), Refco Inc. ("Refco") (or a predecessor entity), was a closely held financial services/brokerage firm. It provided execution and clearing services for exchange-traded derivatives and provided prime brokerage services in the fixed income and foreign exchange markets. (IJX 18 at 1)

2.      On August 11, 2005, Refco conducted its IPO, selling over 30.4 million shares to the public. (Sandnes Aff't Ex. 33 at 9)

3.      The IPO, however, raised only $583 million in new capital, because nearly half of the shares were actually sold by existing shareholders, including Bennett. (*Id*. at 113)

4.      Bennett sold Refco stock in the IPO valued at more than $100 million. (IJX 18 at 29)

5.      In connection with the IPO, Refco procured a large program of directors and officers coverage. (IJX 26-31)

6.      The program was a $70 million "tower" of insurance, comprised of multiple policy layers, each layer issued by a different insurance company. (Toolan Dec. ¶3; IJX 26-31)

7.      One of the policies issued as part of that "tower" was issued by XL, policy number ELU089673-05 (the "XL Policy"). (Toolan Dec. Ex. A)

8.      Exhibit A to the Toolan Dec. is a true and correct copy of the XL Policy. (*Id*. at ¶2 and Ex. A)

9.      The XL Policy covers claims first made during the period of August 11, 2005 to August 11, 2006. *Id*. Ex. A.

10.     The XL Policy sits atop the D&O tower, at $20 million excess of $50 million in underlying coverage. (*Id*. Ex. A; IJX 26-31)

11. The XL Policy provides coverage to directors and officers for non-indemnifiable claims in excess of any other insurance program, including the $50 million of underlying coverage. (Toolan Dec. Ex. A; IJX 26-31)

12. Subject to all of its terms and conditions, the XL Policy affords specified coverage to "Insured Persons" (defined by the Policy as "any past, present or future director or officer . . . of the Company") for "Loss resulting from a Claim first made against the Insured Persons during the Policy Period . . . for a Wrongful Act, except to the extent that such Loss is paid by any other Insurance Program or as indemnification from any source." (Toolan Dec. Ex. A, Section II (I)).

13. Endorsement 13 to the XL Policy (the "IRE") provides as follows:

> In consideration of the premium charged, **no coverage will be available** under this Policy for Loss, including Defense Expenses, ***from Claims arising from any fact, circumstance or situation of which***, as of the effective date of this Policy, ***any Insured had knowledge*** and had ***reason to suppose might afford grounds for any Claim*** that would fall within the scope of the insurance afforded by this Policy.

(Toolan Dec. Exhibit A, Endorsement No. 13 (*emphasis added*)).

14. The XL Policy includes the IRE. (Toolan Dec. Ex. A)

15. XL's obligations (if any) to provide insurance coverage under the its contract of insurance are subject to the terms of the IRE. (Toolan Dec. ¶ 25 and Ex. A)

16. The IRE is clear and unambiguous. (Toolan Dec. Ex. A)

17. Under the IRE, if any inured person knows of any fact, circumstance or situation which such person had reason to suppose might afford grounds for any Claim any Claim arising from that fact, circumstance or situation is not covered by the XL Policy. (*Id*. at Ex. A, Endorsement 13)

3

18. The IRE is an enforceable limitation on the coverage provided by the XL Policy. (*Id*. at Ex. A)

19. As of August 11, 2005, the inception date of the XL Policy, Refco's most senior directors and officers were engaged in a widespread and massive scheme to conceal hundreds of millions of dollars of uncollectible receivables, including $430 million owed to Refco by a related off-balance sheet entity called Refco Group Holdings, Inc. ("RGHI"). (IJX 17-25)

20. The RGHI receivable was used to hide several significant customer losses, proprietary trading losses, bad debts and various operating expenses. (IJX 18 at ¶9 and IJX 21 at 17:12-14)

21. This resulted in a receivable being due from RGHI to Refco, which, at times, exceeded $1 billion. (IJX 17, 18, 20, 21, 22)

22. The size and related party nature of the RGHI receivable was concealed from various auditors, investors, and lenders. (IJX 17, 18, 20, 21, 22)

23. At the end of each year, starting in year-end in February 1998, thru year-end 2004, and quarterly from May 2004 thru May 2005, Refco engaged in a complex series of multi-million dollar "round-trip" loans. (IJX 17, 18, 20, 21, 22)

24. The round-trip loans helped to conceal the massive RGHI receivable. (IJX 17, 18, 20, 21, 22)

25. As a result of the concealment of the RGHI receivable, Refco's financial statements were materially false and misleading. (IJX 17, 18, 20, 21, 22)

26. On October 10, 2005 the fraud first came to light when Refco publicly admitted in a press release that the RGHI receivable "was the result of the assumption by an entity controlled

4

by Mr. Bennett of certain historical obligations owed by unrelated third parties to the Company, which may have been uncollectible." (Sandnes Aff't Ex. 34)

27. Seven days later, on October 17, 2005, Refco filed for protection under Chapter 11 of the Bankruptcy Code. (Docket in *In re Refco*, 05-60006 (S.D.N.Y. Bankr.))

28. A Grand Jury of this Court indicted various officers and directors of Refco related to the fraudulent RGHI receivable. (Docket in *United States of America v. Bennett*, No. 05 Cr. 1192 (NRB)(S.D.N.Y.))

29. The indictment was superseded by a second and then a third superseding indictment (the "S3 Indictment"). (IJX 18)

30. The S3 Indictment charged Bennett, as well as Robert C. Trosten ("Trosten")(CEO of Refco Securities and Refco Capital Markets) and Grant (former President of Refco Group Ltd., LLC) with securities fraud, bank fraud, wire fraud and money laundering as well as conspiracy to commit securities fraud, bank fraud, wire fraud and money laundering. (IJX 18)

31. The S3 Indictment also charged Bennett with making false filings with the SEC and making false statements to Refco's auditors. (IJX 18)

32. Bennett falls within the definition of an "Insured Person" under the XL Policy. (Toolan Dec. Ex. A, Section II)

33. On February 15, 2008, Bennett pled guilty to ***all twenty counts against*** him in the S3 Indictment. (IJX 21)

34. In Bennett's plea allocution, he acknowledged that the RGHI receivable was used to hide customer losses, bad debts and expenses. (IJX 21 at 17:12-14)

35.	Bennett admitted that the round-trip loan transactions were used to conceal the true nature of the RGHI receivable. (*Id*. at 17:15-17)

36.	Bennett admitted that he, and others, wrongfully concealed the RGHI receivable from auditors, as well as various investors and lenders. (IJX 21)

37.	Bennett admitted that he knew that Refco's financial statements were materially false and misleading, including the S1, S4 and 10-K specified in Counts 4, 5 and 6 of the S3 Indictment. (*Id*. at 18:18-22)

38.	Bennett admitted that he executed a scheme to defraud the financial institutions. (*Id*. at 17:23-25)

39.	Bennett admitted to money-laundering the proceeds of the leveraged buyout transaction with Thomas H. Lee Partners, knowing that the money had been unlawfully obtained. (IJX 21 at 18:3-7)

40.	In his plea allocution, Bennett admitted that he knew that failing to disclose the RGHI receivable was wrong. (*Id*. at 18:14-25)

41.	In his plea allocution, Bennett admitted that he knew that obtaining funds from Refco's investors and lenders based on misleading financial statements was wrong. (*Id*. at 18:14-25)

42.	In his plea allocution, Bennett admitted that he knew that failing to disclose these facts in public filings in connection with Refco's sale and registration of Refco's notes and common stock was wrong. (*Id*. at 18:14-25)

43.	On February 20, 2008, Trosten, who also is an Insured Person under the XL Policy, similarly pled guilty to charges of conspiracy, securities, wire and bank fraud and money laundering. (IJX 22)

44. Santo C. Maggio ("Maggio") plead guilty to a separate criminal Information charging the same basic fraud as alleged in the S-3 Indictment. (IJX 20)

45. Defendant Tone Grant, on April 17, 2008, was convicted by a jury of conspiracy, securities fraud, wire fraud, bank fraud and money laundering arising out of the same wrongdoing to which Bennett, Trosten and Maggio pled guilty. (IJX 24)

46. Bennett was aware of, and actively sanctioned and participated in the scheme to create the RGHI receivable and to enter into year-end and quarter-end round trip transactions to conceal the RGHI receivable from auditors, investors and lenders. (IJX 18 and 21)

47. Bennett knew that Refco's financial statements were materially false and misleading. (*Id.*)

48. Trosten was aware of, and actively sanctioned and participated in the scheme to create the RGHI receivable and to enter into year-end and quarter-end round trip transactions to conceal the RGHI receivable from auditors, investors and lenders. (IJX 18 and 22)

49. Trosten knew that Refco's financial statements were materially false and misleading. (IJX 22 at 17)

50. Maggio was aware of, and actively sanctioned and participated in the scheme to create the RGHI receivable and to enter into year-end and quarter-end round trip transactions to conceal the RGHI receivable from auditors, investors and lenders. (IJX 17 and 20)

51. Maggio knew that Refco's financial statements were materially false and misleading. (IJX 20 at 18:4-6)

52. Grant was aware of, and actively sanctioned and participated in the scheme to create the RGHI receivable and to enter into year-end and quarter-end round trip transactions to conceal the RGHI receivable from auditors, investors and lenders. (IJX 19 and 24)

53. Grant knew that Refco's financial statements were materially false and misleading. (*Id.*)

54. On July 3, 2008, Bennett was sentenced to 16 years in prison (including 5 years supervised release). (IJX 23)

55. In the wake of the collapse of Refco, numerous lawsuits and governmental and/or regulatory investigations and/or criminal actions were initiated against Refco and certain individuals, including the Defendants (the "Underlying Matters") including the following:

| |
|---|
| *In re Refco, Inc. Securities Litigation*, No. 05 Civ. 8626 (GEL) (S.D.N.Y.) - Second Amended Consolidated Class Action Complaint (dated December 3, 2007) |
| *American Financial International Group et al. v. Bennett et al.*, No. 05 Civ. 8988 (GEL) (S.D.N.Y.) - Third Amended Class Action Complaint (dated January 8, 2008) |
| *BAWAG v. Refco, et al., Case No.05-03161* (Bankr. S.D.N.Y.) - Complaint (dated 11/16/2005) |
| *Capital Management Select Fund Ltd. v. Bennett et al.*, No. 07 Civ. 8688 (GEL) (S.D.N.Y.) - Complaint (dated October 9, 2007) |
| *Fine v. Bennett*, et al., No. 05 Civ. 8701 (GEL) (S.D.N.Y.) - Complaint (dated October 13, 2005) |
| *In re Refco Capital Markets, Ltd. Brokerage Customer Securities Litigation*, No. 06 Civ. 643 (GEL) (S.D.N.Y.) - Second Amended Consolidated Class Action Complaint (dated December 21, 2007) |
| *Kirschner v. Agoglia, et al.*, No. 05-60006, Adv. Pro. No. 07-3060 (Bankr. S.D.N.Y.) - Complaint (dated October 15, 2007) |
| *Kirschner v. Bennett, et al.*, No. 07 Civ. 8165 (GEL) (S.D.N.Y.) - Complaint (dated August 27, 2007) |
| *Kirschner v. Grant Thornton LLP et al.*, No. 07 Civ. 11604 (GEL) (S.D.N.Y.) - Complaint (dated August 21, 2007) |
| *Kirschner v. Hackl, et al.*, No. 07 Civ. 9238 (GEL) (S.D.N.Y.) - Complaint (dated October 15, 2007) |
| *Kirschner v. Thomas H. Lee Partners, LP. et al.*, No. 07 Civ. 7074 (GEL) (S.D.N.Y.) - Complaint (dated November 20, 2007) |
| *Krys, et al. v. Sugrue, et al.*, No. 08-3065 (GEL) (S.D.N.Y.) & No. 08-3086 (GEL) (S.D.N.Y.) - Complaint (dated March 5, 2008) |

| |
|---|
| *Mehta v. Bennett*, No. 05 Civ. 8748 (GEL) (S.D.N.Y.) - Complaint (dated October 14, 2005) |
| *Thomas H. Lee Equity Fund V, L.P. v. Bennett, et al.*, No. 05-9608 (GEL) (S.D.N.Y.) - Complaint (dated November 14, 2005) |
| *Unovalores Ltd. v. Bennett*, No. L1564-05 (Sup. Ct. N.J.) - Complaint (dated November 1, 2005) |
| *V.R. Global Partners, L.P. v. Bennett et al.*, No. 07 Cir. 8686 (GEL) (S.D.N.Y.) - Complaint (dated October 9, 2007) |

(IJX 1-16)

56. The Underlying Matters all relate to the same fraud charged in the S3 Indictment to which Bennett and others have pled guilty. (IJX 1-16, 18; Sandnes Aff't Ex. 35)

57. All of the Underlying Matters allege either that plaintiffs in those cases were injured by the failure to properly disclose the RGHI receivable, by the transactions used to cover up the uncollectability of RGHI and/or by the bankruptcy resulting from the RGHI fraud. (*Id.*)

58. Each of the Underlying Matters arise from a "fact, circumstance or situation" to which Bennett has pled guilty to knowingly and wrongfully committing. (*Id.*)

59. Bennett's guilty plea definitively establishes that Bennett had knowledge of the facts, circumstances or situations from which the Underlying matters arose. (IJX 1-16, 18, 21; Sandnes Aff't Ex. 35)

60. Bennett had reason to suppose that the facts circumstances or situations of which he had knowledge, as of the inception date of the XL Policy, might afford grounds for a claim under the XL Policy. (*Id.*)

61.     There is no coverage afforded for any of the Defendants under the XL Policy for claims arising from the Underlying Matters. (Toolan Dec. Ex. A; Sandnes Aff't Ex. 35)

Dated: New York, New York
       July 11, 2008                         Respectfully submitted,


                                             BOUNDAS, SKARZYNSKI, WALSH
                                               & BLACK, LLC


                                             By:    /s James Sandnes
                                                   James Sandnes (JS-8944)
                                                   A Member of the Firm
                                             One Battery Park Plaza – 32nd Floor
                                             New York, New York 10004
                                             Telephone: (212) 820-7700