UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

XL SPECIALTY INSURANCE COMPANY,      :
                                     :
                    Plaintiff,       :
                                     :
                                     :
        v.                           :      No. 08-cv-3821 (GEL)
                                     :
JOHN D. AGOGLIA, PHILIP R. BENNETT,  :      *Electronically Filed*
LEO R. BREITMAN, EDWIN L. COX,       :
SUKHMEET DHILLON, THOMAS H.          :
DITTMER, NATHAN GANTCHER, STEPHEN    :
GRADY, TONE GRANT, THOMAS HACKL,     :
DAVID V. HARKINS, SCOTT L. JAECKEL,  :
DENNIS A. KLEJNA, THOMAS H. LEE,     :
ERIC G. LIPOFF, SANTO C. MAGGIO,     :
PETER MCCARTHY, JOSEPH MURPHY,       :
FRANK MUTTERER, RONALD L. O'KELLEY,  :
RICHARD N. OUTRIDGE, SCOTT A.        :
SCHOEN, WILLIAM M. SEXTON, GERALD    :
SHERER, PHILIP SILVERMAN, AND        :
ROBERT C. TROSTEN,                   :
                                     :
                    Defendants.      :

------------------------------------------------------------x

## DIRECTOR DEFENDANTS' ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT AND COUNTERCLAIM

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
(212) 310-8000

*Attorneys for Defendants/Counterclaim
Plaintiffs Leo R. Breitman, Nathan
Gantcher, David V. Harkins, Scott L.
Jaeckel, Thomas H. Lee, Ronald L.
O'Kelley, and Scott A. Schoen*

Defendants Thomas H. Lee, David V. Harkins, Scott Schoen, Scott L. Jaeckel (the "THL Defendants"), Leo R. Breitman, Nathan Gantcher, Ronald L. O'Kelley (the "Audit Committee Defendants") (referred to collectively as the "Director Defendants"), for their Answer to the Complaint for Declaratory Judgment (the "Complaint") filed by XL Specialty Insurance Company ("XL"), respond as follows:

1.      Aver that the allegations contained in Paragraph 1 of the Complaint do not constitute allegations to which a response is required.

## NATURE OF ACTION

2.      Admit that XL issued a Classic A-Side Management Liability Insurance Policy to Refco Inc. ("Refco")[1] with Policy Number ELU089673-05 (the "XL Policy") and a policy period of August 11, 2005 to August 11, 2006 (the "XL Policy Period"); refer to the XL Policy for its true and complete contents, including a complete recitation of Endorsement 13 to the XL Policy, titled "Inverted Representation Endorsement" (the "IRE"); and otherwise deny the allegations contained in Paragraph 2 of the Complaint.

3.      Aver that Refco's former chief executive officer, Phillip R. Bennett ("Bennett"), and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; admit that Refco conducted an initial public offering of its common stock on or

---

[1] Unless specifically noted otherwise, and consistent with the defined terms in the XL Complaint, the term "Refco" as used throughout refers to Refco, Inc., the company formed pursuant to the August 2005 initial public offering, as well as Refco Group Ltd., LLC, the company through which Refco's business was conducted prior to the initial public offering. The term "Refco" also includes subsidiaries of Refco, Inc. and Refco Group Ltd., LLC.

about August 11, 2005 (the "IPO"), that the XL Policy Period begins on August 11, 2005, and that Refco filed for bankruptcy protection under chapter 11 of title 11 of the United States Code on October 17, 2005; and otherwise deny the allegations contained in Paragraph 3 of the Complaint.

      4.    Admit that numerous legal and regulatory proceedings have been initiated against Bennett and his co-conspirators (the "Underlying Matters") arising out of their fraudulent scheme; deny any involvement in, or knowledge of, that scheme; admit that the Director Defendants have been named as defendants in one or more of the Underlying Matters; and otherwise deny the allegations contained in Paragraph 4 of the Complaint.

      5.    Admit that Bennett, Robert C. Trosten ("Trosten"), Refco's former Vice President and Chief Financial Officer, and Santo C. Maggio ("Maggio"), the former Chief Executive Officer of Refco Securities and Refco Capital Markets, have pled guilty to various federal charges; admit that Tone Grant ("Grant"), the former President of Refco Group Ltd. LLC, was convicted by a jury of conspiracy, securities fraud, wire fraud, bank fraud and money laundering; refer to the plea transcript of Bennett dated February 18, 2008, the plea transcript of Trosten dated February 20, 2008, and the plea transcript of Maggio dated December 19, 2007 (collectively, the "Plea Transcripts"), for their true and complete contents; and otherwise deny the allegations contained in Paragraph 5 of the Complaint.

      6.    Admit that the Director Defendants have tendered for coverage under the XL Policy; refer to the January 24, 2006 letter from XL's counsel, for XL's

purported bases for denial of coverage under the XL policy and the XL Policy for its true and complete contents; and otherwise deny the allegations contained in Paragraph 6 of the Complaint.

7.    Refer to the Plea Transcripts for their true and complete contents; aver that Paragraph 7 of the Complaint contains legal conclusions to which no response is required; (to the extent a response is required), deny the allegations contained in Paragraph 7 of the Complaint as to the Director Defendants.

8.    Admit that XL purports to describe the nature of the relief sought by the Complaint; and otherwise deny the allegations contained in Paragraph 8 of the Complaint.

## JURISDICTION AND VENUE

9.    Admit that XL purports to base jurisdiction over the subject matter of this action on the statutory provision referenced in Paragraph 9 of the Complaint and purports to meet the requirements for jurisdiction under such statutory provision; aver that the allegations contained in Paragraph 9 of the Complaint constitute legal conclusions to which no response is required; and otherwise deny the allegations contained in Paragraph 9 of the Complaint.

10.    Admit that XL purports to base jurisdiction over the subject matter of this action on the statutory provisions referenced in Paragraph 10 of the Complaint and purports to meet the requirements for jurisdiction under such statutory provision; aver that the allegations contained in Paragraph 10 of the Complaint constitute legal

conclusions to which no response is required; and otherwise deny the allegations

contained in Paragraph 10 of the Complaint.

      11.    Admit that XL purports to base *in personam* jurisdiction over the

Defendants on the statutory provisions referenced in Paragraph 11 of the Complaint;

admit that the THL Defendants served on New Refco Group Ltd., Inc.'s ("New Refco")

Board of Managers after Thomas H. Lee Equity Fund V, L.P., Thomas H. Lee Parallel

Fund V, L.P. and Thomas H. Lee Equity (Cayman) Fund V, L.P. (collectively, the "THL

Funds"), along with their affiliates and co-investors, acquired approximately 57% of the

equity interests in Refco Group Ltd., LLC ("Refco Group") in August 2004 (the "August

2004 Transaction") through July 2005 and then on the Refco Board of Directors

following the IPO; that the Audit Committee Defendants were named to the Board of

Managers and Audit Committee of New Refco in November 2004 and then in July 2005

to the Board of Directors and Audit Committee of Refco; that Scott Jaeckel served as

treasurer of Refco Finance Holdings, LLC from on or about June 4, 2004 through August

5, 2004 and that he served as treasurer of Refco Finance Inc. from on or about July 6,

2004 until some time after the closing of the August 2004 Transaction; that Scott Schoen

served as president of Refco Finance Inc. from or about July 6, 2004 until some time after

the closing of the August 2004 Transaction and as sole director of Refco Finance Inc.

from on or about August 5, 2004 through October 11, 2004; and otherwise aver that the

allegations contained in Paragraph 11 of the Complaint constitute legal conclusions to

which no response is required.

12.    Admit that XL purports to base *in personam* jurisdiction over the Defendants on the statutory provision referenced in Paragraph 12 of the Complaint; aver that the allegations contained in Paragraph 12 of the Complaint constitute legal conclusions to which no response is required; (to the extent a response is required), deny the allegations contained in Paragraph 12 of the Complaint as directed to the Director Defendants.

13.    Admit that XL purports to base venue on the statutory provision referenced in Paragraph 13 of the Complaint; and otherwise aver that the allegations contained in Paragraph 13 constitute legal conclusions to which no response is required.

14.    Admit that XL purports to seek declaratory judgment based on the statutory provision referenced in Paragraph 14 of the Complaint; and otherwise aver that the allegations contained in Paragraph 14 constitute legal conclusions to which no response is required; (to the extent a response is required), deny the allegations contained in Paragraph 14 of the Complaint.

## PARTIES

15.    Admit, on information and belief, that XL is an insurance company that is organized and exists under the laws of the State of Delaware with its principal place of business in Hartford, Connecticut.

16.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint.

17.    Admit, on information and belief, that Bennett served as President, Chief Executive Officer, and Chairman of Refco from September, 1998, until he took a

leave of absence in October, 2005, and then subsequently left the Company; and otherwise deny the allegations contained in Paragraph 17 of the Complaint.

18.    Admit that Leo R. Breitman ("Breitman") was named to the Board of Managers and the Audit Committee of New Refco in November 2004 and then in July 2005 to the Board of Directors and Audit Committee of Refco Inc. and is a citizen of Florida; and otherwise deny the allegations contained in Paragraph 18 of the Complaint.

19.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint.

20.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint.

21.    Admit, on information and belief, that Thomas H. Dittmer served as Chairman of Refco and served as Chief Executive Officer of Refco until in or about October 1998; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint.

22.    Admit that Nathan Gantcher was named to the Board of Managers and the Audit Committee of New Refco in November 2004 and then in July 2005 to the Board of Directors and Audit Committee of Refco Inc. and is a citizen of New York; and otherwise deny the allegations contained in Paragraph 22 of the Complaint.

23.    Admit, on information and belief, that Stephen Grady served as Chief Operating Officer of Refco Global Futures LLC; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint.

24.    Admit, on information and belief, that Grant served as President of Refco until in or about September 1998; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 of the Complaint.

25.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of the Complaint.

26.    Admit that David V. Harkins served on New Refco's Board of Managers following the August 2004 Transaction through July 2005 and then on the Refco Inc. Board of Directors following the IPO; and otherwise deny the allegations contained in Paragraph 26 of the Complaint.

27.    Admit that Scott L. Jaeckel served on the New Refco Board of Managers following the August 2004 Transaction through July, 2005, and then on the Refco Inc. Board of Directors following the IPO, that he served as treasurer of Refco Finance Holdings, LLC from on or about June 4, 2004, through August 5, 2004, that he served as treasurer of Refco Finance Inc. from on or about July 6, 2004, until some time after the closing of the August 2004 Transaction and is a citizen of Massachusetts; and otherwise deny the allegations contained in Paragraph 27 of the Complaint.

28.    Admit, on information and belief, that Dennis A. Klejna served as Executive Vice President and General Counsel of Refco Group Ltd., LLC at some time relevant to the Complaint; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 of the Complaint.

29.    Admit that Thomas H. Lee served on the New Refco Board of Managers following the August 2004 Transaction through July 2005 and then on the Refco Inc. Board of Directors following the IPO and is a citizen of New York; and otherwise deny the allegations contained in Paragraph 29 of the Complaint.

30.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 of the Complaint.

31.    Admit, on information and belief, that Santo Maggio served as an Executive Vice President of Refco and as President and Chief Executive Officer of Refco Securities, LLC and Refco Capital Markets, Ltd.; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 of the Complaint.

32.    Admit, on information and belief, that Peter McCarthy served as President of Refco Securities, LLC; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint.

33.    Admit, on information and belief, that Joseph Murphy served as President of Refco Global Futures LLC during some time relevant to the Complaint and also served as Vice President of Refco Group Ltd., LLC for some of that period; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint.

34.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 of the Complaint.

35.    Admit, on information and belief, that Ronald L. O'Kelley was named to the Board of Managers and the Audit Committee of New Refco in November 2004 and then in July 2005 to the Board of Directors and Audit Committee of Refco Inc., and is a citizen of Florida; and otherwise deny the allegations contained in Paragraph 35 of the Complaint.

36.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 of the Complaint.

37.    Admit that Scott A. Schoen served on the New Refco Board of Managers following the August 2004 Transaction through July, 2005, and then on the Refco Board of Directors following the IPO, and that he served as president of Refco Finance Inc. from on or about July 6, 2004, until some time after the closing of the August 2004 Transaction and as sole director of Refco Finance from on or about August 5, 2004, through October 11, 2004, and is a citizen of Massachusetts; and otherwise deny the allegations contained in Paragraph 37 of the Complaint.

38.    Admit, on information and belief, that William M. Sexton served as Executive Vice President and Chief Operating Officer of Refco from on or about August 2004 through at least October 11, 2005; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 of the Complaint.

39.    Admit, on information and belief, that Gerald Sherer served as Executive Vice President and Chief Financial Officer of Refco from on or about January 2005 through at least October 11, 2005; and otherwise deny knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 39 of the Complaint.

40.     Admit, on information and belief, that Philip Silverman served as Secretary of Refco; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40 of the Complaint.

41.     Admit, on information and belief, that Trosten served as Refco's Chief Financial Officer and Executive Vice President from 2001 until his departure following the August 2004 Transaction; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41 of the Complaint.

## FACTUAL ALLEGATIONS

### The XL Policy

42.     Admit that XL issued a Classic A-Side Management Liability Insurance Policy to Refco with Policy Number ELU089673-05 and a policy period of August 11, 2005 to August 11, 2006; refer to the XL Policy for its true and complete contents; and otherwise deny the allegations contained in Paragraph 42 of the Complaint.

43.     Admit that U.S. Specialty Insurance Company ("U.S. Specialty"), Lexington Insurance Company ("Lexington"), Axis Reinsurance Company ("Axis"), Allied World Assurance Company ("Allied World"), and Arch Insurance Company ("Arch") each issued insurance policies to Refco; refer to the U.S. Specialty, Lexington, Axis, Allied World, and Arch policies for their true and complete contents; and otherwise deny the allegations contained in Paragraph 43 of the Complaint.

10

44.     Refer to the XL Policy for its true and complete contents; and otherwise deny the allegations contained in Paragraph 44 of the Complaint.

45.     Refer to the XL Policy for its true and complete contents; and otherwise deny the allegations contained in Paragraph 45 of the Complaint.

46.     Refer to the XL Policy for its true and complete contents; and otherwise deny the allegations contained in Paragraph 46 of the Complaint.

47.     Refer to the XL Policy for its true and complete contents; aver that the allegations contained in Paragraph 47 of the Complaint constitute legal conclusions to which no response is required; (to the extent a response is required), deny the allegations contained in Paragraph 47 of the Complaint.

48.     Admit, on information and belief, that U.S. Specialty advanced defense costs to certain of the Defendants, on an as-incurred basis, until such time as its policy was exhausted, that Lexington advanced defense costs to certain of the Defendants, on an as-incurred basis, until such time as its policy was exhausted, that Axis advanced defense costs to certain of the Defendants, until such time as its policy was exhausted, that the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order requiring Allied World to advance defense costs to certain of the Defendants, in accordance with the terms of its excess insurance policy and refer to the Bankruptcy Court's order in *Murphy, et al. v. Allied World Assurance Company (U.S.), Inc.*, Case No. 08-01133 (RDD) (Bankr. S.D.N.Y. Apr. 21, 2008), and that this Court has entered orders preliminarily approving lead plaintiffs' settlements with Dennis Klejna and Joseph Murphy in *In re Refco, Inc.*

11

*Securities Litigation*, No. 05 Civ. 8626 (GEL) (S.D.N.Y.); refer to the orders and

settlement documents referred to in Paragraph 48 of the Complaint for the their true and

complete contents; deny knowledge or information sufficient to form a belief as to the

truth of the allegations contained in sentence 2 of Paragraph 48 of the Complaint; and

otherwise deny the allegations contained in Paragraph 48 of the Complaint.

**The Events at Refco**

49.    Admit the allegations contained in Paragraph 49 of the Complaint.

50.    Admit that, on October 10, 2005, Refco issued a press release (the

"October 10, 2005 Press Release"); refer to the October 10, 2005 Press Release for its

true and complete contents; and otherwise deny the allegations contained in Paragraph 50

of the Complaint.

51.    Admit that, on October 11, 2005, Refco issued a press release (the

"October 11, 2005 Press Release"); refer to the October 11, 2005 for its true and

complete contents; and otherwise deny the allegations contained in Paragraph 51 of the

Complaint.

52.    Admit the allegation contained in Paragraph 52 of the Complaint.

53.    Admit that, on January 16, 2007, a superseding indictment was

entered against Bennett, Trosten, and Grant (the "January 16, 2007 Indictment"); refer to

the January 16, 2007 Indictment, attached to XL's complaint as Exhibit B, for its true and

complete contents; and otherwise deny the allegations contained in Paragraph 53 of the

Complaint.

54.    Admit that on February 15, 2008, Bennett pled guilty to the charges contained in the January 16, 2007 Indictment and that on February 20, 2008, Trosten pled guilty to certain of the charges asserted against him in the January 16, 2007 Indictment; refer to the January 16, 2007 Indictment and the Plea Transcripts for their true and complete contents; and otherwise deny the allegations contained in Paragraph 54 of the Complaint.

55.    Refer to the January 16, 2007 Indictment for its true and complete contents; and otherwise deny the allegations contained in Paragraph 55 of the Complaint.

56.    Refer to the January 16, 2007 Indictment for its true and complete contents; and otherwise deny the allegations contained in Paragraph 56 of the Complaint.

57.    Refer to the January 16, 2007 Indictment for its true and complete contents; and otherwise deny the allegations contained in Paragraph 57 of the Complaint.

58.    Refer to the January 16, 2007 Indictment for its true and complete contents; and otherwise deny the allegations contained in Paragraph 58 of the Complaint.

59.    Refer to the January 16, 2007 Indictment for its true and complete contents; and otherwise deny the allegations contained in Paragraph 59 of the Complaint.

60.    Refer to the January 16, 2007 Indictment for its true and complete contents; and otherwise deny the allegations contained in Paragraph 60 of the Complaint.

61.    Refer to the January 16, 2007 Indictment for its true and complete contents; and otherwise deny the allegations contained in Paragraph 61 of the Complaint.

62.     Admit that on February 15, 2008, Bennett pled guilty to the charges against him in the January 16, 2007 Indictment; refer to the January 16, 2007 Indictment and the transcript of the February 15, 2008 hearing ("February 15, 2008 Plea Transcript"), attached to XL's complaint as Exhibit C, for their true and complete contents; and otherwise deny the allegations contained in Paragraph 62 of the Complaint.

63.     Refer to the February 15, 2008 Plea Transcript for its true and complete contents; and otherwise deny the allegations contained in Paragraph 63 of the Complaint.

64.     Refer to the January 16, 2007 Indictment for its true and complete contents; and otherwise deny the allegations contained in Paragraph 64 of the Complaint.

65.     Admit that on February 20, 2008, Trosten pled guilty to certain of the charges against him in the January 16, 2007 Indictment; refer to the transcript of the February 20, 2008 hearing ("February 20, 2008 Plea Transcript"), attached to XL's complaint as Exhibit D, for its true and complete contents; and otherwise deny the allegations contained in Paragraph 65 of the Complaint.

66.     Refer to the February 20, 2008 Plea Transcript for its true and complete contents; and otherwise deny the allegations contained in Paragraph 66 of the Complaint.

67.     Admit that on December 19, 2007, Maggio pled guilty to a four-count criminal information (the "Maggio Information"), attached to XL's complaint as Exhibit E; refer to the transcript of the December 19, 2007 hearing ("December 19, 2007

14

Plea Transcript"), attached to XL's complaint as Exhibit F, for its true and complete contents; and otherwise deny the allegations contained in Paragraph 67 of the Complaint.

68.    Refer to the documents cited for their true and complete contents; and otherwise deny the allegations contained in Paragraph 68 of the Complaint.

69.    Refer to the Maggio Information for its true and complete contents; and otherwise deny the allegations contained in Paragraph 69 of the Complaint.

70.    Admit that on December 19, 2007, Maggio pled guilty to the charges set forth in the Maggio Information; refer to the December 19, 2007 Plea Transcript for its true and complete contents; and otherwise deny the allegations contained in Paragraph 70 of the Complaint.

71.    Refer to the December 19, 2007 Plea Transcript for its true and complete contents; and otherwise deny the allegations contained in Paragraph 71 of the Complaint.

72.    Admit that on April 17, 2008, Grant was found guilty after trial by a federal jury in the Southern District of New York of certain charges alleged in the January 16, 2007 Indictment; refer to the transcripts of Grant's trial for their true and complete contents; and otherwise deny the allegations contained in Paragraph 72 of the Complaint.

73.    Aver that the allegations contained in Paragraph 73 of the Complaint constitute legal conclusions to which no response is required; (to the extent a response is required), deny the allegations contained in Paragraph 73 of the Complaint as directed to the Director Defendants.

**The Underlying Matters**

74.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 74 of the Complaint.

75.     Admit that the United States of America's complaint against Phillip Bennett in the matter captioned *United States v. Bennett*, No. 05-1720 (S.D.N.Y.) (the "Bennett Criminal Complaint") was filed on October 12, 2005; and otherwise deny the allegations contained in Paragraph 75 of the Complaint.

76.     Aver that Bennett, his co-conspirators (including, on information and belief, Robert Trosten, Tone Grant, BAWAG, and Santo Maggio) and those acting on his or their behalf, engaged in a fraudulent scheme designed to hide Refco's true financial condition from, among others, the Director Defendants; admit that Bennett, Trosten and Grant have been indicted by a federal grand jury in New York for their involvement in the fraudulent scheme; deny any involvement in, or knowledge of, that scheme; refer to the documents cited for their true and complete contents; and otherwise deny the allegations contained in Paragraph 76 of the Complaint.

77.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 77 of the Complaint.

78.     Admit that numerous putative securities fraud class action lawsuits have been consolidated before the Honorable Gerard E. Lynch under the caption *In re Refco, Inc. Securites Litigation* (Case No. 05-8626) ('the "Securities Litigation"); admit that the First Amended Consolidated Class Action Complaint was filed on May 5, 2006 (Docket Entry No. 86) and the Second Amended Consolidated Class Action Complaint

was filed on December 3, 2007 (Docket Entry No. 437); refer to the Securities Litigation docket for a true and complete list of all consolidated actions; and otherwise deny the allegations contained in Paragraph 78 of the Complaint.

79.    Refer to the First Amended Consolidated Class Action Complaint and Second Amended Consolidated Class Action Complaint for their true and complete contents and a complete list of defendants in the Securities Litigation; and otherwise deny the allegations contained in Paragraph 79 of the Complaint.

80.    Admit that the Director Defendants have tendered for coverage under the XL Policy; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 80 of the Complaint.

81.    Aver that the purported shareholder derivative complaints in *David Fine v. Bennett, et al.*, 05-CV-8701 (S.D.N.Y.), and *Mehta v. Bennett, et al.*, 05-CV-8748 (S.D.N.Y.) (the "Derivative Action complaints"), were dismissed for failure to prosecute on March 9, 2006 (Docket Entries Nos. 6, respectively); refer to the Derivative Action complaints for a complete list of defendants; and otherwise deny the allegations contained in Paragraph 81 of the Complaint.

82.    Refer to the Derivative Action complaints for their true and complete contents; and otherwise deny the allegations contained in Paragraph 82 of the Complaint.

83.    Admit that the Director Defendants have tendered for coverage under the XL Policy; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 83 of the Complaint.

84.    Admit that the complaint in *BAWAG P.S.K. Bank v. Refco, Inc., et al.*, 05-03161-RDD (Bankr. S.D.N.Y.) (the "BAWAG Complaint"), was filed on November 16, 2005; refer to the BAWAG Complaint for a complete list of defendants in that action; and otherwise deny the allegations contained in Paragraph 84 of the Complaint.

85.    Refer to the BAWAG Complaint for its true and complete contents; and otherwise deny the allegations contained in Paragraph 85 of the Complaint.

86.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 86 of the Complaint.

87.    Admit that the complaint in *Thomas H. Lee Equity Fund L.P., et al. v. Bennett*, et al., 05-CV-9608 (S.D.N.Y.), was filed on November 14, 2005 (the "THL Bennett Complaint"); refer to the THL Bennett Complaint for a complete list of defendants named in that action; and otherwise deny the allegations contained in Paragraph 87 of the Complaint.

88.    Aver that the THL Bennett Complaint alleges that Bennett, his co-conspirators and others acting on his or their behalf made material misrepresentations and omitted to disclose material facts to the THL Defendants, including in connection with the August 2004 Transactions and IPO; and otherwise refer to the THL Bennett Complaint for its true and complete contents; and otherwise deny the allegations contained in Paragraph 88 of the Complaint.

89.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 89 of the Complaint.

90.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 90 of the Complaint.

91.    Refer to the complaint in *Unovalores v. Bennett*, No. L1564-05 (Sup. Ct. of New Jersey, Somerset County, Law Division), for its true and complete contents; and otherwise deny the allegations contained in Paragraph 91 of the Complaint.

92.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 92 of the Complaint.

93.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 93 of the Complaint.

94.    Refer to the complaint in *American Financial International Group v. Refco, et al.*, 05-CV-8988 (S.D.N.Y.), for its true and complete contents, including the identity of the plaintiff in that action, the nature of the action, and a complete list of defendants; and otherwise deny the allegations contained in Paragraph 94 of the Complaint.

95.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 95 of the Complaint.

96.    Admit that the complaint in *Global Management Worldwide Limited v. Philip Bennett, et al.*, (*In re Refco Capital Markets*), 06-CV-0643 (S.D.N.Y.) was filed on January 26, 2006 and an amended complaint was filed on September 5, 2006 (Docket Entry No. 30) (the "RCM Complaint"); and otherwise deny the allegations contained in Paragraph 96 of the Complaint.

97.    Refer to the RCM Complaint for its true and complete contents; and otherwise deny the allegations contained in Paragraph 97 of the Complaint.

98.    Admit that the Director Defendants have tendered for coverage under the XL Policy; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 98 of the Complaint.

99.    Admit that the complaints in *VR Global Partners L.P., et al. v. Bennett, et al.*, 07-CV-8686 (S.D.N.Y.) and *Capital Management Select Fund Ltd., et al. v. Bennett, et al.*, 07-CV-8688 (S.D.N.Y.), (collectively, the "RCM Securities Complaints") were filed on October 9, 2007 and were consolidated by order dated November 20, 2007, before the Honorable Gerard E. Lynch under the caption *In re Refco Capital Markets, Ltd. Brokerage Customer Securities Litigation*, 05-CV-643 (S.D.N.Y.); admit that the Director Defendants have tendered for coverage under the XL Policy; refer to the RCM Securities Complaints for their true and complete contents, including a complete list of defendants; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 99 of the Complaint.

100.    Admit the allegations contained in Paragraph 100 of the Complaint.

101.    Refer to the complaint in *Kirschner v. Thomas H. Lee Partners, L.P.*, 07-CV-7074 (S.D.N.Y.), for its true and complete contents, including the identity of the plaintiff and a complete list of defendants; and otherwise deny the allegations contained in Paragraph 101 of the Complaint.

102.    Admit that the Director Defendants have tendered for coverage under the XL Policy; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 102 of the Complaint.

103.    Admit that the complaint in *Kirschner v. Grant Thornton LLP, et al.*, No. 2007L008818 (Cook County, Ill.) (the "Trustee v. Grant Thornton Complaint") was filed in Illinois state court on August 21, 2007 and was removed to federal court on September 19, 2007, 07-CV-5306 (N.D. Ill.); aver that the Trustee v. Grant Thornton Complaint was transferred to the United States District Court for the Southern District of New York, 07-CV-11604 (GEL), pursuant to an order of the Judicial Panel on Multidistrict Litigation, on January 8, 2008; and otherwise deny the allegations contained in Paragraph 103 of the Complaint.

104.    Refer to the Trustee v. Grant Thornton Complaint for its true and complete contents, including a complete list of the defendants in that action; and otherwise deny the allegations contained in Paragraph 104 of the Complaint.

105.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 105 of the Complaint.

106.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 106 of the Complaint.

107.    Refer to the complaint in *Kirschner v. Agoglia,* et al., Adv. Pro. No. 07-3060 (Bankr. S.D.N.Y.) for its true and complete contents; and otherwise deny the allegations contained in Paragraph 107 of the Complaint.

108.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 108 of the Complaint.

109.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 109 of the Complaint.

110.    Refer to the complaint in *Kirschner v. Thomas Hackl, et al.*, 07-CV-9238 (S.D.N.Y.), for its true and complete contents; and otherwise deny the allegations contained in Paragraph 110 of the Complaint.

111.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 111 of the Complaint.

112.    Refer to the complaint in *Kirschner v. Bennett, et al.*, 07-CV-8165 (S.D.N.Y.), for its true and complete contents; and otherwise deny the allegations contained in Paragraph 112 of the Complaint.

113.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 113 of the Complaint.

114.    Aver that the allegations contained in Paragraph 114 of the Complaint do not constitute allegations to which a response is required.

115.    Admit various governmental investigations are ongoing; and otherwise deny the allegations contained in Paragraph 115 of the Complaint.

116.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 116 of the Complaint.

117.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 117 of the Complaint.

118.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 118 of the Complaint.

119.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 119 of the Complaint.

120.    Aver that the allegations contained in Paragraph 120 of the Complaint do not constitute allegations to which a response is required.

## CLAIM FOR RELIEF

### (FOR A DECLARATORY JUDGMENT
### AGAINST ALL DEFENDANTS)

121.    Incorporate by reference each of the responses to Paragraphs 1 through 120 of the Complaint as if fully set forth herein.

122.    Deny any knowledge of facts, situations and/or circumstances that might afford grounds for a Claim under the XL Policy at or prior to the XL Policy's inception on August 11, 2005; aver that the allegations contained in Paragraph 122 of the Complaint constitute legal conclusions to which no response is required; (to the extent a response is required), deny the allegations contained in Paragraph 122 of the Complaint as directed to the Director Defendants.

123.    Aver that the allegation contained in Paragraph 123 of the Complaint constitutes a legal conclusion to which no response is required; (to the extent a

response is required), deny the allegation contained in Paragraph 123 of the Complaint as directed to the Director Defendants.

124.    Aver that the allegation contained in Paragraph 124 of the Complaint constitutes a legal conclusion to which no response is required; (to the extent a response is required), deny the allegations contained in Paragraph 124 of the Complaint as directed to the Director Defendants.

125.    Aver that the allegation contained in Paragraph 125 of the Complaint constitutes a legal conclusion to which no response is required; (to the extent a response is required), deny the allegations contained in Paragraph 125 of the Complaint as directed to the Director Defendants.

126.    Aver that the allegation contained in Paragraph 126 of the Complaint constitutes a legal conclusion to which no response is required; (to the extent a response is required), deny the allegations contained in Paragraph 126 of the Complaint as directed to the Director Defendants.

127.    Aver that the allegation contained in Paragraph 127 of the Complaint constitutes a legal conclusion to which no response is required; (to the extent a response is required), deny the allegations contained in Paragraph 127 of the Complaint as directed to the Director Defendants.

128.    Aver that the allegation contained in Paragraph 128 of the Complaint constitutes a legal conclusion to which no response is required; (to the extent a response is required), deny the allegations contained in Paragraph 128 of the Complaint as directed to the Director Defendants.

129.    Aver that the allegation contained in Paragraph 129 of the Complaint constitutes a legal conclusion to which no response is required; (to the extent a response is required), deny the allegations contained in Paragraph 129 of the Complaint as directed to the Director Defendants.

130.    Aver that the allegation contained in Paragraph 130 of the Complaint constitutes a legal conclusion to which no response is required; (to the extent a response is required), deny the allegation contained in Paragraph 130 of the Complaint as directed to the Director Defendants.

131.    Aver that the allegation contained in Paragraph 131 of the Complaint constitutes a legal conclusion to which no response is required; (to the extent a response is required), deny the allegation contained in Paragraph 131 of the Complaint as directed to the Director Defendants.

132.    Aver that the allegation contained in Paragraph 132 of the Complaint constitutes a legal conclusion to which no response is required; (to the extent a response is required), deny the allegation contained in Paragraph 132 of the Complaint as directed to the Director Defendants.

133.    Refer to the XL Policy for its true and complete contents; aver that the allegations contained in Paragraph 133 of the Complaint constitute legal conclusions to which no response is required; (to the extent a response is required), deny the allegations contained in Paragraph 133 of the Complaint as directed to the Director Defendants.

134.    Aver that the allegations contained in Paragraph 134 of the Complaint constitute legal conclusions to which no response is required; (to the extent a response is required), deny the allegations contained in Paragraph 134 of the Complaint as directed to the Director Defendants.

135.    Refer to the XL Policy for its true and complete contents; aver that the allegations contained in Paragraph 135 of the Complaint constitute legal conclusions to which no response is required; (to the extent a response is required), deny the allegations contained in Paragraph 135 of the Complaint as directed to the Director Defendants.

136.    Aver that the allegation contained in Paragraph 136 of the Complaint constitutes a legal conclusion to which no response is required; (to the extent a response is required), deny the allegation contained in Paragraph 136 of the Complaint as directed to the Director Defendants.

137.    Aver that the allegation contained in Paragraph 137 of the Complaint constitutes a legal conclusion to which no response is required; (to the extent a response is required), deny the allegation contained in Paragraph 137 of the Complaint as directed to the Director Defendants.

138.    Refer to the XL Policy for its true and complete contents; aver that the allegations contained in Paragraph 138 of the Complaint constitute legal conclusions to which no response is required; (to the extent a response is required), deny the allegations contained in Paragraph 138 of the Complaint as directed to the Director Defendants.

## GENERAL DENIAL

With respect to the Complaint in its entirety, the Director Defendants deny that they possessed knowledge of facts, situations and/or circumstances that might afford grounds for a Claim under the XL Policy at or prior to the XL Policy's inception on August 11, 2005. The Director Defendants further deny that the knowledge of any other defendant affords XL a basis to deny coverage to the Director Defendants under the terms of the contract of insurance between XL and the Insureds. Except as expressly admitted above, all allegations addressed, referring or relating in any way to the knowledge of any of the Director Defendants are denied.

## DEFENSES AND AFFIRMATIVE DEFENSES

Without admitting any of the allegations of the Complaint and without admitting or suggesting that the Director Defendants bear the burden of proof on any of the following issues, as separate and independent defenses and/or affirmative defenses, the Director Defendants state as follows:

## FIRST DEFENSE

The Complaint fails to state a claim against the Director Defendants upon which relief may be granted.

## SECOND DEFENSE

The relief sought by XL is barred, in whole or in part, by the doctrines of laches, waiver, estoppel, unclean hands and/or other related equitable doctrines.

## THIRD DEFENSE

The relief sought by XL is barred, in whole or in part, by XL's bad faith, inequitable, and/or improper conduct.

27

## COUNTERCLAIM

Leo R. Breitman ("Breitman"), Nathan Gantcher ("Gantcher"), David V. Harkins ("Harkins"), Scott L. Jaeckel ("Jaeckel"), Thomas H. Lee ("Lee"), Ronald L. O'Kelley ("O'Kelley"), and Scott A. Schoen ("Schoen") (collectively, the "Directors"), by and through their counsel, allege as follows for their counterclaims against XL Specialty Insurance Company ("XL"):

1.       Refco purchased a "tower" of Directors and Officers ("D&O") liability insurance from six different carriers for the policy period beginning August 11, 2005. U.S. Specialty Insurance Company issued the primary policy and four of the other carriers issued excess insurance policies that followed the form of (*i.e.*, were based on) the primary policy. XL is the fifth excess carrier in the "tower." Unlike the other excess policies, the insurance coverage obtained by Refco from XL is a standalone policy.

2.       The Directors, along with other former Refco officers and directors insured under the D&O policies (collectively, with the Directors, the "Insureds") have been named as defendants in various civil actions relating to the collapse of Refco (the "Underlying Matters"). The Insureds have requested coverage for the Underlying Matters, including defense costs, from the insurers in the D&O "tower."

3.       Specifically, the Insureds have requested coverage under the Classic A-Side Management Liability Insurance Policy issued to Refco by XL (the "XL Policy") (attached to XL's complaint as Exhibit A) for claims made during the period from August 11, 2005 to August 11, 2006 (the "Policy Period"). The Directors provided proper and timely notice of the Underlying Matters to XL (and Refco's other D&O

insurers), and requested, among other things, that the D&O insurers advance Defense Expenses incurred in connection with the Underlying Matters.

       4.     XL has denied coverage to the Insureds and has commenced an action in this Court seeking a declaration that the XL Policy does not provide coverage to any of the Insureds for any of the Underlying Matters. Specifically, XL relies on a purported term of the XL policy referred to as the "Inverted Representation Exclusion" ("IRE"). As explained below, however, XL cannot rely on the IRE because a binding contract of insurance between XL and the Insureds was created when XL issued the Classic A-Side Management Liability Binder (the "XL Binder") on August 10, 2005 -- the day before the XL Policy's effective date. The XL Binder did *not* include the IRE and did *not* contain a knowledge exclusion or endorsement. Moreover, the XL Binder did *not* "follow the form" of the primary policy, *i.e.* incorporate its terms, issued by U.S. Specialty Insurance Company. Therefore, XL cannot disclaim coverage based on the IRE.

       5.     Further, even if the IRE were considered part of the contract of insurance, it cannot be read consistently with the purpose and terms of the XL Policy, which was intended to provide, and by its terms does provide, coverage to the Insureds for the Underlying Matters, and, at the very least, creates ambiguity that should be resolved in favor of coverage.

       6.     The Directors, therefore, seek a declaration from this Court that the XL Policy provides coverage to the Directors for any Loss arising out of the Underlying Matters, including, but not limited to Defense Expenses, as well as a permanent

injunction directing XL to advance Defense Expenses, and damages for breach of contract.

## JURISDICTION AND VENUE

7.      These counterclaims are brought pursuant to Rule 13 of the Federal Rules of Civil Procedure.

8.      This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Directors and XL and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these counterclaims occurred in this judicial district.

## PARTIES

10.      Gantcher served as a director of Refco and a member of Refco's audit committee at times relevant to this action.  He is a citizen of New York.

11.      Breitman served as a director of Refco and a member of the audit committee at times relevant to this action.  He is a citizen of Florida.

12.      Harkins served as a director of Refco at times relevant to this action.  He is a citizen of Massachusetts.

13.      Jaeckel served as a director of Refco at times relevant to this action.  He is a citizen of Massachusetts.

14.     Lee served as a director of Refco at times relevant to this action. He is a citizen of New York.

15.     O'Kelley served as a director of Refco at times relevant to this action.  He is a citizen of Florida.

16.     Schoen served as a director of Refco at times relevant to this action.  He is a citizen of Massachusetts.

17.     On information and belief, XL is an insurance company that is organized and exists under the laws of the State of Delaware with its principal place of business in Hartford, Connecticut.

## FACTUAL ALLEGATIONS

18.     XL issued the fifth excess policy in Refco's D&O insurance tower (*i.e.* the sixth tier of Refco D&O insurance) (Classic A-Side Management Liability Insurance Policy, No. ELU089673-05) with a $20 million limit of liability for the Policy Period.

19.     The XL policy was secured by Refco to protect innocent officers and directors from any losses sustained (including defense costs) as a result of any wrongful act(s) committed by other Refco officers and/or directors.

**The Insureds Are Entitled to Coverage Under The Terms of the XL Binder and XL Policy**

20.     On information and belief, on or about August 10, 2005, XL provided Refco with the XL Binder, which obligated XL to provide D&O insurance coverage in the amount of $20 million, subject to the terms and conditions specified

therein. The XL Binder created a binding contract of insurance between Refco and XL.

Coverage under the terms contained in the XL Binder was effective as of August 11,

2005, timed to put coverage in place before Refco's initial public offering of its common

stock on or about that date.

21.    The XL Binder listed twelve separate endorsements, limiting, or

conditioning the coverage provided to the Insureds. These twelve endorsements

embodied the binding terms of the contract of insurance between the Insureds and XL.

The XL Policy did *not* "follow the form" of the primary policy, *i.e.* it did not incorporate

any of the terms of the primary policy. The XL Binder did *not* include any knowledge

exclusion or endorsement.

22.    The XL Policy itself was not issued until December 2005 -- several

months after the delivery of the XL Binder <u>and</u>, on information and belief, at least two

months after several of the Underlying Matters had been commenced and notice of such

matters had been provided to the insurers in Refco's D&O insurance tower, including

XL. The XL Policy included a new term -- a knowledge exclusion or endorsement

referred to as the "Inverted Representation Endorsement" -- that was *not* part of the XL

Binder. The IRE states, in pertinent part:

> [N]o coverage will be available under this Policy for Loss . . . from
> Claims arising from any fact, circumstance or situation of which,
> as of the effective date of this Policy, any Insured had knowledge
> and had reason to suppose might afford grounds for any Claim that
> would fall within the scope of the insurance afforded by this
> Policy.

(*Id.* at Endorsement No. 13).

32

23.     Because the IRE was not included in the XL Binder, which created a binding contract of insurance between the Insureds and XL and contained *all* terms and conditions under which XL agreed to provide such coverage as of the XL policy's inception on August 11, 2005, XL cannot now rely on the IRE to disclaim coverage.

24.     Even if the IRE should be considered part of the agreement between the Insureds and XL, it cannot be read consistently with the purpose and terms of the XL Policy, which was intended to provide, and by its terms does provide, coverage to the Insureds for the Underlying Matters, and, at the very least, creates ambiguity that should be resolved in favor of coverage.

## XL's Wrongful Denials of Coverage under the XL Policy

25.     By letters dated January 24, 2006 and March 6, 2006, XL denied coverage to the Directors and the other Insureds for the Underlying Matters.  On or about April 22, 2008, XL commenced the instant action seeking a declaration that the XL Policy does not provide insurance coverage for the Underlying Matters for any of the Insureds based on the IRE.

26.     Relying on the IRE, XL contends that the Insureds are not entitled to any coverage with respect to the Underlying Matters because at least one Insured Person (*i.e.*, Bennett, Trosten, Maggio and/or Grant) had knowledge of a "fact, circumstance or situation" that gave rise to the charges or causes of action in the Underlying Matters.  (Compl. ¶ 133).

27.     As explained above, however, XL cannot rely on the IRE because a binding contract of insurance between the Insureds and XL was created on August 10,

33

2005, when the XL Binder was issued. Because the IRE did not appear in, and was not part of, the XL binder, XL cannot rely on the IRE to disclaim coverage. Further, even if the IRE should be considered part of the agreement between the Insureds and XL, it cannot be read consistently with the purpose and terms of the XL Policy and, at the very least, creates ambiguity that should be resolved in favor of coverage.

## COUNT I

### (Declaratory Relief)

28.    Directors repeat and reallege Paragraphs 1 to 27 of these Counterclaims as if fully set forth herein.

29.    This is a claim for declaratory judgment pursuant to 28 U.S.C. Section 2201 for the purpose of resolving an actual controversy between the parties that can be resolved by an order of this Court.

30.    Pursuant to the terms of the XL Binder and, to the extent consistent therewith, the XL Policy, XL is contractually obligated to provide coverage to the Directors for all Loss (as defined in the XL Policy), arising from the Underlying Matters, including, but not limited to, Defense Expenses (as defined in the XL Policy), upon exhaustion of the limits of liability of the underlying D&O insurance policies.

31.    As of the date hereof, XL has denied coverage in contravention of its contractual obligations under the XL Policy.

32.    On information and belief, Refco paid all premiums for the XL Policy and has performed all terms and conditions of the XL Policy, unless otherwise excused.

34

33.    The Directors, as Insured Persons under the XL Policy have performed all the terms and conditions of the XL Policy, unless otherwise excused.

34.    At all relevant times mentioned herein, the XL Binder and, to the extent consistent therewith, the XL Policy was, and is, in full force and effect.

35.    None of the grounds asserted by XL for the denial of coverage under the XL Policy provide a valid basis for denying coverage to the Directors.

36.    Notwithstanding XL's contentions, Bennett, Trosten, Maggio, and Grant's purported knowledge of events preceding the XL Policy's effective date is not a valid basis for XL to deny coverage to the Directors because the IRE is not properly a part of the XL Policy and is materially inconsistent with the terms set forth in the XL Binder.

37.    On information and belief, the IRE was added by XL to the XL Policy on or about December 2005 -- months after several of the Underlying Matters had commenced and notice of such proceedings had been provided to XL.  Therefore, XL is precluded from relying on the IRE to deny coverage to the Directors.

38.    Even if the IRE were properly made a part of the XL Policy, it cannot be read consistently with the purpose and terms of the XL Policy and, at the very least, creates ambiguity that should be resolved in favor of coverage.

39.    XL is required to provide coverage to the Directors for the Underlying Matters because none of the Directors had knowledge, at any time prior to the inception of the XL Policy, of any wrongdoing relating to Refco, or of any facts or

circumstances that might give rise to a Claim under the tower of D&O insurance obtained by Refco for the Policy Period.

40.     Even if the IRE were properly part of the XL Policy, it does not bar coverage for claims asserted against the Directors.

41.     Therefore, the Directors seek a declaratory judgment that XL is required to provide coverage to the Insureds under the XL Policy for all Loss arising out of the Underlying Matters and a permanent injunction directing XL to advance defense costs as they are incurred.

## COUNT II

### (Breach of Contract)

42.     Directors repeat and reallege Paragraphs 1 through 41 of these Counterclaims as if fully set forth herein.

43.     On information and belief, Refco paid all premiums for the XL Policy and has performed all of the terms and conditions of the XL Policy, unless otherwise excused.

44.     At all relevant times mentioned herein, the XL Policy was, and is, in full force and effect.

45.     Pursuant to the terms of the XL Policy, XL is contractually obligated to provide coverage to the Directors for all Loss (as defined in the XL Policy) arising from the Underlying Matters once Losses are not paid by any other policy.

46.     As of the present date, XL has wrongfully denied coverage to the Directors under the XL Policy.

47.     The Directors, as Insureds under the XL Policy, have performed all the terms and conditions of the XL Policy, unless otherwise excused.

48.     By denying coverage to the Directors for the Underlying Matters, XL has breached the XL Policy.

49.     The Directors have suffered and continue to suffer damages as a direct, proximate and consequential result of XL's breach of its contractual duties and obligations under the XL Policy in an amount to be determined at trial.

***

WHEREFORE, the Directors respectfully request entry of judgment as follows:

1.      For a judgment and decree dismissing all counts of the Complaint with prejudice; and

2.      On Count I of the Counterclaim, a judgment and decree that the Directors are entitled to coverage under the XL Policy for Loss arising out of the Underlying Matters, including, but not limited to Defense Expenses, and a permanent injunction directing XL to advance Defense Expenses as they are incurred; and

3.      On Count II of the Counterclaim, a judgment and decree awarding the Directors damages against XL for its breach of the XL Policy; and

4.      For a judgment and decree awarding the Directors costs, including attorneys' fees; and

5.      For such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

The Directors hereby demand trial by jury on all issues in the Complaint or in the

Counterclaim so triable.

Dated: July 14, 2008
      New York, New York

                          WEIL, GOTSHAL & MANGES LLP

                          s/ Michael F. Walsh
                          Greg A. Danilow
                          Michael F. Walsh
                          767 Fifth Avenue
                          New York, New York 10153
                          (212) 310-8000

                          *Attorneys for Defendants/Counterclaim*
                          *Plaintiffs Leo R. Breitman, Nathan*
                          *Gantcher, David V. Harkins, Scott L.*
                          *Jaeckel, Thomas H. Lee, Ronald L.*
                          *O'Kelley, and Scott A. Schoen*