UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

XL SPECIALTY INSURANCE COMPANY,       :
                                                                      :
                    Plaintiff,                               :
                                                                      :
          v.                                                    :
                                                                      :     No. 08-CV-3821 (GEL)
JOHN D. AGOGLIA, PHILLIP R. BENNETT,  :    *Electronically Filed*
LEO R. BREITMAN, EDWIN L. COX,          :
SUKHMEET DHILLON, THOMAS H.          :
DITTMER, NATHAN GANTCHER,              :
STEPHEN GRADY, TONE GRANT,             :
THOMAS HACKL, DAVID V. HARKINS,      :
SCOTT L. JAECKEL, DENNIS A. KLEJNA,  :
THOMAS H. LEE, ERIC G. LIPOFF, SANTO :    **ANSWER AND**
C. MAGGIO, PETER MCCARTHY, JOSEPH :    **COUNTERCLAIMS OF**
MURPHY, FRANK MUTTERER, RONALD     :    **DEFENDANT PHILIP**
L. O'KELLEY, RICHARD N. OUTRIDGE,      :    **SILVERMAN**
SCOTT A. SCHOEN, WILLIAM M. SEXTON, :
GERALD SHERER, PHILIP SILVERMAN,     :
AND ROBERT C. TROSTEN,                       :
                                                                      :
                    Defendants.                           :
                                                                      :
---------------------------------------------------------x

          Defendant Philip Silverman, by and through his attorneys, Heller Ehrman LLP, for

his answer and counterclaims to the complaint (the "Complaint") of XL Specialty

Insurance Company ("XL"), dated April 22, 2008, states as follows:

          1.          Paragraph 1 of the Complaint does not contain any factual allegations to

which a response is required.

          2.          Denies knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations of paragraph 2 of the Complaint, except admits that XL issued

a directors and officers management liability insurance policy number ELU089673-05

(the "XL Policy") to Refco Inc. ("Refco") for the period of August 11, 2005 to August 11, 2006.

3.     Denies the allegations of paragraph 3 of the Complaint to the extent they purport to describe conduct by Mr. Silverman, or purport to allege any culpability by Mr. Silverman on account of the allegations of wrongdoing contained in paragraph 3; otherwise denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of paragraph 3, except admits that the XL Policy incepted on August 11, 2005, the same date as Refco's initial public offering, and that Refco filed for Chapter 11 bankruptcy protection on October 17, 2005.

4.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 4 of the Complaint, except admits that after Refco filed for Chapter 11 bankruptcy protection, Mr. Silverman and other former Refco officers and directors were named as defendants in certain civil actions involving Refco, and refers to the pleadings in those actions for their allegations.

5.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 5 of the Complaint, except admits that Bennett, Trosten and Maggio have pled guilty to certain criminal charges asserted against them, and that Grant was convicted after a jury trial of certain charges asserted against him, and refers to the plea transcripts and the trial record for the contents thereof.

6.     Denies the allegations of paragraph 6 of the Complaint, except admits that Mr. Silverman and, upon information and belief, other of the defendants have sought

coverage under the XL Policy and that XL has denied coverage, and refers to the XL Policy for the contents thereof.

7.      Denies the allegations of paragraph 7 of the Complaint.

8.      In response to the allegations of paragraph 8 of the Complaint, admits that XL has brought this action seeking declaratory relief, but denies that XL is entitled to relief in its favor.

9.      Paragraph 9 of the Complaint contains legal conclusions that do not require a response; to the extent a response is deemed necessary, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 9, except admits that XL avers that the Court has diversity jurisdiction and admits that the amount in controversy exceeds $75,000 exclusive of interest and costs.

10.     Paragraph 10 of the Complaint contains legal conclusions that do not require a response; to the extent a response is deemed necessary, admits that XL avers that the Court has jurisdiction pursuant to 28 U.S.C. § 1367.

11.     Paragraph 11 of the Complaint contains legal conclusions that do not require a response; to the extent a response is deemed necessary, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 11, except states that Mr. Silverman does not contest personal jurisdiction as to him.

12.     Paragraph 12 of the Complaint contains legal conclusions that do not require a response; to the extent a response is deemed necessary, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of

paragraph 12, except admits that Mr. Silverman is seeking coverage in respect of lawsuits brought against him in New York.

13.    Paragraph 13 of the Complaint contains legal conclusions that do not require a response; to the extent a response is deemed necessary, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 13, except Mr. Silverman does not contest the venue of this action.

14.    Paragraph 14 of the Complaint contains a legal conclusion that does not require a response; to the extent a response is deemed necessary, denies that XL is entitled to relief in its favor.

15.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 15 of the Complaint, except admits upon information and belief that XL is an insurance company.

16.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 16 of the Complaint, except admits that at various times Agoglia served as an officer of a Refco entity.

17.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 17 of the Complaint, except admits that at various times until October 2005 Bennett was the Chairman, President and Chief Executive Officer of Refco.

18.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 18 of the Complaint, except admits that at various times Breitman served as a director of Refco.

19.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 19 of the Complaint.

20.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 20 of the Complaint.

21.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 21 of the Complaint.

22.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 22 of the Complaint, except admits that at various times Gantcher served as a director of Refco.

23.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 23 of the Complaint, except admits that at various times Grady served as an officer of a Refco entity.

24.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 24 of the Complaint, except admits that Grant at various times served as President of Refco Group Ltd., LLC.

25.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 25 of the Complaint.

26.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 26 of the Complaint, except admits that at various times Harkins served as a director of Refco.

27.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 27 of the Complaint, except admits that at various times Jaeckel served as a director of Refco.

28.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 28 of the Complaint, except admits that at various times Klejna served as Executive Vice President and General Counsel of Refco.

29.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 29 of the Complaint, except admits that at various times Lee served as a director of Refco.

30.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 30 of the Complaint, except admits that at various times Lipoff served as an officer of a Refco entity.

31.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 31 of the Complaint, except admits that at various times Maggio served as an officer of a Refco entity.

32.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 32 of the Complaint, except admits that at various times McCarthy served as an officer of a Refco entity.

33.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 33 of the Complaint, except admits that at various times Murphy served as Executive Vice President of Refco and President of Refco LLC.

34.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 34 of the Complaint, except admits that at various times Mutterer served as Controller of Refco Group Ltd., LLC.

35.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 35 of the Complaint, except admits that at various times O'Kelley served as a director of Refco.

36.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 36 of the Complaint, except admits that at various times Outridge served as Chief Financial Officer of Refco Capital Management.

37.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 37 of the Complaint, except admits that at various times Schoen served as a director of Refco.

38.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 38 of the Complaint, except admits that at various times Sexton served as Executive Vice President and Chief Operating Officer of Refco.

39.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 39 of the Complaint, except admits that at various times Sherer served as Executive Vice President and Chief Financial Officer of Refco.

40.     Denies the allegations of paragraph 40 of the Complaint, except admits that Mr. Silverman served as Secretary of Refco and is a citizen of the State of New Jersey.

41.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 41 of the Complaint, except admits that at various times Trosten served as Executive Vice President and Chief Financial Officer of Refco.

42.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 42 of the Complaint, except admits that the XL Policy is a directors and officers management liability policy with a policy period of August 11, 2005 to August 11, 2006 and a limit of $20 million, and refers to the XL Policy for the contents thereof.

43.     Denies the allegations of paragraph 43 of the Complaint, except admits that U.S. Specialty Insurance Company ("U.S. Specialty"), Lexington Insurance Company ("Lexington"), Axis Reinsurance Company ("Axis"), Allied World Assurance Company ("AWAC") and Arch Insurance Company ("Arch") have issued underlying insurance policies to Refco, and refer to those policies for the contents thereof, and also refers to the policy issued by the Illinois National Insurance Company for the contents thereof.

44.     Admits that paragraph 44 of the Complaint purports to quote from the XL Policy, and refers to the XL Policy for the contents thereof.

45.     Admits that paragraph 45 of the Complaint purports to quote from Endorsement 12 to the XL Policy, and refers to the XL Policy and Endorsement 12 for the contents thereof.

46.     Admits that the XL Policy provides coverage to Insured Persons in excess of the Underlying Coverage and admits that paragraph 46 of the Complaint purports to

quote from Endorsement 9 of the XL Policy, and refers to the XL Policy and Endorsement 9 for the contents thereof.

47.    Denies the allegations of paragraph 47 of the Complaint, and refers to the XL Policy and its endorsements for the contents thereof.

48.    Denies the allegations of paragraph 48 of the Complaint, except admits the allegations contained in the first sentence of paragraph 48 and the second and third sentences of footnote 6, denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 48, and admits, upon information and belief, the allegations contained in the third and fourth sentences of paragraph 48 and the allegations contained in footnote 8.

49.    Admits, upon information and belief, that Refco conducted its initial public offering on August 11, 2005.

50.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 50 of the Complaint, except admits upon information and belief that Refco issued a press release on October 10, 2005 and refers to that press release for the contents thereof.

51.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 51 of the Complaint, except admits upon information and belief that Refco issued a press release on October 11, 2005 and refers to that press release for the contents thereof.

52.    Admits, upon information and belief, that Refco filed for Chapter 11 bankruptcy protection on October 17, 2005.

53.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 53 of the Complaint, except admits upon information and belief that a federal grand jury returned an indictment against Bennett, Trosten and Grant on or about January 16, 2007 (the "S3 Indictment") and refers to that indictment for the contents thereof.

54.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 54 of the Complaint, except admits, upon information and belief, that Bennett and Trosten pled guilty in February 2008 to various federal charges brought against them.

55.     Denies the allegations of paragraph 55 of the Complaint insofar as they are intended to suggest any involvement or culpability by Mr. Silverman relating to the allegations of wrongdoing contained in that paragraph, and refers to the S3 Indictment for the contents thereof.

56.     Denies the allegations of paragraph 56 of the Complaint insofar as they are intended to suggest any involvement or culpability by Mr. Silverman relating to the allegations of wrongdoing contained in that paragraph, and refers to the S3 Indictment for the contents thereof.

57.     Denies the allegations of paragraph 57 of the Complaint insofar as they are intended to suggest any involvement or culpability by Mr. Silverman relating to the allegations of wrongdoing contained in that paragraph, and refers to the S3 Indictment for the contents thereof.

58.     Denies the allegations of paragraph 58 of the Complaint insofar as they are intended to suggest any involvement or culpability by Mr. Silverman relating to the allegations of wrongdoing contained in that paragraph, and refers to the S3 Indictment for the contents thereof.

59.     Denies the allegations of paragraph 59 of the Complaint insofar as they are intended to suggest any involvement or culpability by Mr. Silverman relating to the allegations of wrongdoing contained in that paragraph, and refers to the S3 Indictment for the contents thereof.

60.     Denies the allegations of paragraph 60 of the Complaint insofar as they are intended to suggest any involvement or culpability by Mr. Silverman relating to the allegations of wrongdoing contained in that paragraph, and refers to the S3 Indictment for the contents thereof.

61.     Denies the allegations of paragraph 61 of the Complaint insofar as they are intended to suggest any involvement or culpability by Mr. Silverman relating to the allegations of wrongdoing contained in that paragraph, and refers to the S3 Indictment for the contents thereof.

62.     Denies the allegations of paragraph 62 of the Complaint insofar as they are intended to suggest any involvement or culpability by Mr. Silverman relating to the allegations of wrongdoing contained in that paragraph; otherwise denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 62 of the Complaint, except admits, upon information and belief, that Bennett

pled guilty to various federal charges, and refers to the transcript of the February 15, 2008 hearing (the "Bennett Transcript") for the contents thereof.

63.     Denies the allegations of paragraph 63 of the Complaint insofar as they are intended to suggest any involvement or culpability by Mr. Silverman relating to the allegations of wrongdoing contained in that paragraph; otherwise denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 63 of the Complaint, except admits, upon information and belief, that Bennett pled guilty to various federal charges, and refers to the transcript of the February 15, 2008 hearing (the "Bennett Transcript") for the contents thereof.

64.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 64 of the Complaint, except refers to the S3 Indictment for the contents thereof.

65.     Denies the allegations of paragraph 65 of the Complaint insofar as they are intended to suggest any involvement or culpability by Mr. Silverman relating to the allegations of wrongdoing contained in paragraph 65 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 65 of the Complaint, except admits, upon information and belief, that Trosten pled guilty to various federal charges, and refers to the transcript of the February 20, 2008 hearing (the "Trosten Transcript") for the contents thereof.

66.     Denies the allegations of paragraph 66 of the Complaint insofar as they are intended to suggest any involvement or culpability by Mr. Silverman relating to the allegations of wrongdoing contained in paragraph 66 of the Complaint; otherwise denies

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 66 of the Complaint, except admits, upon information and belief, that Trosten pled guilty to various federal charges, and refers to the transcript of the February 20, 2008 hearing (the "Trosten Transcript") for the contents thereof.

67.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 67 of the Complaint, except admits, upon information and belief, that Maggio pled guilty to various federal charges, and refers to the criminal Information brought against Maggio (the "Maggio Information") for the contents thereof.

68.    Denies the allegations of paragraph 68 of the Complaint insofar as they are intended to suggest any involvement or culpability by Mr. Silverman relating to the allegations of wrongdoing contained in paragraph 68 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 68 of the Complaint, and refers to the Maggio Information for the contents thereof.

69.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 69 of the Complaint, except refers to the Maggio Information for the contents thereof.

70.    Denies the allegations of paragraph 70 of the Complaint insofar as they are intended to suggest any involvement or culpability by Mr. Silverman relating to the allegations of wrongdoing contained in paragraph 70 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations of paragraph 70 of the Complaint, except admits, upon information and belief, that Maggio pled guilty to various federal charges, and refers to the transcript of the December 19, 2007 hearing (the "Maggio Transcript") for the contents thereof.

71.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 71 of the Complaint, except admits, upon information and belief, that Maggio pled guilty to various federal charges, and refers to the Maggio Transcript for the contents thereof.

72.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 72 of the Complaint, except admits, upon information and belief, that Grant was found guilty by a jury on or around April 17, 2008.

73.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 73 of the Complaint.

74.    Admits, upon information and belief, that various lawsuits were filed against certain of the defendants beginning on or about October 12, 2005.

75.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 75 of the Complaint, and refers to the complaint filed in *United States v. Bennett*, No. 05-1720 (S.D.N.Y.) (the "Bennett Criminal Complaint") for the contents thereof.

76.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 76 of the Complaint, and refers to the Bennett Criminal Complaint, the referenced Indictments, and the Maggio Information for the contents thereof.

14

77.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 77 of the Complaint.

78.     Admits, upon information and belief, the allegations of paragraph 78 of the Complaint.

79.     Denies the allegations of paragraph 79 of the Complaint insofar as they are intended to suggest any involvement or culpability by Mr. Silverman relating to the allegations of wrongdoing contained in paragraph 79 of the Complaint, except admits that Mr. Silverman is named as a defendant in the First Amended Consolidated Class Action Complaint ("FAC") and the Second Amended Consolidated Class Action Complaint ("SAC"), and refers to the FAC and SAC for the contents thereof.

80.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 80 of the Complaint, except admits, upon information and belief, that notice was provided to XL on behalf of Mr. Silverman of claims asserted against him arising out of his employment with Refco.

81.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 81 of the Complaint.

82.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 82 of the Complaint.

83.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 83 of the Complaint.

84.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 84 of the Complaint.

85.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 85 of the Complaint.

86.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 86 of the Complaint.

87.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 87 of the Complaint.

88.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 88 of the Complaint.

89.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 89 of the Complaint.

90.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 90 of the Complaint.

91.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 91 of the Complaint.

92.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 92 of the Complaint.

93.     Admits, upon information and belief, the allegations of paragraph 93 of the Complaint.

94.     Denies the allegations of paragraph 94 of the Complaint insofar as they are intended to suggest any involvement or culpability by Mr. Silverman relating to the allegations of wrongdoing contained in paragraph 94 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations of paragraph 94 of the Complaint, and refers to the second amended

complaint for the contents thereof, and admits that Mr. Silverman originally was named

as a defendant in the American Financial Action, but states that Mr. Silverman was

dismissed as a defendant from that action.

95.    Denies knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations of paragraph 95 of the Complaint, except admits, upon

information and belief, that Mr. Silverman provided notice of the American Financial

Action.

96.    Admits, upon information and belief, the allegations of paragraph 96 of the

Complaint.

97.    Denies the allegations of paragraph 97 of the Complaint insofar as they are

intended to suggest any involvement or culpability by Mr. Silverman relating to the

allegations of wrongdoing contained in paragraph 97 of the Complaint; otherwise denies

knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations contained in paragraph 97 of the Complaint, except refers to the complaints in

the Global Management Litigation for the contents thereof, and admits that

Mr. Silverman originally was named as a defendant in the Global Management

Litigation, but states that Mr. Silverman was dismissed as a defendant from that

litigation.

98.    Denies knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations of paragraph 98 of the Complaint, except admits, upon

information and belief, that Mr. Silverman provided notice of the Global Management Litigation to XL.

99.    Denies the allegations of paragraph 99 of the Complaint insofar as they are intended to suggest any involvement or culpability by Mr. Silverman relating to the allegations of wrongdoing contained in paragraph 99 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 99 of the Complaint, except admits, upon information and belief, that on or about October 9, 2007 *VR Global Partners L.P., et al. v. Bennett, et al.*, Case No. 07-8686 (S.D.N.Y.) and *Capital Management Select Fund Ltd., et al. v. Bennett, et al.*, Case No. 07-8688 (S.D.N.Y.) were brought against various defendants including Mr. Silverman and were consolidated with the Global Management Litigation on or around November 20, 2007, and except admits that Mr. Silverman provided notice of the VR Global and Capital Management actions to XL.

100.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 100 of the Complaint.

101.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 101 of the Complaint.

102.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 102 of the Complaint.

103.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 103 of the Complaint.

104.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 104 of the Complaint.

105.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 105 of the Complaint.

106.    Denies knowledge or information sufficient to form a belief as to the truth or falsity or falsity of the allegations of paragraph 106 of the Complaint.

107.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 107 of the Complaint.

108.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 108 of the Complaint.

109.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 109 of the Complaint.

110.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 110 of the Complaint.

111.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 111 of the Complaint.

112.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 112 of the Complaint.

113.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 113 of the Complaint.

114.    No response to paragraph 114 of the Complaint is required.

115.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 115 of the Complaint.

116.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 116 of the Complaint.

117.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 117 of the Complaint.

118.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 118 of the Complaint.

119.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 119 of the Complaint.

120.    No response to paragraph 120 of the Complaint is required.

## **CLAIM FOR RELIEF**

121.    Mr. Silverman repeats and realleges his responses to paragraphs 1 through 120 of the Complaint above, inclusive.

122.    Denies the allegations of paragraph 122 of the Complaint insofar as they relate to him and denies knowledge or information sufficient to form a belief as the truth or falsity of the remaining allegations insofar as they relate to the other defendants.

123.    Denies the allegations of paragraph 123 of the Complaint.

124.    Denies the allegations of paragraph 124 of the Complaint.

125.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 125 of the Complaint.

126.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 126 of the Complaint.

127.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 127 of the Complaint.

128.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 128 of the Complaint.

129.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 129 of the Complaint.

130.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 130 of the Complaint.

131.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 131 of the Complaint.

132.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 132 of the Complaint.

133.    Denies the allegations of paragraph 133 of the Complaint.

134.    Denies the allegations of paragraph 134 of the Complaint.

135.    Denies the allegations of paragraph 135 of the Complaint.

136.    Denies the allegations of paragraph 136 of the Complaint.

137.    Denies the allegations of paragraph 137 of the Complaint.

138.    Denies the allegations of paragraph 138 of the Complaint.

## FIRST DEFENSE

139.    XL fails to state a claim against Mr. Silverman upon which relief can be granted.

## SECOND DEFENSE

140.    Upon information and belief, XL's claims against Mr. Silverman are barred, in whole or in part, by the doctrine of laches.

## THIRD DEFENSE

141.    Upon information and belief, XL's claims against Mr. Silverman are barred, in whole or in part, by the doctrine of waiver.

## FOURTH DEFENSE

142.    Upon information and belief, XL's claims against Mr. Silverman are barred, in whole or in part, by the doctrine of estoppel.

## FIFTH DEFENSE

143.    Upon information and belief, XL's claims against Mr. Silverman are barred, in whole or in part, by the doctrine of unclean hands.

## SIXTH DEFENSE

144.    Upon information and belief, XL's claims against Mr. Silverman are barred as a result of XL's inequitable conduct in connection with its purported denial of coverage under the XL Policy.

## SEVENTH DEFENSE

145.    Upon information and belief, XL's claims against Mr. Silverman are barred because XL changed the terms of the XL Policy so as to provide purported grounds to deny coverage after receiving claims under the Policy.

## COUNTERCLAIMS

Mr. Silverman (the "Counterclaim Plaintiff") alleges as follows for his counterclaims against XL:

## INTRODUCTION

1.    XL is the fifth excess insurer in the "tower" of Directors and Officers ("D&O") liability insurance obtained by Refco for the policy period beginning in August 2005.  Mr. Silverman, along with other former Refco officers and directors insured under the policies (collectively, the "Insureds"), have been named as defendants in various civil actions relating to the collapse of Refco.[1]  The Insureds have requested coverage for such actions, including defense costs, from the insurers on the D&O "tower."

2.    XL has denied coverage to the Insureds, and has commenced this action seeking a declaration that its excess D&O corporate liability insurance policy issued to Refco for claims made during the period from August 11, 2005 to August 11, 2006 (the "XL Policy") does not provide coverage to any of the Insureds in connection with the

---

[1]  Unless specifically noted otherwise, and consistent with the defined terms in the XL Complaint, the term "Refco" used throughout these Counterclaims refers to Refco Inc., the company formed pursuant to the August 2005 initial public offering, as well as Refco Group Ltd., LLC, the company through which Refco's business was conducted prior to the initial public offering.  The term "Refco" also includes subsidiaries of Refco Inc. and Refco Group Ltd., LLC.

"Underlying Matters" described in the Complaint filed by XL on or about April 22, 2008 (the "Complaint," or "Compl.").

3.      None of the grounds alleged in the Complaint provides XL with a valid basis for refusing coverage to the Counterclaim Plaintiff.  Nonetheless, it is clear that XL does not intend to honor its contractual obligations to the Counterclaim Plaintiff when the XL Policy is triggered.

4.      An actual controversy exists between the Counterclaim Plaintiff and XL. The Counterclaim Plaintiff therefore seeks a declaration from this Court that the XL Policy provides coverage for him in the "Underlying Actions" (defined below) in accordance with the requirements of the XL Policy.

## JURISDICTION AND VENUE

5.      These counterclaims are brought pursuant to Rule 13(a) of the Federal Rules of Civil Procedure inasmuch as they arise out of the same transactions or occurrences that are the subject matter of the Complaint.  This Court therefore has jurisdiction over the counterclaims because they assert claims so related to the claims already in this action that they form part of the same case or controversy under Article III of the United States Constitution.

6.      This Court also has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332.  Based on the allegations of XL in the Complaint, there is complete diversity of citizenship between the Counterclaim Plaintiff and XL.  The Counterclaim Plaintiff is a citizen of the State of New Jersey.  XL alleges that it is a corporation organized under the laws of the State of Delaware with its principal place of

business in Connecticut. The amount in controversy exceeds $75,000 exclusive of interest and costs.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these counterclaims occurred in this judicial district.

## PARTIES

8.      The Counterclaim Plaintiff is a former officer of Refco who, at times relevant to this action, served as Secretary.

9.      Upon information and belief, XL is an insurance company which, as alleged below, issued a directors and officers liability insurance policy to Refco for the benefit of Refco's officers, including the Counterclaim Plaintiff.

## GENERAL ALLEGATIONS

**A.**    **The Underlying Actions**

10.     On October 10, 2005, Refco disclosed in a press release that it had been carrying an undisclosed receivable of $430 million from an entity controlled by defendant Phillip R. Bennett ("Bennett"), the Chief Executive Officer of Refco. On October 11, 2005, Refco issued a second press release relating to the $430 million receivable.

11.     On October 17, 2005, Refco and many of its direct and indirect subsidiaries filed voluntary petitions for relief in this Court under Chapter 11 of the United States Bankruptcy Code.

12.     These events in October 2005 led to a series of civil lawsuits, government investigations and criminal proceedings against certain of the Insureds. Upon

information and belief, on or about January 16, 2007, a federal Grand Jury returned a

third superseding indictment against three Refco executives – Bennett, Robert Trosten

("Trosten") and Tone Grant ("Grant") – containing charges of, inter alia, securities fraud.

Also, upon information and belief, a criminal information was filed against a fourth

Refco executive, Santo Maggio ("Maggio"), containing similar charges.

13.    Upon information and belief, Maggio pled guilty to various federal charges

in December 2007, and Bennett and Trosten pled guilty to various federal charges in

February 2008.  Also, upon information and belief, Grant was found guilty of various

federal charges in April 2008.

14.    The Counterclaim Plaintiff has not been charged with any crimes.

However, solely on account of his services to Refco, the Counterclaim Plaintiff (along

with other Insureds) has been named as a defendant in the following civil lawsuits

brought by private plaintiffs:

(i)      In re Refco, Inc. Sec. Litig., No. 05 Civ. 8626 (GEL) (S.D.N.Y.);

(ii)     In re Refco Capital Markets, Ltd. Brokerage Customer Sec. Litig., No. 06
         Civ. 643 (GEL) (S.D.N.Y.);[2]

(iii)    American Financial International Group-Asia, LLC, et al. v. Bennett, et
         al., No. 05 Civ. 8988 (GEL) (S.D.N.Y.);[3]

(iv)     V.R. Global Partners, L.P. v. Bennett, et al., No. 07 Civ. 8686 (GEL)
         (S.D.N.Y.);

---

[2]  By order of the Court dated September 13, 2007 (published at 2007 WL 2694469), the
Counterclaim Plaintiff was dismissed as a defendant from this case.

[3]  By order of the Court dated June 14, 2007 (published at 2007 WL 1732427), the
Counterclaim Plaintiff was dismissed as a defendant from this case.

      (v)     <u>Capital Management Select Fund Ltd. v. Bennett, et al.</u>, No. 07 Civ. 8688 (GEL) (S.D.N.Y.);

These actions are collectively referred to herein as the "Underlying Actions."

      15.     The Counterclaim Plaintiff properly gave notice of each of the Underlying Actions to the insurers on the Refco "tower" of liability insurance, including XL, and requested coverage from such insurers under the policies described below.

**B.**     <u>**The Refco "Tower" of D&O Insurance**</u>

      16.     Refco procured a "tower" of D&O insurance coverage, consisting of a primary policy and five excess policies for the period beginning August 11, 2005 to August 11, 2006 (the "policy period").

<u>The U.S. Specialty Policy</u>

      17.     U.S. Specialty Insurance Company ("U.S. Specialty") issued the primary policy, Directors, Officers and Corporate Liability Insurance Policy No. 24-MGU-05-A10821, to Refco for the policy period with a $10 million limit of liability (the "U.S. Specialty Policy").

      18.     The U.S. Specialty Policy includes as "Insured Persons" under the Policy "any past, present or future director or officer of the Company [Refco]." (U.S. Specialty Policy, Definition F). The U.S. Specialty Policy provides those directors and officers with coverage for "Loss arising from Claims . . . against the Insured Persons for Wrongful Acts." (<u>Id.</u>, Insuring Agreement (A)).

      19.     U.S. Specialty recognized its coverage obligations to the Counterclaim Plaintiff as well as other Insureds. After obtaining court approval to comply with the

terms of its policy and advance defense costs to Insureds, U.S. Specialty paid the defense costs of the Insureds until the limits of the U.S. Specialty Policy were exhausted in early 2007.

The Lexington Policy

20.    Lexington Insurance Company ("Lexington") issued the first excess policy above the U.S. Specialty Policy, Directors and Officers Liability and Corporation Reimbursement Follow Form Excess Liability Policy No. 1620926, to Refco for the policy period with a $7.5 million limit of liability in excess of $10 million (the "Lexington Policy").

21.    The Lexington Policy "follows form" with the U.S. Specialty Policy.

22.    Lexington complied with its duties under the Lexington Policy and paid the defense costs of the Insureds in connection with the Underlying Actions until the limits of the Lexington Policy were exhausted in July 2007.

The Axis Policy

23.    Axis is the second excess insurer on the Refco "tower" of D&O liability insurance.  Axis issued the second excess policy above the Lexington Policy, SecurExcess Policy No. RNN 506300, to Refco for the policy period with a $10 million limit of liability in excess of $17.5 million (the "Axis Policy").

24.    Like the Lexington Policy, the Axis Policy also "follows form" to the U.S. Specialty Policy.

25.    Axis was ordered by the United States Bankruptcy Court for the Southern District of New York to advance defense costs despite its denial of coverage, and the Axis Policy has now been exhausted by reason of advancement.

The AWAC Policy

26.    Allied World Assurance Company ("AWAC") is the third excess insurer on the Refco "tower" of D&O liability insurance.  The AWAC Policy, Excess Directors and Officers Insurance and Company Reimbursement Policy No. AW0418197, was issued to Refco for the policy period with a $12.5 million limit of liability in excess of $27.5 million.

27.    The AWAC Policy also "follows form" to the U.S. Specialty Policy.

28.    In a proceeding commenced by various of the Insureds in the Bankruptcy Court, AWAC was ordered, pending a final determination of coverage or until further order, to advance defense costs despite its denial of coverage.  At present, AWAC is advancing defense costs under its Policy as ordered.

The Arch Policy

29.    Arch Insurance Company ("Arch") is the fourth excess insurer in the Refco "tower" of D&O liability insurance.  The Arch Policy, Excess Insurance Policy No. DOX0009322-00, was issued to Refco for the policy period with a $10 million limit of liability in excess of $40 million.

30.    The Arch Policy also "follows form" to the U.S. Specialty Policy.

31.    The Counterclaim Plaintiff has requested coverage for the Underlying Actions from Arch.  Arch has denied coverage to the Insureds.

32.     The Counterclaim Plaintiff and other Insureds, therefore, have sought a declaration, inter alia, that both the AWAC and Arch Policies provide coverage for them.

Coverage Provided by XL

33.     XL is the fifth excess insurer in the Refco "tower" of D&O liability insurance.  The XL Policy, Classic A-Side Management Liability Insurance Coverage Form No. ELU089673-05, was issued to Refco for the policy period with a $20 million limit, and coverage thereunder is triggered once Losses are not paid under any other policy.  Unlike the excess policies referred to above, the XL Policy does not "follow form" to the U.S. Specialty Policy

The XL Binder

34.     Upon information and belief, on or about August 10, 2005, XL provided Refco with a binder pursuant to which XL agreed to provide $20 million worth of coverage that would follow the payment of losses under the U.S Specialty, Lexington, Axis, AWAC and Arch Policies (the "XL Binder").

35.     The XL Binder lists twelve separate endorsements applicable to the XL Policy.  The so-called "Inverted Representation Endorsement" (the "IRE") (discussed below) was not included among the twelve endorsements listed in the XL Binder; nor was the IRE referred to elsewhere in the XL Binder.

36.     Upon information and belief, Refco paid the premium quoted in the XL Binder (i.e., $370,300) and thereby obtained coverage from XL in accordance therewith.

The Belated Issuance of the XL Policy

37.    Although the XL Policy incepted on August 11, 2005, upon information and belief, XL did not issue its policy until December 2005.

38.    Upon information and belief, XL did not issue its policy until two months after several of the Underlying Actions were commenced, and notice of such actions had been provided to the insurers in the "tower" of Refco D&O liability insurance, including XL.

39.    The XL Policy defines an "Insured Person" under the Policy as "any past, present, or future director or officer . . . of the Company [Refco]."  (XL Policy, at II. Definitions (I)(1)).  The XL Policy provides those directors and officers with coverage for "Loss resulting from a Claim first made against the Insured Persons during the Policy Period . . . for a Wrongful Act . . . ."  (Id. at I. Insuring Agreement).

40.    The XL Policy defines "Loss" broadly as "damages, judgments, settlements or other amounts . . . and Defense Expenses that the Insured Persons are obligated to pay."  (See id. at II. Definitions (K)).

41.    Each of the Underlying Actions is a "Claim" against the Counterclaim Plaintiff (and, as applicable, other Insureds) for "Wrongful Acts" covered by the Insuring Agreement of the XL Policy.  (See id. at II. Definitions (C) and (P)).

Severability Provisions Contained in the XL Policy

42.    The XL Policy contains a "severability" provision that includes the following:  "No knowledge or information possessed by any Insured Person will be imputed to any other Insured Person for the purposes of determining the availability of

coverage with respect to Claims made against any other Insured Persons."  (<u>Id.</u> at IV.

Conditions (K) Representation Clause).

43.    The XL Policy also includes a second "severability" provision:  "No

conduct of any Insured Person will be imputed to any other Insured Person to determine

the application of any of the above EXCLUSIONS."  (<u>Id.</u> at III. Exclusions).  (Together,

with the first "severability" provision, the "Severability Provisions").

**C.    <u>Wrongful Attempts by XL to Avoid Coverage under the XL Policy</u>**

<u>The January 24, 2006 XL Letter</u>

44.    By letter dated January 24, 2006 (the "January 24, 2006 XL Letter"), XL

purported to deny coverage to the Counterclaim Plaintiff and the other Insureds for the

Lawsuits, identified in the letter as seventeen lawsuits filed in connection with the alleged

Refco fraud.

<u>The IRE as an Alleged Ground Upon Which to Deny Coverage</u>

45.    In the January 24, 2006 XL Letter, XL asserted several alleged grounds for

its denial of coverage, including but not limited to what XL identified as Endorsement

No. 13 to the XL Policy, referred to as the IRE.

46.    The IRE states in pertinent part that:

> [N]o coverage will be available under this Policy for Loss . . . from
> Claims arising from any fact, circumstance or situation of which, as
> of the effective date of this Policy, any Insured had knowledge and
> had reason to suppose might afford grounds for any Claim that
> would fall within the scope of the insurance afforded by this Policy.

(<u>Id.</u> at Endorsement No. 13).

47.    The January 24, 2006 XL Letter states, "[g]iven that Mr. Bennett (if not others) had knowledge of the hidden receivable as of August 11, 2005, the [XL] Policy's Inverted Representation Endorsement bars coverage for each of the Lawsuits."  (Id.).

The IRE was Improperly Added to the Policy and Does Not Apply

48.    Upon information and belief, the IRE did not appear in and was not part of the XL Binder – the operative agreement between the parties when the first of the Underlying Actions were commenced.

49.    Thus, the IRE is not properly a part of the XL Policy, and, as such, it is not operative and cannot bar coverage to the Counterclaim Plaintiff.

The IRE Directly Conflicts with the Severability Provisions

50.    Even if the IRE was properly made a part of the XL Policy – which it was not – it directly conflicts with the Severability Provisions contained in the XL Policy, and it does not purport to replace or supersede the Severability Provisions.

51.    As set forth above, the Severability Provisions provide that "[n]o knowledge or information possessed by any Insured Person" and "[n]o conduct of any Insured Person" will be imputed to any other Insured for purposes of making a coverage determination.  (XL Policy, at IV, Conditions (K) Representation Clause; III. Exclusions).

52.    Thus, even if the IRE were operative – which it is not – pursuant to the Severability Provisions, XL cannot rely on the knowledge of one Insured (e.g., Bennett) to deny coverage to another Insured (e.g., the Counterclaim Plaintiff).

The Claim Made Argument

53.    The January 24, 2006 XL Letter also denied coverage for several of the Lawsuits (as defined in that letter) on the ground that each was sufficiently related to a "Claim" first made prior to the inception date of the XL Policy (i.e., prior to August 11, 2005).  The January 24, 2006 Letter contended that several of the Lawsuits involved the same "Wrongful Acts" or "Interrelated Wrongful Acts" as the acts giving rise to a claim in an action filed by the Bankruptcy Trust of Gerard Sillam (the Sillam action), so that each could be treated as a single Claim made prior to the policy period.  (Ex. C, at pp. 8-10).  Upon information and belief, the Underlying Actions are not related in any way to the June 2005 complaint in the Sillam action.

The March 6, 2006 Letter

54.    By a second letter dated March 6, 2006 (the "March 6, 2006 XL Letter"), XL purported to deny coverage to the Counterclaim Plaintiff, and the other Insureds, for the Newly Noticed Matters, identified in that letter as seven additional matters filed in connection with the alleged Refco fraud.

55.    The March 6, 2006 XL Letter purported to deny coverage for all of the Newly Noticed Matters for the same reasons that XL denied coverage for the "previously noticed matters."

**D.    The XL Declaratory Judgment Action**

56.    On or about April 22, 2008, XL commenced the instant action, seeking a declaration that the XL Policy does not provide insurance coverage for any of the Insureds in connection with the Underlying Matters.

34

57.    The Underlying Matters, as defined in the Complaint, include all of the Lawsuits and the Newly Noticed Matters identified in the January 24, 2006 and the March 6, 2006 XL Letters, the Underlying Actions defined herein, and "any other notice of claim or potential claim" and "any additional civil, criminal or regulatory actions" instituted or coming to the attention of XL after the filing of the Complaint "to the extent they arise out of the same or related transactions or occurrences raised in the Underlying Matters."  (Compl., ¶¶ 74-120).

58.    XL contends that no coverage for any Loss is afforded to any Insured with respect to the Underlying Matters because at least one Insured Person (i.e., Bennett, Trosten, Maggio and/or Grant) had knowledge of a "fact, circumstance or situation" that gave rise to the charges or causes of action in the Underlying Matters.  (Compl., ¶ 133).

## COUNT I

### (Declaratory Relief)

59.    Counterclaim Plaintiff repeats and realleges paragraphs 1 through 58 of these Counterclaims as if fully set forth herein.

60.    Pursuant to the terms of the XL Policy, XL is contractually obligated to provide coverage to the Counterclaim Plaintiff for all Loss (as defined in the XL Policy) arising from the Underlying Actions once coverage is triggered.

61.    As of the present date, XL has denied its contractual obligations and has denied coverage under the XL Policy.

62.    Upon information and belief, Refco paid all premiums for the XL Policy and has performed all of the terms and conditions of the XL Policy on its part to be performed, unless otherwise excused.

63.    Counterclaim Plaintiff, as an Insured under the XL Policy, and therefore, a party to the insurance contract, has performed all the terms and conditions of the XL Policy on his part to be performed, unless otherwise excused.

64.    At all relevant times mentioned herein, the XL Binder and/or the XL Policy was, and is, in full force and effect.

65.    None of the grounds asserted by XL for the denial of coverage under the XL Policy provides a valid basis for denying coverage to the Counterclaim Plaintiff.

66.    An actual controversy exists between XL and the Counterclaim Plaintiff as to whether the Counterclaim Plaintiff is entitled to coverage for the Underlying Actions under the XL Policy, and judicial resolution of the parties' rights and obligations is necessary.

67.    This Court should issue a judgment declaring that the Counterclaim Plaintiff is entitled to coverage under the XL Policy for Loss arising out of the Underlying Actions.

## COUNT II

### (Injunctive Relief)

68.    Counterclaim Plaintiff repeats and realleges paragraphs 1 through 67 of these Counterclaims as if fully set forth herein.

69.    XL will become obligated to make payments to the Counterclaim Plaintiff for Losses in the Underlying Actions in accordance with the XL Policy.

70.    The Counterclaim Plaintiff is entitled to permanent injunctive relief requiring XL to make such payments in accordance with XL's contractual obligations.

## COUNT III

### (Breach of Contract)

71.    Counterclaim Plaintiff repeats and realleges paragraphs 1 through 70 of these Counterclaims as if fully set forth herein.

72.    Pursuant to the terms of the XL Policy, XL is contractually obligated to provide coverage to the Counterclaim Plaintiff for all Loss (as defined in the XL Policy) arising from the Underlying Actions once Losses are not paid by any other policy.

73.    As of the present date, XL has denied its contractual obligations and has denied coverage under the XL Policy.

74.    Upon information and belief, Refco paid all premiums for the XL Policy and has performed all of the terms and conditions of the XL Policy on its part to be performed, unless otherwise excused.

75.    Counterclaim Plaintiff, as an Insured under the XL Policy, has performed all the terms and conditions of the XL Policy on his part to be performed, unless otherwise excused.

76.    At all relevant times mentioned herein, the XL Policy was, and is, in full force and effect.

77.     None of the grounds asserted by XL for the denial of coverage under the XL Policy provides a valid basis for denying coverage to Counterclaim Plaintiff.

78.     By denying coverage to Counterclaim Plaintiff for the Underlying Actions, XL has breached the XL Policy.

79.     Counterclaim Plaintiff has suffered and continues to suffer damages as a direct and consequential result of XL's breach of its contractual duties and obligations under the XL Policy.

80.     Counterclaim Plaintiff is entitled to recover his damages from XL under the terms of the XL Policy in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiff Philip Silverman respectfully requests entry of judgment in his favor as follows:

1.     Dismissing the Complaint with prejudice;

2.     On Count I of the Counterclaims, declaring that the Counterclaim Plaintiff is entitled to coverage under the XL Policy for Loss arising out of the Underlying Actions, including but not limited to Defense Costs;

3.     On Count II of the Counterclaims, requiring XL to make payments to the Counterclaim Plaintiff for Loss in the Underlying Actions, in accordance with the XL Policy;

4.     On Count III of the Counterclaims, awarding Counterclaim Plaintiff damages against XL for its breach of the XL Policy;

5.     Awarding the Counterclaim Plaintiff his attorneys' fees and costs and disbursements of this action; and

6.     Granting such other and further relief as the Court may deem proper.

## JURY DEMAND

Counterclaim Plaintiff hereby demands trial by jury on all issues in the Complaint or in the Counterclaims so triable.


Dated: July 14, 2008                    HELLER EHRMAN LLP
      New York, New York


By _____/s/ Richard Cashman_____
    Lawrence J. Zweifach
    lawrence.zweifach@hellerehrman.com
    Richard Cashman
    richard.cashman@hellerehrman.com
    Eric Creizman
    eric.creizman@hellerehrman.com

Times Square Tower
7 Times Square
New York, New York  10036-6524
Tel.: (212) 832-8300
Fax: (212) 763-7600


*Attorneys for Defendant Philip Silverman*

NY 801156 v1