UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                            :
XL SPECIALTY INSURANCE COMPANY,                             :
                                                            :
                              Plaintiff,                    :        No. 08 Civ. 3821 (GEL)
                                                            :
            -v-                                             :
                                                            :
JOHN D. AGOGLIA, PHILLIP R. BENNETT,                        :
LEO R. BREITMAN, EDWIN L. COX,                              :
SUKHMEET DHILLON, THOMAS H. DITTMER,:                       **ANSWER AND**
NATHAN GANTCHER, STEPHEN GRADY,                             :        **COUNTERCLAIMS**
TONE N. GRANT, THOMAS HACKL,                                :        **OF DEFENDANTS**
DAVID V. HARKINS, SCOTT L. JAECKEL,                         :        **JOHN D. AGOGLIA**
DENNIS A. KLEJNA, THOMAS A. LEE,                            :        **AND PETER MCCARTHY**
ERIC G. LIPOFF, SANTO C. MAGGIO,                            :
PETER McCARTHY, JOSEPH MURPHY,                              :
FRANK MUTTERER, RONALD L. O'KELLEY,                         :
RICHARD N. OUTRIDGE, SCOTT A. SCHOEN,                       :
WILLIAM M. SEXTON, GERALD SHERER,                           :
PHILIP SILVERMAN AND                                        :
ROBERT C. TROSTEN,                                          :
                                                            :
                              Defendants.                   :
------------------------------------------------------------X

            Defendants John D. Agoglia ("Agoglia") and Peter McCarthy

("McCarthy"), by and through their attorneys, Gage Spencer & Fleming LLP, state as

follows for their Answer to the Complaint of plaintiff XL Specialty Insurance Company

("XL"), dated April 22, 2008, in the above-captioned action (the "Complaint"):

            1.     No response is required for paragraph 1 of the Complaint.

            2.     Deny the allegations of paragraph 2 of the Complaint, except admit

that XL issued a directors and officers management liability policy number ELU089673-

05 to Refco Inc. ("Refco") for the period of August 11, 2005 to August 11, 2006 (the

"XL Policy").

3.    Deny the allegations of paragraph 3 of the Complaint.

4.    Deny the allegations of paragraph 4 of the Complaint.

5.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5 of the Complaint.

6.    Deny the allegations of paragraph 6 of the Complaint, except admit that McCarthy and Agoglia have sought coverage under the XL Policy and that XL has denied coverage, and refer to the XL Policy for the contents thereof.

7.    Deny the allegations of paragraph 7 of the Complaint.

8.    Deny the allegations of paragraph 8 of the Complaint, and refer to the Complaint for the contents thereof.

9.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9 of the Complaint.

10.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10 of the Complaint.

11.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11 of the Complaint.

12.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12 of the Complaint.

13.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13 of the Complaint.

14.    Deny the allegations of paragraph 14 of the Complaint.

15.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15 of the Complaint.

16.     Deny the allegations of paragraph 16 of the Complaint except admit that Agoglia served for a period of time as senior vice president of Refco Securities, LLC and resides in New York State.

17.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17 of the Complaint.

18.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18 of the Complaint.

19.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19 of the Complaint.

20.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20 of the Complaint.

21.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21 of the Complaint.

22.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 of the Complaint.

23.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23 of the Complaint.

24.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24 of the Complaint.

25.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25 of the Complaint.

26.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26 of the Complaint.

27.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27 of the Complaint.

28.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 28 of the Complaint.

29.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29 of the Complaint.

30.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 30 of the Complaint.

31.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 31 of the Complaint.

32.     Deny the allegations of paragraph 32 except admit that McCarthy served for a period of time as Executive Vice President of Refco Securities, LLC.

33.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33 of the Complaint.

34.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 34 of the Complaint.

35.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 35 of the Complaint.

36.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 36 of the Complaint.

37.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 37 of the Complaint.

38.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38 of the Complaint.

39.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 39 of the Complaint.

40.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 40 of the Complaint.

41.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41 of the Complaint.

42.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 42 of the Complaint, and refer to the XL Policy for the contents thereof.

43.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 43 of the Complaint, except admit that U.S. Specialty Insurance Company ("U.S. Specialty"), Lexington Insurance Company ("Lexington"), Axis Reinsurance Company ("Axis"), Allied World Assurance Company ("AWAC") and Arch Insurance Company ("Arch") have issued underlying insurance policies to Refco, and refer to those policies for the contents thereof.

44.    Deny the allegations of paragraph 44 of the Complaint, except admit that the XL Policy affords coverage to insured persons and refer to the XL Policy for the contents thereof.

45.    Deny the allegations of paragraph 45 of the Complaint, and refer to the XL Policy for the contents thereof.

46.    Deny the allegations of paragraph 46 of the Complaint, and refer to

the XL Policy for the contents thereof.

47.    Deny the allegations of paragraph 47 of the Complaint, except admit that the XL Policy does not "follow form" to the underlying policies, and refer to the XL Policy for the contents thereof.

48.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 48 of the Complaint.

49.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 49 of the Complaint.

50.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 50 of the Complaint.

51.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 51 of the Complaint.

52.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 52 of the Complaint, except admit that Refco and certain of its affiliates filed for Chapter 11 bankruptcy protection in or around 2005.

53.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 53 of the Complaint.

54.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 54 of the Complaint.

55.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 55 of the Complaint.

56.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 56 of the Complaint.

57.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 57 of the Complaint.

58.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 58 of the Complaint.

59.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 59 of the Complaint.

60.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 60 of the Complaint.

61.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 61 of the Complaint.

62.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 62 of the Complaint.

63.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 63 of the Complaint.

64.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 64 of the Complaint.

65.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 65 of the Complaint.

66.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 66 of the Complaint.

67.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 67 of the Complaint.

68.     Deny knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 68 of the Complaint.

69.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 69 of the Complaint.

70.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 70 of the Complaint.

71.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 71 of the Complaint.

72.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 72 of the Complaint.

73.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 73 of the Complaint.

74.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 74 of the Complaint.

75.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 75 of the Complaint.

76.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 76 of the Complaint.

77.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 77 of the Complaint.

78.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 78 of the Complaint.

79.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 79 of the Complaint.

80.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 80 of the Complaint.

81.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 81 of the Complaint.

82.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 82 of the Complaint.

83.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 83 of the Complaint.

84.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 84 of the Complaint.

85.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 85 of the Complaint.

86.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 86 of the Complaint.

87.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 87 of the Complaint.

88.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 88 of the Complaint.

89.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 89 of the Complaint.

90.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 90 of the Complaint.

91.    Deny knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 91 of the Complaint.

92.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 92 of the Complaint.

93.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 93 of the Complaint.

94.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 94 of the Complaint.

95.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 95 of the Complaint.

96.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 96 of the Complaint.

97.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 97 of the Complaint.

98.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 98 of the Complaint.

99.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 99 of the Complaint.

100.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 100 of the Complaint.

101.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 101 of the Complaint.

102.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 102 of the Complaint.

103.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 103 of the Complaint.

104.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 104 of the Complaint.

105.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 105 of the Complaint.

106.    Admit the allegations of paragraph 106 of the Complaint.

107.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 107 of the Complaint, except admit that Agoglia and McCarthy were named as defendants in that action and refer to the complaint in that action for the contents thereof.

108.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 108 of the Complaint, except admit that Agoglia and McCarthy provided notice of that action to XL.

109.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 109 of the Complaint.

110.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 110 of the Complaint.

111.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 111 of the Complaint.

112.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 112 of the Complaint.

113.    Deny knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 113 of the Complaint.

114.   No response is required for paragraph 114 of the Complaint.

115.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 115 of the Complaint.

116.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 116 of the Complaint.

117.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 117 of the Complaint.

118.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 118 of the Complaint.

119.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 119 of the Complaint.

120.   No response is required for paragraph 120 of the Complaint.

## CLAIM FOR RELIEF

121.   Repeat and reallege each response to paragraphs 1 through 120 above.

122.   Deny the allegations of paragraph 122 of the Complaint.

123.   Deny the allegations of paragraph 123 of the Complaint.

124.   Deny the allegations of paragraph 124 of the Complaint.

125.   Deny the allegations of paragraph 125 of the Complaint.

126.   Deny the allegations of paragraph 126 of the Complaint.

127.   Deny the allegations of paragraph 127 of the Complaint.

128.   Deny the allegations of paragraph 128 of the Complaint.

129.    Deny the allegations of paragraph 129 of the Complaint.

130.    Deny the allegations of paragraph 130 of the Complaint.

131.    Deny the allegations of paragraph 131 of the Complaint.

132.    Deny the allegations of paragraph 132 of the Complaint.

133.    Deny the allegations of paragraph 133 of the Complaint.

134.    Deny the allegations of paragraph 134 of the Complaint.

135.    Deny the allegations of paragraph 135 of the Complaint.

136.    Deny the allegations of paragraph 136 of the Complaint.

137.    Deny the allegations of paragraph 137 of the Complaint.

138.    Deny the allegations of paragraph 138 of the Complaint.

## FIRST AFFIRMATIVE DEFENSE

139.    The Complaint fails to state a cause of action against either Agoglia or McCarthy upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

140.    The Complaint is barred as against either Agoglia or McCarthy in whole or in part by the doctrine of unclean hands.

## THIRD AFFIRMATIVE DEFENSE

141.    The Complaint is barred as against either Agoglia or McCarthy in whole or in part by the doctrines of res judicata and/or collateral estoppel.

## FOURTH AFFIRMATIVE DEFENSE

142.    The Complaint is barred as against either Agoglia or McCarthy in whole or in part by the doctrines of estoppel, waiver, and laches.

## FIFTH AFFIRMATIVE DEFENSE

143.    The Complaint is barred as against either Agoglia or McCarthy as a result of XL's inequitable conduct in connection with its purported denial of coverage under the XL Policy.

### SIXTH AFFIRMATIVE DEFENSE

144.    The Complaint is barred as against either Agoglia or McCarthy because XL has unilaterally changed the terms of the XL Policy so as to provide purported grounds to deny coverage after receiving claims under the Policy.

### COUNTERCLAIMS

Agoglia and McCarthy (collectively, the "Counterclaim Plaintiffs"), by and through their attorneys, Gage Spencer & Fleming LLP, allege as follows for their counterclaims against XL Specialty Insurance Company ("XL"):

### INTRODUCTION

1.    XL is the fifth excess insurer in the "tower" of Directors and Officers ("D&O") liability insurance obtained by Refco for the policy period beginning in August 2005. The Counterclaim Plaintiffs, along with other former Refco officers and directors insured under the policies (collectively, the "Insureds"), have been named as defendants in various civil actions relating to the collapse of Refco.[1] The Insureds have requested coverage for such actions, including defense costs, from the insurers on the D&O "tower."

2.    XL has denied coverage to the Insureds, and has commenced this

---

[1]    Unless specifically noted otherwise, and consistent with the defined terms in the XL Complaint, the term "Refco" used throughout these Counterclaims refers to Refco, Inc., the company formed pursuant to the August 2005 initial public offering, as well as Refco Group Ltd., LLC, the company through which Refco's business was conducted prior to the initial public offering. The term "Refco" also includes subsidiaries of Refco, Inc. and Refco Group Ltd., LLC.

action seeking a declaration that its excess D&O corporate liability insurance policy issued to Refco for claims made during the period from August 11, 2005 to August 11, 2006 (the "XL Policy") does not provide coverage to any of the Insureds in connection with the "Underlying Matters" described in the Complaint filed by XL on or about April 22, 2008 (the "Complaint," or "Compl.").

3.     None of the grounds alleged in the Complaint provides XL with a valid basis for refusing coverage to the Counterclaim Plaintiffs. Nonetheless, it is clear that XL does not intend to honor its contractual obligations to the Counterclaim Plaintiffs when the XL Policy is triggered.

4.     An actual controversy exists between the Counterclaim Plaintiffs and XL. The Counterclaim Plaintiffs seek a declaration from this Court that the XL Policy provides coverage for them in the Underlying Matters and the Underlying Actions (defined herein) in accordance with the requirements of the XL Policy.

## JURISDICTION AND VENUE

5.     These counterclaims are brought pursuant to Rule 13 of the Federal Rules of Civil Procedure.

6.     This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the Counterclaim Plaintiffs and XL, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these counterclaims occurred in this judicial district.

## PARTIES

8.    Counterclaim Plaintiff Agoglia was, at times relevant to this action, a Senior Vice President for Refco Securities LLC.  Agoglia is a resident of the State of New York.

9.    Counterclaim Plaintiff McCarthy was, at times relevant to this action, an Executive Vice President for Refco Securities LLC.  McCarthy is a resident of the State of New Jersey.

10.    Upon information and belief, XL is an insurance company that is organized and exists pursuant to the laws of the State of Delaware and has its principal place of business in Connecticut.

## GENERAL ALLEGATIONS

### A.    The Underlying Actions

11.    On October 10, 2005, Refco disclosed in a press release that it had been carrying an undisclosed receivable of $430 million from an entity controlled by defendant Phillip R. Bennett ("Bennett"), the Chief Executive Officer of Refco.  On October 11, 2005, Refco issued a second press release relating to the $430 million receivable.

12.    On October 17, 2005, Refco and many of its direct and indirect subsidiaries filed voluntary petitions for relief in this Court under Chapter 11 of the United States Bankruptcy Code.

13.    These events in October 2005 led to a series of civil lawsuits, government investigations and criminal proceedings against certain of the Insureds. Upon information and belief, on or about January 16, 2007, a federal Grand Jury returned

a third superseding indictment against three Refco executives – Bennett, Robert Trosten ("Trosten") and Tone Grant ("Grant") – containing charges of, inter alia, securities fraud. Also, upon information and belief, a criminal information was filed against a fourth Refco executive, Santo Maggio ("Maggio"), containing similar charges.

14.    Upon information and belief, Maggio pled guilty to various federal charges in December 2007, and Bennett and Trosten pled guilty to various federal charges in February 2008. Also, upon information and belief, Grant was found guilty of various federal charges in April 2008.

15.    The Counterclaim Plaintiffs have not been charged with any crimes. However, solely on account of their services to Refco, the Counterclaim Plaintiffs (along with other Insureds) have been named as defendants in an action captioned Kirschner v. Agoglia, et al., Adv. Proc. No. 07-3060 (RDD) (Bankr. S.D.N.Y.) (hereinafter the "Underlying Action" or, including the other litigations involving other Insureds, the "Underlying Actions").

16.    The Counterclaim Plaintiffs properly gave notice of the Underlying Action to the insurers on the Refco "tower" of liability insurance, including XL, and requested coverage from such insurers under the policies described below.

**B.    The Refco "Tower" of D&O Insurance**

17.    As indicated above, Refco procured a "tower" of D&O insurance coverage. Such coverage consists of a primary policy and five excess policies for the period beginning August 11, 2005 to August 11, 2006 (the "policy period").

The U.S. Specialty Policy

18.    U.S. Specialty Insurance Company ("U.S. Specialty") issued the primary policy, Directors, Officers and Corporate Liability Insurance Policy No. 24-MGU-05-A10821, to Refco for the policy period with a $10 million limit of liability (the "U. S. Specialty Policy").

19.    The U.S. Specialty Policy provides directors and officers with coverage for "Loss arising from Claims . . . against the Insured Persons for Wrongful Acts."

20.    U.S. Specialty recognized its coverage obligations to the Counterclaim Plaintiffs as well as other Insureds.  After obtaining approval from this Court to comply with the terms of its policy and advance defense costs to Insureds, U.S. Specialty paid the defense costs of the Insureds until the limits of the U.S. Specialty Policy were exhausted in early 2007.

The Lexington Policy

21.    Lexington Insurance Company ("Lexington") issued the first excess policy above the U.S. Specialty Policy, Directors and Officers Liability and Corporation Reimbursement Follow Form Excess Liability Policy No. 1620926, to Refco for the policy period with a $7.5 million limit of liability in excess of $10 million (the "Lexington Policy").

22.    The Lexington Policy "follows form" with the U.S. Specialty Policy.

23.    Lexington complied with its duties under the Lexington Policy and paid the defense costs of the Insureds in connection with the Underlying Actions until the limits of the Lexington Policy were exhausted in July 2007.

The Axis Policy

24.     Axis is the second excess insurer on the Refco "tower" of D&O liability insurance. Axis issued the second excess policy above the Lexington Policy, SecurExcess Policy No. RNN 506300, to Refco for the policy period with a $10 million limit of liability in excess of $17.5 million (the "Axis Policy").

25.     Like the Lexington Policy, the Axis Policy also "follows form" to the U.S. Specialty Policy.

26.     Axis was ordered by the United States Bankruptcy Court for the Southern District of New York to advance defense costs despite its denial of coverage, and the Axis Policy has now been exhausted by reason of advancement.

The AWAC Policy

27.     Allied World Assurance Company ("AWAC") is the third excess insurer on the Refco "tower" of D&O liability insurance. The AWAC Policy, Excess Directors and Officers Insurance and Company Reimbursement Policy No. AW0418197, was issued to Refco for the policy period with a $12.5 million limit of liability in excess of $27.5 million.

28.     The AWAC Policy also "follows form" to the U.S. Specialty Policy.

29.     In a proceeding commenced by various of the Insureds in the Bankruptcy Court, AWAC was ordered, pending a final determination of coverage or until further order, to advance defense costs despite its denial of coverage. At present, the AWAC Policy is being depleted.

The Arch Policy

30.    Arch Insurance Company ("Arch") is the fourth excess insurer in the Refco "tower" of D&O liability insurance. The Arch Policy, Excess Insurance Policy No. DOX0009322-00, was issued to Refco for the policy period with a $10 million limit of liability in excess of $40 million.

31.    The Arch Policy also "follows form" to the U.S. Specialty Policy.

32.    The Insureds have requested coverage for the Underlying Actions, including advancement of their defense costs, from Arch. Arch has denied coverage to the Insureds, and it has refused to advance any defense costs.

33.    The Insureds have, therefore, sought a declaration, inter alia, that both the AWAC and Arch Policies provide coverage for them for the Underlying Actions.

Coverage Provided by XL

34.    XL is the fifth excess insurer in the Refco "tower" of D&O liability insurance. The XL Policy, Class A-Side Management Liability Insurance Coverage Form No. ELU089673-05, was issued to Refco for the policy period with a $20 million limit, and coverage thereunder is triggered once Losses are not paid under any other policy. Unlike the excess policies referred to above, the XL Policy does not "follow form" to the U.S. Specialty Policy.

The XL Binder

35.    Upon information and belief, on or about August 10, 2005, XL provided Refco with a binder pursuant to which XL agreed to provide $20 million worth of coverage that would follow the payment of losses under the U.S Specialty, Lexington, Axis, AWAC and Arch Policies (the "XL Binder").

36.    The XL Binder lists twelve separate endorsements applicable to the XL Policy.    The so-called "Inverted Representation Endorsement" (the "IRE") (discussed below) was not included among the twelve endorsements listed in the XL Binder; nor was the IRE referred to elsewhere in the XL Binder.

37.    Upon information and belief, Refco paid the premium quoted in the XL Binder (i.e., $370,300) and thereby obtained coverage from XL in accordance therewith.

The Belated Issuance of the XL Policy

38.    Although the XL Policy incepted on August 11, 2005, upon information and belief, it was not actually issued until December 2005.

39.    Upon information and belief, therefore, the actual issuance of the XL Policy occurred two months after several of the Underlying Actions were commenced, and notice of such actions had been provided to the insurers in the "tower" of Refco D&O liability insurance, including XL.

40.    The XL Policy names an "Insured Person" under the Policy as "any past, present, or future director or officer . . . of the Company." The XL Policy provides those directors and officers with coverage for "Loss resulting from a Claim first made against the Insured Persons during the Policy Period . . . for a Wrongful Act . . . ."

41.    "Loss" is defined broadly as "damages, judgments, settlements or other amounts . . . and Defense Expenses that the Insured Persons are obligated to pay."

42.    Each of the Underlying Actions is a "Claim" against the Counterclaim Plaintiffs (and, as applicable, other Insureds) for "Wrongful Acts" covered by the Insuring Agreement of the XL Policy.

Severability Provisions Contained in the XL Policy

43.    The XL Policy contains a "severability" provision that states: "No knowledge or information possessed by any Insured Person will be imputed to any other Insured Person for the purposes of determining the availability of coverage with respect to Claims made against any other Insured Persons."

44.    The XL Policy also includes a second "severability" provision: "No conduct of any Insured Person will be imputed to any other Insured Person to determine the application of any of the above EXCLUSIONS." (Together, with the first "severability" provision, the "Severability Provisions").

XL's Improper Attempt to Add the IRE to the XL Policy

45.    Upon information and belief, when XL issued the XL Policy in December 2005, it attempted to add the IRE to the policy, despite the fact that the IRE was not included or referred to in the XL Binder.

46.    The IRE states in pertinent part that:

> [N]o coverage will be available under this Policy for Loss . . . from Claims arising from any fact, circumstance or situation of which, as of the effective date of this Policy, any Insured had knowledge and had reason to suppose might afford grounds for any Claim that would fall within the scope of the insurance afforded by this Policy.

**C.    Wrongful Attempts by XL to Avoid Coverage under the XL Policy**

The January 24, 2006 XL Letter

47.    On information and belief, by letter dated January 24, 2006 (the "January 24, 2006 XL Letter"), XL purported to deny coverage to the Counterclaim Plaintiffs and the other Insureds for the Lawsuits, identified in the letter as seventeen lawsuits filed in connection with the Refco fraud.

The IRE as an Alleged Ground Upon Which to Deny Coverage

48.     On information and belief, in the January 24, 2006 XL Letter, XL
asserted several alleged grounds for its denial of coverage, including but not limited to
the purported IRE.

49.     On information and belief, the January 24, 2006 XL Letter states,
"[g]iven that Mr. Bennett (if not others) had knowledge of the hidden receivable as of
August 11, 2005, the [XL] Policy's Inverted Representation Endorsement bars coverage
for each of the Lawsuits."

The IRE was Improperly Added to the Policy and Does Not Apply

50.     The IRE, however, did not appear in and was not part of the XL
Binder – the operative agreement between the parties.

51.     Upon information and belief, XL unilaterally added the IRE to the
XL Policy in an improper attempt to avoid coverage for the noticed Underlying Actions
and Underlying Matters.

52.     Thus, the IRE is not properly a part of the XL Policy, and, as such,
it is not operative and cannot bar coverage to the Counterclaim Plaintiffs.

The IRE Directly Conflicts with the Severability Provisions

53.     Even if the IRE was properly made a part of the XL Policy – which
it was not – it directly conflicts with the Severability Provisions contained in the XL
Policy, and it does not purport to replace or supersede the Severability Provisions.

54.     As set forth above, the Severability Provisions provide that "[n]o
knowledge or information possessed by any Insured Person" and "[n]o conduct of any

Insured Person" will be imputed to any other Insured for purposes of making a coverage determination.

55.    Thus, even if the IRE were operative – which it is not – pursuant to the Severability Provisions, XL cannot rely on the knowledge of one Insured (e.g., Bennett) to deny coverage to another Insured (e.g., the Counterclaim Plaintiffs).

The Claim Made Argument

56.    On information and belief, the January 24, 2006 XL Letter also denied coverage for several of the Lawsuits on the ground that each was sufficiently related to a "Claim" first made prior to the inception date of the XL Policy (i.e., prior to August 11, 2005). On information and belief, the January 24, 2006 Letter contended that several of the Lawsuits involved the same "Wrongful Acts" or "Interrelated Wrongful Acts" as the acts giving rise to a claim in an action filed by the Bankruptcy Trust of Gerard Sillam (the Sillam action), so that each could be treated as a single Claim made prior to the policy period.

The March 6, 2006 Letter

57.    On information and belief, by a second letter dated March 6, 2006 (the "March 6, 2006 XL Letter"), XL purported to deny coverage to the Counterclaim Plaintiffs, and the other Insureds, for the Newly Noticed Matters, identified in the letter as seven additional matters filed in connection with the alleged Refco fraud.

58.    On information and belief, the March 6, 2006 XL Letter purported to deny coverage for all of the Newly Noticed Matters for the same reasons that coverage for the "previously noticed matters," the Lawsuits, was barred.

**D.    The XL Declaratory Judgment Action**

59.     On or about April 22, 2008, XL commenced the instant action, seeking a declaration that the XL Policy does not provide insurance coverage for any of the Insureds in connection with the Underlying Matters.

60.     The Underlying Matters, as defined in the Complaint, include all of the Lawsuits and the Newly Noticed Matters identified in the January 24, 2006 and the March 6, 2006 XL Letters, the Underlying Actions defined herein, and "any other notice of claim or potential claim" and "any additional civil, criminal or regulatory actions" instituted or coming to the attention of XL after the filing of the Complaint "to the extent they arise out of the same or related transactions or occurrences raised in the Underlying Matters." (Compl., ¶¶ 74-120).

61.     XL contends that no coverage for any Loss is afforded to any Insured with respect to the Underlying Matters because at least one Insured Person (i.e., Bennett, Trosten, Maggio and/or Grant) had knowledge of a "fact, circumstance or situation" that gave rise to the charges or causes of action in the Underlying Matters. (Compl., ¶ 133).

### COUNT I
### (Declaratory Relief)

62.     Counterclaim Plaintiffs repeat and reallege paragraphs 1 through 61 of these Counterclaims as if fully set forth herein.

63.     Pursuant to the terms of the XL Policy, XL is contractually obligated to provide coverage to Counterclaim Plaintiffs for all Loss (as defined in the XL Policy) arising from the Underlying Actions once coverage is triggered.

64.     As of the present date, XL has denied its contractual obligations and has denied coverage under the XL Policy.

65.    Upon information and belief, Refco paid all premiums for the XL Policy and has performed all of the terms and conditions of the XL Policy on its part to be performed, unless otherwise excused.

66.    Counterclaim Plaintiffs, as Insureds under the XL Policy, and therefore, parties to the insurance contract, have performed all the terms and conditions of the XL Policy on their part to be performed, unless otherwise excused.

67.    At all relevant times mentioned herein, the XL Binder and/or the XL Policy was, and is, in full force and effect.

68.    None of the grounds asserted by XL for the denial of coverage under the XL Policy provides a valid basis for denying coverage to the Counterclaim Plaintiffs.

69.    The primary ground asserted by XL in the January 24, 2006 XL Letter and in the Complaint – specifically, the alleged "knowledge" of Insureds Bennett, Trosten, Maggio and/or Grant – rest on those individuals' alleged knowledge of the specific wrongdoing alleged in the Underlying Matters, which has not been established in any proceeding.

70.    Even if one or more of these individuals are hereafter found to have knowledge of wrongdoing, as alleged by XL, such knowledge is not a valid basis for XL to deny coverage to the Counterclaim Plaintiffs.

71.    The Inverted Representation Endorsement relied upon by XL was not referred to in the XL Binder, and is materially inconsistent therewith.  Upon information and belief, this endorsement was unilaterally and improperly added by XL to the XL Policy in or about December 2005 – months after several of the Underlying

Matters had commenced and notice of such proceedings had been provided to XL – in an attempt to avoid coverage for the Underlying Matters.

72.    The IRE is not part of the insurance contract between XL and the Counterclaim Plaintiffs.

73.    Even if the IRE was properly made a part of the XL Policy, the IRE conflicts with and is subject to the Severability Provisions in the XL Policy so that the knowledge or conduct of any other insured may not be used to deny coverage to the Counterclaim Plaintiffs.

74.    Neither of the Counterclaim Plaintiffs had any knowledge, at any time prior to the inception of the XL Policy, of any wrongdoing relating to Refco, or of any facts or circumstances that might give rise to a Claim under the "tower" of D&O insurance obtained by Refco for the policy period.

75.    Similarly, upon information and belief, the Underlying Actions are not related in any way to the June 2005 complaint in the Sillam action, which was relied upon in the January 24, 2006 XL Letter but is not referred to in the Complaint.

76.    The Underlying Actions do not constitute Claims that were first brought prior to the inception of the XL Policy.

77.    An actual controversy exists between XL and the Counterclaim Plaintiffs as to whether the Counterclaim Plaintiffs are entitled to coverage for the Underlying Actions under the XL Policy, and judicial resolution of the parties' rights and obligations is necessary.

78.    This Court should issue a judgment declaring that the Counterclaim Plaintiffs are entitled to coverage under the XL Policy for Loss arising out of the Underlying Actions.

## COUNT II
### (Injunctive Relief)

79.    Counterclaim Plaintiffs repeat and reallege paragraphs 1 through 78 of these Counterclaims as if fully set forth herein.

80.    XL will become obligated to make payments to the Counterclaim Plaintiffs for Losses in the Underlying Actions in accordance with the XL Policy.

81.    The Counterclaim Plaintiffs are entitled to permanent injunctive relief requiring XL to make such payments in accordance with XL's contractual obligations.

## COUNT III
### (Breach of Contract)

82.    Counterclaim Plaintiffs repeat and reallege paragraphs 1 through 81 of these Counterclaims as if fully set forth herein.

83.    Pursuant to the terms of the XL Policy, XL is contractually obligated to provide coverage to the Counterclaim Plaintiffs for all Loss (as defined in the XL Policy) arising from the Underlying Actions once Losses are not paid by any other policy.

84.    As of the present date, XL has denied its contractual obligations and has denied coverage under the XL Policy.

85.    Upon information and belief, Refco paid all premiums for the XL Policy and has performed all of the terms and conditions of the XL Policy on its part to

be performed, unless otherwise excused.

86.    Counterclaim Plaintiffs, as Insureds under the XL Policy, have performed all the terms and conditions of the XL Policy on their part to be performed, unless otherwise excused.

87.    At all relevant times mentioned herein, the XL Policy was, and is, in full force and effect.

88.    None of the grounds asserted by XL for the denial of coverage under the XL Policy provides a valid basis for denying coverage to Counterclaim Plaintiffs.

89.    By denying coverage to Counterclaim Plaintiffs for the Underlying Actions, XL has breached the XL Policy.

90.    Counterclaim Plaintiffs have suffered and continue to suffer damages as a direct and consequential result of XL's breach of its contractual duties and obligations under the XL Policy.

91.    Counterclaim Plaintiffs are entitled to recover their damages from XL under the terms of the XL Policy in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiffs John D. Agoglia and Peter McCarthy respectfully request entry of judgment in their favor as follows:

1.    Dismissing the Complaint with prejudice;

2.    On Count I of the Counterclaims, declaring that the Counterclaim Plaintiffs are entitled to coverage under the XL Policy for Loss arising out of the Underlying Action, including but not limited to Defense Costs;

3.     On Count II of the Counterclaims, requiring XL to make payments to the Counterclaim Plaintiffs for Loss in the Underlying Action, in accordance with the XL Policy;

4.     On Count III of the Counterclaims, awarding Counterclaim Plaintiffs damages against XL for its breach of the XL Policy;

5.     Awarding the Counterclaim Plaintiffs their attorneys' fees and costs and disbursements of this action; and

6.     Granting such other and further relief as the Court may deem proper.

## JURY DEMAND

Agoglia and McCarthy hereby demand trial by jury on all issues in the Complaint or in the Counterclaims so triable.

Dated: July 14, 2008
New York, New York

GAGE SPENCER & FLEMING LLP

By:_____
        William B. Fleming

410 Park Avenue
Suite 900
New York, New York 10022
Telephone:     (212) 768-4900
Facsimile:     (212) 768-3629

*Attorneys for Defendants John D. Agoglia
and Peter McCarthy*