PROSKAUER ROSE LLP
Claire P. Gutekunst
Jessica Mastrogiovanni
1585 Broadway
New York, New York 10036-8299
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: cgutekunst@proskauer.com

*Attorneys for Defendant Richard N. Outridge*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x

XL SPECIALTY INSURANCE COMPANY,   :
   :
   Plaintiff,   :
   :
   v.   :
   :
JOHN D. AGOGLIA, PHILLIP R. BENNETT,   :
LEO R. BEITMAN, EDWIN L. COX,   :
SUKHMEET DHILLON, THOMAS H.   :
DITTMER, NATHAN GANTCHER,   :
STEPHEN GRADY, TONE GRANT,   :
THOMAS HACKL, DAVID V. HARKINS,   :
SCOTT L. JAECKEL, DENNIS A. KLEJNA,   :
THOMAS H. LEE, ERIC G. LIPOFF, SANTO   :
C. MAGGIO, PETER MCCARTHY, JOSEPH   :
MURPHY, FRANK MUTTERER, RONALD   :
L. O'KELLEY, RICHARD N. OUTRIDGE,   :
SCOTT A. SCHOEN, WILLIAM M.   :
SEXTON, GERALD SHERER, PHILIP   :
SILVERMAN, AND ROBERT C. TROSTEN,   :
   :
   Defendants.   :

------------------------------------------------------- x

No. 08-CV-3821 (GEL)

*Electronically Filed*

**ANSWER AND**
**COUNTERCLAIMS**
**OF DEFENDANT**
**RICHARD N. OUTRIDGE**

Defendant Richard N. Outridge ("Outridge"), by and through his attorneys, Proskauer

Rose LLP, states as follows for his Answer to the Complaint of plaintiff XL Specialty Insurance

Company ("XL"), dated April 22, 2008, in the above-captioned action (the "Complaint"):

1.      No response is required for paragraph 1 of the Complaint.

2.      Denies each and every allegation contained in paragraph 2 of the Complaint,

except admits that XL issued a directors and officers management liability policy number

ELU089673-05 (the "XL Policy") to Refco Inc. ("Refco") for the period of April 11, 2005 to

August 11, 2006.

3.      Denies any involvement or culpability relating to all of the allegations of

wrongdoing contained in paragraph 3 of the Complaint; otherwise denies knowledge or

information sufficient to form a belief as to the truth of the allegations contained in paragraph 3

of the Complaint, except admits, upon information and belief, that the XL Policy incepted on

August 11, 2005, which was the same date as the Refco initial public offering, and that Refco

filed for Chapter 11 bankruptcy on October 17, 2005.

4.      Denies each and every allegation contained in paragraph 4 of the Complaint,

except admits that numerous lawsuits and investigations have been initiated against Refco and

certain individuals, and refers to the Underlying Matters for the allegations contained therein.

5.      Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph 5 of the Complaint, except admits, upon information and

belief, that three Refco executives, Phillip R. Bennett ("Bennett"), Robert C. Trosten ("Trosten")

2

and Santo C. Maggio ("Maggio"), have pled guilty to various criminal charges and that former

President of Refco Group Ltd. LLC, Tone Grant ("Grant") was found guilty by a jury on

April 17, 2008.


      6.      Denies each and every allegation contained in paragraph 6 of the Complaint,

except admits that Outridge, among other defendants, has sought coverage under the XL Policy

in connection with certain of the Underlying Matters and refers to the XL Policy for the contents

thereof.


      7.      Denies each and every allegation contained in paragraph 7 of the Complaint.


      8.      Admits that XL purports to seek a declaration from this Court resolving the

dispute in their favor; and avers that XL is entitled to no relief.


      9.      Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph 9 of the Complaint, except admits that XL avers that the Court

has jurisdiction over the parties and the subject matter of this action pursuant to 28 U.S.C.

§ 1332.


      10.      Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph 10 of the Complaint, except admits that XL avers that the

Court has jurisdiction over this action pursuant to 28 U.S.C. § 1367.

11.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of the Complaint, except admits that XL avers that the Court has *in personam* jurisdiction over Outridge pursuant to CPLR §§ 301 and 302, and admits that Outridge is a former officer of a Refco-affiliated entity and that he transacted business in New York or otherwise engaged in a sufficient course of conduct in the State to make the exercise of personal jurisdiction proper.

12.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Complaint, except admits that XL avers that the Court has jurisdiction pursuant to CPLR § 302 and admits that the action *In re Refco, Inc. Securities Litigation*, No. 05-8626 (GEL) is pending before this Court and, admits, upon information and belief, that criminal proceedings against Bennett, Trosten, Maggio and Grant have been conducted in this judicial district.

13.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint, except admits that XL avers that venue is appropriate pursuant to 28 U.S.C. § 1391.

14.     Denies each and every allegation contained in paragraph 14 of the Complaint.

15.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the Complaint, except admits, upon information and belief, that XL is an insurance company.

4

16.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Complaint.

17.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Complaint, except admits, upon information and belief, that Bennett is the former Chairman, President and CEO of Refco.

18.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Complaint.

19.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Complaint.

20.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the Complaint.

21.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Complaint.

22.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the Complaint.

23.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint.

24.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint, except admits, upon information and belief that Grant served as President of Refco Group Ltd., LLC.

25.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the Complaint.

26.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 of the Complaint.

27.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the Complaint.

28.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the Complaint.

29.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of the Complaint.

30.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 of the Complaint.

31.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 of the Complaint, except admits, upon information and

belief, that defendant Maggio served as President and CEO of Refco Securities, LLC and President of Refco Capital Markets, Ltd.

      32.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 of the Complaint.

      33.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 of the Complaint.

      34.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 of the Complaint, except admits, upon information and belief, that defendant Frank Mutterer served as Controller of Refco Group Ltd., LLC.

      35.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 of the Complaint.

      36.     Denies each and every allegation contained in paragraph 36 of the Complaint, except admits that Outridge served as Chief Financial Officer of Refco Capital Management between March 2004 and August 10, 2005 and that Outridge is a resident of Pennsylvania.

      37.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37 of the Complaint.

      38.     Denies each and every allegation contained in paragraph 38 of the Complaint.

39.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39 of the Complaint.

40.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 of the Complaint, except admits, upon information and belief, that defendant Phillip Silverman served as Secretary of Refco.

41.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 of the Complaint, except admits, upon information and belief, that defendant Trosten served as Chief Financial Officer of Refco Group Ltd., LLC.

42.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42 of the Complaint, except admits that the XL Policy is a directors and officers management liability policy with a policy period of August 11, 2005 to August 11, 2006 and a limit of $20 million, and refers to the XL Policy for the contents thereof.

43.     Denies each and every allegation contained in paragraph 43 of the Complaint, except admits that U.S. Specialty Insurance Company ("U.S. Specialty"), Lexington Insurance Company ("Lexington"), Axis Reinsurance Company ("Axis"), Allied World Assurance Company ("AWAC") and Arch Insurance Company ("Arch") have issued underlying insurance policies to Refco, and refers to those policies for the contents thereof.

44.     Admits that paragraph 44 of the Complaint purports to quote from the XL Policy, and refers to the XL Policy for the contents thereof.

45.    Admits that paragraph 45 of the Complaint purports to quote from Endorsement No. 12 to the XL Policy, and refers to the XL Policy and Endorsement No. 12 for the contents thereof.

46.    Admits that the XL Policy provides coverage to Insured Persons in excess of the Underlying Coverage and admits that paragraph 46 of the Complaint purports to quote from Endorsement No. 9 of the XL Policy, and refers to the XL Policy and Endorsement No. 9 for the contents thereof.

47.    Denies each and every allegation contained in paragraph 47 of the Complaint, except admits that the XL Policy does not "follow form" to the underlying policies, and refers to the XL Policy and its endorsements for the contents thereof.

48.    Denies each and every allegation contained in paragraph 48 of the Complaint, except admits, upon information and belief, the allegations contained in the first sentence of paragraph 48 and the second and third sentences of footnote 6, denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 48, and admits, upon information and belief, the allegations contained in the third and fourth sentences of paragraph 48 and the allegations contained in footnote 8.

49.    Admits, upon information and belief, that Refco conducted its initial public offering on August 11, 2005.

50.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 50 of the Complaint, and refers to the October 10, 2005 press release for the contents thereof.

51.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 51 of the Complaint, and refers to the October 11, 2005 press release for the contents thereof.

52.     Admits, upon information and belief, that Refco filed for bankruptcy in the Southern District of New York on or about October 17, 2005.

53.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 53 of the Complaint, and refers to the third superseding indictment filed on or about January 16, 2007 (the "S3 Indictment") for the contents thereof.

54.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 54 of the Complaint, except admits, upon information and belief, that Bennett and Trosten pled guilty to various federal charges brought against them in or around February 2008.

55.     Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 55 of the Complaint, and refers to the S3 Indictment for the contents thereof.

56.     Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 56 of the Complaint, and refers to the S3 Indictment for the contents thereof.

57.     Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 57 of the Complaint, and refers to the S3 Indictment for the contents thereof.

58.     Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 58 of the Complaint, and refers to the S3 Indictment for the contents thereof.

59.     Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 59 of the Complaint, and refers to the S3 Indictment for the contents thereof.

60.     Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 60 of the Complaint, and refers to the S3 Indictment for the contents thereof.

61.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 61 of the Complaint, and refers to the S3 Indictment for the contents thereof.

62.     Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 62 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 62 of the Complaint, except admits, upon information and belief, that Bennett pled guilty to various federal charges, and refers to the transcript of the February 15, 2008 hearing (the "Bennett Transcript") for the contents thereof.

63.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 63 of the Complaint, except admits, upon information and belief, that Bennett pled guilty to various federal charges, and refers to the Bennett Transcript for the contents thereof.

64.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 64 of the Complaint, and refers to the S3 Indictment for the contents thereof.

65.     Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 65 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 65 of the Complaint, except admits, upon information and belief, that Trosten pled guilty to various federal charges, and refers to the transcript of the February 20, 2008 hearing (the "Trosten Transcript") for the contents thereof.

66.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 66 of the Complaint, except admits, upon information and belief, that Trosten pled guilty to various federal charges, and refers to the Trosten Transcript for the contents thereof.

67.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 67 of the Complaint, except admits, upon information and belief, that Maggio pled guilty to various federal charges, and refers to the criminal Information brought against Maggio (the "Maggio Information") for the contents thereof.

68.    Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 68 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68 of the Complaint, and refers to the Maggio Information for the contents thereof.

69.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69 of the Complaint, and refers to the Maggio Information for the contents thereof.

70.    Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 70 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 70 of the Complaint, except admits, upon information and belief, that Maggio pled guilty to various

federal charges, and refers to the transcript of the December 19, 2007 hearing (the "Maggio Transcript") for the contents thereof.

71.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 71 of the Complaint, except admits, upon information and belief, that Maggio pled guilty to various federal charges, and refers to the Maggio Transcript for the contents thereof.

72.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 72 of the Complaint, except admits, upon information and belief, that Grant was found guilty by a jury on or around April 17, 2008.

73.     Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 73 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth of allegations contained in paragraph 73 of the Complaint.

74.     Admits, upon information and belief, that various lawsuits were filed against certain of the defendants in the above-captioned action beginning on or about October 12, 2005.

75.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 75 of the Complaint, and refers to the complaint filed in *United States v. Bennett*, No. 05-1720 (S.D.N.Y.) (the "Bennett Criminal Complaint") for the contents thereof.

76.     Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 76 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 76 of the Complaint, and refers to the Bennett Criminal Complaint, the S3 Indictment, and the Maggio Information for the contents thereof.

77.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 77 of the Complaint.

78.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 78 of the Complaint.

79.     Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 79 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 79 of the Complaint.

80.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 80 of the Complaint.

81.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 81 of the Complaint.

82.     Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 82 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 82 of the Complaint.

83.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 83 of the Complaint.

84.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 84 of the Complaint.

85.     Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 85 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 85 of the Complaint.

86.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 86 of the Complaint.

87.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 87 of the Complaint.

88.     Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 88 of the Complaint; otherwise denies knowledge or information

sufficient to form a belief as to the truth of the allegations contained in paragraph 88 of the

Complaint, and refers to the THL Funds Action Complaint for the contents thereof.

89.    Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph 89 of the Complaint.

90.    Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph 90 of the Complaint.

91.    Denies any involvement or culpability relating to the allegations of wrongdoing

contained in paragraph 91 of the Complaint; otherwise denies knowledge or information

sufficient to form a belief as to the truth of the allegations contained in paragraph 91 of the

Complaint.

92.    Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph 92 of the Complaint.

93.    Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph 93 of the Complaint.

94.    Denies any involvement or culpability relating to the allegations of wrongdoing

contained in paragraph 94 of the Complaint; otherwise denies knowledge or information

sufficient to form a belief as to the truth of the allegations contained in paragraph 94 of the

Complaint.

95.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 95 of the Complaint.

96.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 96 of the Complaint.

97.    Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 97 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 97 of the Complaint.

98.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 98 of the Complaint.

99.    Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 99 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 99 of the Complaint, except admits, upon information and belief, that on or about October 9, 2007 *VR Global Partners L.P., et al. v. Bennett, et al.,* Case No. 07-8686 (S.D.N.Y.) and *Capital Management Select Fund Ltd., et al. v. Bennett, et al.*, Case No. 07-8688 (S.D.N.Y.) were brought against various defendants including Outridge and were consolidated for pre-trial purposes with the Global Management Litigation on or around November 20, 2007, and further admits, upon information and belief, that Outridge provided notice of these actions to XL.

100.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 100 of the Complaint.

101.    Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 101 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 101 of the Complaint.

102.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 102 of the Complaint.

103.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 103 of the Complaint.

104.    Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 104 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 104 of the Complaint.

105.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 105 of the Complaint.

106.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 106 of the Complaint.

107.    Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 107 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 107 of the Complaint.

108.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 108 of the Complaint.

109.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 109 of the Complaint.

110.    Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 110 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 110 of the Complaint.

111.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 111 of the Complaint.

112.    Denies any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 112 of the Complaint; otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 112 of the Complaint.

113.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 113 of the Complaint.

114.    No response is required for paragraph 114 of the Complaint.

115.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 115 of the Complaint.

116.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 116 of the Complaint.

117.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 117 of the Complaint.

118.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 118 of the Complaint.

119.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 119 of the Complaint.

120.    No response is required for paragraph 120 of the Complaint.

## **CLAIM FOR RELIEF**

121.    Repeats and realleges each response to paragraphs 1 through 120 above.

122.   Denies each and every allegation contained in paragraph 122 of the Complaint.

123.   Denies each and every allegation contained in paragraph 123 of the Complaint.

124.   Denies each and every allegation contained in paragraph 124 of the Complaint.

125.   Denies each and every allegation contained in paragraph 125 of the Complaint.

126.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 126 of the Complaint.

127.   Denies each and every allegation contained in paragraph 127 of the Complaint.

128.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 128 of the Complaint.

129.   Denies each and every allegation contained in paragraph 129 of the Complaint.

130.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 130 of the Complaint.

131.   Denies each and every allegation contained in paragraph 131 of the Complaint.

132.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 132 of the Complaint.

133.    Denies each and every allegation contained in paragraph 133 of the Complaint.

134.    Denies each and every allegation contained in paragraph 134 of the Complaint.

135.    Denies each and every allegation contained in paragraph 135 of the Complaint.

136.    Denies each and every allegation contained in paragraph 136 of the Complaint.

137.    Denies each and every allegation contained in paragraph 137 of the Complaint.

138.    Denies each and every allegation contained in paragraph 138 of the Complaint.

## FIRST DEFENSE

139.    XL fails to state a claim against Outridge upon which relief can be granted.

## SECOND DEFENSE

140.    Upon information and belief, XL's claims against Outridge are barred, in whole or in part, by the doctrine of laches.

## THIRD DEFENSE

141.    Upon information and belief, XL's claims against Outridge are barred, in whole or in part, by the doctrine of waiver.

## FOURTH DEFENSE

142.    Upon information and belief, XL's claims against Outridge are barred, in whole or in part, by the doctrine of estoppel.

## FIFTH DEFENSE

143.    Upon information and belief, XL's claims against Outridge are barred, in whole or in part, by the doctrine of unclean hands.

## SIXTH DEFENSE

144.    Upon information and belief, XL's claims against Outridge are barred as a result of XL's inequitable conduct in connection with its purported denial of coverage under the XL Policy.

## SEVENTH DEFENSE

145.    Upon information and belief, XL's claims against Outridge are barred because XL unilaterally changed the terms of the XL Policy so as to provide purported grounds to deny coverage after receiving claims under the Policy.

## COUNTERCLAIMS

Richard N. Outridge ("Outridge") (the "Counterclaim Plaintiff"), by and through his attorneys, Proskauer Rose LLP, alleges as follows for his counterclaims against XL Specialty Insurance Company ("XL"):

## INTRODUCTION

1.      XL is the fifth excess insurer in the "tower" of Directors and Officers ("D&O") liability insurance obtained by Refco for the policy period beginning in August 2005.  The Counterclaim Plaintiff, along with other former Refco officers and directors insured under the policies (collectively, the "Insureds"), have been named as defendants in various civil actions relating to the collapse of Refco.[1]  The Insureds have requested coverage for such actions, including defense costs, from the insurers on the D&O "tower."

2.      XL has commenced this action seeking a declaration that its excess D&O corporate liability insurance policy issued to Refco for claims made during the period from August 11, 2005 to August 11, 2006 (the "XL Policy") does not provide coverage to any of the Insureds in connection with the "Underlying Matters" described in the Complaint filed by XL on or about April 22, 2008 (the "Complaint," or "Compl.").

3.      None of the grounds alleged in the Complaint provide XL with a valid basis for refusing coverage to the Counterclaim Plaintiff.  Nonetheless, it is clear that XL does not intend to honor its contractual obligations to the Counterclaim Plaintiff when the XL Policy is triggered.

4.      An actual controversy exists between the Counterclaim Plaintiff and XL.  The Counterclaim Plaintiff seeks a declaration from this Court that the XL Policy provides coverage

---

[1]   Unless specifically noted otherwise, and consistent with the defined terms in the XL Complaint, the term "Refco" used throughout these Counterclaims refers to Refco, Inc., the company formed pursuant to the August 2005 initial public offering, as well as Refco Group Ltd., LLC, the company through which Refco's business was conducted prior to the initial public offering.  The term "Refco" also includes subsidiaries of Refco, Inc. and Refco Group Ltd., LLC.

for him in the Underlying Matters and the Underlying Actions (defined herein) in accordance with the requirements of the XL Policy.

## JURISDICTION AND VENUE

5.      These counterclaims are brought pursuant to Rule 13 of the Federal Rules of Civil Procedure.

6.      This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the Counterclaim Plaintiff and XL, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these counterclaims occurred in this judicial district.

## PARTIES

8.      Counterclaim Plaintiff is a former officer of Refco Capital Markets Ltd. ("RCM") who, at times relevant to this action, served as Controller and Chief Financial Officer of RCM. Outridge is a resident of the State of Pennsylvania.

9.      Upon information and belief, XL is an insurance company that is organized and exists pursuant to the laws of the State of Delaware and has its principal place of business in Connecticut.

## GENERAL ALLEGATIONS

**A.      The Underlying Actions**

10.      Upon information and belief, on October 10, 2005, Refco disclosed in a press release that it had been carrying an undisclosed receivable of $430 million from an entity controlled by defendant Phillip R. Bennett ("Bennett"), the Chief Executive Officer of Refco. On October 11, 2005, Refco issued a second press release relating to the $430 million receivable.

11.    Upon information and belief, on October 17, 2005, Refco and many of its direct and indirect subsidiaries filed voluntary petitions for relief in this Court under Chapter 11 of the United States Bankruptcy Code.

12.    These events in October 2005 led to a series of civil lawsuits, government investigations and criminal proceedings against the Insureds.  Upon information and belief, on or about January 16, 2007, a federal Grand Jury returned a third superseding indictment against three Refco executives – Bennett, Robert Trosten ("Trosten") and Tone Grant ("Grant") – containing charges of, inter alia, securities fraud.  Also, upon information and belief, a criminal information was filed against a fourth Refco executive, Santo Maggio ("Maggio"), containing similar charges.

13.    Upon information and belief, Maggio pled guilty to various federal charges in December 2007, and Bennett and Trosten pled guilty to various federal charges in February 2008.  Also, upon information and belief, Grant was found guilty of various federal charges in April 2008.

14.    The Counterclaim Plaintiff has not been charged with any crimes.  However, solely on account of his services to RCM, the Counterclaim Plaintiff (along with other Insureds) has been named as a defendant in three civil lawsuits brought by private plaintiffs, including the following actions:

(i)    In re Refco Capital Markets, Ltd. Brokerage Customer Sec. Litig., No. 06 Civ. 643 (GEL) (S.D.N.Y.) (the "Customer Class Action");

(ii)    V.R. Global Partners, L.P. v. Bennett, et al., No. 07 Civ. 8686 (GEL) (S.D.N.Y.) (the "VR Actions"); and

(iii)    Capital Management Select Fund Ltd. v. Bennett, et al., No. 07 Civ. 8688 (GEL) (S.D.N.Y.) (the "CM Actions").

These three actions are collectively referred to herein as the "Underlying Actions."

27

15.    The Counterclaim Plaintiff properly gave notice of each of the Underlying

Actions to the insurers on the Refco "tower" of liability insurance, including XL, and requested

coverage from such insurers under the policies described below.

**B.    The Refco "Tower" of D&O Insurance**

16.    As indicated above, Refco procured a "tower" of D&O insurance coverage.  Such

coverage consists of a primary policy and five excess policies for the period beginning

August 11, 2005 to August 11, 2006 (the "policy period").

The U.S. Specialty Policy

17.    U.S. Specialty Insurance Company ("U.S. Specialty") issued the primary policy,

Directors, Officers and Corporate Liability Insurance Policy No. 24-MGU-05-A10821, to Refco

for the policy period with a $10 million limit of liability (the "U. S. Specialty Policy").

18.    The U.S. Specialty Policy provides directors and officers with coverage for "Loss

arising from Claims . . . against the Insured Persons for Wrongful Acts."  (Id. at Insuring

Agreement (A)).

19.    Upon information and belief, U.S. Specialty recognized its coverage obligations

to the Insureds.  Upon information and belief, after obtaining approval from this Court to comply

with the terms of its policy and advance defense costs to Insureds, U.S. Specialty paid the

defense costs of the Insureds until the limits of the U.S. Specialty Policy were exhausted in early

2007.

The Lexington Policy

20.    Lexington Insurance Company ("Lexington") issued the first excess policy above

the U.S. Specialty Policy, Directors and Officers Liability and Corporation Reimbursement

Follow Form Excess Liability Policy No. 1620926, to Refco for the policy period with a $7.5 million limit of liability in excess of $10 million (the "Lexington Policy").

21.    The Lexington Policy "follows form" with the U.S. Specialty Policy.

22.    Upon information and belief, Lexington complied with its duties under the Lexington Policy and paid the defense costs of the Insureds in connection with the Underlying Actions until the limits of the Lexington Policy were exhausted in July 2007.[2]

## The Axis Policy

23.    Axis is the second excess insurer on the Refco "tower" of D&O liability insurance.  Axis issued the second excess policy above the Lexington Policy, SecurExcess Policy No. RNN 506300, to Refco for the policy period with a $10 million limit of liability in excess of $17.5 million (the "Axis Policy").

24.    Like the Lexington Policy, the Axis Policy also "follows form" to the U.S. Specialty Policy.

25.    Axis was ordered by the United States Bankruptcy Court for the Southern District of New York to advance defense costs despite its denial of coverage, and, upon information and belief, the Axis Policy has now been exhausted by reason of advancement.

## The AWAC Policy

26.    Allied World Assurance Company ("AWAC") is the third excess insurer on the Refco "tower" of D&O liability insurance.  The AWAC Policy, Excess Directors and Officers Insurance and Company Reimbursement Policy No. AW0418197 was issued to Refco for the policy period with a $12.5 million limit of liability in excess of $27.5 million.

27.    The AWAC Policy also "follows form" to the U.S. Specialty Policy.

---

[2] Outridge had not been named as a defendant in any action by the time the U.S. Specialty Policy's and the Lexington Policy's limits were exhausted.  Outridge's first request for defense costs was under the Axis Policy but he did provide proper notice to all insurers, including U.S. Specialty and Lexington.

28.    In a proceeding commenced by various of the Insureds in the Bankruptcy Court,

AWAC was ordered, pending a final determination of coverage or until further order, to advance

defense costs despite its denial of coverage.  At present, the AWAC Policy is being depleted.

The Arch Policy

29.    Arch Insurance Company ("Arch") is the fourth excess insurer in the Refco

"tower" of D&O liability insurance.  The Arch Policy, Excess Insurance Policy No.

DOX0009322-00, was issued to Refco for the policy period with a $10 million limit of liability

in excess of $40 million.

30.    The Arch Policy also "follows form" to the U.S. Specialty Policy.

31.    The Insureds have requested coverage for the Underlying Actions, including

advancement of their defense costs, from Arch.  Arch has denied coverage to the Insureds, and it

has refused to advance any defense costs.

32.    The Insureds have, therefore, sought a declaration, inter alia, that both the AWAC

and Arch Policies provide coverage for them for the Underlying Actions.

Coverage Provided by XL

33.    XL is the fifth excess insurer in the Refco "tower" of D&O liability insurance.

The XL Policy, Class A-Side Management Liability Insurance Coverage Form No. ELU089673-

05, was issued to Refco for the policy period with a $20 million limit, and coverage thereunder is

triggered once Losses are not paid under any other policy.  Unlike the excess policies referred to

above, the XL Policy does not "follow form" to the U.S. Specialty Policy.  (A copy of the XL

Policy is attached hereto as Exhibit A).

34.    Outridge provided notice of the VR and CM Actions to XL on November 9, 2007

and of the Customer Class Action on January 23, 2008, after Outridge was added as a defendant

in the second amended complaint in that action. XL did not respond to Outridge's notices by a disclaimer letter or otherwise and had therefore not denied coverage as to him prior to filing the Complaint in this action. [3]

The XL Binder

35.    Upon information and belief, on or about August 10, 2005, XL provided Refco with a binder pursuant to which XL agreed to provide $20 million worth of coverage that would follow the payment of losses under the U.S Specialty, Lexington, Axis, AWAC and Arch Policies (the "XL Binder"). (A copy of the XL Binder is attached hereto as Exhibit B).

36.    The XL Binder lists twelve separate endorsements applicable to the XL Policy. Upon information and belief, the so-called "Inverted Representation Endorsement" (the "IRE") (discussed below) was not included among the twelve endorsements listed in the XL Binder; nor was the IRE referred to elsewhere in the XL Binder.

37.    Upon information and belief, Refco paid the premium quoted in the XL Binder (i.e., $370,300) and thereby obtained coverage from XL in accordance therewith.

The Belated Issuance of the XL Policy

38.    Upon information and belief, although the XL Policy incepted on August 11, 2005, it was not actually issued until December 2005.

39.    Upon information and belief, therefore, the actual issuance of the XL Policy occurred two months after several actions against various Insureds were commenced, and notice of such actions had been provided to the insurers in the "tower" of Refco D&O liability insurance, including XL.

---

[3] Upon information and belief, XL sent two letters, one of January 24, 2006, the other on March 6, 2006 denying coverage as to certain of the other Insureds for actions that did not involve Outridge. These letters pre-dated Outridge's involvement in any Refco-related actions.

40.     The XL Policy names an "Insured Person" under the Policy as "any past, present, or future director or officer . . . of the Company." (Ex. A, at II Definitions (I)(1)). The XL Policy provides those directors and officers with coverage for "Loss resulting from a Claim first made against the Insured Persons during the Policy Period . . . for a Wrongful Act . . . ." (Id. at I. Insuring Agreement).

41.     "Loss" is defined broadly as "damages, judgments, settlements or other amounts . . . and Defense Expenses that the Insured Persons are obligated to pay." (See id. at II. Definitions (K)).

42.     Each of the Underlying Actions is a "Claim" against the Counterclaim Plaintiff (and, as applicable, other Insureds) for "Wrongful Acts" covered by the Insuring Agreement of the XL Policy.  (See id. at II Definitions (C) and (P)).

Severability Provisions Contained in the XL Policy

43.     The XL Policy contains a "severability" provision that states: "No knowledge or information possessed by any Insured Person will be imputed to any other Insured Person for the purposes of determining the availability of coverage with respect to Claims made against any other Insured Persons." (Id. at IV. Conditions, (K) Representation Clause).

44.     The XL Policy also includes a second "severability" provision: "No conduct of any Insured Person will be imputed to any other Insured Person to determine the application of any of the above EXCLUSIONS." (Id. at III. Exclusions).  (Together, with the first "severability" provision, the "Severability Provisions").

XL's Improper Attempt To Add the IRE to the XL Policy

45.    Upon information and belief, when XL issued the XL Policy in December 2005, it attempted to add the IRE to the policy, despite the fact that the IRE was not included or referred to in the XL Binder.  (See id. at Endorsement No. 13; Ex. G).

46.    The IRE states in pertinent part that:

> [N]o coverage will be available under this Policy for Loss . . . from Claims arising from any fact, circumstance or situation of which, as of the effective date of this Policy, any Insured had knowledge and had reason to suppose might afford grounds for any Claim that would fall within the scope of the insurance afforded by this Policy.

(Id. at Endorsement No. 13).

The IRE Was Improperly Added to the Policy and Does Not Apply

47.    Upon information and belief, the IRE, however, did not appear in and was not part of the XL Binder – the operative agreement between the parties.

48.    Upon information and belief, XL unilaterally added the IRE to the XL Policy in an improper attempt to avoid coverage for the Underlying Matters of which XL had received notice on or before it issued the XL Policy and subsequently filed actions.

49.    Thus, the IRE is not properly a part of the XL Policy, and, as such, it is not operative and cannot bar coverage to the Counterclaim Plaintiff.

The IRE Directly Conflicts with the Severability Provisions

50.    Even if the IRE was properly made a part of the XL Policy – which it was not – it directly conflicts with the Severability Provisions contained in the XL Policy, and it does not purport to replace or supersede the Severability Provisions.

51.    As set forth above, the Severability Provisions provide that "[n]o knowledge or information possessed by any Insured Person" and "[n]o conduct of any Insured Person" will be

imputed to any other Insured for purposes of making a coverage determination. (Ex. A, at IV, Conditions, (K) Representation Clause; III. Exclusions).

52.      Thus, even if the IRE were operative – which it is not – pursuant to the Severability Provisions, XL cannot rely on the knowledge of one Insured (e.g., Bennett) to deny coverage to another Insured (e.g., the Counterclaim Plaintiff).

**C.    The XL Declaratory Judgment Action**

53.      On or about April 22, 2008, XL commenced the instant action, seeking a declaration that the XL Policy does not provide insurance coverage for any of the Insureds in connection with the Underlying Matters.

54.      The Underlying Matters, as defined in the Complaint, include all of the Lawsuits and the Newly Noticed Matters identified in the January 24, 2006 and the March 6, 2006 XL Letters, the Underlying Actions defined herein, and "any other notice of claim or potential claim" and "any additional civil, criminal or regulatory actions" instituted or coming to the attention of XL after the filing of the Complaint "to the extent they arise out of the same or related transactions or occurrences raised in the Underlying Matters." (Compl., ¶¶ 74-120).

55.      XL contends that no coverage for any Loss is afforded to any Insured with respect to the Underlying Matters because at least one Insured Person (e.g., Bennett, Trosten, Maggio and/or Grant) had knowledge of a "fact, circumstance or situation" that gave rise to the charges or causes of action in the Underlying Matters. (Compl., ¶ 133).

## COUNT I

### (Declaratory Relief)

56.      Counterclaim Plaintiff repeats and realleges paragraphs 1 through 55 of these Counterclaims as if fully set forth herein.

34

57.    Pursuant to the terms of the XL Policy, XL is contractually obligated to provide coverage to Counterclaim Plaintiff for all Loss (as defined in the XL Policy) arising from the Underlying Actions once coverage is triggered.

58.    As of the present date, XL has denied its contractual obligations and has denied coverage under the XL Policy.

59.    Upon information and belief, Refco paid all premiums for the XL Policy and has performed all of the terms and conditions of the XL Policy on its part to be performed, unless otherwise excused.

60.    Counterclaim Plaintiff, as an Insured under the XL Policy, and therefore, a party to the insurance contract, has performed all the terms and conditions of the XL Policy on his part to be performed, unless otherwise excused.

61.    At all relevant times mentioned herein, the XL Binder and/or the XL Policy was, and is, in full force and effect.

62.    None of the grounds asserted by XL for the denial of coverage under the XL Policy provides a valid basis for denying coverage to the Counterclaim Plaintiff.

63.    The primary ground asserted by XL in the Complaint – specifically, the alleged "knowledge" of Insureds Bennett, Trosten, Maggio and/or Grant – rests on those individuals' alleged knowledge of certain wrongdoing alleged in the Underlying Matters, which has not been established in any proceeding.

64.    Even if one or more of these three individuals are hereafter found to have knowledge of certain wrongdoing, as alleged by XL, such knowledge is not a valid basis for XL to deny coverage to the Counterclaim Plaintiff.  The knowledge of wrongdoing alleged in the

35

indictments and informations as described by XL in its Complaint so not include the principle allegations of wrongdoing alleged in the Underlying Actions.

65.     The Inverted Representation Endorsement relied upon by XL was not referred to in the XL Binder, and is materially inconsistent therewith.  Upon information and belief, this endorsement was unilaterally and improperly added by XL to the XL Policy in or about December 2005 – months after several of the Underlying Matters had commenced and notice of such proceedings had been provided to XL – in an attempt to avoid coverage for the Underlying Matters.

66.     The IRE is not part of the insurance contract between XL and the Counterclaim Plaintiff.

67.     Even if the IRE was properly made a part of the XL Policy, the IRE conflicts with and is subject to, the Severability Provisions in the XL Policy, so that the knowledge or conduct of any other Insured may not be used to deny coverage to the Counterclaim Plaintiff.

68.     The Counterclaim Plaintiff had no knowledge, at any time prior to the inception of the XL Policy, of any wrongdoing relating to Refco, or of any facts or circumstances that might give rise to a Claim under the "tower" of D&O insurance obtained by Refco for the policy period.

69.     Similarly, upon information and belief, the Underlying Actions are not related in any way to the June 2005 complaint in the Sillam action, which was relied upon in the January 24, 2006 XL Letter (a copy of which was not sent to Outridge) but is not referred to in the Complaint.

70.     The Underlying Actions do not constitute Claims that were first brought prior to the inception of the XL Policy.

71.    An actual controversy exists between XL and the Counterclaim Plaintiff as to whether the Counterclaim Plaintiff is entitled to coverage for the Underlying Actions under the XL Policy, and judicial resolution of the parties' rights and obligations is necessary.

72.    This Court should issue a judgment declaring that the Counterclaim Plaintiff is entitled to coverage under the XL Policy for Loss arising out of the Underlying Actions, including but not limited to Defense Costs.

## COUNT II

### (Injunctive Relief)

73.    Counterclaim Plaintiff repeats and realleges paragraphs 1 through 72 of these Counterclaims as if fully set forth herein.

74.    XL will become obligated to make payments to the Counterclaim Plaintiff for Losses in the Underlying Actions in accordance with the XL Policy.

75.    The Counterclaim Plaintiff is entitled to permanent injunctive relief requiring XL to make such payments in accordance with XL's contractual obligations.

## COUNT III

### (Breach of Contract)

76.    Counterclaim Plaintiff repeats and realleges paragraphs 1 through 75 of these Counterclaims as if fully set forth herein.

77.    Pursuant to the terms of the XL Policy, XL is contractually obligated to provide coverage to the Counterclaim Plaintiff for all Loss (as defined in the XL Policy) arising from the Underlying Actions once Losses are not paid by any other policy.

78.    As of the present date, XL has denied its contractual obligations and has denied coverage under the XL Policy.

79.     Upon information and belief, Refco paid all premiums for the XL Policy and has performed all of the terms and conditions of the XL Policy on its part to be performed, unless otherwise excused.

80.     Counterclaim Plaintiff, as an Insured under the XL Policy, has performed all the terms and conditions of the XL Policy on his part to be performed, unless otherwise excused.

81.     At all relevant times mentioned herein, the XL Policy was, and is, in full force and effect.

82.     None of the grounds asserted by XL for the denial of coverage under the XL Policy provides a valid basis for denying coverage to Counterclaim Plaintiff.

83.     By denying coverage to Counterclaim Plaintiff for the Underlying Actions, XL has breached the XL Policy.

84.     Counterclaim Plaintiff has suffered and continues to suffer damages as a direct and consequential result of XL's breach of its contractual duties and obligations under the XL Policy.

85.     Counterclaim Plaintiff is entitled to recover his damages from XL under the terms of the XL Policy in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Counterclaim Plaintiff Richard N. Outridge respectfully requests entry of judgment in his favor as follows:

1.      Dismissing the Complaint with prejudice;

2.      On Count I of the Counterclaims, declaring that the Counterclaim Plaintiff is entitled to coverage under the XL Policy for Loss arising out of the Underlying Actions, including but not limited to Defense Costs;

38

3.      On Count II of the Counterclaims, requiring XL to make payments to the Counterclaim Plaintiff for Loss in the Underlying Actions, in accordance with the XL Policy;

4.      On Count III of the Counterclaims, awarding Counterclaim Plaintiff damages against XL for its breach of the XL Policy;

5.      Awarding the Counterclaim Plaintiff his attorneys' fees and costs and disbursements of this action; and

6.      Granting such other and further relief as the Court may deem proper.

<u>**JURY DEMAND**</u>

Outridge hereby demands trial by jury on all issues in the Complaint or in the Counterclaims so triable.

Dated: July 14, 2008
       New York, New York

**PROSKAUER ROSE LLP**

By:  s/Claire P. Gutekunst
        Claire P. Gutekunst
          cgutekunst@proskauer.com
        Jessica Mastrogiovanni
          jmastrogiovanni@proskauer.com

1585 Broadway
New York, New York 10036-8299
Telephone:    (212) 969-3000
Facsimile:    (212) 969-2900

*Attorneys for Defendant Richard N. Outridge*

**EXHIBIT A**

**Policy Number:** ELU089673-05
Renewal of Number

☐ **Greenwich Insurance Company**
☒ **XL Specialty Insurance Company**
Members of the XL America Companies

**CLASSIC A-SIDE MANAGEMENT LIABILITY
INSURANCE POLICY DECLARATIONS**

Executive Offices
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

**Item 1. Name and Mailing Address of Insured Entity:**
Refco Inc.
550 W. Jackson Blvd., Suite 1300
Chicago, IL  60661

**Item 2. Policy Period:  From:**  August 11, 2005  **To:**  August 11, 2006
At 12:01AM Standard Time at your Mailing Address Shown Above

**Item 3. Limit of Liability:**
$20,000,000  Aggregate each Policy Period (including **Defense Expenses**)

**Item 4. Optional Extension Period and Premium:**
Length of Optional Extension Period:  One Year
Optional Extension Premium:  $740,600.00

**Item 5. Notices required to be given to the Insurer must be addressed to:**
Executive Liability Underwriters
One Constitution Plaza, 16th Floor
Hartford, CT  06103
Toll Free Telephone: 877-953-2636

**Item 6. Premium:**
Premium  $370,300.00
Taxes, Surcharges or Fees:  $0.00
Total Policy Premium:  $370,300.00

**Item 7. Policy Forms and Endorsements Attached at Issuance:**
CL 71 00 03 00   CL 72 02 05 00   CL 83 08 09 02   XL 83 07 01 00   XL 80 24 03 03   XL 80 39 04 05
CL 83 06 07 02   CL 83 14 10 03   CL 80 34 12 02   CL 80 18 09 02   XL 80 34 10 04   XL 83 25 10 00
Manuscript 3027 12 05   XL 80 04 04 00

Countersigned: _____  By: _____
                              Date                                              Authorized Representative

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

CL 70 00 11 01

**CLASSIC A-SIDE MANAGEMENT LIABILITY POLICY**

---

In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.


Nicholas M. Brown Jr.
President

Theresa M. Morgan
Secretary

**XL Specialty Insurance Company**


Nicholas M. Brown Jr.
President

Theresa M. Morgan
Secretary

**Greenwich Insurance Company**

## POLICYHOLDER DISCLOSURE

### NOTICE OF TERRORISM
### INSURANCE COVERAGE

Coverage for acts of terrorism is already included in your current policy. You should know that, effective November 26, 2002, under your existing coverage, any losses caused by certified acts of terrorism would be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ waived.  Any premium waiver is only valid for the current Policy Period.

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT OF 2002, ANY LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE WILL BE PARTIALLY REIMBURSED BY THE UNITED STATES AND I HAVE BEEN NOTIFIED OF THE AMOUNT OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

Name of Insurer:   **XL Specialty Insurance Company**
Policy Number:     **ELU089673-05**

# IN WITNESS ENDORSEMENT

XL SPECIALTY INSURANCE COMPANY

ADMINISTRATIVE OFFICE:   SEAVIEW HOUSE
                                70 SEAVIEW AVENUE
                                STAMFORD, CT 06902-6040
STATUTORY HOME OFFICE:   1201 NORTH MARKET STREET
                                SUITE 501
                                WILMINGTON, DE 19801

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

_____
Richard S. Banas
President

_____
Kenneth P. Meagher
Secretary

IL MP 9104 0704 XLS

XL Specialty Insurance Company - Illinois Policyholder Notice

**IMPORTANT NOTICE TO ALL ILLINOIS POLICYHOLDERS**

In the event you need to contact someone about this Policy for any reason, please contact us at:

*XL Specialty Insurance Company*
*c/o XL Insurance Underwriters*
*100 Constitution Plaza, 17th Floor*
*Hartford, Connecticut 06103*

If you have been unable to contact or obtain satisfaction from the Insurer, you may contact the Illinois Department of Insurance to obtain information or make a complaint at:

*Illinois Department of Insurance*
*Consumer Division of Public*
*Services Section*
*Springfield, Illinois 62767*

Endorsement No.: 1
Named Insured: Refco Inc.
Policy No: ELU089673-05

CL 72 02 05 00

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# ILLINOIS AMENDATORY ENDORSEMENT

DIRECTORS & OFFICERS PROFESSIONAL LIABILITY COVERAGE FORM

I.    Section IV., CONDITIONS, paragraph (I), CANCELLATION AND RENEWAL OF COVERAGE, is deleted and replaced by: Cancellation -- "The Insured" may cancel this policy by returning the policy to "The Company," or by giving "The Company" written notice and stating at what future date coverage is to stop.

"The Company" may cancel this policy by mailing written notice of cancellation to "The Insured" and any mortgagee or lienholder at the last mailing address known to "The Company."

"The Company" will mail the notice to "The Insured" and any mortgagee or lienholder at least ten (10) days before the effective date of the cancellation when cancellation is for nonpayment of premium. When cancellation is for any other reason, "The Company" will mail the notice of cancellation to "The Insured" and any mortgagee or lienholder at least 30 days prior to the effective date of the cancellation during the first 60 days of coverage or 60 days prior to the effective date of the cancellation if the coverage has been in effect for more than 60 days.

If this policy has been in effect 60 days or more, or if it is a renewal of a policy issued by "us" effective immediately, "we" may cancel this policy only if one or more of the following reasons apply:

      a.      nonpayment of premium;

      b.      the policy was obtained through a material misrepresentation;

      c.      any "insured" has violated any of the "terms" and conditions of the policy;

      d.      the risk originally accepted has measurably increased;

      e.      certification of the Director of the loss of reinsurance by the insurer which provided coverage to "us" for all or a substantial part of the underlying risk insured; or

      f.      a determination by the Director that the continuation of the policy could place "us" in violation of the insurance laws of this state.

"Our" notice will include the reason or reasons for cancellation. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record. Proof of mailing is sufficient proof of notice.

"Your" return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

Nonrenewal -- If "we" decide not to renew this policy, "we" will mail "our" notice of nonrenewal to "you" at least 60 days before the end of the policy period or anniversary date.

"Our" notice will include the reasons for nonrenewal. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record and any mortgagee or lienholder at the last mailing address known to "us". Proof of mailing is sufficient proof of notice.

Endorsement No.: 1
Named Insured: Refco Inc.
Policy No: ELU089673-05

CL 72 02 05 00

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

Renewal -- If "we" decide to renew this policy with premium increases of 30% or higher, or impose changes in deductible or coverage that materially alter the policy, "we" will mail to "you" written notice of such increase or change in deductible or coverage at least 60 days prior to the renewal or anniversary date.

All other terms and conditions of the Policy remain the same.

CL 83 08 09 02

**Endorsement No.: 2**
**Named Insured: Refco Inc.**
**Policy No: ELU089673-05**

**Effective: August 11, 2005**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# PRIOR ACTS EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for Claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any act, error, omission, misstatement, misleading statement, neglect, breach of duty, or Wrongful Act, committed or allegedly committed prior to August 5, 2004.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

Endorsement No.: 3
Named Insured: Refco Inc.
Policy No: ELU089673-05

XL 83 07 01 00

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# SPECIFIED CLAIMS EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for Loss, including Defense Expenses, in connection with any proceeding set forth below, or in connection with any Claim based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any such proceeding or any fact, circumstance or situation underlying or alleged therein:

    Edward McElwreath Case

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

Endorsement No.: 4
Named Insured: Refco Inc.
Policy No: ELU089673-05

XL 80 24 03 03

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# TERRORISM PREMIUM ENDORSEMENT

Please note: The portion of your annual premium set forth in Item 6. of the Declarations that is attributable to coverage for acts of terrorism is: $ waived.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

XL 80 39 04 05

Endorsement No.: 5
Named Insured: Refco Inc.
Policy No: ELU089673-05

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# CHANGE OF ADDRESS OF INSURER ENDORSEMENT

In consideration of the premium charged, as of the effective date of this Endorsement:

Notices required to be given to the Insurer must be addressed to:

**Notice to Claim Dept:**

XL Professional
One Hundred Constitution Plaza, 18th Floor
Hartford, CT 06103
Attn: Claim Dept.

**All other Notices:**

XL Professional
One Hundred Constitution Plaza, 17th Floor
Hartford, CT 06103
Attn: Underwriting

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

Endorsement No.: 6
Named Insured: Refco Inc.
Policy No: ELU089673-05

CL 83 06 07 02

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# AMEND INSURED V. INSURED EXCLUSION

In consideration of the premium charged, Section III Exclusions (A)(1) of the Policy is amended to read in its entirety as follows:

"(1)    by, on behalf of, or at the direction of the Company, Outside Entity or any Insured Person, except and to the extent such Claim:

(i)    is brought by a security holder of the Company or Outside Entity who, when such Claim is made and maintained is acting independently of, and without the solicitation, assistance, participation or intervention of the Company or any Outside Entity;

(ii)    is brought by the Bankruptcy Trustee or Examiner of the Company or Outside Entity, or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the Company or Outside Entity;

(iii)    is in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an Insured Person which is part of or results directly from a Claim which is not otherwise excluded by the terms of this Policy; or

(iv)    is an Employment Practices Claim;"

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

Endorsement No.: 7
Named Insured: Refco Inc.
Policy No: ELU089673-05

CL 83 14 10 03

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# PENDING AND/OR PRIOR LITIGATION EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for Claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Wrongful Act, underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to August 11, 2005.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

James Koval
_____
Print Name

Sr. Vice President
_____
Title

Endorsement No.: 8
Named Insured: Refco Inc.
Policy No: ELU089673-05

CL 80 34 12 02

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# AMEND MERGERS AND ACQUISITIONS ENDORSEMENT

In consideration of the premium charged, Section IV Conditions (C)(1) of the Policy is amended to read in its entirety as follows:

"(1)    If during the Policy Period, the Company acquires any assets, acquires a Subsidiary, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage shall be provided for any Loss involving a Claim for a Wrongful Act occurring after the consummation of the transaction; provided however, if by reason of the transaction (or series of transactions) the entity, assets, Subsidiary or liabilities so acquired or so assumed, exceed thirty five percent (35%) of the total assets or liabilities of the Company, as represented in the Company's most recent audited consolidated financial statements, coverage under this Policy shall be provided for a period of ninety (90) days for any Loss involving a Claim for a Wrongful Act that occurred after the transaction has been consummated.  Coverage beyond the ninety (90) day period will be provided only if:

   (a)    the Insurer receives written notice containing full details of the transaction(s); and

   (b)    the Insurer at its sole discretion, agrees to provide such additional coverage upon such terms, conditions, limitations, and additional premium that it deems appropriate."

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

CL 80 18 09 02

Endorsement No.: 9
Named Insured: Refco Inc.
Policy No: ELU089673-05

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# AMEND CONDITIONS (B)(1) ENDORSMENT

In consideration of the premium charged, Section IV Conditions (B)(1) of the Policy is amended to read in its entirety as follows:

"(1)    The Insured Persons and the Company understand and agree that all coverage under this Policy shall be specifically excess over, and shall not contribute with:

   (i)    all indemnification to which an Insured Person may be entitled from any source, including but not limited to the Company or any Outside Entity; and

   (ii)    any Insurance Program maintained by the Company or any Outside Entity, whether such other insurance is stated to be primary, contributing, excess or otherwise.

However, if Loss is not paid by such other insurance or as indemnification, this Policy will respond on behalf of the Insured Persons as if it were primary, subject to all of its terms, conditions and limitations and without prejudice to the Insurer's excess position."

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

XL 80 34 10 04

Endorsement No.: 10
Named Insured: Refco Inc.
Policy No: ELU089673-05

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# RESCISSION ENDORSEMENT

In consideration of the premium charged, the Insurer shall not be entitled under any circumstances to rescind this Policy, other than for non-payment of premium.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

Endorsement No.: 11
Named Insured: Refco Inc.
Policy No: ELU089673-05

XL 83 25 10 00

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# SPECIFIED ACTS EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for Loss, including Defense Expenses, in connection with any fact, circumstance, situation, transaction, event or Wrongful Act set forth below or in connection with any Claim, based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

      Wells Notice/ SEC Investigation

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

Endorsement No.: 12
Named Insured: Refco Inc.
Policy No: ELU089673-05

Manuscript 3027 12 05

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# CONTROLLING SHAREHOLDER ENDORSEMENT

In consideration of the premium charged:

(1)     The term "Insured Person," as defined in Section II. DEFINITIONS (I) of the Policy, is amended to include Philip Bennett in his capacity as a controlling shareholder of the Company, but only with respect to Securities Claims to the extent and during such time that such Securities Claims are also made and maintained against any other Insured Person or the Company.

(2)     With respect to Philip Bennett only, the definition of "Wrongful Act" in Section II. DEFINITIONS (P) of the Policy is amended to include the following:

     (a)     any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by Philip Bennett while acting in his capacity as controlling shareholder of the Company, or

     (b)     any matter claimed against Philip Bennett solely by reason of his status as controlling shareholder of the Company.

(3)     "Securities Claim" means a Claim which is brought by or on behalf of one or more of the securities holders of the Company in their capacities as such, or which arises from the purchase or sale of, or offer to purchase or sell, any securities issued by the Company, whether such purchase, sale or offer involves a transaction with the Company or occurs in the open market.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

XL 80 04 04 00

**Endorsement No.: 13**
**Named Insured: Refco Inc.**
**Policy No: ELU089673-05**

**Effective: August 11, 2005**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# INVERTED REPRESENTATION ENDORSEMENT

In consideration of the premium charged, no coverage will be available under this Policy for Loss, including Defense Expenses, from Claims arising from any fact, circumstance or situation of which, as of the effective date of this Policy, any Insured had knowledge and had reason to suppose might afford grounds for any Claim that would fall within the scope of the insurance afforded by this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

James Koval
Print Name

Sr. Vice President
Title

XL 80 04 04 00

Page 1 of 1

# EXECUTIVE LIABILITY UNDERWRITERS
**A Member of the XL Capital Group of Companies**

# CLASSIC A-SIDE MANAGEMENT LIABILITY

Executive Liability Underwriters
One Constitution Plaza
16th Floor
Hartford, CT 06103
Phone: 860-246-1863
Fax: 860-246-1899
www.xlelu.com
email: elusubmissions@xlelu.com

# CLASSIC A-SIDE MANAGEMENT LIABILITY INSURANCE COVERAGE FORM

**THIS IS A CLAIMS MADE POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to Executive Liability Underwriters, the Underwriting Manager for the Insurer identified on the Declarations Page (hereinafter, the "Insurer") including the Application and subject to all of the terms, conditions and limitations of all the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:**

## I.  INSURING AGREEMENT

The Insurer will pay on behalf of the **Insured Persons Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act**, except to the extent that such **Loss** is paid by any other **Insurance Program** or as indemnification from any source. If **Loss** is not paid by such other **Insurance Program** or as indemnification from any source, the Insurer will pay covered **Loss** on behalf of the **Insured Persons**, subject to all of the terms, conditions (including but not limited to Condition IV(B)) and limitations of the Policy.

## II.  DEFINITIONS

(A)     "**Application**" means:

    (1)     the **Application** attached to and forming part of this Policy; and

    (2)     any materials submitted therewith, which shall be retained on file by the Insurer and shall be deemed to be physically attached to this Policy.

(B)     "**Change In Control**" means:

    (1)     the merger or acquisition of the **Parent Company**, or of all or substantially all of its assets by another entity such that the **Parent Company** is not the surviving entity;

    (2)     the acquisition by any person, entity, or affiliated group or persons or entities of the right to vote for, select, or appoint more than fifty percent (50%) of the directors of the **Parent Company**; or

    (3)     the appointment of a Receiver, Conservator, Liquidator, Trustee, Rehabilitator, or any comparable authority, with respect to the **Parent Company**.

(C)     "**Claim**" means:

    (1)     a written demand for monetary or non-monetary relief;

    (2)     any civil or criminal judicial proceeding in a court of law or equity, or arbitration; or

    (3)     a formal civil, criminal, or administrative regulatory proceeding or formal investigation against an **Insured Person**.

(D)     "**Company**" means the **Parent Company** and any **Subsidiary** created or acquired on or before the Inception Date set forth in ITEM 2 of the Declarations or during the **Policy Period**, subject to CONDITIONS IV(C).

(E)    "**Defense Expenses**" means reasonable legal fees and expenses incurred in the defense of any **Claim**. **Defense Expenses** will not include the **Company's** overhead expenses or any salaries, wages, fees, or benefits of its directors, officers, or employees.

(F)    "**Employment Practices Claim**" means a **Claim** alleging an **Employment Practices Wrongful Act**.

(G)    "**Employment Practices Wrongful Act**" means any actual or alleged:

    (1)    wrongful termination of employment whether actual or constructive;

    (2)    employment discrimination of any kind;

    (3)    sexual or other harassment in the workplace; or

    (4)    wrongful deprivation of career opportunity, employment related misrepresentations, retaliatory treatment against an employee of the **Company**, failure to promote, demotion, wrongful discipline or evaluation, or refusal to hire.

(H)    "**Insurance Program**" means

    (1)    any existing Management Liability Insurance, Directors' and Officers' Liability Insurance, or similar insurance, and

    (2)    any other existing insurance under which coverage may be owed.

(I)    "**Insured Person**" means:

    (1)    any past, present, or future director or officer, or member of the Board of Managers, of the **Company** and those persons serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States;

    (2)    any individual identified in (I)(1) above who, at the specific written request of the **Company**, is serving as a director, officer, trustee, regent, or governor of any **Outside Entity**; or

    (3)    the lawful spouse of any person set forth in the above provisions of this definitions, but only to the extent the spouse is a party to any **Claim** solely in their capacity as a spouse of such persons and only for the purposes of any **Claim** seeking damages recoverable from marital community property, property jointly held by any such person and spouse, or property transferred from any such person to the spouse.

In the event of the death, incapacity or bankruptcy of an individual identified in (I)(1), (2), and (3) above, any **Claim** against the estate, heirs, legal representatives or assigns of such individual for a **Wrongful Act** of such individual will be deemed to be a **Claim** against such individual.

(J)    "**Interrelated Wrongful Acts**" means any **Wrongful Act** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related, or series of related, facts circumstances, situations, transactions, or events.

(K)    "**Loss**" means damages, judgments, settlements or other amounts (including punitive or exemplary damages, where insurable by law) and **Defense Expenses** that the **Insured Persons** are obligated to pay.  **Loss** will not include:

    (1)    the multiplied portion of any damage award;

    (2)    fines, penalties or taxes imposed by law; or

    (3)    matters which are uninsurable under the law pursuant to which this Policy is construed.

Note:  With respect to judgments in which punitive damages are awarded, the coverage provided by this Policy shall apply to the broadest extent permitted by law.  If, based on the written opinion of counsel for an **Insured Person**, punitive damages are insurable under applicable law, the Insurer will not dispute the written opinion of counsel for the **Insured Person**.

(L)     "**Parent Company**" means the entity named in Item 1 of the Declarations.

(M)     "**Policy Period**" means the period form the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations or to any earlier cancellation date.

(N)     "**Outside Entity**" means any corporation or organization other than the **Company** of which any **Insured Person** serves as a director, officer, trustee, regent, or governor, but only if such service is at the specific written direction of the **Company**.

(O)     "**Subsidiary**" means any entity during any time in which the **Parent Company** owns, directly or through one of more **Subsidiary(ies)**, more than fifty percent (50%) of the outstanding securities representing the right to vote for the election of such entity's directors.

(P)     "**Wrongful Act**" means:

    (1)     any actual or alleged act, error, or omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person** while acting in his or her capacity as an:

        (i)     **Insured Person** of the **Company** or a person serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary**;

        (ii)     **Insured Person** of the **Company** who at the specific written request of the **Company** is serving as a director, officer, trustee, regent or governor or an **Outside Entity**; and

    (2)     any **Employment Practices Wrongful Act**.

## III.  EXCLUSIONS

(A)     Except for **Defense Expenses**, the Insurer shall not pay **Loss** in connection with any **Claim**:

    (1)     by, on behalf of, or at the direction of the **Company** or **Outside Entity**, except and to the extent such **Claim**:

        (i)     is brought by a security holder of the **Company** or **Outside Entity** who, when such **Claim** is made and maintained, is acting independently of, and without the solicitation, assistance, participation or intervention of the **Company** or any **Outside Entity**.

        (ii)     is brought by the Bankruptcy Trustee or Examiner of the **Company** or **Outside Entity**, or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the **Company** or **Outside Entity**;

    (2)     brought about or contributed to in fact by any:

        (i)     intentionally dishonest, fraudulent, or criminal act or omission or any willful violation of any statute, rule, or law; or

        (ii)     profit or remuneration gained by any **Insured Person** to which such **Insured Person** is not legally entitled;

as determined by a final adjudication in the underlying action or in a separate action or proceeding;

(B)    The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured Person**:

    (1)    for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, defamation, slander, libel, disease or death of any person, or damage or destruction of any tangible property including **Loss** of use thereof. EXCLUSION (B) shall not apply to any **Claim**:

        (i)    brought by a security holder of the **Company** or **Outside Entity** for any actual or alleged violation of the Securities Act of 1933, the Securities Act of 1934, or any state securities statute; or

        (ii)    a derivative action brought by or on behalf of, or in the name or right of, the **Company**, and brought and maintained independently of, and without solicitation, assistance, participation or invention of the **Company, Insured Person**, or **Outside Entity**.

    (2)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance or situation, transaction, event or **Wrongful Act** which, before the Inception Date of this Policy, was the subject of any notice given under any other Management Liability insurance, Directors' and Officers' insurance, or any other similar insurance.

    Note:  EXCLUSION (B)(1) will not apply to any allegation of libel, slander, defamation, mental anguish or emotional distress if and only to the extent that such allegations are made as part of an **Employment Practices Claim** for an **Employment Practices Wrongful Act.**

No conduct of any **Insured Person** will be imputed to any other **Insured Person** to determine the application of any of the above EXCLUSIONS.

## IV.    CONDITIONS

(A)    **Limit of Liability**

    The amount set forth in ITEM 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under this Policy.  Payment of **Loss**, including **Defense Expenses**, by the Insurer shall reduce the Limit of Liability.

(B)    **Indemnification and Other Insurance**

    (1)    The **Insured Persons** and the **Company** understand and agree that all coverage under this Policy shall be specifically excess over, and shall not contribute with:

        (i)    all indemnification to which an **Insured Person** may be entitled from any source, including but not limited to the **Company** or any **Outside Entity**; and

        (ii)    any **Insurance Program** maintained by the **Company** or any **Outside Entity**, whether such other insurance is stated to be primary, contributing, excess, or otherwise.

    (2)    This Policy shall not be subject to the terms or conditions of any other insurance.  The Insurer does not waive compromise or release any of its rights to recover **Loss** paid under this Policy from the issuers of any other insurance under which coverage may be owed, or from any person or entity from which an **Insured Person** is entitled to indemnification.

(C)    **Mergers and Acquisitions**

    (1)    If during the **Policy Period**, the **Company** acquires any assets, acquires a **Subsidiary**, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage

CLASSIC A-SIDE
CL 71 00 03 00

shall be provided for any **Loss** involving a **Claim** for a **Wrongful Act** occurring after the consummation of the transaction.

(2)   With respect to the acquisition, assumption, merger, consolidation or other of any entity, asset, **Subsidiary** or liability as described in (C)(1) above, there will be no coverage available under this Policy for any **Claim** made against the acquired, assumed, merged, or consolidated entity, asset, **Subsidiary**, liability, or **Insured Person** for a **Wrongful Act** committed at any time during which such entity, asset, liability, or **Subsidiary** is not insured under this Policy.

(3)   If during the **Policy Period** any entity ceases to be a **Subsidiary**, the coverage provided under this Policy shall continue to apply to the **Insured Persons** who because of their service with such **Subsidiary** were covered under this Policy but only with respect to a **Claim** for a **Wrongful Act** that occurred or allegedly occurred prior to the time such **Subsidiary** ceased to be a **Subsidiary** of the **Company**.

(4)   If, during the **Policy Period**, there is a **Change In Control**, the coverage provided under this Policy shall continue to apply but only with respect to a **Claim** for a **Wrongful Act** committed or allegedly committed prior to the time of the **Change In Control**; and

    (i)    coverage will cease with respect to any **Claim** for a **Wrongful Act** committed subsequent to the **Change In Control**; and

    (ii)   the entire premium for the Policy will be deemed to be fully earned immediately upon the consummation of a **Change In Control**.

(D)   **Notice**

(1)   As a condition precedent to any right to payment under this policy with respect to any **Claim**, the **Insured Persons** or the **Company** shall give written notice to the Insurer of any **Claim** as soon as practicable after it is first made.

(2)   If, during the **Policy Period**, the **Insured Persons** or the **Company** first becomes aware of a specific **Wrongful Act** and if, during the **Policy Period**, the **Insured Persons** or the **Company**:

    (i)    provide the Insurer with written notice of the specific **Wrongful Act**, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, and the circumstances by which the **Insured Persons** first became aware of such **Wrongful Act**; and

    (ii)   request coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**;

then any **Claim** subsequently made arising out of such **Wrongful Act** will be treated as if it had been first made during the Policy Period.

All notices under CONDITIONS (D) (1) and (2) must be sent by certified mail or the equivalent to the address set forth in ITEM 5 of the Declarations;   Attention: Claim Department.

(E)   **Defense and Settlement of Claims**

(1)   It shall be the duty of the **Insured Persons** and not the duty of the Insurer to defend **Claims**. No **Insured Person** may incur any **Defense Expenses** or admit liability for, make any settlement offer with respect to, or settle any **Claim** without the Insurer's consent, such consent not to be unreasonably withheld.

(2)   Upon written request, the Insurer will pay on a current basis any **Defense Expenses** before the disposition of the **Claim** for which this Policy provides coverage. As a condition of the advancement of

CLASSIC A-SIDE
CL 71 00 03 00

**Defense Expenses**, the Insurer may require a written undertaking, in a form satisfactory to the Insurer, which will guarantee the repayment of any **Loss** including **Defense Expenses** paid to or on behalf of the **Insured Persons** if it is finally determined that the **Loss** incurred is not covered under this Policy.

(3)    Except for such **Defense Expenses**, the Insurer shall pay **Loss** only upon the final disposition of any **Claim**.

(F)    **Assistance, Cooperation and Subrogation**

(1)    The **Insured Persons** and the **Company** agree to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agree that they will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.

(2)    In the event of any payment under this Policy, the Insurer shall be subrogated to all of the potential or actual rights of recovery of the **Insured Persons**. The **Insured Persons** and the **Company** shall execute all papers required and will do everything necessary to secure such rights including but not limited to the execution of such documents as are necessary to enable the Insurer to effectively bring suit in their name, and will provide all other assistance and cooperation which the Insurer may reasonably require.

(G)    **Interrelated Claims**

All **Claims** arising from the same **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have be made at the earliest time at which the earliest such **Claim** is made or deemed to have been made pursuant to CONDITION (D)(1) and (2) above, if applicable.

(H)    **Exhaustion**

If the Insurer's Limit of Liability as set forth in ITEM 3 of the Declarations is exhausted by the payment of **Loss**, the premium as set forth in ITEM 6 of the Declarations will be fully earned, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind whatsoever under this Policy.

(I)    **Cancellation and Renewal of Coverage**

(1)    Except for the nonpayment of premium, as set forth in (I)(2) below, the **Parent Company** has the exclusive right to cancel this Policy. Cancellation may be effected by mailing to the Insurer written notice when such cancellation be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations. In such event, the Insurer shall retain the customary short rate portion of the earned premium. Return or tender of the unearned premium is not a condition of cancellation.

(2)    The Insurer may only cancel this Policy for nonpayment of premium. The Insurer will provide not less than twenty (20) days written notice stating the reason for cancellation and when the Policy will be canceled. Notice of cancellation will be sent to the **Parent Company** and the agent of record for the **Insured Person**, if applicable.

(3)    The Insurer is under no obligation to renew this Policy upon its expiration. Once the Insurer chooses to non-renew this Policy, the Insurer will deliver or mail to the **Parent Company** written notice stating such at least sixty (60) days before the Expiration Date set forth in ITEM 2 of the Declarations.

(J)    **Optional Extension Period**

(1)    If either the **Parent Company** or the Insurer does not renew this Policy, the **Parent Company** shall have the right, upon payment of an additional premium set forth in ITEM 4 of the Declarations, to an

extension of the coverage provided by this Policy with respect only to any **Claim** first made during the period of time set forth in ITEM 4 of the Declarations after the Policy Expiration Date, but only with respect to a **Wrongful Act** occurring prior to the Policy Expiration Date.

(2)     As a condition precedent to the right to purchase the Optional Extension Period the total premium for this Policy must have been paid in full. The right of the **Parent Company** to purchase the Optional Extension Period will be immediately terminated if the Insurer does not receive written notice by the **Parent Company** advising it wishes to purchase the Optional Extension Period together with full payment of the premium for the Optional Extension Period within thirty (30) days after the Policy Expiration Date.

(3)     If the **Parent Company** elects to purchase the Optional Extension Period as set forth in (J)(1) and (2) above, the entire premium for the Optional Extension Period will be deemed to be fully earned at the Inception Date for the Optional Extension Period.

(4)     The purchase of the Optional Extension Period will not in any way increase the Limit of Liability set forth in ITEM 3 of the Declarations, and the Limit of Liability with respect to **Claims** made during the Optional Extension Period shall be part of and not in addition to the Limit of Liability for all **Claims** made during the **Policy Period**.

(K)     **Representation Clause**

Each **Insured Person** represents that the statements and particulars contained in the **Application** are true, accurate and complete, and agree that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are the basis of this Policy. No knowledge or information possessed by any **Insured Person** will be imputed to any other **Insured Person** for the purposes of determining the availability of coverage with respect to **Claims** made against any other **Insured Person**.

(L)     **Action Against the Insurer, Assignment, and Changes to Policy**

(1)     No action may be taken against the Insurer unless, as a condition precedent thereto:

(i)     there has been full compliance with all of the terms and conditions of this Policy; and

(ii)     the amount of the obligation of the **Insured Person** has been finally determined either by judgment against the **Insured Person** after actual trial, or by written agreement of the **Insured Person**, the claimant and the Insurer.

(2)     Nothing contained herein shall give any person or entity any right to join the Insurer as a party to any **Claim** against the **Insured Person** to determine their liability, nor may the **Insured Person** implead the Insurer in any **Claim**.

(3)     Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed hereon.

(4)     Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not cause a waiver or change in any part of this Policy or prevent the Insurer from asserting any right under the terms, conditions and limitations of this Policy. The terms, conditions and limitations of this Policy may only be waived or changed by written endorsement signed by the Insurer.

(M)     **Authorization and Notices**

It is understood and agreed that the **Parent Company** will act on behalf of the **Company** and the **Insured Persons** with respect:

CLASSIC A-SIDE
CL 71 00 03 00

(1)     the payment of the premiums,

(2)     the receiving of any return premiums that may become due under this Policy,

(3)     the giving of all notices to the Insurer as provided herein, and

(2)     the receiving of all notices from the Insurer.

(N)     **Entire Agreement**

The **Insured Persons** agree that the Declarations, Policy, including the endorsements, attachments and the **Application** shall constitute the entire agreement between the Insurer or any of its agents and the **Insured Persons** relation to the insurance.

CL 71 00 03 00

# EXHIBIT B

 **INSURANCE**

XL Professional
100 Constitution Plaza
17th Floor
Hartford, CT 06103
Phone    860-246-1863
Fax      860-246-1899

## CLASSIC A-SIDE MANAGEMENT LIABILITY BINDER

| Date: | August 10, 2005 | |
|---|---|---|
| Name: | James Schneider | |
| Company: | Marsh | |
| Fax: | 212.345.9418 | |
| From: | Hank Toolan        Direct: 860.948.1846 | hank.toolan@xlgroup.com |

### INSURED INFORMATION

| Name: | Refco Group Ltd LLC |
|---|---|
| Address: | 200 Liberty St Fl 23 |
| | New York, NY  10281-1003 |
| Policy Number: | **ELU089673-05** |
| Carrier: | XL Specialty Insurance Company |

| POLICY FORM | | POLICY PERIOD |
|---|---|---|
| CL 71 00 03 00 | Classic A-Side Management Liability | August 11, 2005 to August 11, 2006 |
| **LIMIT of LIABILITY** | | **OPTIONAL EXTENSION PERIOD** |
| $20,000,000 | Aggregate each Policy Period (including defense expenses) | One year at 200% of the annual premium |
| **INSURANCE PROGRAM** | | |
| $50,000,000 HCC, Lexington, Axis, AWAC, Arch | | |

PREMIUM:  $370,300.00

The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ waived.

Commission: 12.50%

Premium Due Date: September 10, 2005

### ENDORSEMENTS:

- Terrorism Insurance Disclosure
- Terrorism Premium Endorsement -XL 80 24 03 03
- Amend Insured vs. Insured Exclusion- CL 83 06 07 02
- Prior and Pending Litigation Exclusion-August 11, 2005- CL 83 14 10 03
- Amend Mergers and Acquisitions Endorsements: 35%-CL 80 34 12 02
- Amend Conditions (B)(1) Endorsement- CL 80 18 09 02
- Non-Rescindable Endorsement- XL 80 34 10 04
- Prior Acts Exclusion-CL 83 08 09 02
- Specific Claims Exclusion- McElworth- XL 83 07 01 00
- Specific Events Exclusion-Wells Notice/ SEC Investigation- XL 83 25 10 00
- Controlling Shareholder Coverage- Phillip Bennett
- Change of Address of Insurer Endorsement- XL 80 39 04 05

THE BINDER IS SUBJECT TO RECEIPT, REVIEW, AND ACCEPTANCE OF THE FOLLOWING ITEMS.
THE ITEMS LISTED BELOW MUST BE RECEIVED WITHIN 10 DAYS.

- Classic A-Side Application
- Final Prospectus

IF THE TOTAL PREMIUM IS NOT PAID BY THE PREMIUM DUE DATE SET FORTH ABOVE, THE INSURER WILL CANCEL THE COVERAGE FOR NON-PAYMENT OF PREMIUM. THE EFFECT OF SUCH CANCELLATION WILL BE THAT THE OFFERED COVERAGE SHALL NOT INCEPT, AS IF SUCH OFFER OF COVERAGE HAD NEVER BEEN MADE.

**Confidential**
**M-CHI 003020**