**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

XL SPECIALTY INSURANCE COMPANY,

                 Plaintiff,

           v.

JOHN D. AGOGLIA, PHILLIP R. BENNETT,
LEO R. BEITMAN, EDWIN L. COX,
SUKHMEET DHILLON, THOMAS H.
DITTMER, NATHAN GANTCHER,
STEPHEN GRADY, TONE GRANT,
THOMAS HACKL, DAVID V. HARKINS,
SCOTT L. JAECKEL, DENNIS A. KLEJNA,
THOMAS H. LEE, ERIC G. LIPOFF, SANTO
C. MAGGIO, PETER MCCARTHY, JOSEPH
MURPHY, FRANK MUTTERER, RONALD
L. O'KELLEY, RICHARD N. OUTRIDGE,
SCOTT A. SCHOEN, WILLIAM M.
SEXTON, GERALD SHERER, PHILIP
SILVERMAN, AND ROBERT C. TROSTEN,

                 Defendants.

---------------------------------------------------------- x

No. 08-CV-3821

*Electronically Filed*

**ANSWER AND**
**COUNTERCLAIMS**
**OF DEFENDANT**
**TONE N. GRANT**

Zuckerman Spaeder LLP

1540 Broadway
Suite 1640
New York, New York 10036
Telephone:    (212) 704-9600
Facsimile:    (212) 704-4256
Email:       neisen@zuckerman.com

*Attorneys for Defendant Tone N. Grant*

1880009.1

Defendant Tone N. Grant ("Mr. Grant"), by and through his attorneys, Zuckerman Spaeder LLP, states as follows for his Answer to the Complaint of plaintiff XL Specialty Insurance Company ("XL"), dated April 22, 2008, in the above-captioned action (the "Complaint"):

1.      No response is required for paragraph 1 of the complaint.

2.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint, except admit that XL issued a directors and officers management liability policy number ELU089673-05 (the "XL Policy") to Refco Inc. ("Refco") for the period of April 11, 2005 to August 11, 2006.

3.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of the Complaint, except admit, upon information and belief, that the XL Policy incepted on August 11, 2005, which was the same date as the Refco initial public offering, and that Refco filed for Chapter 11 bankruptcy on October 17, 2005.

4.      Admit that numerous lawsuits and investigations have been initiated against Refco and certain individuals, and refer to the Underlying Matters for the allegations contained therein, and, otherwise, deny each and every allegation contained in paragraph 4 of the Complaint.

5.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the Complaint, except admit, upon information and belief, that three Refco executives, Phillip R. Bennett ("Bennett"), Robert C. Trosten ("Trosten") and Santo C. Maggio ("Maggio"), have pled guilty to various criminal charges and admit that Mr. Grant was found guilty by a jury on April 17, 2008.

1880009.1

6.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Complaint, except admit that Mr. Grant, among other defendants, has sought coverage under the XL Policy in connection with the Underlying Matters and that XL has denied coverage, and refer to the XL Policy for the contents thereof.

7.      The allegations contained in paragraph 7 of the Complaint are conclusions of law and require no response in this Answer.

8.      Admit that XL purports to seek a declaration from this Court resolving the dispute in their favor; and aver that XL is entitled to no relief.

9.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Complaint, except admit that XL avers that the Court has jurisdiction over the parties and the subject matter of this action pursuant to 28 U.S.C. § 1332.

10.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Complaint, except admit that XL avers that the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1367.

11.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of the Complaint, except admit that XL avers that the Court has *in personam* jurisdiction over Mr. Grant pursuant to CPLR §§ 301 and 302 and admit that XL avers Mr. Grant is a former officer of Refco and that he transacted business in New York or otherwise engaged in a sufficient course of conduct in the State to make the exercise of personal jurisdiction proper.

12.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Complaint, except admit that XL avers that the Court has jurisdiction pursuant to CPLR § 302 and admit that the action *In re Refco, Inc.*

1880009.1

*Securities Litigation*, No. 05-8626 (GEL) is pending before this Court and, admit that criminal proceedings against Bennett, Trosten, Maggio and Mr. Grant have been conducted in this judicial district.

13.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint, except admit that XL avers that venue is appropriate pursuant to 28 U.S.C. § 1391.

14.     The allegation contained in paragraph 14 of the Complaint requires no response, because it is a legal conclusion.

15.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the Complaint, except admit, upon information and belief, that XL is an insurance company.

16.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Complaint.

17.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Complaint, except admit, upon information and belief, that Bennett is the former Chairman, President and CEO of Refco, and that in October 2005, Bennett was asked by the Refco Board of Directors to take a leave of absence.

18.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Complaint.

19.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Complaint.

20.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the Complaint.

1880009.1

21.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Complaint.

22.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the Complaint.

23.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint, except admit, upon information and belief, that defendant Stephen Grady served as Chief Operating Officer of Refco Global Futures LLC.

24.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint, except admit that Mr. Grant served as President of Refco Group Ltd., LLC, and that Mr. Grant is a resident of Illinois.

25.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the Complaint.

26.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 of the Complaint, except admit, upon information and belief, that defendant David V. Harkins served as a director of Refco.

27.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the Complaint, except admit, upon information and belief, that defendant Scott L. Jaeckel served as a director of Refco.

28.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the Complaint, except admit, upon information and belief, that defendant Dennis A. Klejna served as Executive Vice President and General Counsel of Refco.

1880009.1

29.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of the Complaint, except admit, upon information and belief, that defendant Thomas H. Lee served as a director of Refco.

30.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 of the Complaint.

31.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 of the Complaint, except admit, upon information and belief, that defendant Maggio served as President and CEO of Refco Securities, LLC and President of Refco Capital Markets, Ltd.

32.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 of the Complaint.

33.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 of the Complaint, except admit, upon information and belief, that defendant Joseph Murphy served as President of Refco during October and November of 2005.

34.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 of the Complaint.

35.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 of the Complaint, except admit, upon information and belief, that defendant Ronald L. O'Kelley served as a director of Refco.

36.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36 of the Complaint.

1880009.1

37.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37 of the Complaint, except admit, upon information and belief, that defendant Scott A. Schoen served as a director of Refco.

38.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of the Complaint, except admit, upon information and belief, that Sexton served as Executive Vice President and Chief Operating Officer of Refco between August 2004 and October 2005.

39.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39 of the Complaint.

40.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 of the Complaint, except admit, upon information and belief, that defendant Philip Silverman served as Secretary of Refco.

41.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 of the Complaint, except admit, upon information and belief, that defendant Trosten served as Executive Vice President and Chief Financial Officer of Refco Group Ltd., LLC.

42.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42 of the Complaint, except admit that the XL Policy is a directors and officers management liability policy with a policy period of August 11, 2005 to August 11, 2006 and a limit of $20 million, and refer to the XL Policy for the contents thereof.

43.     Deny each and every allegation contained in paragraph 43 of the Complaint, except admit that U.S. Specialty Insurance Company ("U.S. Specialty"), Lexington Insurance Company ("Lexington"), Axis Reinsurance Company ("Axis"), Allied World Assurance

1880009.1

Company ("AWAC") and Arch Insurance Company ("Arch") have issued underlying insurance policies to Refco, and refer to those policies for the contents thereof.

44.     Paragraph 44 of the Complaint requires no response, because the XL policy speaks for itself.

45.     Paragraph 45 of the Complaint requires no response, because the XL Policy speaks for itself.

46.     Admit that the XL Policy provides coverage to Insured Persons in excess of the Underlying Coverage, and otherwise paragraph 46 of the Complaint requires no response because the XL Policy speaks for itself.

47.     Deny each and every allegation contained in paragraph 47 of the Complaint, except admit that the XL Policy does not "follow form" to the underlying policies, and otherwise paragraph 47 of the Complaint requires no response because the XL Policy speaks for itself.

48.     Deny each and every allegation contained in paragraph 48 of the Complaint, except admit the allegations contained in the first sentence of paragraph 48 and the second sentence of footnote 6, deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 48, and admit, upon information and belief, the allegations contained in the third and fourth sentences of paragraph 48 and the allegations contained in footnote 8.

49.     Admit, upon information and belief, that Refco conducted its initial public offering on August 11, 2005.

50.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 50 of the Complaint, and otherwise paragraph 50 of the Complaint requires no response because the October 10, 2005 press release speaks for itself.

51.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 51 of the Complaint, and otherwise paragraph 51 of the Complaint requires no response because the October 11, 2005 press release speaks for itself.

52.     Admit, upon information and belief, that Refco filed for bankruptcy in the Southern District of New York on or about October 17, 2005.

53.     Admit that on January 16, 2007 a federal Grand Jury returned a third superseding indictment against Bennett, Trosten, and Mr. Grant, and otherwise refer to the contents of the third superseding indictment filed on or about January 16, 2007 (the "S3 Indictment") which speaks for itself.

54.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 54 of the Complaint, except admit, upon information and belief, that Bennett and Trosten pled guilty to various federal charges brought against them in or around February 2008.

55.     Paragraph 55 of the Complaint requires no response, because the S3 Indictment speaks for itself.

56.     Paragraph 56 of the Complaint requires no response, because the S3 Indictment speaks for itself.

57.     Paragraph 57 of the Complaint requires no response, because the S3 Indictment speaks for itself.

58.     Paragraph 58 of the Complaint requires no response, because the S3 Indictment speaks for itself.

59.     Paragraph 59 of the Complaint requires no response, because the S3 Indictment speaks for itself.

1880009.1

60.    Paragraph 60 of the Complaint requires no response, because the S3 Indictment speaks for itself.

61.    Paragraph 61 of the Complaint requires no response, because the S3 Indictment speaks for itself.

62.    Admit, upon information and belief, that Bennett pled guilty to various federal charges, and otherwise the allegations contained in Paragraph 62 of the Complaint refer to the transcript of the February 15, 2008 hearing (the "Bennett Transcript"), which speaks for itself.

63.    Admit, upon information and belief, that Bennett pled guilty to various federal charges, and otherwise the allegations contained in Paragraph 63 of the Complaint refer to the Bennett Transcript, which speaks for itself.

64.    Paragraph 64 of the Complaint requires no response, because the S3 Indictment speaks for itself.

65.    Admit, upon information and belief, that Trosten pled guilty to various federal charges, and otherwise the allegations contained in Paragraph 65 of the Complaint refer to the transcript of the February 20, 2008 hearing (the "Trosten Transcript"), which speaks for itself.

66.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 66 of the Complaint, except admit, upon information and belief, that Trosten pled guilty to various federal charges, and refer to the Trosten Transcript, which speaks for itself.

67.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 67 of the Complaint, except admit, upon information and belief, that Maggio pled guilty to various federal charges, and refer to the criminal Information brought against Maggio (the "Maggio Information"), which speaks for itself.

10

68.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68 of the Complaint, and refer to the Maggio Information, which speaks for itself.

69.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69 of the Complaint, and refer to the Maggio Information, which speaks for itself.

70.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 70 of the Complaint, except admit, upon information and belief, that Maggio pled guilty to various federal charges, and refer to the transcript of the December 19, 2007 hearing (the "Maggio Transcript"), which speaks for itself.

71.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 71 of the Complaint, except admit, upon information and belief, that Maggio pled guilty to various federal charges, and refer to the Maggio Transcript, which speaks for itself.

72.    Admit that Mr. Grant chose not to plead guilty and was tried before a jury; admit that the government introduced a document into evidence that purported to relate to a 2004 meeting between Mr. Grant and Bennett; lack sufficient knowledge or information to answer the allegation regarding the "RGHI transaction;" as that term is not defined in the Complaint; admit that Mr. Grant was convicted of conspiracy, securities fraud, wire fraud, bank fraud, and money laundering on April 17, 2008; and deny the remaining allegations in paragraph 72 of the Complaint.

73.    Paragraph 73 of the Complaint requires no response, because it is a legal conclusion.  To the extent a response is required, Mr. Grant denies the allegations as they relate

to him and otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 73 of the Complaint.

74.    Admit, upon information and belief, that various lawsuits were filed against certain of the defendants in the above-captioned action beginning on or about October 12, 2005.

75.    The allegations contained in paragraph 75 of the Complaint require no response, because the complaint filed in *United States v. Bennett*, No. 05-1720 (S.D.N.Y.) (the "Bennett Criminal Complaint"), speaks for itself.

76.    The allegations contained in paragraph 76 of the Complaint require no response, because the Bennett Criminal Complaint speaks for itself.

77.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 77 of the Complaint, except admit that Mr. Grant provided notice of this action to XL.

78.    Admit, upon information and belief, the allegations contained in paragraph 78 of the Complaint.

79.    The allegations of wrongdoing contained in paragraph 79 of the Complaint require no response, because the First Amended Consolidated Class Action Complaint ("FAC") and the Second Amended Consolidated Class Action Complaint ("SAC") speak for themselves, except admit that Mr. Grant is named as a defendant in the SAC.

80.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 80 of the Complaint, except admit, upon information and belief, notice was provided to XL on behalf of Mr. Grant of certain matters arising out of Mr. Grant's employment with Refco.

1880009.1

81.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 81 of the Complaint.

82.     The allegations contained in paragraph 82 of the Complaint require no response, because the complaints in the Derivative Litigation speak for themselves.

83.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 83 of the Complaint.

84.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 84 of the Complaint.

85.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 85 of the Complaint.

86.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 86 of the Complaint.

87.     Admit, upon information and belief, the allegations contained in paragraph 87 of the Complaint.

88.     The allegations contained in paragraph 88 of the Complaint require no response, because the complaint in the THL Funds Action speaks for itself.

89.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 89 of the Complaint, except admit that Mr. Grant provided notice of this action to XL.

90.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 90 of the Complaint.

1880009.1

91.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 91 of the Complaint.

92.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 92 of the Complaint.

93.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 93 of the Complaint.

94.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 94 of the Complaint, and refer to the second amended complaint which speaks for itself.

95.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 95 of the Complaint.

96.     Admit, upon information and belief, the allegations contained in paragraph 96 of the Complaint.

97.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 97 of the Complaint, and refer to the Consolidated Amended Class Action Complaint, which speaks for itself.

98.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 98 of the Complaint, except admit that Mr. Grant provided notice of this action to XL.

99.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 99 of the Complaint, except admit, upon information and belief, that on or about October 9, 2007 *VR Global Partners L.P., et al. v. Bennett, et al.,* Case No. 07-8686 (S.D.N.Y.) and *Capital Management Select Fund Ltd., et al. v. Bennett, et al.,* Case No. 07-8688

14

(S.D.N.Y.) were brought against various defendants including Mr. Grant and were consolidated with the Global Management Litigation on or around November 20, 2007.

100.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 100 of the Complaint.

101.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 101 of the Complaint.

102.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 102 of the Complaint.

103.    Admit, upon information and belief, the truth of the allegations contained in paragraph 103 of the Complaint.

104.    The allegations contained in paragraph 104 of the Complaint require no response, because the complaint in the Grant Thornton Litigation speaks for itself.

105.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 105 of the Complaint, except admit that Mr. Grant provided notice of this action to XL.

106.    Admit, upon information and belief, the truth of the allegations contained in paragraph 106 of the Complaint.

107.    Admit that Mr. Grant was named a defendant in the Agoglia Litigation, and otherwise refer to the complaint in the Agoglia Litigation, which speaks for itself.

108.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 108 of the Complaint, except admit that Mr. Grant provided notice of this action to XL.

1880009.1

109.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 109 of the Complaint.

110.     The allegations in paragraph 110 of the Complaint require no response, because the complaint in the Hackl Litigation speaks for itself.

111.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 111 of the Complaint.

112.     The allegations in paragraph 112 of the Complaint require no response, because the complaint in the Trustee/Bennett Litigation speaks for itself, except deny that Mr. Grant was named a defendant in this action.

113.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 113 of the Complaint.

114.     No response is required for paragraph 114 of the Complaint.

115.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 115 of the Complaint.

116.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 116 of the Complaint.

117.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 117 of the Complaint.

118.     Admit, on information and belief, the allegations contained in paragraph 118 of the Complaint.

1880009.1

119.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 119 of the Complaint, except admit that Mr. Grant provided notice of this action to XL.

120.     No response is required for paragraph 120 of the Complaint.

121.     Repeat and reallege each response to paragraphs 1 through 120 above.

122.     Paragraph 122 of the Complaint requires no response because it contains only a conclusion of law; to the extent a response is required deny the allegations in paragraph 122 of the Complaint as directed to Mr. Grant.

123.     Paragraph 123 of the Complaint requires no response because it contains only a conclusion of law.

124.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 124 of the Complaint.

125.     Paragraph 125 of the Complaint requires no response because it contains only a conclusion of law.

126.     Paragraph 126 of the Complaint requires no response because it contains only a conclusion of law.

127.     Paragraph 127 of the Complaint requires no response because it contains only a conclusion of law.

128.     Paragraph 128 of the Complaint requires no response because it contains only a conclusion of law.

129.     Paragraph 129 of the Complaint requires no response because it contains only a conclusion of law.

1880009.1

130.    Paragraph 130 of the Complaint requires no response because it contains only a conclusion of law.

131.    Paragraph 131 of the Complaint requires no response because it contains only a conclusion of law; to the extent a response is required, deny the allegation in Paragraph 131 of the complaint.

132.    Paragraph 132 of the Complaint requires no response because it contains only a conclusion of law.

133.    Paragraph 133 of the Complaint requires no response because it contains only conclusions of law; to the extent a response is required deny the allegations in Paragraph 133 of the Complaint as directed to Mr. Grant.

134.    Paragraph 134 of the Complaint requires no response because it contains only a conclusion of law.

135.    Paragraph 135 of the Complaint requires no response because it contains only a conclusion of law.

136.    Deny each and every allegation contained in paragraph 136 of the Complaint.

137.    Deny each and every allegation contained in paragraph 137 of the Complaint.

138.    Deny each and every allegation contained in paragraph 138 of the Complaint.

**<u>FIRST DEFENSE</u>**

139.    XL fails to state a claim against Mr. Grant upon which relief can be granted.

1880009.1

## SECOND DEFENSE

140.    Upon information and belief, XL's claims against Mr. Grant are barred, in whole or in part, by the doctrine of laches.

## THIRD DEFENSE

141.    Upon information and belief, XL's claims against Mr. Grant are barred, in whole or in part, by the doctrine of waiver.

## FOURTH DEFENSE

142.    Upon information and belief, XL's claims against Mr. Grant are barred, in whole or in part, by the doctrine of estoppel.

## FIFTH DEFENSE

143.    Upon information and belief, XL's claims against Mr. Grant are barred, in whole or in part, by the doctrine of unclean hands.

## SIXTH DEFENSE

144.    Upon information and belief, XL's claims against Mr. Grant are barred as a result of XL's inequitable conduct in connection with its purported denial of coverage under the XL Policy.

## SEVENTH DEFENSE

145.    Upon information and belief, XL's claims against Mr. Grant are barred because XL unilaterally changed the terms of the XL Policy so as to provide purported grounds to deny coverage after receiving claims under the Policy.

1880009.1

## COUNTERCLAIMS

Tone N. Grant ("Mr. Grant"), by and through his attorneys, Zuckerman Spaeder LLP, alleges as follows for his counterclaims against XL Specialty Insurance Company ("XL"):

## INTRODUCTION

1.    XL is the fifth excess insurer in the "tower" of Directors and Officers ("D&O") liability insurance obtained by Refco for the policy period beginning in August 2005.  Mr. Grant, along with other former Refco officers and directors insured under the policies (collectively, the "Insureds"), has been named as a defendant in various actions relating to the collapse of Refco. The Insureds have requested coverage for such actions, including defense costs, from the insurers on the D&O "tower."

2.    XL has denied coverage to the Insureds, and has commenced this action seeking a declaration that its excess D&O corporate liability insurance policy issued to Refco for claims made during the period from August 11, 2005 to August 11, 2006 (the "XL Policy") does not provide coverage to any of the Insureds in connection with the "Underlying Matters" described in the Complaint filed by XL on or about April 22, 2008 (the "Complaint," or "Compl.").

3.    None of the grounds alleged in the Complaint provides XL with a valid basis for refusing coverage to Mr. Grant.  Nonetheless, it is clear that XL does not intend to honor its contractual obligations to Mr. Grant when the XL Policy is triggered.

## JURISDICTION AND VENUE

4.    These counterclaims are brought pursuant to Rule 13 of the Federal Rules of Civil Procedure.

1880009.1

5.      This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between Mr. Grant and XL, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these counterclaims occurred in this judicial district.

## PARTIES

7.      Mr. Grant is a former officer of Refco who, at times relevant to this action, served as President of Refco Group Ltd.  Mr. Grant is a resident of the State of Illinois.

8.      Upon information and belief, XL is an insurance company that is organized and exists pursuant to the laws of the State of Delaware and has its principal place of business in Connecticut.

## GENERAL ALLEGATIONS

### A.      The Underlying Actions

9.      Mr. Grant (along with other Insureds) has been named as a defendant in several lawsuits, including the following actions:

   a.      United States v. Phillip Bennett, Robert Trosten, and Tone Grant, S3 05 Cr. 1192 (NRB) (S.D.N.Y)

   b.      Thomas H. Lee Equity Fund L.P., et al. v. Bennett, et al., No. 05-9608 (S.D.N.Y.)

   c.      In re Refco, Inc. Sec. Litig., No. 05 Civ. 8626 (GEL) (S.D.N.Y.);

   d.      In re Refco Capital Markets, Ltd. Brokerage Customer Sec. Litig., No. 06 Civ. 643 (GEL) (S.D.N.Y.);

   e.      V.R. Global Partners, L.P. v. Bennett, et al., No. 07 Civ. 8686 (GEL) (S.D.N.Y.);

1880009.1

    f.    *Kirshner v. Grant Thornton LLP et al.*, No. 2007L008818 (Cook County, Ill.);

    g.    *Kirschner v. Agoglia, et al.*, Adv. Proc. No. 07-3060 (RDD) (Bankr. S.D.N.Y.) and

    h.    *Krys, et al. v. Sugrue, et al.*, Index 6000653/08.

These actions are collectively referred to herein as the "Underlying Actions."

10.    Mr. Grant properly gave notice of each of the Underlying Actions to the insurers on the Refco "tower" of liability insurance, including XL, and requested coverage from such insurers under the policies described below.

**B.**    **The Refco "Tower" of D&O Insurance**

11.    As indicated above, Refco procured a "tower" of D&O insurance coverage. Such coverage consists of a primary policy and five excess policies for the period beginning August 11, 2005 to August 11, 2006 (the "policy period").

**The U.S. Specialty Policy**

12.    U.S. Specialty Insurance Company ("U.S. Specialty") issued the primary policy, Directors, Officers and Corporate Liability Insurance Policy No. 24-MGU-05-A10821, to Refco for the policy period with a $10 million limit of liability (the "U.S. Specialty Policy").

13.    The U.S. Specialty Policy provides directors and officers with coverage for "Loss arising from Claims . . . against the Insured Persons for Wrongful Acts." (*Id.* at Insuring Agreement (A)).

14.    U.S. Specialty recognized its coverage obligations to Mr. Grant as well as other Insureds. After obtaining approval from this Court to comply with the terms of its policy and advance defense costs to Insureds, U.S. Specialty paid the defense costs of the Insureds until the limits of the U.S. Specialty Policy were exhausted in early 2007.

1880009.1

**The Lexington Policy**

15.     Lexington Insurance Company ("Lexington") issued the first excess policy above the U.S. Specialty Policy, Directors and Officers Liability and Corporation Reimbursement Follow Form Excess Liability Policy No. 1620926, to Refco for the policy period with a $7.5 million limit of liability in excess of $10 million (the "Lexington Policy").

16.     The Lexington Policy "follows form" with the U.S. Specialty Policy.

17.     Lexington complied with its duties under the Lexington Policy and paid the defense costs of the Insureds in connection with the Underlying Actions until the limits of the Lexington Policy were exhausted in July 2007.

**The Axis Policy**

18.     Axis is the second excess insurer on the Refco "tower" of D&O liability insurance.  Axis issued the second excess policy above the Lexington Policy, SecurExcess Policy No. RNN 506300, to Refco for the policy period with a $10 million limit of liability in excess of $17.5 million (the "Axis Policy").

19.     Like the Lexington Policy, the Axis Policy also "follows form" to the U.S. Specialty Policy.

20.     Axis was ordered by the United States Bankruptcy Court for the Southern District of New York to advance defense costs despite its denial of coverage, and the Axis Policy has now been exhausted by reason of advancement.

**The AWAC Policy**

21.     Allied World Assurance Company ("AWAC") is the third excess insurer on the Refco "tower" of D&O liability insurance.  The AWAC Policy, Excess Directors and Officers

1880009.1

Insurance and Company Reimbursement Policy No. AW0418197, was issued to Refco for the policy period with a $12.5 million limit of liability in excess of $27.5 million.

22.     The AWAC Policy also "follows form" to the U.S. Specialty Policy.

23.     In a proceeding commenced by various of the Insureds in the Bankruptcy Court, AWAC was ordered, pending a final determination of coverage or until further order, to advance defense costs despite its denial of coverage.  At present, the AWAC Policy is being depleted.

**The Arch Policy**

24.     Arch Insurance Company ("Arch") is the fourth excess insurer in the Refco "tower" of D&O liability insurance.  The Arch Policy, Excess Insurance Policy No. DOX0009322-00, was issued to Refco for the policy period with a $10 million limit of liability in excess of $40 million.

25.     The Arch Policy also "follows form" to the U.S. Specialty Policy.

26.     The Insureds have requested coverage for the Underlying Actions, including advancement of their defense costs, from Arch.   Arch has denied coverage to the Insureds, and it has refused to advance any defense costs.

27.     The Insureds have, therefore, sought a declaration, *inter alia*, that both the AWAC and Arch Policies provide coverage for them for the Underlying Actions.

**Coverage Provided by XL**

28.     XL is the fifth excess insurer in the Refco "tower" of D&O liability insurance. The XL Policy, Class A-Side Management Liability Insurance Coverage Form No. ELU089673-05, was issued to Refco for the policy period with a $20 million limit, and coverage thereunder is

1880009.1

triggered once Losses are not paid under any other policy.  Unlike the excess policies referred to above, the XL Policy does not "follow form" to the U.S. Specialty Policy.

**The XL Binder**

29.    Upon information and belief, on or about August 10, 2005, XL provided Refco with a binder pursuant to which XL agreed to provide $20 million worth of coverage that would follow the payment of losses under the U.S Specialty, Lexington, Axis, AWAC and Arch Policies (the "XL Binder").

30.    The XL Binder lists twelve separate endorsements applicable to the XL Policy. The so-called "Inverted Representation Endorsement" (the "IRE") (discussed below) was not included among the twelve endorsements listed in the XL Binder; nor was the IRE referred to elsewhere in the XL Binder.

31.    Upon information and belief, Refco paid the premium quoted in the XL Binder (i.e., $370,300) and thereby obtained coverage from XL in accordance therewith.

**The Belated Issuance of the XL Policy**

32.    Although the XL Policy incepted on August 11, 2005, upon information and belief, it was not actually issued until December 2005.

33.    Upon information and belief, therefore, the actual issuance of the XL Policy occurred two months after several of the Underlying Actions were commenced, and notice of such actions had been provided to the insurers in the "tower" of Refco D&O liability insurance, including XL.

34.    The XL Policy names an "Insured Person" under the Policy as "any past, present, or future director or officer . . . of the Company." (XL Policy, at II Definitions (I)(1)).  The XL

25

Policy provides those directors and officers with coverage for "Loss resulting from a Claim first made against the Insured Persons during the Policy Period . . . for a Wrongful Act . . . ." (*Id.* at I. Insuring Agreement).

35.    "Loss" is defined broadly as "damages, judgments, settlements or other amounts . . . and Defense Expenses that the Insured Persons are obligated to pay." (*See id.* at II. Definitions (K)).

36.    Each of the Underlying Actions is a "Claim" against Mr. Grant (and, as applicable, other Insureds) for "Wrongful Acts" covered by the Insuring Agreement of the XL Policy. (*See id.* at II Definitions (C) and (P)).

**Severability Provisions Contained in the XL Policy**

37.    The XL Policy contains a "severability" provision that states: "No knowledge or information possessed by any Insured Person will be imputed to any other Insured Person for the purposes of determining the availability of coverage with respect to Claims made against any other Insured Persons." (*Id.* at IV. Conditions, (K) Representation Clause).

38.    The XL Policy also includes a second "severability" provision: "No conduct of any Insured Person will be imputed to any other Insured Person to determine the application of any of the above EXCLUSIONS." (*Id.* at III. Exclusions). (Together, with the first "severability" provision, the "Severability Provisions").

**XL's Improper Attempt to Add the IRE to the XL Policy**

39.    Upon information and belief, when XL issued the XL Policy in December 2005, it attempted to add the IRE to the policy, despite the fact that the IRE was not included or referred to in the XL Binder. (*See id.* at Endorsement No. 13).

1880009.1

40.    The IRE states in pertinent part that:

> [N]o coverage will be available under this Policy for Loss . . . from Claims arising from any fact, circumstance or situation of which, as of the effective date of this Policy, any Insured had knowledge and had reason to suppose might afford grounds for any Claim that would fall within the scope of the insurance afforded by this Policy.

(*Id*. at Endorsement No. 13).

## C.    Wrongful Attempts by XL to Avoid Coverage under the XL Policy The January 24, 2006 XL Letter

41.    By letter dated January 24, 2006 (the "January 24, 2006 XL Letter"), XL purported to deny coverage to Mr. Grant and the other Insureds for the Lawsuits, identified in the letter as seventeen lawsuits filed in connection with the Refco fraud.

### The IRE as an Alleged Ground Upon Which to Deny Coverage

42.    In the January 24, 2006 XL Letter, XL asserted several alleged grounds for its denial of coverage, including but not limited to the purported IRE.

43.    The January 24, 2006 XL Letter states, "[g]iven that Mr. Bennett (if not others) had knowledge of the hidden receivable as of August 11, 2005, the [XL] Policy's Inverted Representation Endorsement bars coverage for each of the Lawsuits."  (*Id*.).

### The IRE was Improperly Added to the Policy and Does Not Apply

44.    The IRE, however, did not appear in and was not part of the XL Binder – the operative agreement between the parties.

1880009.1

45.     Upon information and belief, XL unilaterally added the IRE to the XL Policy in an improper attempt to avoid coverage for the noticed Underlying Actions and Underlying Matters.

46.     Thus, the IRE is not properly a part of the XL Policy, and, as such, it is not operative and cannot bar coverage to Mr. Grant.

**The IRE Directly Conflicts with the Severability Provisions**

47.     Even if the IRE was properly made a part of the XL Policy – which it was not – it directly conflicts with the Severability Provisions contained in the XL Policy, and it does not purport to replace or supersede the Severability Provisions.

48.     As set forth above, the Severability Provisions provide that "[n]o knowledge or information possessed by any Insured Person" and "[n]o conduct of any Insured Person" will be imputed to any other Insured for purposes of making a coverage.

49.     Thus, even if the IRE were operative – which it is not – pursuant to the Severability Provisions, XL cannot rely on the knowledge of one Insured (e.g., Bennett) to deny coverage to another Insured (e.g., Mr. Grant).

**The Claim Made Argument**

50.     The January 24, 2006 XL Letter also denied coverage for several of the Lawsuits on the ground that each was sufficiently related to a "Claim" first made prior to the inception date of the XL Policy (i.e., prior to August 11, 2005).  The January 24, 2006 Letter contended that several of the Lawsuits involved the same "Wrongful Acts" or "Interrelated Wrongful Acts" as the acts giving rise to a claim in an action filed by the Bankruptcy Trust of Gerard Sillam (the "Sillam Action"), so that each could be treated as a single Claim made prior to the policy period.

1880009.1

**The March 6, 2006 Letter**

51.    By a second letter dated March 6, 2006 (the "March 6, 2006 XL Letter"), XL purported to deny coverage to Mr. Grant, and the other Insureds, for the Newly Noticed Matters, identified in the letter as seven additional matters filed in connection with the alleged Refco fraud.

52.    The March 6, 2006 XL Letter purported to deny coverage for all of the Newly Noticed Matters for the same reasons that coverage for the "previously noticed matters," the Lawsuits, was barred.

**D.    The XL Declaratory Judgment Action**

53.    On or about April 22, 2008, XL commenced the instant action, seeking a declaration that the XL Policy does not provide insurance coverage for any of the Insureds in connection with the Underlying Matters.

54.    The Underlying Matters, as defined in the Complaint, include all of the Lawsuits and the Newly Noticed Matters identified in the January 24, 2006 and the March 6, 2006 XL Letters, the Underlying Actions defined herein, and "any other notice of claim or potential claim" and "any additional civil, criminal or regulatory actions" instituted or coming to the attention of XL after the filing of the Complaint "to the extent they arise out of the same or related transactions or occurrences raised in the Underlying Matters."  (Compl., ¶¶ 74-120).

55.    XL contends that no coverage for any Loss is afforded to any Insured with respect to the Underlying Matters because at least one Insured Person (e.g., Bennett, Trosten, Maggio and/or Grant) had knowledge of a "fact, circumstance or situation" that gave rise to the charges or causes of action in the Underlying Matters.  (Compl., ¶ 133).

1880009.1

## COUNT I

## (Declaratory Relief)

56.     Mr. Grant repeats and realleges paragraphs 1 through 55 of these Counterclaims as if fully set forth herein.

57.     Pursuant to the terms of the XL Policy, XL is contractually obligated to provide coverage to Mr. Grant for all Loss (as defined in the XL Policy) arising from the Underlying Actions once coverage is triggered.

58.     As of the present date, XL has denied its contractual obligations and has denied coverage under the XL Policy.

59.     Upon information and belief, Refco paid all premiums for the XL Policy and has performed all of the terms and conditions of the XL Policy on its part to be performed, unless otherwise excused.

60.     Mr. Grant, as an Insured under the XL Policy, and therefore, a party to the insurance contract, has performed all the terms and conditions of the XL Policy on his part to be performed, unless otherwise excused.

61.     At all relevant times mentioned herein, the XL Binder and/or the XL Policy was, and is, in full force and effect.

62.     None of the grounds asserted by XL for the denial of coverage under the XL Policy provides a valid basis for denying coverage to Mr. Grant.

63.     The primary ground asserted by XL in the January 24, 2006 XL Letter and in the Complaint – specifically, the alleged "knowledge" of Insureds Bennett, Trosten, Maggio and/or

1880009.1

Mr. Grant – rest on those individuals' alleged knowledge of the specific wrongdoing alleged in the Underlying Matters, which has not been established in this proceeding.

64.    The Inverted Representation Endorsement relied upon by XL was not referred to in the XL Binder, and is materially inconsistent therewith.  Upon information and belief, this endorsement was unilaterally and improperly added by XL to the XL Policy in or about December 2005 – months after several of the Underlying Matters had commenced and notice of such proceedings had been provided to XL – in an attempt to avoid coverage for the Underlying Matters.

65.    The IRE is not part of the insurance contract between XL and Mr. Grant.

66.    Even if the IRE was properly made a part of the XL Policy, the IRE conflicts with and is subject to, the Severability Provisions in the XL Policy, so that the knowledge or conduct of any other insured may not be used to deny coverage to Mr. Grant.

67.    Similarly, upon information and belief, the Underlying Actions are not related in any way to the June 2005 complaint in the Sillam Action, which was relied upon in the January 24, 2006 XL Letter but is not referred to in the Complaint.

68.    The Underlying Actions do not constitute Claims that were first brought prior to the inception of the XL Policy.

69.    An actual controversy exists between XL and Mr. Grant as to whether Mr. Grant is entitled to coverage for the Underlying Actions under the XL Policy, and judicial resolution of the parties' rights and obligations is necessary.

70.    This Court should issue a judgment declaring that Mr. Grant is entitled to coverage under the XL Policy for Loss arising out of the Underlying Actions.

1880009.1

## COUNT II

### (Injunctive Relief)

71.    Mr. Grant repeats and realleges paragraphs 1 through 55 of these Counterclaims as if fully set forth herein.

72.    XL will become obligated to make payments to Mr. Grant for Losses in the Underlying Actions in accordance with the XL Policy.

73.    Mr. Grant is entitled to permanent injunctive relief requiring XL to make such payments in accordance with XL's contractual obligations.

## COUNT III

### (Breach of Contract)

74.    Mr. Grant repeats and realleges paragraphs 1 through 55 of these Counterclaims as if fully set forth herein.

75.    Pursuant to the terms of the XL Policy, XL is contractually obligated to provide coverage to Mr. Grant for all Loss (as defined in the XL Policy) arising from the Underlying Actions once Losses are not paid by any other policy.

76.    As of the present date, XL has denied its contractual obligations and has denied coverage under the XL Policy.

77.    Upon information and belief, Refco paid all premiums for the XL Policy and has performed all of the terms and conditions of the XL Policy on its part to be performed, unless otherwise excused.

1880009.1

78.     Mr. Grant, as an Insured under the XL Policy, has performed all the terms and conditions of the XL Policy on their part to be performed, unless otherwise excused.

79.     At all relevant times mentioned herein, the XL Policy was, and is, in full force and effect.

80.     None of the grounds asserted by XL for the denial of coverage under the XL Policy provides a valid basis for denying coverage to Mr. Grant.

81.     By denying coverage to Mr. Grant for the Underlying Actions, XL has breached the XL Policy.

82.     Mr. Grant has suffered and continues to suffer damages as a direct and consequential result of XL's breach of its contractual duties and obligations under the XL Policy.

83.     Mr. Grant is entitled to recover his damages from XL under the terms of the XL Policy in an amount to be determined at trial.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Mr. Grant respectfully requests entry of judgment in his favor as follows:

1.     Dismissing the Complaint with prejudice;

2.     On Count I of the Counterclaims, declaring that Mr. Grant is entitled to coverage under the XL Policy for Loss arising out of the Underlying Actions, including but not limited to Defense Costs;

3.     On Count II of the Counterclaims, requiring XL to make payments to Mr. Grant for Loss in the Underlying Actions, in accordance with the XL Policy;

1880009.1

4.      On Count III of the Counterclaims, awarding Mr. Grant damages against XL for its breach of the XL Policy;

5.      Awarding Mr. Grant his attorneys' fees and costs and disbursements of this action; and

6.      Granting such other and further relief as the Court may deem proper.

1880009.1

## JURY DEMAND

Mr. Grant hereby demands trial by jury on all issues in the Complaint or in the

Counterclaims so triable.

Dated:  July 14, 2008
        New York, New York

**Zuckerman Spaeder LLP**

By: s/ Norman L. Eisen

Norman L. Eisen
1800 M St, NW
Suite 1000
Washington, D.C. 20036
Telephone:    (202) 778-1800
Facsimile:    (202) 822-8106

Laura E. Neish
1540 Broadway
Suite 1604
New York, New York 10036
Telephone:    (212) 704-9600
Facsimile:    (212) 704-4256

*Attorneys for Defendant Tone N. Grant*

1880009.1