UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

XL SPECIALTY INSURANCE COMPANY,

               Plaintiff,

       v.

JOHN D. AGOGLIA, PHILLIP R. BENNETT, LEO R.
BREITMAN, EDWIN L. COX, SUKHMEET DHILLON,
THOMAS H. DITTMER, NATHAN GANTCHER,
STEPHEN GRADY, TONE GRANT, THOMAS
HACKL, DAVID V. HARKINS, SCOTT L. JAECKEL,
DENNIS A. KLEJNA, THOMAS H. LEE, ERIC G.
LIPOFF, SANTO C. MAGGIO, PETER MCCARTHY,
JOSEPH MURPHY , FRANK MUTTERER, RONALD
L. O'KELLEY, RICHARD N. OUTRIDGE, SCOTT A.
SCHOEN, WILLIAM M. SEXTON, GERALD SHERER,
PHILIP SILVERMAN AND ROBERT C. TROSTEN,

               Defendants.

------------------------------------------------------------------------ x

Case No. 08-CV-3821 (GEL)

# DECLARATION OF PAMELA SYLWESTRZAK

I, PAMELA SYLWESTRZAK, hereby declare:

     1.     I am a Senior Vice President of Marsh USA, Inc. ("Marsh") and I respectfully

submit this declaration in connection with the motion made by plaintiff XL Specialty Insurance

Company ("XL") for summary judgment in the above-captioned litigation. This declaration is

based on my personal knowledge and belief and my review of certain documents in Marsh's

files.

     2.     Marsh was the broker of record for a program of Directors and Officers ("D&O")

liability insurance that was placed with various insurers for Refco Inc. ("Refco") for the policy

period August 11, 2005 through August 11, 2006 (the "2005-2006 Program"). I was the

principal contact person at Marsh for the Refco entities with respect to the binding of the 2005-

2006 Program. In such capacity, I was involved in the purchase of insurance coverage for the Refco entities and their directors and officers.

3.      For the 2005-2006 Program, the tower of Refco's D&O insurance was as follows: (1) U.S. Specialty Insurance Company Directors, Officers and Corporation Liability Insurance Policy No. 24-MGU-05-A10821 ($10 million primary coverage); (2) Lexington Insurance Company Directors and Officers Liability and Corporation Reimbursement Follow Form Excess Liability Policy No. 1620924 ($7.5 million excess of $10 million); (3) Axis Reinsurance Company SecurExcess Policy No. RNN 506300 ($10 million excess of $17.5 million); (4) AWAC Excess Directors and Officers Insurance and Company Reimbursement Policy No. AW0418197 ($12.5 million excess of $27.5 million); (5) Arch Insurance Company Excess Insurance Policy No. DOX0009322-00 ($10 million excess of $40 million); and (6) XL Specialty Insurance Company Classic A-Side Management Liability Insurance Policy No. ELU089673-05 ($20 million excess of $50 million) (the "XL Policy").

4.      In connection with the 2005-2006 Program, XL issued a policy binder to Refco through Marsh on August 10, 2005. Attached as Exhibit A is a true and accurate copy of the policy binder issued to Refco by XL on August 10, 2005 for the period August 11, 2005 to August 11, 2006.

5.      To the best of my knowledge, the policy binder issued by XL on August 10, 2005, attached as Exhibit A to this declaration, is the only policy binder issued by XL to Refco for the 2005-2006 Program.

6.      To the best of my knowledge, at no time subsequent to the issuance of its policy binder on August 10, 2005 and prior to the issuance of its policy in December 2005, did XL ever request modification of its policy binder, dated August 10, 2005.

7.      The XL policy form referred to in its policy binder, and the XL Policy as issued (which is attached as Exhibit B hereto), contains in its "CONDITIONS" section a paragraph entitled "Representation Clause." The second sentence of that clause states: "No knowledge or information possessed by any **Insured Person** will be imputed to any other **Insured Person** for the purpose of determining the availability of coverage with respect to **Claims** made against any other **Insured Person**." (See Ex. B at § IV, Condition K (bold in original)). This second sentence does not contain any reference to the application, but rather simply states that the knowledge of one insured cannot be used to deny coverage to another insured. Nor was there ever any indication from XL that the non-imputation provided for in this sentence was limited to statements in the application.

8.      XL required Refco to sign XL's "Application for Classic A-Side Management Liability Insurance Policy" (the "XL Application"). Attached as Exhibit C is the XL Application as signed by Refco and sent by Marsh to XL.

9.      Attached as Exhibit D is an e-mail sent on August 9, 2005 by Kenny Li, a Marsh employee who also worked on the 2005-06 Program, to Hank Toolan at XL.

10.     Attached as Exhibit E is a letter dated January 24, 2006 received by Marsh from counsel for XL.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: Chicago, Illinois
       August 7, 2008

_Pamela Sylwestrzak_
Pamela Sylwestrzak

31448866

# EXHIBIT A

# XL INSURANCE

XL Professional
100 Constitution Plaza
17th Floor
Hartford, CT 06103
Phone   860-246-1883
Fax      860-246-1899

## CLASSIC A-SIDE MANAGEMENT LIABILITY BINDER

| Date: | August 10, 2005 | | |
|---|---|---|---|
| Name: | James Schneider | | |
| Company: | Marsh | | |
| Fax: | 212.345.9418 | | |
| From: | Hank Toolan | Direct: 860.948.1846 | hank.toolan@xlgroup.com |

### INSURED INFORMATION

| Name: | Refco Group Ltd LLC |
|---|---|
| Address: | 200 Liberty St Fl 23 |
| | New York, NY 10281-1003 |
| Policy Number: | ELU089673-05 |
| Carrier: | XL Specialty Insurance Company |

| POLICY FORM | | POLICY PERIOD |
|---|---|---|
| CL 71 00 03 00 | Classic A-Side Management Liability | August 11, 2005 to August 11, 2006 |
| **LIMIT of LIABILITY** | | **OPTIONAL EXTENSION PERIOD** |
| $20,000,000 | Aggregate each Policy Period (including defense expenses) | One year at 200% of the annual premium |
| **INSURANCE PROGRAM** | | |
| $50,000,000 HCC, Lexington, Axis, AWAC, Arch | | |

PREMIUM: $370,300.00

The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ waived.

Commission: 12.50%

Premium Due Date: September 10, 2005

### ENDORSEMENTS:

- Terrorism Insurance Disclosure
- Terrorism Premium Endorsement -XL 80 24 03 03
- Amend Insured vs. Insured Exclusion- CL 83 06 07 02
- Prior and Pending Litigation Exclusion-August 11, 2005–CL 83 14 10 03
- Amend Mergers and Acquisitions Endorsements: 35%–CL 80 34 12 02
- Amend Conditions (B)(1) Endorsement- CL 80 18 09 02
- Non-Rescindable Endorsement- XL 80 34 10 04
- Prior Acts Exclusion-CL 83 08 09 02
- Specific Claims Exclusion- McElworth- XL 83 07 01 00
- Specific Events Exclusion-Wells Notice/ SEC Investigation- XL 83 25 10 00
- Controlling Shareholder Coverage- Phillip Bennett
- Change of Address of Insurer Endorsement- XL 80 39 04 05

THE BINDER IS SUBJECT TO RECEIPT, REVIEW, AND ACCEPTANCE OF THE FOLLOWING ITEMS.
THE ITEMS LISTED BELOW MUST BE RECEIVED WITHIN 10 DAYS.

- Classic A-Side Application
- Final Prospectus

IF THE TOTAL PREMIUM IS NOT PAID BY THE PREMIUM DUE DATE SET FORTH ABOVE, THE INSURER WILL CANCEL THE COVERAGE FOR NON-PAYMENT OF PREMIUM. THE EFFECT OF SUCH CANCELLATION WILL BE THAT THE OFFERED COVERAGE SHALL NOT INCEPT, AS IF SUCH OFFER OF COVERAGE HAD NEVER BEEN MADE.

Confidential
M-CHI 000515



XL Professional
100 Constitution Plaza
17th Floor
Hartford, CT 06103
Phone    860-246-1863
Fax       860-246-1899

# INVOICE SUMMARY

**Refco Group Ltd LLC**
**ELU089673-05**

| PREMIUM AMOUNT | COMMISSION % | COMMISSION AMOUNT | * TAXES/ SURCHARGES | NET PREMIUM DUE | PREMIUM DUE DATE |
|---|---|---|---|---|---|
| $370,300.00 | 12.50% | $46,287.50 | $0.00 | $324,012.50 | September 10, 2005 |

\* Taxes/Surcharges if applicable.

Formal Invoice will be sent via the U.S. Mail to:

James Schneider
Marsh
1166 Avenue of the Americas
New York, NY 10036

IF THE TOTAL PREMIUM IS NOT PAID BY THE PREMIUM DUE DATE SET FORTH ABOVE, THE INSURER WILL CANCEL THE COVERAGE FOR NON-PAYMENT OF PREMIUM. THE EFFECT OF SUCH CANCELLATION WILL BE THAT THE OFFERED COVERAGE SHALL NOT INCEPT, AS IF SUCH OFFER OF COVERAGE HAD NEVER BEEN MADE.

Confidential
M-CHI 000516

# EXHIBIT B

**Policy Number:** ELU089673-05
**Renewal of Number**

☐ **Greenwich Insurance Company**
☒ **XL Specialty Insurance Company**
Members of the XL America Companies

---

**CLASSIC A-SIDE MANAGEMENT LIABILITY
INSURANCE POLICY DECLARATIONS**

Executive Offices
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

**Item 1. Name and Mailing Address of Insured Entity:**
Refco Inc.
550 W. Jackson Blvd., Suite 1300
Chicago, IL 60661

**Item 2. Policy Period: From:** August 11, 2005 **To:** August 11, 2006
At 12:01 AM Standard Time at your Mailing Address Shown Above

**Item 3. Limit of Liability:**
$20,000,000 Aggregate each Policy Period (including **Defense Expenses**)

**Item 4. Optional Extension Period and Premium:**
Length of Optional Extension Period: One Year
Optional Extension Premium: $740,600.00

**Item 5. Notices required to be given to the Insurer must be addressed to:**
Executive Liability Underwriters
One Constitution Plaza, 16th Floor
Hartford, CT 06103
Toll Free Telephone: 877-953-2636

**Item 6. Premium:**
Premium                              $370,300.00
Taxes, Surcharges or Fees:              $0.00
Total Policy Premium:               $370,300.00

**Item 7. Policy Forms and Endorsements Attached at Issuance:**
CL 71 00 03 00   CL 72 02 05 00, CL 83 08 09 02, XL 83 07 01 00, XL 80 24 03 03, XL 80 39 04 05
CL 83 06 07 02, CL 83 14 10 03, CL 80 34 12 02, CL 80 18 09 02, XL 80 34 10 04, XL 83 25 10 00
Manuscript 3027 12 05, XL 80 04 04 00

Countersigned: _____ By: _____
                        Date                            Authorized Representative

THESE DECLARATIONS AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE APPLICATION SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE INSURED RELATING TO THIS INSURANCE.

CL 70 00 11 01

Page 1 of 2

**CLASSIC A-SIDE MANAGEMENT LIABILITY POLICY**

In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.

Nicholas M. Brown Jr.
President

Theresa M. Morgan
Secretary

**XL Specialty Insurance Company**

Nicholas M. Brown Jr.
President

Theresa M. Morgan
Secretary

**Greenwich Insurance Company**

## POLICYHOLDER DISCLOSURE

### NOTICE OF TERRORISM
### INSURANCE COVERAGE

Coverage for acts of terrorism is already included in your current policy. You should know that, effective November 26, 2002, under your existing coverage, any losses caused by certified acts of terrorism would be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ waived. Any premium waiver is only valid for the current Policy Period.

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT OF 2002, ANY LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE WILL BE PARTIALLY REIMBURSED BY THE UNITED STATES AND I HAVE BEEN NOTIFIED OF THE AMOUNT OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

Name of Insurer:  **XL Specialty Insurance Company**
Policy Number:     **ELU089673-05**

# IN WITNESS ENDORSEMENT

XL SPECIALTY INSURANCE COMPANY
ADMINISTRATIVE OFFICE:   SEAVIEW HOUSE
70 SEAVIEW AVENUE
STAMFORD, CT 06902-6040
STATUTORY HOME OFFICE:   1201 NORTH MARKET STREET
SUITE 501
WILMINGTON, DE 19801


It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.


IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.


_____            _____
Richard S. Banas                                          Kenneth P. Meagher
President                                                       Secretary


IL MP 9104 0704 XLS

XL Specialty Insurance Company - Illinois Policyholder Notice

## IMPORTANT NOTICE TO ALL ILLINOIS POLICYHOLDERS

In the event you need to contact someone about this Policy for any reason, please contact us at:

**XL Specialty Insurance Company**
**c/o XL Insurance Underwriters**
**100 Constitution Plaza, 17th Floor**
**Hartford, Connecticut 06103**

If you have been unable to contact or obtain satisfaction from the Insurer, you may contact the Illinois Department of Insurance to obtain information or make a complaint at:

**Illinois Department of Insurance**
**Consumer Division of Public**
**Services Section**
**Springfield, Illinois 62767**

Endorsement No.: 1
Named Insured: Refco Inc.
Policy No: ELU089673-05

CL 72 02 05 00

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# ILLINOIS AMENDATORY ENDORSEMENT

### DIRECTORS & OFFICERS PROFESSIONAL LIABILITY COVERAGE FORM

I.    Section IV., CONDITIONS, paragraph (I), CANCELLATION AND RENEWAL OF COVERAGE, is deleted and replaced by: Cancellation -- "The Insured" may cancel this policy by returning the policy to "The Company," or by giving "The Company" written notice and stating at what future date coverage is to stop.

"The Company" may cancel this policy by mailing written notice of cancellation to "The Insured" and any mortgagee or lienholder at the last mailing address known to "The Company."

"The Company" will mail the notice to "The Insured" and any mortgagee or lienholder at least ten (10) days before the effective date of the cancellation when cancellation is for nonpayment of premium.  When cancellation is for any other reason, "The Company" will mail the notice of cancellation to "The Insured" and any mortgagee or lienholder at least 30 days prior to the effective date of the cancellation during the first 60 days of coverage or 60 days prior to the effective date of the cancellation if the coverage has been in effect for more than 60 days.

If this policy has been in effect 60 days or more, or if it is a renewal of a policy issued by "us" effective immediately, "we" may cancel this policy only if one or more of the following reasons apply:

    a.    nonpayment of premium;

    b.    the policy was obtained through a material misrepresentation;

    c.    any "insured" has violated any of the "terms" and conditions of the policy;

    d.    the risk originally accepted has measurably increased;

    e.    certification of the Director of the loss of reinsurance by the insurer which provided coverage to "us" for all or a substantial part of the underlying risk insured; or

    f.    a determination by the Director that the continuation of the policy could place "us" in violation of the insurance laws of this state.

"Our" notice will include the reason or reasons for cancellation. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record. Proof of mailing is sufficient proof of notice.

"Your" return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

Nonrenewal -- If "we" decide not to renew this policy, "we" will mail "our" notice of nonrenewal to "you" at least 60 days before the end of the policy period or anniversary date.

"Our" notice will include the reasons for nonrenewal. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record and any mortgagee or lienholder at the last mailing address known to "us". Proof of mailing is sufficient proof of notice.

CL 72 02 05 00

CL 72 02 05 00

**Endorsement No.: 1**
**Named Insured: Refco Inc.**
**Policy No: ELU089673-05**

**Effective: August 11, 2005**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

Renewal -- If "we" decide to renew this policy with premium increases of 30% or higher, or impose changes in deductible or coverage that materially alter the policy, "we" will mail to "you" written notice of such increase or change in deductible or coverage at least 60 days prior to the renewal or anniversary date.

All other terms and conditions of the Policy remain the same.

CL 72 02 05 00

Page 2 of 2

Endorsement No.: 2
Named Insured: Refco Inc.
Policy No: ELU089673-05

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

CL 83 08 09 02

# PRIOR ACTS EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for Claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any act, error, omission, misstatement, misleading statement, neglect, breach of duty, or Wrongful Act, committed or allegedly committed prior to August 5, 2004.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

Endorsement No.: 3
Named Insured: Refco Inc.
Policy No: ELU089673-05

XL 83 07 01 00

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# SPECIFIED CLAIMS EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for Loss, including Defense Expenses, in connection with any proceeding set forth below, or in connection with any Claim based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any such proceeding or any fact, circumstance or situation underlying or alleged therein:

Edward McElwreath Case

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

XL 83 07 01 00

Page 1 of 1

XL 80 24 03 03

**Endorsement No.: 4**
**Named Insured: Refco Inc.**
**Policy No: ELU089673-05**

**Effective: August 11, 2005**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# TERRORISM PREMIUM ENDORSEMENT

Please note: The portion of your annual premium set forth in Item 6. of the Declarations that is attributable to coverage for acts of terrorism is: $ waived.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

James Koval
Print Name

Sr. Vice President
Title

Endorsement No.: 5
Named Insured: Refco Inc.
Policy No: ELU089673-05

XL 80 39 04 05

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# CHANGE OF ADDRESS OF INSURER ENDORSEMENT

In consideration of the premium charged, as of the effective date of this Endorsement:

Notices required to be given to the Insurer must be addressed to:

<u>Notice to Claim Dept:</u>
XL Professional
One Hundred Constitution Plaza, 18th Floor
Hartford, CT 06103
Attn: Claim Dept.

<u>All other Notices:</u>
XL Professional
One Hundred Constitution Plaza, 17th Floor
Hartford, CT 06103
Attn: Underwriting

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

James Kovel
Print Name

Sr. Vice President
Title

XL 80 39 04 05

Page 1 of 1

Endorsement No.: 6
Named Insured: Refco Inc.
Policy No: ELU089673-05

CL 83 06 07 02

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# AMEND INSURED V. INSURED EXCLUSION

In consideration of the premium charged, Section III Exclusions (A)(1) of the Policy is amended to read in its entirety as follows:

"(1)    by, on behalf of, or at the direction of the Company, Outside Entity or any Insured Person, except and to the extent such Claim:

(i)    is brought by a security holder of the Company or Outside Entity who, when such Claim is made and maintained is acting independently of, and without the solicitation, assistance, participation or intervention of the Company or any Outside Entity;

(ii)    is brought by the Bankruptcy Trustee or Examiner of the Company or Outside Entity, or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the Company or Outside Entity;

(iii)    is in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an Insured Person which is part of or results directly from a Claim which is not otherwise excluded by the terms of this Policy; or

(iv)    is an Employment Practices Claim;"

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

Endorsement No.: 7
Named Insured: Refco Inc.
Policy No: ELU089673-05

CL 83 14 10 03

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# PENDING AND/OR PRIOR LITIGATION EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for Claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Wrongful Act, underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to August 11, 2005.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

CL 83 14 10 03

Page 1 of 1

CL 80 34 12 02

Endorsement No.: 8
Named Insured: Refco Inc.
Policy No: ELU089673-05

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# AMEND MERGERS AND ACQUISITIONS ENDORSEMENT

In consideration of the premium charged, Section IV Conditions (C)(1) of the Policy is amended to read in its entirety as follows:

"(1)    If during the Policy Period, the Company acquires any assets, acquires a Subsidiary, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage shall be provided for any Loss involving a Claim for a Wrongful Act occurring after the consummation of the transaction; provided however, if by reason of the transaction (or series of transactions) the entity, assets, Subsidiary or liabilities so acquired or so assumed, exceed thirty five percent (35%) of the total assets or liabilities of the Company, as represented in the Company's most recent audited consolidated financial statements, coverage under this Policy shall be provided for a period of ninety (90) days for any Loss involving a Claim for a Wrongful Act that occurred after the transaction has been consummated. Coverage beyond the ninety (90) day period will be provided only if:

(a)    the Insurer receives written notice containing full details of the transaction(s); and

(b)    the Insurer at its sole discretion, agrees to provide such additional coverage upon such terms, conditions, limitations, and additional premium that it deems appropriate."

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

Endorsement No.: 9                              Effective: August 11, 2005                 CL 80 18 09 02
Named Insured: Refco Inc.                       12:01 A.M. Standard Time
Policy No: ELU089673-05                          Insurer: XL Specialty Insurance Company

# AMEND CONDITIONS (B)(1) ENDORSMENT

In consideration of the premium charged, Section IV Conditions (B)(1) of the Policy is amended to read in its entirety as follows:

"(1)    The Insured Persons and the Company understand and agree that all coverage under this Policy shall be specifically excess over, and shall not contribute with:

    (i)    all indemnification to which an Insured Person may be entitled from any source, including but not limited to the Company or any Outside Entity; and

    (ii)    any Insurance Program maintained by the Company or any Outside Entity, whether such other insurance is stated to be primary, contributing, excess or otherwise.

However, if Loss is not paid by such other insurance or as indemnification, this Policy will respond on behalf of the Insured Persons as if it were primary, subject to all of its terms, conditions and limitations and without prejudice to the Insurer's excess position."

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

CL 80 18 09 02                                                          Page 1 of 1

**Endorsement No.: 10**
**Named Insured: Refco Inc.**
**Policy No: ELU089673-05**

**XL 80 34 10 04**

**Effective: August 11, 2005**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# RESCISSION ENDORSEMENT

In consideration of the premium charged, the Insurer shall not be entitled under any circumstances to rescind this Policy, other than for non-payment of premium.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

XL 80 34 10 04

XL 83 25 10 00

**Endorsement No.: 11**
**Named Insured: Refco Inc.**
**Policy No: ELU089673-05**

**Effective: August 11, 2005**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# SPECIFIED ACTS EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for Loss, including Defense Expenses, in connection with any fact, circumstance, situation, transaction, event or Wrongful Act set forth below or in connection with any Claim, based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

Wells Notice/ SEC Investigation

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

XL 83 25 10 00

Page 1 of 1



Manuscript 3027 12 05

Endorsement No.: 12
Named Insured: Refco Inc.
Policy No:.ELU089673-05

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# CONTROLLING SHAREHOLDER ENDORSEMENT

In consideration of the premium charged:

(1)     The term "Insured Person," as defined in Section II. DEFINITIONS (I) of the Policy, is amended to include Philip Bennett in his capacity as a controlling shareholder of the Company, but only with respect to Securities Claims to the extent and during such time that such Securities Claims are also made and maintained against any other Insured Person or the Company.

(2)     With respect to Philip Bennett only, the definition of "Wrongful Act" in Section II. DEFINITIONS (P) of the Policy is amended to include the following:

    (a)     any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by Philip Bennett while acting in his capacity as controlling shareholder of the Company, or

    (b)     any matter claimed against Philip Bennett solely by reason of his status as controlling shareholder of the Company.

(3)     "Securities Claim" means a Claim which is brought by or on behalf of one or more of the securities holders of the Company in their capacities as such, or which arises from the purchase or sale of, or offer to purchase or sell, any securities issued by the Company, whether such purchase, sale or offer involves a transaction with the Company or occurs in the open market.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

_____
James Koval
Print Name

_____
Sr. Vice President
Title

Manuscript 3027 12 05

Page 1 of 1

Endorsement No.: 13
Named Insured: Refco Inc.
Policy No: ELU089673-05

XL 80 04 04 00

Effective: August 11, 2005
12:01 A.M. Standard Time
Insurer: XL Specialty Insurance Company

# INVERTED REPRESENTATION ENDORSEMENT

In consideration of the premium charged, no coverage will be available under this Policy for Loss, including Defense Expenses, from Claims arising from any fact, circumstance or situation of which, as of the effective date of this Policy, any Insured had knowledge and had reason to suppose might afford grounds for any Claim that would fall within the scope of the insurance afforded by this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Signature

James Koval
Print Name

Sr. Vice President
Title

XL 80 04 04 00

Page 1 of 1

# EXECUTIVE LIABILITY UNDERWRITERS
**A Member of the XL Capital Group of Companies**

# CLASSIC A-SIDE MANAGEMENT LIABILITY

Executive Liability Underwriters
One Constitution Plaza
16th Floor
Hartford, CT 06103
Phone: 860-246-1863
Fax: 860-246-1899
www.xlelu.com
email: elusubmissions@xlelu.com

# CLASSIC A-SIDE MANAGEMENT LIABILITY INSURANCE COVERAGE FORM

**THIS IS A CLAIMS MADE POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

In consideration of the payment of the premium, and in reliance on all statements made and information furnished to Executive Liability Underwriters, the Underwriting Manager for the Insurer identified on the Declarations Page (hereinafter, the "Insurer") including the Application and subject to all of the terms, conditions and limitations of all the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:

## I. INSURING AGREEMENT

The Insurer will pay on behalf of the **Insured Persons Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act**, except to the extent that such **Loss** is paid by any other **Insurance Program** or as indemnification from any source. If **Loss** is not paid by such other **Insurance Program** or as indemnification from any source, the Insurer will pay covered **Loss** on behalf of the **Insured Persons**, subject to all of the terms, conditions (including but not limited to Condition IV(B)) and limitations of the Policy.

## II. DEFINITIONS

(A)　"**Application**" means:

　　(1)　the **Application** attached to and forming part of this Policy; and

　　(2)　any materials submitted therewith, which shall be retained on file by the Insurer and shall be deemed to be physically attached to this Policy.

(B)　"**Change In Control**" means:

　　(1)　the merger or acquisition of the **Parent Company**, or of all or substantially all of its assets by another entity such that the **Parent Company** is not the surviving entity;

　　(2)　the acquisition by any person, entity, or affiliated group or persons or entities of the right to vote for, select, or appoint more than fifty percent (50%) of the directors of the **Parent Company**; or

　　(3)　the appointment of a Receiver, Conservator, Liquidator, Trustee, Rehabilitator, or any comparable authority, with respect to the **Parent Company**.

(C)　"**Claim**" means:

　　(1)　a written demand for monetary or non-monetary relief;

　　(2)　any civil or criminal judicial proceeding in a court of law or equity, or arbitration; or

　　(3)　a formal civil, criminal, or administrative regulatory proceeding or formal investigation against an **Insured Person**.

(D)　"**Company**" means the **Parent Company** and any **Subsidiary** created or acquired on or before the Inception Date set forth in ITEM 2 of the Declarations or during the **Policy Period**, subject to CONDITIONS IV(C).

(E) "Defense Expenses" means reasonable legal fees and expenses incurred in the defense of any Claim. Defense Expenses will not include the Company's overhead expenses or any salaries, wages, fees, or benefits of its directors, officers, or employees.

(F) "Employment Practices Claim" means a Claim alleging an Employment Practices Wrongful Act.

(G) "Employment Practices Wrongful Act" means any actual or alleged:

(1) wrongful termination of employment whether actual or constructive;

(2) employment discrimination of any kind;

(3) sexual or other harassment in the workplace; or

(4) wrongful deprivation of career opportunity, employment related misrepresentations, retaliatory treatment against an employee of the Company, failure to promote, demotion, wrongful discipline or evaluation, or refusal to hire.

(H) "Insurance Program" means

(1) any existing Management Liability insurance, Directors' and Officers' Liability insurance, or similar insurance, and

(2) any other existing insurance under which coverage may be owed.

(I) "Insured Person" means:

(1) any past, present, or future director or officer, or member of the Board of Managers, of the Company and those persons serving in a functionally equivalent role for the Parent Company or any Subsidiary operating or incorporated outside the United States;

(2) any individual identified in (I)(1) above who, at the specific written request of the Company, is serving as a director, officer, trustee, regent, or governor of any Outside Entity; or

(3) the lawful spouse of any person set forth in the above provisions of this definition, but only to the extent the spouse is a party to any Claim solely in their capacity as a spouse of such persons and only for the purposes of any Claim seeking damages recoverable from marital community property, property jointly held by any such person and spouse, or property transferred from any such person to the spouse.

In the event of the death, incapacity or bankruptcy of an individual identified in (I)(1), (2), and (3) above, any Claim against the estate, heirs, legal representatives or assigns of such individual for a Wrongful Act of such individual will be deemed to be a Claim against such individual.

(J) "Interrelated Wrongful Acts" means any Wrongful Act based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related, or series of related, facts circumstances, situations, transactions, or events.

(K) "Loss" means damages, judgments, settlements or other amounts (including punitive or exemplary damages, where insurable by law) and Defense Expenses that the Insured Persons are obligated to pay. Loss will not include:

(1) the multiplied portion of any damage award;

(2) fines, penalties or taxes imposed by law; or

(3) matters which are uninsurable under the law pursuant to which this Policy is construed.

Note:  With respect to judgments in which punitive damages are awarded, the coverage provided by this Policy shall apply to the broadest extent permitted by law.  If, based on the written opinion of counsel for an **Insured Person**, punitive damages are insurable under applicable law, the Insurer will not dispute the written opinion of counsel for the **Insured Person**.

(L)     "**Parent Company**" means the entity named in Item 1 of the Declarations.

(M)     "**Policy Period**" means the period form the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations or to any earlier cancellation date.

(N)     "**Outside Entity**" means any corporation or organization other than the **Company** of which any **Insured Person** serves as a director, officer, trustee, regent, or governor, but only if such service is at the specific written direction of the **Company**.

(O)     "**Subsidiary**" means any entity during any time in which the **Parent Company** owns, directly or through one of more **Subsidiary(ies)**, more than fifty percent (50%) of the outstanding securities representing the right to vote for the election of such entity's directors.

(P)     "**Wrongful Act**" means:

    (1)     any actual or alleged act, error, or omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person** while acting in his or her capacity as an:

        (i)     **Insured Person** of the **Company** or a person serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary**;

        (ii)     **Insured Person** of the **Company** who at the specific written request of the **Company** is serving as a director, officer, trustee, regent or governor or an **Outside Entity**; and

    (2)     any **Employment Practices Wrongful Act**.

## III.   EXCLUSIONS

(A)     Except for **Defense Expenses**, the Insurer shall not pay **Loss** in connection with any **Claim**:

    (1)     by, on behalf of, or at the direction of the **Company** or **Outside Entity**, except and to the extent such **Claim**:

        (i)     is brought by a security holder of the **Company** or **Outside Entity** who, when such **Claim** is made and maintained, is acting independently of, and without the solicitation, assistance, participation or intervention of the **Company** or any **Outside Entity**.

        (ii)     is brought by the Bankruptcy Trustee or Examiner of the **Company** or **Outside Entity**, or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the **Company** or **Outside Entity**;

    (2)     brought about or contributed to in fact by any:

        (i)     intentionally dishonest, fraudulent, or criminal act or omission or any willful violation of any statute, rule, or law; or

        (ii)     profit or remuneration gained by any **Insured Person** to which such **Insured Person** is not legally entitled;

as determined by a final adjudication in the underlying action or in a separate action or proceeding;

(B)    The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against an Insured Person:

    (1)    for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, defamation, slander, libel, disease or death of any person, or damage or destruction of any tangible property including Loss of use thereof. EXCLUSION (B) shall not apply to any Claim:

        (i)    brought by a security holder of the Company or Outside Entity for any actual or alleged violation of the Securities Act of 1933, the Securities Act of 1934, or any state securities statute; or

        (ii)    a derivative action brought by or on behalf of, or in the name or right of, the Company, and brought and maintained independently of, and without solicitation, assistance, participation or intervention of the Company, Insured Person, or Outside Entity.

    (2)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance or situation, transaction, event or Wrongful Act which, before the inception Date of this Policy, was the subject of any notice given under any other Management Liability insurance, Directors' and Officers' insurance, or any other similar insurance.

    Note: EXCLUSION (B)(1) will not apply to any allegation of libel, slander, defamation, mental anguish or emotional distress if and only to the extent that such allegations are made as part of an Employment Practices Claim for an Employment Practices Wrongful Act.

No conduct of any Insured Person will be imputed to any other Insured Person to determine the application of any of the above EXCLUSIONS.

## IV.    CONDITIONS

(A)    **Limit of Liability**

    The amount set forth in ITEM 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under this Policy. Payment of Loss, including Defense Expenses, by the Insurer shall reduce the Limit of Liability.

(B)    **Indemnification and Other Insurance**

    (1)    The Insured Persons and the Company understand and agree that all coverage under this Policy shall be specifically excess over, and shall not contribute with:

        (i)    all indemnification to which an Insured Person may be entitled from any source, including but not limited to the Company or any Outside Entity; and

        (ii)    any Insurance Program maintained by the Company or any Outside Entity, whether such other insurance is stated to be primary, contributing, excess, or otherwise.

    (2)    This Policy shall not be subject to the terms or conditions of any other insurance. The Insurer does not waive compromise or release any of its rights to recover Loss paid under this Policy from the issuers of any other insurance under which coverage may be owed, or from any person or entity from which an Insured Person is entitled to indemnification.

(C)    **Mergers and Acquisitions**

    (1)    If during the Policy Period, the Company acquires any assets, acquires a Subsidiary, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage

CLASSIC A-SIDE
CL 71 00 03 00

shall be provided for any **Loss** involving a **Claim** for a **Wrongful Act** occurring after the consummation of the transaction.

(2) With respect to the acquisition, assumption, merger, consolidation or other of any entity, asset, **Subsidiary** or liability as described in (C)(1) above, there will be no coverage available under this Policy for any **Claim** made against the acquired, assumed, merged, or consolidated entity, asset, **Subsidiary**, liability, or **Insured Person** for a **Wrongful Act** committed at any time during which such entity, asset, liability, or **Subsidiary** is not insured under this Policy.

(3) If during the **Policy Period** any entity ceases to be a **Subsidiary**, the coverage provided under this Policy shall continue to apply to the **Insured Persons** who because of their service with such **Subsidiary** were covered under this Policy but only with respect to a **Claim** for a **Wrongful Act** that occurred or allegedly occurred prior to the time such **Subsidiary** ceased to be a **Subsidiary** of the **Company**.

(4) If, during the **Policy Period**, there is a **Change In Control**, the coverage provided under this Policy shall continue to apply but only with respect to a **Claim** for a **Wrongful Act** committed or allegedly committed prior to the time of the **Change In Control**; and

(i) coverage will cease with respect to any **Claim** for a **Wrongful Act** committed subsequent to the **Change In Control**; and

(ii) the entire premium for the Policy will be deemed to be fully earned immediately upon the consummation of a **Change In Control**.

(D) **Notice**

(1) As a condition precedent to any right to payment under this policy with respect to any **Claim**, the **Insured Persons** or the **Company** shall give written notice to the Insurer of any **Claim** as soon as practicable after it is first made.

(2) If, during the **Policy Period**, the **Insured Persons** or the **Company** first becomes aware of a specific **Wrongful Act** and if, during the **Policy Period**, the **Insured Persons** or the **Company**:

(i) provide the Insurer with written notice of the specific **Wrongful Act**, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, and the circumstances by which the **Insured Persons** first became aware of such **Wrongful Act**; and

(ii) request coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**;

then any **Claim** subsequently made arising out of such **Wrongful Act** will be treated as if it had been first made during the **Policy Period**.

All notices under CONDITIONS (D) (1) and (2) must be sent by certified mail or the equivalent to the address set forth in ITEM 5 of the Declarations; Attention: Claim Department.

(E) **Defense and Settlement of Claims**

(1) It shall be the duty of the **Insured Persons** and not the duty of the Insurer to defend **Claims**. No **Insured Person** may incur any **Defense Expenses** or admit liability for, make any settlement offer with respect to, or settle any **Claim** without the Insurer's consent, such consent not to be unreasonably withheld.

(2) Upon written request, the Insurer will pay on a current basis any **Defense Expenses** before the disposition of the **Claim** for which this Policy provides coverage. As a condition of the advancement of

**Defense Expenses,** the Insurer may require a written undertaking, in a form satisfactory to the Insurer, which will guarantee the repayment of any **Loss** including **Defense Expenses** paid to or on behalf of the **Insured Persons** if it is finally determined that the **Loss** incurred is not covered under this Policy.

(3)     Except for such **Defense Expenses,** the Insurer shall pay **Loss** only upon the final disposition of any **Claim.**

(F)     **Assistance, Cooperation and Subrogation**

(1)     The **Insured Persons** and the **Company** agree to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agree that they will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.

(2)     In the event of any payment under this Policy, the Insurer shall be subrogated to all of the potential or actual rights of recovery of the **Insured Persons.** The **Insured Persons** and the **Company** shall execute all papers required and will do everything necessary to secure such rights including but not limited to the execution of such documents as are necessary to enable the Insurer to effectively bring suit in their name, and will provide all other assistance and cooperation which the Insurer may reasonably require.

(G)     **Interrelated Claims**

All **Claims** arising from the same **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest time at which the earliest such **Claim** is made or deemed to have been made pursuant to CONDITION (D)(1) and (2) above, if applicable.

(H)     **Exhaustion**

If the Insurer's Limit of Liability as set forth in ITEM 3 of the Declarations is exhausted by the payment of **Loss,** the premium as set forth in ITEM 6 of the Declarations will be fully earned, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind whatsoever under this Policy.

(I)     **Cancellation and Renewal of Coverage**

(1)     Except for the nonpayment of premium, as set forth in (I)(2) below, the **Parent Company** has the exclusive right to cancel this Policy. Cancellation may be effected by mailing to the Insurer written notice when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations. In such event, the Insurer shall retain the customary short rate portion of the earned premium. Return or tender of the unearned premium is not a condition of cancellation.

(2)     The Insurer may only cancel this Policy for nonpayment of premium. The Insurer will provide not less than twenty (20) days written notice stating the reason for cancellation and when the Policy will be canceled. Notice of cancellation will be sent to the **Parent Company** and the agent of record for the **Insured Person,** if applicable.

(3)     The Insurer is under no obligation to renew this Policy upon its expiration. Once the Insurer chooses to non-renew this Policy, the Insurer will deliver or mail to the **Parent Company** written notice stating such at least sixty (60) days before the Expiration Date set forth in ITEM 2 of the Declarations.

(J)     **Optional Extension Period**

(1)     If either the **Parent Company** or the Insurer does not renew this Policy, the **Parent Company** shall have the right, upon payment of an additional premium set forth in ITEM 4 of the Declarations, to an

CL 71 00 03 00

extension of the coverage provided by this Policy with respect only to any **Claim** first made during the period of time set forth in ITEM 4 of the Declarations after the Policy Expiration Date, but only with respect to a **Wrongful Act** occurring prior to the Policy Expiration Date.

(2)    As a condition precedent to the right to purchase the Optional Extension Period the total premium for this Policy must have been paid in full. The right of the **Parent Company** to purchase the Optional Extension Period will be immediately terminated if the Insurer does not receive written notice by the **Parent Company** advising it wishes to purchase the Optional Extension Period together with full payment of the premium for the Optional Extension Period within thirty (30) days after the Policy Expiration Date.

(3)    If the **Parent Company** elects to purchase the Optional Extension Period as set forth in (J)(1) and (2) above, the entire premium for the Optional Extension Period will be deemed to be fully earned at the Inception Date for the Optional Extension Period.

(4)    The purchase of the Optional Extension Period will not in any way increase the Limit of Liability set forth in ITEM 3 of the Declarations, and the Limit of Liability with respect to **Claims** made during the Optional Extension Period shall be part of and not in addition to the Limit of Liability for all **Claims** made during the **Policy Period**.

(K)    **Representation Clause**

Each **Insured Person** represents that the statements and particulars contained in the **Application** are true, accurate and complete, and agree that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are the basis of this Policy. No knowledge or information possessed by any **Insured Person** will be imputed to any other **Insured Person** for the purposes of determining the availability of coverage with respect to **Claims** made against any other **Insured Person**.

(L)    **Action Against the Insurer, Assignment, and Changes to Policy**

(1)    No action may be taken against the Insurer unless, as a condition precedent thereto:

(i)    there has been full compliance with all of the terms and conditions of this Policy; and

(ii)    the amount of the obligation of the **Insured Person** has been finally determined either by judgment against the **Insured Person** after actual trial, or by written agreement of the **Insured Person**, the claimant and the Insurer.

(2)    Nothing contained herein shall give any person or entity any right to join the Insurer as a party to any **Claim** against the **Insured Person** to determine their liability, nor may the **Insured Person** implead the Insurer in any **Claim**.

(3)    Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed hereon.

(4)    Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not cause a waiver or change in any part of this Policy or prevent the Insurer from asserting any right under the terms, conditions and limitations of this Policy. The terms, conditions and limitations of this Policy may only be waived or changed by written endorsement signed by the Insurer.

(M)    **Authorization and Notices**

It is understood and agreed that the **Parent Company** will act on behalf of the **Company** and the **Insured Persons** with respect:

CLASSIC A-SIDE
CL 71 00 03 00

(1)    the payment of the premiums,

(2)    the receiving of any return premiums that may become due under this Policy,

(3)    the giving of all notices to the Insurer as provided herein, and

(2)    the receiving of all notices from the Insurer.

(N)    **Entire Agreement**

The **Insured Persons** agree that the Declarations, Policy, including the endorsements, attachments and the Application shall constitute the entire agreement between the Insurer or any of its agents and the **Insured Persons** relation to the insurance.

CL 71 00 03 00

Page 8 of 8

EXECUTIVE LIABILITY UND~~WRITERS      ☐  **Indian Harbor Insurance Company**
Member of  XL America Companies

> ## APPLICATION FOR CLASSIC A-SIDE MANAGEMENT
> ## LIABILITY INSURANCE POLICY

NOTICE: THE POLICY FOR WHICH THIS APPLICATION IS MADE APPLIES, SUBJECT TO ITS TERMS, ONLY TO "CLAIMS" FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED BY "DEFENSE EXPENSES," AND "DEFENSE EXPENSES" WILL BE APPLIED AGAINST THE RETENTION.  THE INSURER WILL HAVE NO DUTY UNDER THE POLICY TO DEFEND ANY "CLAIM." THE ENTIRE APPLICATION SHOULD BE CAREFULLY READ BEFORE IT IS EXECUTED.

1.   a) Name of Applicant: *Refco, Inc.*
        (Whenever used in this Application, the term "Applicant" shall mean the Parent Company)

     b) Principal Address: *550 W. Jackson Blvd*
        City: *Chicago*                          State: *Il* ; Zip Code: *60661*

     c) Name and title of the officer of the Applicant designated as the representative to receive all notices from the insurer on behalf of all person(s) and entity(s) proposed for this insurance:

        _____

        _____

2.   , Has the Applicant or any Subsidiary in the past thirty-six (36) months completed or agreed to, or does it contemplate within the next (12) months, any of the following, whether or not such transaction was or will be completed?  If "Yes," please describe the significant provisions of the transaction(s) as an attachment to this Application.

     a) Any registration for a public placement of securities?                      ☒ Yes    ☐ No

     b) Reorganization or arrangement with creditors under federal or state law? *See above*   ☐ Yes    ☐ No

3.   Prior Activities:

     a) Has any person(s) or entity(s) proposed for this insurance been a party to any of the following?

        1)  Any civil, criminal or administrative proceeding alleging or investigating a violation of any securities or regulation?
                                                                                ☐ Yes   ☒ No

        2)  Any representative actions, class actions or derivative suits?        ☐ Yes   ☐ No

        If "Yes" to 1) or 2) above, a statement to the Application providing full details must be attached.

     b) No claims have been made against any persons or entity(s) proposed for this insurance in their capacity as a director or officer of the Applicant, except as follows (provide detail as to defense costs, settlements, judgments, or other amounts). If answer is "none" so state:
        *McElwreath v. Refco Securities - Marsh will*
        *forward documents*

     c) No persons or entity(s) proposed for this insurance is cognizant of any fact, circumstance or situation which they have reason to suppose might afford grounds for any claim such as would fall within the scope of the proposed insurance, except as follows.  If answer is "none," so state:

        _____

        _____

Without prejudice to any other rights and remedies of the insurer, any claim arising from any claims, facts, circumstances or situations disclosed or required to be disclosed in response to 3. b) and 3. c) is excluded from the proposed insurance.

4.   As part of this Application, please submit the following documents with respect to the Applicant:

     a) Latest 10-Q report filed and any 8-K or 13D reports filed with the SEC within the last 12 months.

     b) Each prospectus, offering circular or private placement memorandum within the last 12 months.

     c) Last proxy statement, 10-K and annual report, including audited financial statements with all notes and schedules.

     d) Copies of all provisions of the Applicant's charter and bylaws relating to the indemnification of its directors and officers.

CL 95 00 03 00                                                       Page 1 of 3

EXECUTIVE LIABILITY UND' 'WRITERS    ☐   **Indian Harbc 'nsurance Company**
Member of L... XL America Companies

FOR THE PURPOSE OF THIS APPLICATION, THE UNDERSIGNED AUTHORIZED AGENT OF THE PERSONS AND ENTITY(S) PROPOSED FOR THIS INSURANCE DECLARES THAT TO THE BEST OF THEIR KNOWLEDGE AND BELIEF, AFTER REASONABLE INQUIRY, THE STATEMENTS HEREIN ARE TRUE AND COMPLETE. THE INSURER IS AUTHORIZED TO MAKE ANY INQUIRY IN CONNECTION WITH THIS APPLICATION. SIGNING THIS APPLICATION DOES NOT BIND THE INSURER TO COMPLETE THE INSURANCE.

THE UNDERSIGNED DECLARES THAT THE PERSON(S) AND ENTITY(S) PROPOSED FOR THIS INSURANCE UNDERSTAND:

(A)    THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED, AND MAY BE COMPLETELY EXHAUSTED BY THE PAYMENT OF "DEFENSE EXPENSES," AND IN SUCH EVENT, THE INSURER WILL NOT BE RESPONSIBLE FOR ANY ONGOING DEFENSE EXPENSES OR FOR THE AMOUNT OF ANY JUDGEMENT OR SETTLEMENT TO THE EXTENT THAT ANY OF THE FOREGOING EXCEED ANY APPLICABLE LIMIT OF LIABILITY; .

(B)    "DEFENSE EXPENSES" WILL BE APPLIED AGAINST THE RETENTION;

(C)    THIS POLICY APPLIES ONLY TO "CLAIMS" FIRST MADE OR DEEMED MADE DURING THE "POLICY PERIOD," OR, IF PURCHASED, ANY EXTENDED REPORTING PERIOD;

(D)    THE INSURER HAS NO DUTY UNDER THIS POLICY TO DEFEND ANY "CLAIM."

IF THE INFORMATION IN THIS APPLICATION MATERIALLY CHANGES BETWEEN THE DATE OF THIS APPLICATION AND THE POLICY EFFECTIVE DATE, THE APPLICANT WILL NOTIFY THE INSURER WHO MAY MODIFY OR WITHDRAW ANY QUOTATION.

THE INFORMATION CONTAINED AND SUBMITTED WITH THIS APPLICATION IS ON FILE WITH THE INSURER AND, ALONG WITH THE APPLICATION, IS CONSIDERED TO BE PHYSICALLY ATTACHED TO THE POLICY AND WILL BECOME PART OF THE POLICY IF ISSUED.

NOTICE TO COLORADO APPLICANTS:  IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY.   PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES.  ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

NOTICE TO FLORIDA APPLICANTS:  ANY PERSON WHO, KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY EMPLOYER OR EMPLOYEE, INSURANCE COMPANY, OR SELF-INSURED PROGRAM, FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE OR MISLEADING INFORMATION IS GUILTY OF A THIRD DEGREE FELONY.

NOTICE TO KENTUCKY APPLICANTS:  ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES ANY APPLICATION FOR INSURANCE CONTAINING ANY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

NOTICE TO MINNESOTA, OHIO AND ARKANSAS APPLICANTS:  ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE/SHE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD, WHICH IS A CRIME.

NOTICE TO NEW JERSEY APPLICANTS:  ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

CL 95 00 03 00

**EXECUTIVE LIABILITY UND⸍ ⸍WRITERS**     ☐     **Indian Harbc⸍ ⸍nsurance Company**
Member of ⸍.. XL America Companies

NOTICE TO NEW YORK APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT, THE EXTENDED REPORTING PERIOD APPLIES. UPON TERMINATION OF COVERAGE FOR ANY REASON, A 60-DAY AUTOMATIC EXTENDED REPORTING PERIOD WILL APPLY. FOR AN ADDITIONAL PREMIUM CALCULATED AS INDICATED IN ITEM 5 OF THE DECLARATION, AN EXTENDED REPORTING PERIOD CAN BE PURCHASED FOR A PERIOD OF AT LEAST ONE YEAR. NO COVERAGE WILL EXIST AFTER THE EXPIRATION OF THE EXTENDED REPORTING PERIOD WHICH MAY RESULT IN A POTENTIAL COVERAGE GAP IF PRIOR ACTS COVERAGE IS NOT SUBSEQUENTLY PROVIDED BY ANOTHER CARRIER. DURING THE FIRST SEVERAL YEARS OF CLAIMS MADE RELATIONSHIPS, CLAIMS MADE RATES ARE COMPARATIVELY LOWER THAN OCCURRENCE RATES, AND THE INSURED CAN EXPECT SUNSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF OVERALL RATE INCREASES UNTIL THE CLAIMS MADE RELATIONSHIP REACHES MATURITY.

NOTICE TO OKLAHOMA APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

NOTICE TO PENNSYLVANIA APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

APPLICANT: PRES, CHAIRMAN AND CEO.     8/15/05.

BY (Signature of Chairman and/or President)     TITLE     DATE

It is agreed and understood that the Application will only be executed by the Chairman and/or President of the Applicant acting in their capacity(s) as the authorized agent of the individual(s) and entity(s) proposed for this insurance.

PRODUCER (Insurance Agent or Broker):     INSURANCE AGENCY OR BROKERAGE:

INSURANCE AGENCY OR BROKERAGE TAXPAYER ID OR SOCIAL SECURITY NO.:     AGENT OR BROKER LICENSE NO.:

ADDRESS OF AGENT OR BROKER (Include Street, City, and Zip Code):

E-MAIL ADDRESS OF AGENT OR BROKER:

SUBMITTED BY (Insurance Agency or Brokerage):

INSURANCE AGENCY OR BROKERAGE TAXPAYER ID OR SOCIAL SECURITY NO.:     AGENT OR BROKER LICENSE NO.:

ADDRESS OF AGENT OR BROKER (Include Street, City, and Zip Code):

CL 95 00 03 00     Page 3 of 3

# EXHIBIT C

**EXECUTIVE LIABILITY UNDERWRITERS**    ☐ **Indian Harbor Insurance Company**
Member o   XL America Companies

---

### APPLICATION FOR CLASSIC A-SIDE MANAGEMENT LIABILITY INSURANCE POLICY

**NOTICE: THE POLICY FOR WHICH THIS APPLICATION IS MADE APPLIES, SUBJECT TO ITS TERMS, ONLY TO "CLAIMS" FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED BY "DEFENSE EXPENSES," AND "DEFENSE EXPENSES" WILL BE APPLIED AGAINST THE RETENTION. THE INSURER WILL HAVE NO DUTY UNDER THE POLICY TO DEFEND ANY "CLAIM." THE ENTIRE APPLICATION SHOULD BE CAREFULLY READ BEFORE IT IS EXECUTED.**

1.  a) Name of Applicant: _Refco, Inc._
    (Whenever used in this Application, the term "Applicant" shall mean the Parent Company)

    b) Principal Address: _550 W. Jackson Blvd_
    City: _Chicago_          State: _Il_   Zip Code: _60661_

    c) Name and title of the officer of the Applicant designated as the representative to receive all notices from the Insurer on behalf of all person(s) and entity(s) proposed for this Insurance:

2.  Has the Applicant or any Subsidiary in the past thirty-six (36) months completed or agreed to, or does it contemplate within the next (12) months, any of the following, whether or not such transaction was or will be completed? If "Yes," please describe the significant provisions of the transaction(s) as an attachment to this Application.

    a) Any registration for a public placement of securities?                    ☒ Yes   ☐ No

    b) Reorganization or arrangement with creditors under federal or state law? _See above_   ☐ Yes   ☐ No

3.  Prior Activities:

    a) Has any person(s) or entity(s) proposed for this insurance been a party to any of the following:

       1) Any civil, criminal or administrative proceeding alleging or investigating a violation of any securities or regulation?
          ☐ Yes   ☒ No

       2) Any representative actions, class actions or derivative suits?          ☐ Yes   ☐ No

       If "Yes" to 1) or 2) above, a statement to the Application providing full details must be attached.

    b) No claims have been made against any persons or entity(s) proposed for this insurance in their capacity as a director or officer of the Applicant, except as follows (provide detail as to defense costs, settlements, judgments, or other amounts). If answer is "none" so state:

       _McElwreath v. Refco Securities – Marsa will_
       _forward documents_

    c) No persons or entity(s) proposed for this insurance is cognizant of any fact, circumstance or situation which they have reason to suppose might afford grounds for any claim such as would fall within the scope of the proposed insurance, except as follows. If answer is "none," so state:

---

Without prejudice to any other rights and remedies of the Insurer, any claim arising from any claims, facts, circumstances or situations disclosed or required to be disclosed in response to 3. b) and 3. c) is excluded from the proposed insurance.

4.  As part of this Application, please submit the following documents with respect to the Applicant:

    a) Latest 10-Q report filed and any 8-K or 13D reports filed with the SEC within the last 12 months.

    b) Each prospectus, offering circular or private placement memorandum within the last 12 months.

    c) Last proxy statement, 10-K and annual report, including audited financial statements with all notes and schedules.

    d) Copies of all provisions of the Applicant's charter and bylaws relating to the indemnification of its directors and officers.

CL 95 00 03 00

Page 1 of 3

Confidential
M-CHI 002792

**EXECUTIVE LIABILITY UNDERWRITERS**    ☐    **Indian Harbor Insurance Company**
Member c    : XL America Companies

FOR THE PURPOSE OF THIS APPLICATION, THE UNDERSIGNED AUTHORIZED AGENT OF THE PERSONS AND ENTITY(S) PROPOSED FOR THIS INSURANCE DECLARES THAT TO THE BEST OF THEIR KNOWLEDGE AND BELIEF, AFTER REASONABLE INQUIRY, THE STATEMENTS HEREIN ARE TRUE AND COMPLETE. THE INSURER IS AUTHORIZED TO MAKE ANY INQUIRY IN CONNECTION WITH THIS APPLICATION. SIGNING THIS APPLICATION DOES NOT BIND THE INSURER TO COMPLETE THE INSURANCE.

THE UNDERSIGNED DECLARES THAT THE PERSON(S) AND ENTITY(S) PROPOSED FOR THIS INSURANCE UNDERSTAND:

(A)     THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED, AND MAY BE COMPLETELY EXHAUSTED BY THE PAYMENT OF "DEFENSE EXPENSES," AND IN SUCH EVENT, THE INSURER WILL NOT BE RESPONSIBLE FOR ANY ONGOING DEFENSE EXPENSES OR FOR THE AMOUNT OF ANY JUDGEMENT OR SETTLEMENT TO THE EXTENT THAT ANY OF THE FOREGOING EXCEED ANY APPLICABLE LIMIT OF LIABILITY;

(B)     "DEFENSE EXPENSES" WILL BE APPLIED AGAINST THE RETENTION;

(C)     THIS POLICY APPLIES ONLY TO "CLAIMS" FIRST MADE OR DEEMED MADE DURING THE "POLICY PERIOD," OR, IF PURCHASED, ANY EXTENDED REPORTING PERIOD;

(D)     THE INSURER HAS NO DUTY UNDER THIS POLICY TO DEFEND ANY "CLAIM."

IF THE INFORMATION IN THIS APPLICATION MATERIALLY CHANGES BETWEEN THE DATE OF THIS APPLICATION AND THE POLICY EFFECTIVE DATE, THE APPLICANT WILL NOTIFY THE INSURER WHO MAY MODIFY OR WITHDRAW ANY QUOTATION.

THE INFORMATION CONTAINED AND SUBMITTED WITH THIS APPLICATION IS ON FILE WITH THE INSURER AND, ALONG WITH THE APPLICATION, IS CONSIDERED TO BE PHYSICALLY ATTACHED TO THE POLICY AND WILL BECOME PART OF THE POLICY IF ISSUED.

NOTICE TO COLORADO APPLICANTS: IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

NOTICE TO FLORIDA APPLICANTS: ANY PERSON WHO, KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY EMPLOYER OR EMPLOYEE, INSURANCE COMPANY, OR SELF-INSURED PROGRAM, FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE OR MISLEADING INFORMATION IS GUILTY OF A THIRD DEGREE FELONY.

NOTICE TO KENTUCKY APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES ANY APPLICATION FOR INSURANCE CONTAINING ANY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

NOTICE TO MINNESOTA, OHIO AND ARKANSAS APPLICANTS: ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE/SHE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD, WHICH IS A CRIME.

NOTICE TO NEW JERSEY APPLICANTS: ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

CL 95 00 03 00                                                                    Page 2 of 3

Confidential
M-CHI 002793

**EXECUTIVE LIABILITY UNDERWRITERS**   ☐   **Indian Harbor Insurance Company**

Member of XL America Companies

NOTICE TO NEW YORK APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT, THE EXTENDED REPORTING PERIOD APPLIES. UPON TERMINATION OF COVERAGE FOR ANY REASON, A 60-DAY AUTOMATIC EXTENDED REPORTING PERIOD WILL APPLY. FOR AN ADDITIONAL PREMIUM CALCULATED AS INDICATED IN ITEM 5 OF THE DECLARATION, AN EXTENDED REPORTING PERIOD CAN BE PURCHASED FOR A PERIOD OF AT LEAST ONE YEAR. NO COVERAGE WILL EXIST AFTER THE EXPIRATION OF THE EXTENDED REPORTING PERIOD WHICH MAY RESULT IN A POTENTIAL COVERAGE GAP IF PRIOR ACTS COVERAGE IS NOT SUBSEQUENTLY PROVIDED BY ANOTHER CARRIER. DURING THE FIRST SEVERAL YEARS OF CLAIMS MADE RELATIONSHIPS, CLAIMS MADE RATES ARE COMPARATIVELY LOWER THAN OCCURRENCE RATES, AND THE INSURED CAN EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF OVERALL RATE INCREASES UNTIL THE CLAIMS MADE RELATIONSHIP REACHES MATURITY.

NOTICE TO OKLAHOMA APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

NOTICE TO PENNSYLVANIA APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

APPLICANT:

PRES. CHAIRMAN AND CEO.     8/15/05.

BY (Signature of Chairman and/or President)          TITLE          DATE

It is agreed and understood that the Application will only be executed by the Chairman and/or President of the Applicant acting in their capacity(s) as the authorized agent of the individual(s) and entity(s) proposed for this insurance.

PRODUCER (Insurance Agent or Broker):          INSURANCE AGENCY OR BROKERAGE:

INSURANCE AGENCY OR BROKERAGE TAXPAYER ID OR SOCIAL SECURITY NO.:          AGENT OR BROKER LICENSE NO.:

ADDRESS OF AGENT OR BROKER (include Street, City, and Zip Code):

E-MAIL ADDRESS OF AGENT OR BROKER:

SUBMITTED BY (Insurance Agency or Brokerage):

INSURANCE AGENCY OR BROKERAGE TAXPAYER ID OR SOCIAL SECURITY NO.:          AGENT OR BROKER LICENSE NO.:

ADDRESS OF AGENT OR BROKER (include Street, City, and Zip Code):

CL 95 00 03 00

**Page 3 of 3**

Confidential
M-CHI 002794

# EXHIBIT D



| | Kenny<br>Li/NYC-NY/US/Marsh/MMC<br>08/09/2005 10:17 AM | To | Hank.Toolan@xlgroup.com@Internet@MMC_CD<br>S |
| | | cc | |
| | | bcc | |
| | | Subject | RE: Refco - request for excess quotes |

Can you add an inverted warranty endorsement so that the client does not have to fill out the warranty portion of the application?

kl

Kenny Li
Marsh USA Inc.
Private Equity and Mergers & Acquisitions Svcs.
1166 Avenue of the Americas - 38th Floor
New York, NY 10036
Phone: 212-345-1989   Fax: 212-345-8491
Email: Kenny.Li@marsh.com

Hank.Toolan@xlgroup.com@Internet



| | Hank.Toolan@xlgroup.com@<br>Internet<br>08/09/2005 10:14 AM | To | Kenny Li/NYC-NY/US/Marsh/MMC@MMC |
| | | cc | |
| | | Subject | RE: Refco - request for excess quotes |

Here is our quote for the 20x50 DIC.

Hank

-----Original Message-----
From: KENNY.LI@marsh.com [mailto:KENNY.LI@marsh.com]
Sent: Tuesday, August 09, 2005 9:47 AM
To: Hank.Toolan@xlgroup.com
Subject: Refco - request for excess quotes

Hi Hank,

Please quote 20m x 50m per the quotes below. We will be pursuing the controlling shareholder coverage and others have agreed to maintain the same rate online.

kl

(See attached file: Attachment.PDF)
(See attached file: IL USSIC PR 1117C-IL.doc)
(See attached file: 991-302 Amend Def of Ins to add specific

Confidential
M-CHI 001035

individuals.doc)
(See attached file: 991-319 Amend Defn of Loss to incl pre-judgmt
post-judgmnt interest (Public).doc) (See attached file: 991-322 Emp'd
Lawyers Ext. - co-def sep. lim  ret.doc) (See attached file: 991-701 Full
Severability.doc) (See attached file: 991-804 Derivative Demand
Investigation Cost Cov
Sublimit.doc)
(See attached file: 991-415 Specific Litigation Exclusion.doc) (See attached
file: 991-876 Specific Event(s) Excl. (replaces 80013)
(Public).doc)


EXCESS QUOTES
(See attached file: refco excess quotes.PDF)(See attached file: Refco
Quote.doc)

Kenny Li
Marsh USA Inc.
Private Equity and Mergers & Acquisitions Svcs.
1166 Avenue of the Americas - 38th Floor
New York, NY 10036
Phone: 212-345-1989   Fax: 212-345-8491
Email: Kenny.Li@marsh.com


CONFIDENTIALITY:  This communication, including attachments, is for exclusive
use of the addressee(s) and may contain proprietary, confidential or
privileged information.  If you are not the intended recipient, any use,
copying, disclosure, or distribution or the taking of any action in reliance
upon this information is strictly prohibited.  If you are not the intended
recipient, please notify the sender immediately and delete this communication
and destroy all copies.


[attachment "Refco.pdf" deleted by Kenny Li/NYC-NY/US/Marsh/MMC]


**All Recipients**
To:     Kenny Li/NYC-NY/US/Marsh/MMC@MMC
cc:
From:   Hank.Toolan@xlgroup.com@Internet


**All Recipients**
To:     Hank.Toolan@xlgroup.com@Internet@MMC_CDS
cc:
From:   Kenny Li/NYC-NY/US/Marsh/MMC

Confidential
M-CHI 001036

# EXHIBIT E

**BSWB**

Attorneys at Law

Chicago
New York
London

**Boundas, Skarzynski, Walsh & Black, LLC**

One Battery Park Plaza  22nd Floor  New York, New York 10004
P: 212 821 7750  F: 212 820 7740/7788  W: www.bswb.com

James A. Skarzynski, Esq.
Direct Dial 212 820 7720
Direct Fax 212 820 7775
jskarzynski@bswb.com

Cecilia W. Kaiser, Esq.
Direct Dial 212 820 7710
ckaiser@bswb.com

January 24, 2006

**VIA E-MAIL & FIRST CLASS MAIL**
Ms. Andrea Lieberman
Marsh USA
500 West Monroe Street
Chicago, Illinois 60661

Re:   Insured:        Refco, Inc.
      Issuing Co.:    XL Specialty Insurance Company
      Policy No.:     ELU089673-05
      Our File No.:   13304

Dear Andrea:

As you know, we have been retained by XL Specialty Insurance Company ("XL") to represent its interests in connection with Classic A-Side Management Liability Insurance Policy No. ELU089673-05 (the "Policy") issued to Refco, Inc. ("Refco") for the claims-made policy period of August 11, 2005 to August 11, 2006. We are directing this letter to you as the authorized insurance representative for all of the Insureds.[1] To the extent that you are not acting as the authorized representative for any of the Insureds, we ask that you please advise us and forward a copy of this letter to the appropriate party(ies).

On XL's behalf, this letter will acknowledge receipt of letters dated October 13, 2005, October 18, 2005, October 21, 2005, October 25, 2005, October 27, 2005, November 21, 2005 and November 30, 2005 from Marsh enclosing the complaints filed in the following matters (collectively, the "Lawsuits"):

(1)   *Glaubach v. Refco, Inc., et al.*, Case No. 05CV8692 (S.D.N.Y.);
(2)   *Frontpoint Financial Servs., Inc. v. Refco, Inc., et al.*, Case No.05CV8663 (S.D.N.Y.);
(3)   *Lieber v. Refco, Inc., et al.*, Case No. 05CV8667 (S.D.N.Y.);
(4)   *United States of America v. Bennett*, Case No. 05MAG1720 (S.D.N.Y.);
(5)   *Sandra Weiss v. Refco, Inc., et al.*, Case No. 05CV8691 (S.D.N.Y.);
(6)   *Mehta v. Bennett, et al.*, Case No. 05CV8748 (S.D.N.Y.);

---

[1] By "Insureds" we mean Refco and Insured Persons.

**BSWB**

(7)   *Wakefield v. Refco, Inc., et al.*, Case No. 05CV8742 (S.D.N.Y.);

(8)   *Baker v. Bennett, et al.*, Case No. 05CV8923 (S.D.N.Y.);

(9)   *Becker v. Refco, Inc., et al.*, Case No. 05CV8929 (S.D.N.Y.);

(10)  *Nathanson v. Bennett, et al.*, Case No. 05CV8926 (S.D.N.Y.);

(11)  *American Financial Int'l Group – Asia, LLC v. Refco, Inc., et al.*, Case No. 05CV8988 (S.D.N.Y.);

(12)  *Mettupatti v. Bennett, et al.*, Case No. 05CV9048 (S.D.N.Y.);

(13)  *Todd Weiss v. Bennett, et al.*, Case No. 05CV9126 (S.D.N.Y.);

(14)  *Weit v. Bennett, et al.*, Case No. 05CV9611 (S.D.N.Y.);

(15)  *Bankruptcy Trust of Gerard Sillam, et al. v. Refco Group LLC, et al.*, Case No. 05/603931 (N.Y. Sup.);

(16)  *City of Pontiac General Employees' Retirement Sys. v. Bennett, et al.*, Case No. 05CV9941 (S.D.N.Y.); and

(17)  *BAWAG P.S.K. Bank Für Arbeit und Wirtschaft und Österreichische Postsparkasse Aktiengesellschaft v. Refco, Inc., et al. (In re Refco Inc., et al.)*, Case No. 05-60006 (Bankr. S.D.N.Y.).

## I.  The Litigation

### A. The Securities Class Action Lawsuits

*Glaubach, Frontpoint, Lieber, Sandra Weiss, Wakefield, Baker, Becker, Nathanson, Todd Weiss, American Financial, Mettupatti, Weit* and *City of Pontiac* are purported shareholder class action lawsuits filed in the United States District Court for the Southern District of New York beginning in October 2005. With the exception of *American Financial*, each of these Lawsuits alleges violations of the federal securities laws.

*Glaubach, Becker, Nathanson* and *Mettupatti* are purportedly brought on behalf of a class of all purchasers of Refco securities, whereas *Frontpoint, Lieber, Sandra Weiss, Wakefield, Baker, Todd Weiss, Weit* and *City of Pontiac* are purportedly brought on behalf of a class of all purchasers of Refco common stock (collectively the "Securities Class Actions"). The purported class in *City of Pontiac* also specifically includes those who purchased bonds pursuant to Refco's August 5, 2004 bond offering. *American Financial* is purportedly brought on behalf of a class of persons who traded currencies through or had currency trading accounts with Refco F/X Associates, LLC ("Refco FX"), which is alleged to be the currency trading arm of Refco. With the exception of the class period alleged in *City of Pontiac*, the alleged class periods all commence on August 11, 2005 but vary in their ending dates from October 7, 2005 to October 18, 2005. The alleged class period in *City of Pontiac* runs from August 5, 2004 to October 18, 2005.

Both Refco and Refco Group Holdings, Inc. ("RGHI") are named in several of these complaints. The following individuals, who are identified as Refco directors and/or officers are also named in some or all of the Securities Class Actions: Philip Bennett, Gerald Sherer, Leo Breitman, Nathan Gantcher, David Harkins, Scott Jaeckel, Thomas Lee, Ronald O'Kelley and Scott Schoen. Other defendants

**BSWB**

Ms. Andrea Lieberman
January 24, 2006
Page 3

named in the Securities Class Actions include Credit Suisse First Boston LLC, Goldman Sachs & Co., Banc of America Securities, LLC, Merrill Lynch, Pierce, Fenner & Smith, Inc., Deutsche Bank Securities, Inc., J.P. Morgan Securities, Inc., Grant Thornton, LLP, Sandler O'Neill & Partners, L.P., HSBC Securities (USA) Inc., William Blair & Co., LLC, Harris Nesbitt Corp., CMG Institutional Trading, LLC, Samuel A. Ramirez & Co., Inc., Muriel Siebert & Co., Inc., The Williams Capital Group, L.P., Utendahl Capital Partners, L.P. and Liberty Corner Capital.

The complaints in the Securities Class Actions generally allege that on August 11, 2005, Refco sold 26.5 million shares at $22 per share in its initial public offering ("IPO") for proceeds of $583 million. The complaints further allege that, in connection with the IPO, Refco filed a Form S-1 Registration Statement and Prospectus in August 2005, which were materially false and misleading. The *City of Pontiac* complaint additionally alleges that Refco's offering statement issued in connection with the August 2004 bond offering was false and misleading. As set forth in the complaints, just nine weeks after the IPO, on October 10, 2005, Refco revealed that Mr. Bennett, Refco's CEO, Chairman and controlling shareholder, owed Refco $430 million and was being placed on a leave of absence. Refco also acknowledged at that time that, based on the undisclosed related party transaction, its prior financial statements for the fiscal years ending 2002 through 2005 and the quarter ended May 31, 2005 should not be relied upon. As a result, the price of Refco's common stock fell $12.96 per share, or 45.3%, to close at $15.60 per share on October 10, 2005. The complaints allege that, following Refco's further announcement on October 11, 2005 that the $230 million receivable consisted in major part of uncollectible historical obligations owed by unrelated third parties dating back to 1998, Refco's common stock fell further, to close at $13.85 per share on October 11, 2005, after a five-hour halt on. trading Refco shares on the New York Stock Exchange ("NYSE") was lifted. The next day, the *Wall Street Journal* reported that Mr. Bennett had paid Liberty Corner Capital to help him hide hundreds of millions of dollars of debt to Refco and that the Securities Exchange Commission ("SEC") had launched an investigation. The same day, the United States Attorney for the Southern District of New York announced that Mr. Bennett had been arrested and charged in a criminal complaint with having defrauded investors in the IPO, and shares of Refco fell an additional $3.00 dollars per share, to close at $10.85 per share. On October 13, 2005, Refco announced that it had hired advisors and was imposing a 15-day moratorium on customer withdrawals at Refco Capital Markets, Ltd. Following this announcement, at which time Refco's stock was trading at $7.90 per share, the NYSE again imposed a trading halt. On October 17, 2005, Refco announced that it was filing for bankruptcy, after negotiating a deal to sell its primary business to. a group led by J.C. Flowers & Co., LLC, and on October 18, 2005, the NYSE lifted the trading ban on Refco stock, which closed at $0.65 per share.

The Securities Class Actions complaints allege violations by the defendants of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, and violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5. The complaints seek class certification, unspecified damages and attorneys' fees and costs.

The complaint in *American Financial* alleges that, in connection with the above, on or about October 17, 2005, Refco FX advised plaintiffs and other purported class members that they could not deposit and/or withdraw funds from their currency trading accounts at Refco FX and that Refco FX did



not know when customers would be able to resume deposits to and withdrawals from their accounts. The complaint in *American Financial* alleges fraud, misrepresentation, negligence, negligent misrepresentation, unjust enrichment, restitution, quantum meruit, breach of contract, breach of warranty and unfair competition against Mr. Bennett, Refco and Refco FX. As relief, the complaint in *American Financial* seeks class certification, unspecified rescissory and compensatory damages, equitable and/or injunctive relief, including the imposition of a constructive trust on defendants' assets and restriction of defendants' trading activities, and attorneys' fees and costs.

**B. The Shareholder Derivative Action**

*Mehta* is a shareholder derivative action also filed in the United States District Court for the Southern District of New York in October 2005. As defendants, the *Mehta* complaint names the following individuals, who are identified as directors and officers of Refco: Philip Bennett, William Sexton, Gerald Sherer, Joseph Murray, Leo Breitman, Nathan Gantcher, David Harkins, Scott Jaeckel, Thomas Lee, Ronald O'Kelley and Scott Schoen. Also named as defendants in the *Mehta* complaint are Credit Suisse First Boston LLC, Goldman Sachs & Co., Banc of America Securities, LLC, Deutsche Bank Securities, Inc., J.P. Morgan, Merrill Lynch & Co., Sandler O'Neill & Partners, L.P., and HSBC (the "IPO Defendants") and Thomas H. Lee Partners, L.P.

In connection with the same allegations contained in the Securities Class Actions, the *Mehta* complaint alleges the following counts against the individual defendants and Thomas H. Lee Partners: (1) breach of fiduciary duty; (2) abuse of control; (3) gross mismanagement; (4) waste of corporate assets; and (5) unjust enrichment. The *Mehta* complaint further alleges aiding and abetting against the IPO Defendants. In addition, the complaint alleges demand futility. As relief, the *Mehta* complaint seeks unspecified damages, equitable and/or injunctive relief, the imposition of a constructive trust on defendants' assets and restriction of defendants' trading activities, restitution, disgorgement, improved corporate governance and internal procedures and attorneys' fees and costs.

**C. The Criminal Complaint**

*United States of America v. Phillip Bennett* is a criminal complaint filed on October 12, 2005 in the United States District Court for the Southern District of New York, alleging one count of securities fraud, in violation of 15 U.S.C. §78j(b) (the "Criminal Complaint"). Specifically, the Criminal Complaint alleges that Mr. Bennett caused Refco to file a false and fraudulent S-1 Registration Statement with the SEC in August 2005, which failed to disclose hundreds of millions of dollars of transactions with and debts owed to Refco by RGHI, a company Mr. Bennett controlled. Moreover, the Criminal Complaint alleges that Mr. Bennett caused Refco to engage in a series of transactions designed to disguise the related-party nature of a $300 million-plus debt owed to Refco by RGHI by temporarily paying off the debt and transferring it from RGHI to another entity unrelated to Mr. Bennett and that this temporary re-positioning of debt was carried out so that the debt would not appear to be owed by RGHI over Refco's February 28, 2005 year-end. Additionally, the Criminal Complaint alleges that on October 10, 2005, Refco issued a press release announcing that it had discovered a $430 million debt owed by an entity controlled by Mr. Bennett, and that he had repaid the entire sum the same day, but that following

**BSWB**

this announcement, the market price of Refco stock fell from its October 7, 2005 closing price of $28.56 per share to its October 11, 2005 closing price of $13.85 per share, resulting in a market capitalization loss of over $1 billion. The Criminal Complaint charges Mr. Bennett with one count of securities fraud under 15 U.S.C. §78j(b).

### D. The *Sillam* Action

*Bankruptcy Trust of Gerard Sillam, et al. v. Refco Group LLC, et al.*, is an action based on business tort allegedly committed by the numerous defendant companies and their directors and/or officers on a worldwide basis, which seeks restitution for unjust enrichment allegedly conferred to the Refco Group of companies. The plaintiff is a French businessman, who alleges that he had filed a related complaint on September 8, 2004, also in the New York Supreme Court, against Refco Group and Mr. Bennett but "lost his capacity to sue for pecuniary losses," further to a September 28, 2004 order by a French tribunal and therefore brings the present action through his bankruptcy trust.[2] Based on the allegations in the *Sillam* complaint, the earlier complaint appeared to concern certain introductions and business contacts allegedly made by Mr. Sillam on behalf of the Refco companies for which Mr. Sillam asserts in this complaint that he was not paid.

As defendants, the complaint in *Sillam* names Refco Group, Refco Overseas Ltd. ("Refco Overseas") and RGHI (collectively, the "Refco Entities"), and the following individuals identified as directors and/or officers of Refco: Phillip Bennett, Thomas Lee, Scott Schoen, David Harkins, Gerald Sherer, Leo Breitman, Scott Jaeckel, Nathan Gantcher and Ronald O'Kelley. The complaint also names the following individuals identified as directors of Refco Overseas: Mark Slade, Julian Courtney, Richard Reinert, and David Campbell. Defendant Halim Saad is identified as a former Refco Overseas officer, and defendant Dennis Klejna is identified as the general counsel of Refco LLC. Also named as defendants are Grant Thornton, LLP; Liberty Corner Capital; Thomas H. Lee Partners, L.P. and Thomas H. Lee Partners Fund V; the NYSE; and the following financial institutions that are identified as having underwritten Refco's IPO: Credit Suisse First Boston LLC, Goldman Sachs & Co., Banc of America Securities, LLC, Merrill Lynch, Pierce, Fenner & Smith, Inc., Deutsche Bank Securities, Inc., J.P. Morgan Securities, Inc., Sandler O'Neill & Partners, L.P., HSBC Securities (USA) Inc., William Blair & Co., LLC, Harris Nesbitt Corp., CMG Institutional Trading, LLC, Samuel A. Ramirez & Co., Inc.,

---

[2] Mr. Sillam also alleges that numerous other, related actions have been pending for some time, to wit, "joint and several cases against [Refco Overseas Ltd.] and Refco Securities S.A. have been in progress since April 25, 2003 before the Commercial Court ('Tribunal de Commerce') in Paris at the request of Gerard Sillam" and "two criminal lawsuits, in the form of two writs have been issued against X at the High Court in Paris ('Tribunal de Grande Instance'), one by the Finance Section, for obtaining judgments by false pretenses and various related offenses which may have been committed before the courts in France during hearings before the 'Juge de l'Execution' (the judge handling the execution of judgments) of the High Court in Paris in April 2002 and before the 'Premier President' (chief presiding judge) of the Court of Appeals in Paris in November 2003." *Sillam*, ¶¶ 63-64. Mr. Sillam further alleges that the he has filed "a criminal complaint with civil action regarding the essence of this case, namely possible breach of trust and fraud aggravated by receiving stolen goods," *id.* at ¶ 66, and refers to numerous other demands he has made, *see, e.g.*, *id.* at ¶¶45, 47, 51, 60, 61, 70.



Muriel Siebert & Co., Inc., The Williams Capital Group, L.P., Utendahl Capital Partners, L.P (the "Underwriter Defendants").[3]

In a nutshell, the complaint in *Sillam* alleges that Mr. Sillam is owed money for helping the Refco Entities set up and develop their new securities business in Europe beginning in 1997. The *Sillam* complaint alleges that, relying on a letter dated September 1, 1997 from Halim Saad, director of Refco Overseas's institutional commercial trade office (the "September Contract Letter"), Mr. Sillam introduced Imad Lahoud to Refco Overseas and organized a meeting in the office of Mr. Lahoud's company, Investment Management Services ("IMS"). The Sillam complaint alleges that the September Contract Letter set out commissions and rebates payable to Mr. Sillam for acting as an introducing agent regarding Mr. Lahoud. The complaint further alleges that, as a result of this introduction, significant business relationships developed between Mr. Lahoud and Refco SA, the French affiliate of the Refco Group and that Refco Group, Refco Overseas and Refco SA benefited from the goodwill contribution of HL Gestion, which took over IMS's business. Additionally, the complaint alleges that on June 29, 1999, HL Holding (another company controlled by Mr. Lahoud) entered into a Memorandum of Understanding with Refco Global Holdings and Refco SA for the joint formation of Refco HL Securities to engage in the business of clearing French stocks and developing a clearing business for financial futures by Refco SA and HL Securities, an affiliate of HL Holding. The complaint alleges that Refco HL Securities took over the business and goodwill of IMS and HL Gestion. The complaint further alleges that, as soon as he learned of the negotiations for this business combination, Mr. Sillam contacted Mr. Saad and asserted his entitlement to commissions under the September Contract Letter. The complaint alleges that Mr. Saad pronounced the September Contract Letter null and void.

The complaint further alleges that Mr. Sillam accordingly undertook legal action to recover amounts allegedly owed to him under the September Contract Letter, including causing a writ to be served on Mr. Lahoud on October 16, 2000 and a summons to be forwarded to Mr. Bennett on November 15, 2000. Following the execution of a Merger Treaty among various Refco companies on November 28, 2000, the complaint alleges that Refco Group and Mr. Sillam met in December 2000. Mr. Sillam allegedly believed the meetings to be settlement discussions; it is alleged that they were, instead, intended to uncover Mr. Sillam's evidence in ongoing criminal proceedings involving Refco Group. The merger was completed in December 2000 or January 2001 and resulted in the formation of Refco Securities SA and the liquidation of SNC Refco Securities. The complaint states that Mr. Sillam sued Refco Overseas and Refco Securities SA in France in April 2003 and instituted various criminal complaints involving Refco Group, the Merger Treaty and the September Contract Letter, as well as a criminal complaint against Refco Overseas filed by Mr. Sillam in June 2005, alleging that the Refco Entities, Mr. Bennett, Mr. Lee, Mr. Schoen and Thomas H. Lee Partners, L.P. and Thomas H. Lee Partners Fund V, as well as Refco's auditors, Grant Thornton, issued false and fraudulent statements in disclosures filed with the French authorities prior to Refco's IPO. Additionally, the complaint alleges that the Underwriter Defendants and Grant Thornton failed to exercise due diligence in underwriting Refco's IPO.

---

[3] The NYSE and Liberty Corner Capital are alleged to be defendants in this action but are not included in the case caption. *See Sillam*, ¶¶ 90 & 92.

**BSWB**

The *Sillam* complaint asserts the following specific counts: (1) fraud against Refco Group, Mr. Bennett and Mr. Saad; (2) fraudulent misrepresentation against Refco Group and Mr. Bennett; (3) tortious interference with contract against Refco Group and Mr. Bennett; and (4) unjust enrichment against all defendants, other than Mr. Saad. As relief, the *Sillam* complaint seeks compensatory damages of $150 million, plus interest; punitive damages; restitution for unjust enrichment in the sum of $800 million, plus interest; and attorneys' fees and costs.

### E. The *BAWAG* Action

*BAWAG P.S.K. Bank Für Arbeit und Wirtschaft und Österreichische Postsparkasse Aktiengesellschaft v. Refco, Inc., et al. (In re Refco Inc., et al.) ("BAWAG")* is an adversary proceeding filed on November 16, 2005 by an Austrian Bank, BAWAG, in Refco's Chapter 11 bankruptcy proceeding. Named as defendants in *BAWAG* are Refco, Refco Group and 25 other Refco entities that are also debtors in the Refco bankruptcy, RGHI, Mr. Bennett, the Phillip R. Bennett Three Year Annuity Trust (the "Bennett Trust"), John Does 1-10 and XYZ Corporations 1-10.

The *BAWAG* complaint alleges that, after Refco completed its IPO on August 10, 2005, a Refco employee and/or Grant Thornton questioned whether a Refco receivable in the amount of $430 million had been properly accounted for as a third-party receivable when it appeared to be a related-party receivable from RGHI, which was privately held by Mr. Bennett. The *BAWAG* complaint further alleges that, by late September or early October 2005, Refco knew not only that the receivable was, in fact, a related-party receivable but also that it was likely impaired and not collectible. The complaint alleges that Refco and its related entities nevertheless undertook to support and assist Mr. Bennett in his effort to obtain a $420 million loan from *BAWAG*, which was to be used to repay the receivable. The complaint alleges that, on October 6, 2005, Mr. Bennett requested that BAWAG make the loan to RGHI and the Bennett Trust, and as inducement to make the loan, Mr. Bennett offered to pledge as collateral Refco stock then valued at over $1.2 billion that he, RGHI and the Bennett Trust owned. The complaint alleges that, following Mr. Bennett's urging, BAWAG wired €350 million into a Refco Capital Markets account at approximately 6 a.m. on October 10, 2005, secured by the pledged shares. The complaint further alleges that, less than two hours later, Refco issued a press release disclosing the $430 million receivable owed to Refco by a company controlled by Mr. Bennett and the repayment of the receivable in cash, that Refco's financial statements could no longer be relied upon and that Mr. Bennett would be placed on leave. The complaint alleges that at no time did the defendants disclose to BAWAG the facts relating to the receivable, the unreliability of Refco's financial statements, Mr. Bennett's imminent leave of absence, or the impending public disclosure of these facts. The complaint alleges that the defendants wrongfully and intentionally concealed the facts disclosed in the October 10 press release from BAWAG and had BAWAG been aware of any of the key facts set forth in that press release, it would not have made the loan. The complaint alleges that, as soon as BAWAG learned of press release, it immediately tried to stop the wire transfer but could not. On October 21, BAWAG delivered a notice of default under the loan asserting that misrepresentations and omissions had been made by the borrowers and demanding an immediate return of the funds. The complaint alleges that the shares pledged as collateral, which had been worth $1.2 billion, now trade for less than $1.00 per share.



Based on the above, the complaint asserts seven causes of action: (1) imposition of a constructive trust against Refco, Refco Capital Markets and any John Doe and XYZ Corporation defendants in possession of the loan proceeds; (2) fraud in the inducement against Mr. Bennett, RGHI and the Bennett Trust; (3) fraud against Refco, Mr. Bennett and Refco Capital Markets; (4) civil conspiracy against Refco, Mr. Bennett, RGHI and the Bennett Trust; (5) unjust enrichment against Refco, Mr. Bennett, RGHI, the Bennett Trust, Refco Capital Markets, Refco Group and any John Doe and XYZ Corporation defendants in possession of the loan proceeds; and (7) conversion against Refco, Refco Capital Markets and any John Doe and XYZ Corporation defendants in possession of the loan proceeds. As relief, BAWAG seeks the imposition of a constructive trust on the loan proceeds, rescission, judgment of not less than €350 million, interest, punitive and exemplary damages, attorneys' fees and costs.

## II. Coverage Discussion

The Policy provides a $20 million maximum aggregate limit of liability, inclusive of **Defense Expenses**. XL has reviewed the Lawsuits for potential coverage under the Policy based on the information the Insureds have made available to it. Based on that information, XL is denying coverage for the Lawsuits, as explained below.

First, coverage for each of the Lawsuits is excluded by the Policy's Inverted Representation Endorsement, which provides:

> In consideration of the premium charged, no coverage will be available under this Policy for Loss, including Defense Expenses, from Claims arising from any fact, circumstance or situation of which, as of the effective date of this Policy, any Insured had knowledge and had reason to suppose might afford grounds for any Claim that would fall within the scope of the insurance afforded by this Policy.
>
> All other terms, conditions and limitations of this Policy shall remain unchanged.

*See* The Policy, End. No. 13. Based on allegations in the Securities Class Actions, the *Mehta* complaint, the Criminal Complaint, the *Sillam* complaint, the *BAWAG* complaint, and as admitted by Refco in its press releases, Mr. Bennett had knowledge as far back as 1998 of uncollectible historical obligations owed by third parties unrelated to Refco that make up the $430 million receivable, revelation of which is the subject of each of the Lawsuits. The effective date of the Policy is August 11, 2005. Given that Mr. Bennett (if not others) had knowledge of the hidden receivable as of August 11, 2005, the Policy's Inverted Representation Endorsement bars coverage for each of the Lawsuits.

Second, coverage under the Policy is only available for "a **Claim** first made against the **Insured Persons** during the **Policy Period** … for a **Wrongful Act**, except to the extent that such **Loss** is paid by any other **Insurance Program** or as indemnification from any source." *See* The Policy, I. Because it is not a **Claim** first made during the **Policy Period**, there is no coverage for the *Sillam* complaint under the Policy. The **Policy Period** of the Policy is August 11, 2005 to August 11, 2006. The *Sillam* complaint

**BSWB**

Ms. Andrea Lieberman
January 24, 2006
Page 9

makes clear that, before the Policy incepted on August 11, 2005, Mr. Sillam made several demands for monetary and non-monetary relief and filed lawsuits, both in the United States and in France, based on the same or related, or series of related, facts, circumstances, situations, transactions or events as those alleged in the *Sillam* complaint. *See Sillam* Complaint, ¶8 (referring to "a related complaint" filed in September 2004 in New York state court, alleging the same injuries alleged in the *Sillam* complaint); ¶45 (referring to a writ served in France in October 2000); ¶47 (referring to an "answering letter" dated November 6, 2000 demonstrating Mr. Bennett's knowledge of Mr. Sillam's claims); ¶48 (referring to a letter communicating summons and answer to Refco Group and Mr. Bennett); ¶51 (referring to a certified letter dated December 18, 2000 giving "formal notice" to SNC Refco Securities of Mr. Sillam's rights under the September Contract Letter); ¶60 (referring to Refco Overseas's January 10, 2001 letter rejecting Mr. Sillam's rights to commissions); ¶61 (referring to January 2001 $50,000 offer of settlement to Mr. Sillam); ¶63 (referring to litigation against Refco Overseas and Refco Securities SA in progress since April 2003 in France); ¶64 (referring to two criminal lawsuits filed in France in 2002 and 2003); ¶66 & Exh. L (referring to a "criminal complaint with civil action regarding the essence of [this] case" filed in France on March 4, 2004); and ¶70 (referring to a criminal complaint filed on June 30, 2005 in France alleging that Refco Overseas and Refco Securities filed false and misleading financial statements in relation to Refco's August 2005 IPO).

Third, even assuming the *Sillam* complaint was a **Claim** first made during the **Policy Period** – which it is not – coverage for the *Sillam* complaint would be excluded under the Policy's Pending and/or Prior Litigation Exclusion, which provides as follows:

> In consideration of the premium charged, no coverage will be available under this Policy for Claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Wrongful Act, underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to August 11, 2005.

> All other terms, conditions and limitations of this Policy shall remain unchanged.

*See* The Policy, End. No. 7. As detailed above, the *Sillam* complaint arises out of and is based upon the same facts, circumstances, situations, transactions, events or **Wrongful Acts** alleged in litigation filed prior to August 11, 2005. Therefore, coverage for the *Sillam* complaint would be excluded under the Policy's Pending and/or Prior Litigation Exclusion.

Fourth, to the extent that the *Sillam* complaint is based upon or arises out of conduct by any Insured prior to August 5, 2004, coverage for the *Sillam* complaint would be excluded under the Policy's Prior Acts Exclusion, which provides as follows:

> In consideration of the premium charged, no coverage will be available under this Policy for Claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any act, error, omission, misstatement,

**BSWB**

misleading statement, neglect, breach of duty, or Wrongful Act, committed or allegedly committed prior to August 5, 2004.

*See* The Policy, End. No. 2. As set forth above, the *Sillam* complaint arises out of alleged conduct by several Insured Persons occurring prior to August 4, 2005, including Refco Overseas's and Mr. Saad's refusal to honor the September Contract Letter beginning in 1999. Therefore, coverage for the *Sillam* complaint would be additionally excluded under the Policy's Prior Acts Exclusion.

Fifth, to the extent that the *Sillam* complaint is based on, arises out of, directly or indirectly results from, is in consequence of, or in any way involves any fact, circumstance or situation, transaction, event or **Wrongful Act** that was the subject of any notice given under any other insurance policy before the inception date of the Policy, Exclusion (B)(2) of the Policy would exclude coverage for the *Sillam* complaint. *See* The Policy, V.(B)(2).

Sixth, to the extent that they constitute a **Claim**, the Securities Class Actions, the *Mehta* complaint, the Criminal Complaint, the *Sillam* complaint, and the *BAWAG* complaint are deemed to be one **Claim** as they appear to involve the same **Wrongful Acts** or **Interrelated Wrongful Acts** relating to alleged misrepresentations concerning Refco's IPO. *See* The Policy, IV.(G). The Policy defines **Interrelated Wrongful Acts** as "any **Wrongful Act** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related, or series of related, facts, circumstances, situations, transactions or events." *See* The Policy, II.(J). Based on allegations in the *Sillam* complaint that Mr. Sillam filed an action in France in June 2005 against one or more of the Insureds alleging that Refco's public filings in connection with its August 2005 IPO were false and misleading, XL reserves its right to deny coverage for each of the Lawsuits as **Claims** first made prior to the inception of the Policy and/or pursuant to the Policy's exclusions for Pending and/or Prior Litigation and **Claims** noticed under prior insurance policies.

Based on the foregoing, XL is denying coverage for the Lawsuits. Without prejudice to its denial of coverage, XL specifically reserves the right to raise any other terms and conditions of the Policy as defenses to coverage.

Please feel free to contact us with any questions.

Very truly yours,

James A. Skarzynski
Cecilia W. Kaiser

cc:    R. Damian Brew, Esq. (via email)

N51330#Correspondence\Coverage\Lieberman 1.doc