UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
XL SPECIALTY INSURANCE COMPANY,          :
                                         :
                Plaintiff,               :
                                         :
              v.                       :   No. 08-CV-3821(GEL)
                                         :
JOHN D. AGOGLIA, PHILLIP R. BENNETT,     :   *Electronically filed*
LEO R. BREITMAN, EDWIN L. COX,           :
SUKHMEET DHILLON, THOMAS H.              :
DITTMER, NATHAN GANTCHER, STEPHEN        :
GRADY, TONE GRANT, THOMAS HACKL,         :
DAVID V. HARKINS, SCOTT L. JAECKEL,      :
DENNIS A. KLEJNA, THOMAS H. LEE,         :
ERIC G. LIPOFF, SANTO C. MAGGIO,         :
PETER MCCARTHY, JOSEPH MURPHY,           :
FRANK MUTTERER, RONALD L. O'KELLEY,      :
RICHARD N. OUTRIDGE, SCOTT A.            :
SCHOEN, WILLIAM M. SEXTON, GERALD        :
SHERER, PHILIP SILVERMAN, AND            :
ROBERT C. TROSTEN,                       :
                                         :
                Defendants.              :
-----------------------------------------------------------------x

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF
PLAINTIFF, XL SPECIALTY INSURANCE CO., FOR SUMMARY JUDGMENT

*Of Counsel*:

James A. Skarzynski
James T. Sandnes (JS-8944)
Jill M. Levy
Ari R. Magedoff

BOUNDAS, SKARZYNSKI,
   WALSH & BLACK LLC
One Battery Park Plaza
New York, New York 10004
(212) 820-7700 (Telephone)
(212) 820-7740 (Facsimile)

*Attorneys for XL Specialty Insurance Company*

August 15, 2008

Table of Contents

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

Preliminary Statement .........................................................................................................1

Argument .............................................................................................................................2

I.  THERE IS NO DOUBT THAT THE IRE IS PART OF THE
    XL POLICY SO THERE IS NO NEED FOR DISCOVERY .........................................2

    A.  The Binder is Not an Integrated Document ...............................................2

    B.  The Undisputed Facts Show a Clear and Explicit Agreement that the
        IRE is part of the Contract of Insurance ....................................................5

    C.  There Has Been No Showing Justifying Discovery ...................................6

II. THE SEVERABILITY PROVISION OF THE
    XL POLICY DOES NOT APPLY TO THE IRE ............................................................8

III. ALL OF THE UNDERLYING MATTERS ARISE FROM
     FACTS, CIRCUMSTANCES OR SITUATIONS COVERED
     BY BENNETT'S CONVICTION ...............................................................................10

Conclusion .........................................................................................................................10

Table of Authorities

**Cases**

*American Home Assur. Co. v. ZIM JAMAICA,* 418 F. Supp. 2d 537 (S.D.N.Y 2006) .................... 7

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ............................................................... 6

*Axis Reinsurance Company v. Bennett*, Nos. 07 Civ. 7924(GEL) and 08 Civ. 3242(GEL),
    2008 WL 2485388 (S.D.N.Y. June 19, 2008) ................................................................*passim*

*Banca Commerciale Italiana, New York Branch v. Northern Trust Int'l Banking Corp.*,
    160 F.3d 90 (2d Cir. 1998) .......................................................................................... 6

*Burt Rigid Box, Inc. v. Travelers Property Cas. Corp.*, 302 F.3d 83 (2d Cir. 2002) ..................... 7

*Chimart Associates v. Paul,* 498 N.Y.S.2d 344 (N.Y. 1986) ....................................................... 4

*Employers Commercial Union Insurance Company of New York v. Fireman's Fund
    Insurance Company,* 45 N.Y.2d 608 (1978) ............................................................... 2

*In re September 11th Liability Ins. Coverage Cases,* 458 F. Supp. 2d 104 (S.D.N.Y. 2006) .......... 2

*SR Intern. Business Ins. Co., Ltd. v. World Trade Center Properties, LLC* 467 F.3d 107 (2d Cir.
    2006) ................................................................................................................... 3

*Vasilakos v. Gouvis,* 745 N.Y.S.2d 132 (3d Dep't 2002) ........................................................... 5

*Westchester Resco Co., L.P. v. New England Reinsurance Corp.*, 648 F. Supp. 842 (S.D.N.Y.
    1986) ................................................................................................................... 5

*Winmar Co., Inc. v. Teachers Ins. and Annuity Ass'n of America*, 870 F. Supp. 524 (S.D.N.Y.
    1994) ................................................................................................................... 4

*World Trade Center Properties, L.L.C. v. Hartford Fire Ins. Co.,*
    345 F.3d 154 (2d Cir. 2003) ............................................................................. 2, 3, 6

*Ying Jing Gan v. City of N.Y.,* 996 F.2d 522 (2d Cir.1993) ....................................................... 7

**Rules**

Fed. R. Civ. P. 56 ................................................................................................................. 6
Fed. R. Civ. P. 56(f) ..................................................................................................... 6, 7, 8

**Preliminary Statement[1]**

The D&Os who are continuing to dispute this matter -- six of them have stipulated not to seek coverage and have been dismissed -- of course, do not dispute that Bennett's plea proves that he knew all about the fraud at Refco. Nor do they dispute that Bennett had reason to suppose that a claim might be brought under the XL Policy. [2]

Instead, recognizing that the application of the IRE is fatal to their claims for coverage, the D&Os attempt to avoid the IRE altogether by arguing that it is not part of the contract of insurance. To reach that conclusion they assert this Court must look solely to a one-page binder issued by XL, not the actual XL Policy. But, the D&Os' argument is smoke, not substance, because it is founded on the faulty premise that the one-page binder is somehow an integrated expression of the complete agreement of the parties. Under the clear law of New York, however, insurance binders are definitionally never complete and the Court must look to extrinsic evidence for the agreed terms of the insurance contract manifested by the binder.

When that extrinsic evidence is considered, it is clear that nothing the D&Os say legitimately calls into question the ***undisputed fact*** that XL and Refco explicitly agreed that the IRE (which Marsh had in its possession prior to binding the Policy) would be part of the contract of insurance. The D&Os virtually ignore the evidence (including testimony and key, uncontested emails), falling back on precisely the type of vague assertions regarding needing discovery that this Court has uniformly rejected. They do, however, submit the declaration of a Marsh Senior Vice President, Pamela Sylwestrzak ("Sylwestrzak"), so there is no doubt that

---

[1] Defined terms have the same meaning in this brief as they did in XL's opening memorandum.

[2] Since the initial brief, Refco CFO Tone Grant was sentenced on his jury conviction to 10 years. (Sandnes Reply Aff't Ex. 36) Obviously recognizing that there is no basis for his opposition to summary judgment, counsel for the other D&Os apparently were not even willing to allow Grant's counsel to sign the same brief as they did. The jury conviction and judgment of conviction estops Grant from denying knowledge sufficient to eliminate any coverage for Grant, regardless of whether the IRE is part of the policy and regardless of severability. Summary judgment must be granted as to him regardless of the Court's holdings with respect to the other defendants.

Marsh is voluntarily cooperating with the D&Os, giving the D&Os complete access to Marsh's file and providing affidavits. Given that XL produced its underwriting file weeks ago, Marsh's voluntary cooperation completely eviscerates the D&Os' already-dubious claimed need for discovery.

## Argument

### I. THERE IS NO DOUBT THAT THE IRE IS PART OF THE XL POLICY SO THERE IS NO NEED FOR DISCOVERY

#### A. The Binder is not an Integrated Document

No insurance binder defines the complete terms of the insurance afforded. Rather, "a binder, while an enforceable contract in its own right, is necessarily incomplete in some respects." *World Trade Center Properties, L.L.C. v. Hartford Fire Ins. Co.,* 345 F.3d 154, 169 (2d Cir. 2003). As noted by the Second Circuit, "it is common and necessary in the world of insurance, where speed often is of the essence, for the agent to use this quick and informal device to record the giving of protection." *Id.* (quoting *Employers Commercial Union Insurance Company of New York v. Fireman's Fund Insurance Company,* 45 N.Y.2d 608 (1978)). "[B]inders are, by definition, not full documents," so courts "must often look beyond the plain terms of the binder to discern the precise scope of the liabilities and obligations." *In re September 11th Liability Ins. Coverage Cases,* 458 F. Supp. 2d 104, 115 (S.D.N.Y. 2006).

Thus, it is settled New York law that the binder is a manifestation of an agreement to be bound by a contract of insurance, but it is not, itself, a complete statement of the terms, conditions and limitations of that insurance contract. The Second Circuit stated, in the very case heavily relied upon by the D&Os, that "'the parol evidence rule does not come into play at all'" when dealing with un-integrated contracts such as an insurance binder, and that it is "well settled in New York that extrinsic evidence is admissible to determine the parties' intentions with

2

respect to the incomplete and unitegrated terms of a binder." *World Trade Center,* 345 F.3d at 184-85 (quoting and adopting a litigant's argument).

"[N]egotiations are examined to determine what terms the parties intended to incorporate into the binder." *Id.* at 169. *See also, SR Intern. Business Ins. Co., Ltd. v. World Trade Center Properties, LLC* 467 F.3d 107, 125 (2d Cir. 2006). Stressing the importance of pre-binder negotiations, the Second Circuit explained that "any policy form that was exchanged in the process of negotiating the binder . . . is likely the most reliable manifestation of the terms by which the parties intended to be bound." *World Trade Center,* 345 F.3d at 154. The issue for the Court, then, is not simply what the actual one-page binder says, but "what terms the parties intended to incorporate." *Id* at 169. And on that issue, the undisputed and unrefuted fact is that there was an express, clear and definitive agreement to include the IRE in the insurance contract.

While not claiming the binder is complete and integrated, the D&Os nonetheless say the Court should ignore that unrefuted evidence because, according to them, the binder is clear on its face that the IRE is not part of the contract. XL agrees with the D&Os that to the extent a document, such as an endorsement, is intended to be incorporated into the contract of insurance, that document is controlled by its plain language. But the clarity the D&Os assert is not based on something that the binder (or an endorsement) actually says, one way or the other, but rather what it fails to mention. That is not clarity, because clarity simply cannot come from absence of a term in a document that, by its nature, is a temporary, "quick and informal device" and is inherently incomplete.[3]

---

[3] The D&Os also make the groundless argument that the IRE is inconsistent with a provision of the binder under which the policy is not rescindable. The two provisions are not in the least inconsistent. The IRE covers only claims related to pre-inception. The non-rescission provision is completely compatible with the IRE because even if the IRE is triggered, the non-rescission provision mandates XL must remain on the risk as to other claims which might arise either from post-inception conduct, or from pre-inception conduct not reasonably likely to result in a Claim.

3

Their assertion of clarity is also disingenuous because, as the Court knows from the other Refco insurance cases it is supervising, Refco agreed to knowledge exclusions, materially identical to the IRE, for the entire tower of insurance. Indeed, the D&Os themselves assert that Refco's agreement to those knowledge exclusions were in exchange for it not having to fill out part of the application for the policies. *See, e.g.,* D&Os' brief in case, No. 08-CV-4196, at 17. The D&Os submit similar evidence here. Sylwestrzak Declaration ("Sylwestrzak Dec.") Ex. D. But the point they make also proves that extrinsic evidence must be considered with respect to the agreement to include the IRE. As can plainly be seen in the binder, it is contingent on the "Classic A-side Application" being filled out. Sylwestrzak Dec. Ex. A. Although, contrary to the D&Os claims, the IRE is not merely "equivalent" to the application representation, the email record, detailed below, does show that because the IRE was included, XL waived the binder's requirement of filling out part of the application. XL's waiver of that explicit condition comes only by reference to extrinsic evidence. *See,* Sylwestrzak Dec. Ex. D. In fact, part of the application was not filled out. Toolan Dec. Ex. A. The D&Os simply cannot have it both ways. They cannot look to extrinsic evidence for XL's waiver of a full application (as the binder required) and then deny that such evidence can be considered with respect to the IRE.

Finally, even were the Court to conclude that the parol evidence rule is applicable, the omission of a mention of the IRE in the binder was merely a scrivener's error. *Chimart Associates v. Paul*, 498 N.Y.S.2d 344, 347 (N.Y. 1986) (parol evidence rule does not bar correction of scrivener's error); *Winmar Co., Inc. v. Teachers Ins. and Annuity Ass'n of America*, 870 F. Supp. 524, 535 (S.D.N.Y. 1994)(same). A court will reform, without hesitation, a writing "where the parties have reached a real and existing agreement on particular terms' and subsequently find themselves bound to a writing which does not accurately express their

4

agreement." *Westchester Resco Co., L.P. v. New England Reinsurance Corp.*, 648 F. Supp. 842, 847 (S.D.N.Y. 1986). How the mistake occurs is irrelevant. *Vasilakos v. Gouvis,* 745 N.Y.S.2d 132, 133 (3d Dep't 2002)*; Lent v. Cea,* 619 N.Y.S. 166 (3d Dep't 1994).

> B. The Undisputed Facts Show a Clear and Explicit Agreement that the IRE is part of the Contract of Insurance

Despite their attempt to obfuscate, the ***D&Os offer no evidence that disputes the existence of an explicit agreement to include the IRE***. Notably, Marsh SVP Sylwestrzak, who was personally involved in the process of procuring the Refco insurance tower, obviously has complete access to Marsh's files, including the email trail between the front-line Marsh broker, Kenny Li ("Li"), and XL's Toolan. She does not dispute that the emails submitted with the Toolan Declaration are also in Marsh's files. But most notably ***absent from Sylwestrzak's declaration is any denial that there was an agreement to include the IRE in the policy***. She does not deny it because the record is clear. The e-mail record on August 9, 2005 shows:

| Time | To/From | Content |
|---|---|---|
| 9:47 AM | Li to Toolan | "Please quote 20m x 50m" (Sylwestrzak Dec. Ex. D) |
| 10:14 AM | Toolan to Li | "Here is our quote for the 20x50 DIC." (*Id.*) |
| 10:15 AM | Li to Toolan | "*please include an inverted warranty endorsement* in your revised quote" ( Toolan Dec. Ex B) |
| 10:17 AM | Li to Toolan | "can you add an inverted Warranty endorsement. . ." (Sylwestrzak Dec. Ex. D) |
| 10:17 AM | Toolan to Li | "***This confirms that we will use the inverted warranty***" (Toolan Dec. Ex B) |
| 3:21 PM | *Sylwestrzak to Li* | "Could you send me the app that XL requires be completed. I'm assuming we can cross off the warranty *since they are using an inverted warranty* – please confirm." (Toolan Response Declaration ("Toolan Res. Dec.") Ex. D) |
| 3:23 PM | Li to Toolan cc: Sylwestrzak | "Please send me the application you need. Per our conversation, *the warranty will be crossed off due to your endorsement*." (Id.) |
| 4:31 PM | Li to Toolan | "*I need a copy of your form and all endorsements*" (Toolan Dec. Ex. C) |

5

| | | |
|---|---|---|
| 4:46 PM | Toolan to Li | "the controlling shareholder endorsement would have to be manuscripted (or I just can't find it right now)" [Attaching the policy form and all of the endorsements except the IRE and the controlling shareholder endorsement] (Toolan Res. Dec. Ex. E) |
| 4:47 PM | Toolan to Li | "one more." [*Attaching the IRE*] (Toolan Dec. Ex. C) |

As discussed above, the Second Circuit has held that the forms exchanged and the pre-binder communication are the "most reliable manifestation of the terms" that the parties intend for the insurance contract. *World Trade Center,* 345 F.3d at 154. When the emails (and attachments) between Li and Toolan are considered, it could hardly be clearer. Toolan also testified, fully consistent with that email record, that there was an agreement to include the IRE: "I can say on personal knowledge that there was a clear, explicit and unequivocal agreement, prior to the Policy being bound, that the IRE was part of the Policy." Toolan Dec. ¶ 5. As noted, Sylwestrzak (Li's boss at Marsh), does not deny such an agreement; no one does.

There is simply no genuine dispute within the meaning of Rule 56. The IRE was agreed to and, in fact, sent by XL directly to Marsh. No properly instructed reasonable jury could find otherwise on the evidence presented. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Banca Commerciale Italiana, New York Branch v. Northern Trust Int'l Banking Corp.*, 160 F.3d 90, 93 (2d Cir. 1998).

### C.   There Has Been No Showing Justifying Discovery

There is no legitimate basis for discovery. As noted in the opening brief, XL believes that the true purpose behind the D&Os' request for discovery is simply to delay resolution of this matter while, at the same time, seeking an order for XL to advance defense expenses. Such an outcome would unfairly and severely prejudice XL.

Although the D&Os proffer a Rule 56(f) affidavit ("Kim Dec."), an examination of that affidavit (which is little more than a continuation of the argumentation in the brief) shows that

the D&Os have failed to identify any of the things this Court has held are mandated under Rule 56(f), *i.e.*: "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort… has [been] made to obtain them, and (4) why [those efforts have been] unsuccessful." *Axis* Decision at *7. The Rule 56(f) affidavit claims that there are three factual areas for inquiry: (i) what "other communications" have occurred between Marsh and XL regarding the binder; (ii) what was intended to be the "inverted warranty" and (iii) why the binder was issued without an explicit reference to the IRE. Kim Dec. ¶7.

With respect to "other communications," as noted, the D&Os have access to Marsh's files and a Senior Vice President is volunteering affidavits – Rule 56(f) notably is titled "When Affidavits are Unavailable." They also admit that XL has produced its underwriting file. Kim Dec. ¶2. What more do they need? The Rule 56(f) affidavit is silent on that point. It does not even ask for any depositions, much less specify the witnesses and their relevance. It is well settled that the mere hope that an affiant will change his testimony or that "beneficial evidence will serendipitously materialize" is not grounds for ordering discovery. *American Home Assur. Co. v. ZIM JAMAICA,* 418 F. Supp. 2d 537, 547 (S.D.N.Y 2006). *See also, Burt Rigid Box, Inc. v. Travelers Property Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002); *Ying Jing Gan v. City of N.Y.,* 996 F.2d 522, 532 (2d Cir.1993).

Similarly, as to the content of the inverted warranty, given that the record is clear that the IRE was actually sent to Marsh, there is no question what the intended language of the endorsement is. Finally, as for why a binder was issued that did not mention the IRE, Mr. Toolan has testified (without contradiction) that the IRE was intended to be part of the contract

7

of insurance. To the extent it was not listed, it was an error. Toolan Res. Dec. ¶ 5. Again, Marsh does not deny it, so what could discovery possibly show?

As to the factor requiring the D&Os to show how discovery on those issues could create a material dispute, once again the Rule 56(f) affidavit is silent. As discussed above, there is no legitimate dispute with respect to any of those facts, so discovery would be pointless. And as to the efforts that have been made to get the discovery and why they "failed," the D&Os have XL's underwriting file, and XL has also complied with the document request that is attached to the Kim Dec., producing some redundant material from its claims file. Given that the D&Os have all of the material from XL and Marsh, their efforts to get the material have not "failed."

XL believes there has been no showing of need, but if this Court determines to allow additional discovery, the Court should order that the discovery be limited to the issue related to the inclusion of the IRE and require it be completed promptly to avoid the prejudice noted above.

## II.   THE SEVERABILITY PROVISION OF THE XL POLICY DOES NOT APPLY TO THE IRE

As demonstrated in XL's opening brief, the language of the representation provision in the XL Policy is virtually identical to its mirror provision in the Primary Policy that this Court, in the *Axis* Decision, has already made clear applies only to representations in applications. In nearly identical terms, both the XL and the Axis representation provisions identify the scope and focus of the clause as to the application and the insurers' reliance on the truth and accuracy of that information, one saying "the particulars and statements contained in the Application are true" while the other says "the statements and particulars contained in the Application are true."

However, in an attempt to evade this Court's prior ruling, and distort the plain meaning of the provision, the D&Os now advance a "sandwich" theory, insisting that the *Axis* Decision should be limited to cases where the representation provision contained direct references to the

8

application at both the beginning and end of the clause. The D&Os argue that because the second sentence of the XL provision is not followed by another explicit reference to the "application", the *Axis* Decision is inapplicable and the XL provision should be read far broader in scope than the Axis provision, which plainly accomplishes the same thing in nearly the same language. They also assert that one sentence of a two-sentences-long clause should be read and interpreted as entirely separate from the other sentence, having two distinct applications and purposes. The plain language, and the *Axis* Decision, indicate that they are wrong.

But even could the representations provision be read as relating to something other than the application, that clause does nothing to impact the operation of the IRE ***because the IRE does not require the imputation of knowledge*** from one Insured to another. The IRE is triggered if "***any Insured had knowledge***" of a fact, circumstance or situation. Toolan Dec. Ex. A, Endorsement No. 13 (*emphasis added*). As discussed in length in the opening brief, the IRE does not require that *every* D&O have such knowledge, only one. So, the non-imputation of knowledge from one Insured to another under the representations provision is, simply, irrelevant to the operation of the IRE. Moreover, just as with their argument regarding the non-rescission clause, the D&Os' argument that the IRE would render the representations clause meaningless fails. That clause remains effective as to any application representation which, while untrue, does not give an insured "***reason to suppose***" it might afford grounds for a Claim.

In a last, futile attempt to avoid the Court's prior ruling, the D&Os engage in a pointless "what if" game, arguing that "if" Bennett had responded to all of the questions in the XL application, "if" the IRE were not part of the policy and "if" he had answered those questions untruthfully, the Insureds would now be afforded coverage under the XL Policy. The

9

hypothetical is irrelevant because that is not what happened.  What the undisputed facts show is that the IRE *is* part of the policy and clearly *is* triggered by the knowledge of "any" Insured.

**III.   ALL OF THE UNDERLYING MATTERS ARISE FROM FACTS, CIRCUMSTANCES OR SITUATIONS COVERED BY BENNETT'S CONVICTION**

As demonstrated on a case-by-case basis in the chart provided as Sandnes Aff't Ex. 35, all of the Underlying Matters are related to and arise from the massive company-wide fraud at Refco, to which Bennett, and others, have pled or been found guilty.  The D&Os have not provided any such case-by-case analysis of the Underlying Matters to dispute that evidence.  Rather, in lieu of any thorough examination, the D&Os provide two so-called "examples" of cases they now claim are unrelated to the fraud at Refco (despite having previously noticed these matters under the XL Policy as relating to the Underlying Matters).  As Ex. 35 shows, those two cases, as with all the rest, arise from the very same "facts, circumstances and situations" which Bennett, and others, admittedly had knowledge.  In any event, the D&Os use of the word "example" does nothing to make those cases representative of the remaining Underlying Matters.

XL understands that AWAC and Arch each will discuss these matters in more detail in their briefs and XL respectfully incorporates those arguments here, by reference.

**Conclusion**

For the reasons stated above and in the opening brief, XL's motion for summary judgment should be granted.

Dated: New York, New York
        August 15, 2008                              BOUNDAS, SKARZYNSKI, WALSH
                                                     & BLACK, LLC

*Of Counsel*:
                                                     By:   /s James Sandnes
   James A. Skarzynski                                       James Sandnes (JS-8944)
   James Sandnes                                     One Battery Park Plaza
   Jill M. Levy                                      New York, New York 10004
   Ari R. Magedoff                                   Telephone: (212) 820-7700

10